RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: rb@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO DIVISION**

| | |
|---|---|
| In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation,<br><br>    Debtor and Debtor in Possession. | Case No. 1:17-bk-12408-MB<br><br>Chapter 11<br><br>**DEBTOR'S <u>EX PARTE</u> MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF CASES; DECLARATION OF L. GEOFF GREULICH IN SUPPORT THEREOF**<br><br>[No Hearing or Notice Required Pursuant To Local Bankruptcy Rule 1015-1] |

1

Pursuant to Local Bankruptcy Rule 1015-1(b), Ironclad Performance Corporation, a California corporation ("Ironclad California"), the debtor and debtor in possession in the above-referenced Chapter 11 bankruptcy case, hereby moves, on an ex parte basis, for the entry of an order for joint administration of this case with the Chapter 11 bankruptcy case of Ironclad Performance Corporation, a Nevada corporation ("Ironclad Nevada" and collectively with Ironclad California, the "Debtors") (Case No. 1:17-bk-12409-MB).

## I. STATEMENT OF FACTS

**A.  Brief Description Of The Debtors And Their Businesses.**

1. On September 7, 2017 ("Petition Date"), Ironclad California and its parent corporation Ironclad Nevada, each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, Ironclad California and Ironclad Nevada (collectively, the "Debtors" or "Ironclad") have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Other than owning all of the shares in Ironclad California, Ironclad Nevada has no business. All operations of the Debtors effectively function through Ironclad California. The management of the Debtors is identical.

2. The Debtors are a leading, technology-focused developer and manufacturer of high-performance task-specific gloves and apparel for the "industrial athlete" in a variety of end markets, including construction, manufacturing, oil and gas ("O&G"), automotive, the sporting goods, military, police, fire, and first-responder. The Debtors' business is based out of Farmers Branch, Texas. Ironclad Nevada is publicly-traded with its common stock quoted on the OTC Markets under the symbol "ICPW". As of April 7, 2017, Ironclad Nevada had 85,646,354 shares of common stock, par value $0.001 per share, issued and outstanding. As of August 30, 2017, the Debtors had approximately 41 full time employees, with 9 of these employees who work overseas.

3. Ironclad was founded in 1998 by Ed Jaeger. Mr. Jaeger was inspired to build gloves that offered protection and performance without sacrificing one for the other. From the

beginning, Ironclad built gloves using materials that offered excellent fit to make them an extension of the hand and to make jobs easier for the "industrial athlete". By 2006, Ironclad offered 35 different task-specific glove types for people wearing gloves as part of their daily jobs.

4. In 2008, the Debtors launched the KONG (King of Oil 'N' Gas) line to address the high number of hand injuries in the O&G field. By 2010, the KONG line was comprised of 46 different gloves. Additionally, Ironclad expanded its presence in the retail and non-professional markets with the launch of the EXO brand in June 2015. EXO offers lower cost gloves for automotive, DIY, and outdoor sporting applications. Ironclad offers 30 different EXO glove types.

5. Ironclad's task-specific technical glove products are specially designed for individual user groups. Ironclad currently offers over 160 distinct types of gloves for a variety of markets, including industrial, construction, DIY, carpentry, machining, package handling, plumbing, welding, roofing, O&G, mechanics, hunting, and gardening. Products come in a multitude of colors and cater to the specific demands and requirements of the users based on ease of motion, grip, water and chemical resistance, visibility, and protection from abrasions, cuts, flames, impacts, temperature, and vibration. Since inception, Ironclad has employed an internal research and development ("R&D") department responsible for identifying and creating new products and applications, and improving and enhancing existing products. Ironclad is continually evaluating new base materials for gloves, and grip is another key area of focus for R&D. Ironclad often partners with industry-leading organizations to develop new products. The Company has 13 U.S. patents issued and 11 foreign patents, as well as five pending U.S. patent applications and several pending foreign patent applications. Ironclad also uses trademarks to strengthen and protect its recognizable brand names. Ironclad owns 52 registered U.S. trademarks, 39 registered international trademarks, and 13 and 43 trademarks pending in the U.S. and internationally, respectively.

6. Ironclad currently sells through approximately 10,000 outlets for professional tradesmen as well as "Big Box", hardware, auto parts, and sporting goods retailers. The sales

force is organized by 3 business segments: Industrial, Retail, and International. Glove products are currently manufactured by multiple suppliers operating in China, Bangladesh, Cambodia, Vietnam and Indonesia.

**B.     Events Leading To Bankruptcy And The Debtors' Chapter 11 Goals.**

7.     Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth. There have been many reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs. In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their loan documents to their primary secured lender for the fiscal years ended December 31, 2015 and 2016, and for the fiscal quarters ended March 31, June 30, September 30, 2016 and March 31, 2017. As a result of this discovery, the Debtors' then chief executive officer and other officers were terminated, and L. Geoff Greulich assumed the position of the Debtors' new chief executive officer effective July 6, 2017. Prior to assuming this position, Mr. Greulich had no prior connections or relationship with the Debtors as an insider, equity holder or otherwise. As a Senior Advisor, Operations at Corridor Capital, LLC, where he leads operations through portfolio engagement as well as conducting due diligence, Mr. Greulich was highly qualified to serve as the Debtors' new chief executive officer. Persons or parties interested in obtaining specific historical financial history of the Debtors should review the public filings made by the Debtors with the Securities and Exchange Commission.

8.     The Debtors filed their bankruptcy cases to consummate a sale of substantially all of their assets (excluding cash and causes of action) for the most money possible. Just prior to their bankruptcy filings, the Debtors entered into an asset purchase agreement ("APA") with the Debtors' current secured creditor, Radians Wareham Holdings, Inc. ("Radians") or its

affiliate/designee, for a cash purchase price of $20 million or $15 million, subject to an overbid process. Radians will be paying a cash purchase price of either $15 million or $20 million depending upon the occurrence of an event which is sensitive and is the subject of a motion the Debtors are filing under seal, which the Debtors hope will be granted by the Court. It should be noted that the Debtors believe the total debt in these cases (both secured and unsecured combined) is or will be in the range of approximately $8-$10 million, which means that all creditors are expected to be paid in full with there being a substantial distribution to the shareholders of the parent company, which is a publicly traded company.

## II.    BASIS FOR RELEIF

Pursuant to Local Bankruptcy Rule 1015-1(b), "[i]f two or more cases are pending before the same judge, an order of joint administration may be entered, without notice and an opportunity for hearing, upon the filing of a motion for joint administration pursuant to FRBP 1015, supported by a declaration establishing that the joint administration of the cases is warranted, will ease the administrative burden for the Court and the parties, and will protect creditors of the different estates against potential conflicts of interest."

Here, it is clear that joint administration of the cases is warranted. Joint administration will avoid the exponential expenses related with requesting Court approval of identical motions involving both Debtors in two separate cases. The Debtors share common management, including the same Chief Executive Officer and Chief Financial Officer. The Debtors are parties to the same proposed debtor-in-possession financing and cash collateral agreements. One Debtor (Ironclad California) is wholly owned by the other Debtor (Ironclad Nevada). Joint administration of these cases will ease the administrative burden for the Court and the parties, and will protect creditors of the different estates against potential conflicts of interest. For example, the Debtors will file a motion for Court approval of: (1) the use of cash collateral; (2) debtor-in-possession financing pursuant to section 364 of the Bankruptcy Code; and (3) approval of bid procedures. The terms of the use of cash collateral, the terms of the proposed debtor-in-

possession financing, and the proposed bidding procedures, will be identical for both of the Debtors.

Joint administration of the estates will mean that the Debtors will only be required to file a single motion for each of these requests, and will be able to conduct a jointly-administered reorganization. Rather than reviewing separate identical pleadings filed in two separate cases, the Court, the United States Trustee, and creditors, will only need to review single motions. Creditors of the estates will be aware of the cash collateral and financing requests and the relationships between the Debtors, their cases, their assets, and their liabilities. Annexed hereto is the Declaration of L. Geoff Greulich in support of this Motion.

In the event the Court orders the joint administration of the cases, the Debtors respectfully suggest that the following caption be approved and that Ironclad California's case be used as the lead case, as that is the primary operating entity, as described in the annexed Declaration.

| In re: <br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation, <br><br>    Debtor and Debtor in Possession. <br>_____ <br>In re: <br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation, <br><br>    Debtor and Debtor in Possession. <br>_____ <br><br>☒ Affects both Debtors <br><br>☐ Affects Ironclad Performance Wear Corporation, a California corporation only <br><br>☐ Affects Ironclad Performance Wear Corporation, a Nevada corporation only | Lead Case No.: 1:17-bk-12408-MB <br><br>Jointly administered with: <br>1:17-bk-12409-MB <br>(Ironclad Performance Wear Corporation, a Nevada corporation) <br><br>Chapter 11 Cases <br><br><br>Date: <br>Time: <br>Place:  Courtroom 303 <br>        21041 Burbank Blvd. <br>        Woodland Hills, CA 91367 |
|---|---|

1     Accordingly, the Debtors respectfully request that this Court enter an order (lodged

2 concurrently herewith):

3     (a)    authorizing the joint administration of the cases;

4     (b)    approving the form of caption suggested by the Debtors herein; and

5     (c)    granting such other and further relief as the Court deems just and proper.

Dated: September 11, 2017        IRONCLAD PERFORMANCE WEAR
                                      CORPORATION

By:   */s/ Krikor J. Meshefejian*
        RON BENDER
        MONICA Y. KIM
        KRIKOR J. MESHEFEJIAN
        LEVENE, NEALE, BENDER, YOO
        & BRILL L.L.P.
        Proposed Counsel for Chapter 11 Debtor and
        Debtor in Possession

### **DECLARATION OF L. GEOFF GREULICH**

I, L. Geoff Greulich, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto. This Declaration is based upon my review of pertinent portions of the Debtors' books and records, and the information I have obtained in my position as CEO of the Debtors.

2. I joined Ironclad Performance Wear Corporation, a California corporation ("Ironclad California") and Ironclad Performance Wear Corporation, a Nevada corporation ("Ironclad Nevada", and collectively with Ironclad California, the "Debtors") as Chief Executive Officer effective July 6, 2017.

**A.    Brief Description Of The Debtors And Their Businesses.**

3. On September 7, 2017 ("Petition Date"), Ironclad Performance Wear Corporation, a California corporation ("Ironclad California") and its parent corporation Ironclad Performance Wear Corporation, a Nevada corporation ("Ironclad Nevada"), each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, Ironclad California and Ironclad Nevada (collectively, the "Debtors" or "Ironclad") have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

4. Other than owning all of the shares in Ironclad California, Ironclad Nevada has no business. All operations of the Debtors effectively function through Ironclad California.

5. The Debtors are a leading, technology-focused developer and manufacturer of high-performance task-specific gloves and apparel for the "industrial athlete" in a variety of end markets, including construction, manufacturing, oil and gas ("O&G"), automotive, the sporting goods, military, police, fire, and first-responder. The Debtors' business is based out of Farmers Branch, Texas. Ironclad Nevada is publicly-traded with its common stock quoted on the OTC Markets under the symbol "ICPW". As of April 7, 2017, Ironclad Nevada had 85,646,354 shares of common stock, par value $0.001 per share, issued and outstanding. As of August 30, 2017, the

Debtors had approximately 41 full time employees, with 9 of these employees who work overseas.

6.  Ironclad was founded in 1998 by Ed Jaeger. Mr. Jaeger was inspired to build gloves that offered protection and performance without sacrificing one for the other. From the beginning, Ironclad built gloves using materials that offered excellent fit to make them an extension of the hand and to make jobs easier for the "industrial athlete". By 2006, Ironclad offered 35 different task-specific glove types for people wearing gloves as part of their daily jobs.

7.  In 2008, the Debtors launched the KONG (King of Oil 'N' Gas) line to address the high number of hand injuries in the O&G field. By 2010, the KONG line was comprised of 46 different gloves. Additionally, Ironclad expanded its presence in the retail and non-professional markets with the launch of the EXO brand in June 2015. EXO offers lower cost gloves for automotive, DIY, and outdoor sporting applications. Ironclad offers 30 different EXO glove types.

8.  Ironclad's task-specific technical glove products are specially designed for individual user groups. Ironclad currently offers over 160 distinct types of gloves for a variety of markets, including industrial, construction, DIY, carpentry, machining, package handling, plumbing, welding, roofing, O&G, mechanics, hunting, and gardening. Products come in a multitude of colors and cater to the specific demands and requirements of the users based on ease of motion, grip, water and chemical resistance, visibility, and protection from abrasions, cuts, flames, impacts, temperature, and vibration. Since inception, Ironclad has employed an internal research and development ("R&D") department responsible for identifying and creating new products and applications, and improving and enhancing existing products. Ironclad is continually evaluating new base materials for gloves, and grip is another key area of focus for R&D. Ironclad often partners with industry-leading organizations to develop new products. The Company has 13 U.S. patents issued and 11 foreign patents, as well as five pending U.S. patent applications and several pending foreign patent applications. Ironclad also uses trademarks to strengthen and protect its recognizable brand names. Ironclad owns 52 registered U.S.

trademarks, 39 registered international trademarks, and 13 and 43 trademarks pending in the U.S. and internationally, respectively.

9. Ironclad currently sells through approximately 10,000 outlets for professional tradesmen as well as "Big Box", hardware, auto parts, and sporting goods retailers. The sales force is organized by 3 business segments: Industrial, Retail, and International. Glove products are currently manufactured by multiple suppliers operating in China, Bangladesh, Cambodia, Vietnam and Indonesia.

**B.    Events Leading To Bankruptcy And The Debtors' Chapter 11 Goals.**

10. Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth. There have been many reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs. In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their loan documents to their primary secured lender for the fiscal years ended December 31, 2015 and 2016, and for the fiscal quarters ended March 31, June 30, September 30, 2016 and March 31, 2017. As a result of this discovery, the Debtors' then chief executive officer and other officers were terminated, and I assumed the position of the Debtors' new chief executive officer effective July 6, 2017. Prior to assuming this position, I had no prior connections or relationship with the Debtors as an insider, equity holder or otherwise. Persons or parties interested in obtaining specific historical financial history of the Debtors should review the public filings made by the Debtors with the Securities and Exchange Commission.

11. The Debtors filed their bankruptcy cases to consummate a sale of substantially all of their assets (excluding cash and causes of action) for the most money possible. Just prior to their bankruptcy filings, the Debtors entered into an asset purchase agreement ("APA") with the

Debtors' current secured creditor, Radians Wareham Holdings, Inc. ("<u>Radians</u>") or its affiliate/designee, for a cash purchase price of $20 million or $15 million, subject to an overbid process. Radians will be paying a cash purchase price of either $15 million or $20 million depending upon the occurrence of an event which is sensitive and is the subject of a motion the Debtors are filing under seal, which the Debtors hope will be granted by the Court. It should be noted that the Debtors believe the total debt in these cases (both secured and unsecured combined) is or will be in the range of approximately $8-$10 million, which means that all creditors are expected to be paid in full with there being a substantial distribution to the shareholders of the parent company, which is a publicly traded company.

**C.    <u>Basis For Joint Administration</u>.**

12.    Joint administration will avoid the exponential expenses related with requesting Court approval of identical motions involving both Debtors in two separate cases. The Debtors share common management. The Debtors are parties to the same proposed debtor-in-possession financing and cash collateral agreements. One Debtor (Ironclad California) is wholly owned by the other Debtor (Ironclad Nevada). Joint administration of these cases will ease the administrative burden for the Court and the parties, and will protect creditors of the different estates against potential conflicts of interest. For example, the Debtors will file a motion for Court approval of: (1) the use of cash collateral; (2) debtor-in-possession financing pursuant to section 364 of the Bankruptcy Code; and (3) approval of bid procedures. The terms of the use of cash collateral, the terms of the proposed debtor-in-possession financing, and the proposed bidding procedures, will be identical for both of the Debtors.

13.    I understand that joint administration of the estates will mean that the Debtors will only be required to file a single motion for each of these requests, and will be able to conduct a jointly-administered reorganization. Rather than reviewing separate identical pleadings filed in two separate cases, the Court, the United States Trustee, and creditors, will only need to review single motions. Creditors of the estates will be aware of the cash collateral and financing requests and the relationships between the Debtors, their cases, their assets, and their liabilities.

14. In the event the Court orders the joint administration of the cases, I respectfully suggest that the above-proposed caption be approved and that Ironclad California's case be used as the lead case, as that is the primary operating entity.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of September, 2017, at Los Angeles, California.

*[signature]*

L. Geoff Greulich, Declarant

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **DEBTOR'S EX PARTE MOTION FOR ENTRY OF AN ORDER FOR JOINT ADMINISTRATION OF CASES; DECLARATION OF L. GEOFF GREULICH IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **September 11, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **S Margaux Ross    margaux.ross@usdoj.gov**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Sharon Z. Weiss    sharon.weiss@bryancave.com, raul.morales@bryancave.com**

**2. SERVED BY UNITED STATES MAIL**: On **September 11, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **September 11, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

*Served via Attorney Service*
Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

☒ *Service List served by Overnight Mail attached*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 11, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                          **F 9013-3.1.PROOF.SERVICE**

**Served by Overnight Mail:**

Ironclad Performance Wear (8300)
OUST, Secured & Top 20

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

U. S. Securities and Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

**Secured Creditor**
Radians Wareham Holding, Inc.
Attn: Mike Tutor, CEO
5305 Distriplex Farms
Memphis, TN 38141

**Counsel to Radians Wareham Holdings**
E. Franklin Childress, Jr.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Ave, Suite 2000
Memphis, Tennessee  38103

**Counsel to Radians Wareham Holdings**
Sharon Z. Weiss
Bryan Cave
120 Broadway, Suite 300
Santa Monica, CA 90401

**Top 20 Unsecured Creditors:**

Advantage Media Services, Inc.
Attn: Steven Helmle
29010 Commerce Center Drive
Valencia, CA 91355

Danny Negara
Mercindo Global Manufaktur
Jl. Raya Semarang-Bawen Km.29
SEemerang, Central Java
50661, Indonesia

Eliza Yang
Nantong Changbang Gloves Co.
Flat/RM 1602 Chit Lee Comm
Bldg 30-36, Shau Kei Wan Road
Hong Kong, China

Gerard
BDO USA, LLP
P. O. BOX 677973
Dallas, TX 75267-7973

Kwong
PT JJ GLOVES INDO
JL Ronggowarsito, Mlese, Ceper
Bonded Zone, Klaten
Central Java, Indonesia, 57463

Mark Robba
PT SPORT GLOVE INDONESIA
Krandon Desa Pandowoharjo
Sleman
Yogyakarta, Indonesia, 55512

Daniel Gomes
Capital One Bank
P. O. BOX 1917
Merrifield, VA 22116-1917

Brent Waters
Resources Global Professionals
P.O. Box 740909
Los Angeles, CA 90074-0909

Skadden Arps Slate Meagher & Flom LLP
P O Box 1764
White Plains, NY 10602

Carol Pearson
FedEx
PO Box 7221
Pasadena, CA 91109-7321

Risk Consulting Partners
24722 Network Place
Chicago, IL 60673-1247

Robert Tejeda
Stubbs, Alderton & Markiles, LLP
15260 Ventura Blvd
20th Floor
Sherman Oaks, CA 91403

Ms. Vicz Yue
Ka Hung Glove Inustrial Co. Ltd.
Fujian Quanzhou Jiacheng Leather
Chi Feng Road, Quanzhou City
Fujian, 362000, China

Shur-Sales & Marketing, Inc.
3830 S Windermere St.
Englewood, CO 80110

John Calhoun
Synetra
1110 E. State Highway 114
Suite 200
Southlake, TX 76092

Sky Lin
Marusan - Mimasu Tshusho Co. Ltd.
No 1 Queen' Road Central
Hong Kong
China

Carla Durand
University of Milwaukee
P O Box 500
University of Wisconsin - Milwaukee
Milwaukee, WI 53201

Bradley J. S. Weiss
Winspeed Sports Shanghai Co., Ltd.
858 Mingzhu Road
Shanghai
China, 00020-1702

Janice Lee
Woneel Midas Leathers
Jl Gembor Raya Desa Pasirjaya
Tangerang
Banten, Indonesia, 15135

Liliana Dominguez
Yellow and Roadway
P. O. Box 100129
Pasadena, CA 91355

1920 Hutton Court
Attn: Johnny Clark
Inwood National Bank
P O Box 857413
Richardson, TX 75085