AARON CRAIG (State Bar No. 204741)
Email: acraig@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA 90071
Telephone: 213-443-4355
Facsimile: 213-443-4310

PAUL K. FERDINANDS
Email: pferdinands@kslaw.com
JEFFREY R. DUTSON
Email: jdutson@kslaw.com
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA 30309
Telephone: 404-572-4600
Facsimile: 404-572-5100

Attorneys for BIG TIME PRODUCTS, LLC

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re: | Lead Case No.: 1:17-bk-12408-MB |
| | Jointly administered with: |
| IRONCLAD PERFORMANCE WEAR | 1-17-bk-12409-MB |
| CORPORATION, a California corporation, | Chapter 11 Cases |
| Debtor and Debtor in Possession. | |
| In re: | **OBJECTION OF BIG TIME PRODUCTS, LLC TO DEBTORS' MOTION FOR ORDER APPROVING BIDDING PROCEDURES** |
| IRONCLAD PERFORMANCE WEAR | |
| CORPORATION, a Nevada corporation, | |
| Debtor and Debtor in Possession. | DATE: September 25, 2017 |
| | TIME: 2:00 p.m. |
| | PLACE: Courtroom "303" |
| | 21041 Burbank Blvd. |
| | Woodland Hills, CA |

Big Time Products, LLC ("BTP"), a potential competing bidder for the Debtors' assets, hereby files this objection (this "Objection") to *Debtors' Motion for an Order: (1) Approving Form of Asset Purchase Agreement for Stalking Horse Bidder and for Prospective Overbidders to Use, (2) Approving Auction Sale Format, Bidding Procedures, and Stalking Horse Bid Protections; (3) Approving Form of Notice to be Provided to Interested Parties; and (4) Scheduling a Court Hearing to Consider Approval of the Sale to the Highest Bidder* (Dkt. No. 10) (the "Motion").[1]  In support of this Objection, BTP respectfully states as follows:

# I.

# PRELIMINARY STATEMENT

BTP is a potential competing bidder for the Debtors' assets, and BTP has performed substantial due diligence regarding the Debtors' business.  BTP does not object to the entry of an order establishing procedures for the sale, but those procedures should be fair, should encourage bidding (not chill it), should create a "level playing field" for competing bidders, and should be designed to maximize the value of the Debtors' assets.  Certain aspect of the Debtors' proposed bidding procedures are contrary to those purposes.

In this case, Radians Wareham Holding, Inc. (the "Loan To Own Bidder") is seeking to execute an aggressive loan-to-own strategy and has used its leverage to force the Debtors to agree to bidding procedures that will chill bidding.  The Loan To Own Bidder acquired the Debtors' secured debt (which was already in default) prior to the commencement of the bankruptcy cases and commenced sweeping the Debtors' cash.  This caused a liquidity crisis that apparently permitted the Loan To Own Bidder to extract significant concessions from the Debtors that will chill any potential bidding.  First, the proposed bidding procedures (the "Bidding Procedures") require that prospective overbidders submit a cash deposit of $2 million, which is twice as high as the $1 million deposit paid by the Loan To Own Bidder.  Second, the Bidding Procedures' treatment of the Breakup-Fee is confusing and inconsistent.  Third, the Bidding Procedures provide that the bids submitted by prospective overbidders be either $15,750,000 or $20,750,000,

---

[1] Capitalized terms used but not defined in this Objection shall have the meanings ascribed to them in the Motion.

"depending on the occurrence of an event, which is sensitive and is the subject of a motion that the Debtors are filing under seal" (Dkt. No. 6, ¶ 27); the Bidding Procedures provide no indication as to when this contingency will be resolved. Accordingly, competing bidders have no way of knowing the actual purchase price that they must submit. Finally, the Bidding Procedures provide for a Breakup-Fee in the amount of $500,000, but the Breakup-Fee is unnecessary in these cases because the Loan To Own Bidder is executing an aggressive loan-to-own strategy and does not need any "incentive" to serve as the stalking horse.

## II.

## BACKGROUND

### A. The Bankruptcy and Bidding Procedures

On September 7, 2017, the Debtors each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 11, 2017, the Debtors filed the Motion seeking approval of the Bidding Procedures.

The Bidding Procedures are summarized on pages 11–14 of the Motion and include the following:

- "The initial bid over that [sic] submitted by [the Loan To Own Bidder] in the APA shall be in the amount of at least $20,750,000.00 if [the Loan To Own Bidder's] Aggregate Purchase Price is Twenty Million Dollars ($20,000,000) and shall be in the amount of at least $15,750,000 if [the Loan To Own Bidder's] Aggregate Purchase Price is Fifteen Million Dollars ($15,000,000)." (*Motion* 11, ¶ 1.)

- "In order to be eligible to participate in the Auction, prospective overbidders will be required at least three business days prior to the Auction . . . to: . . . submit a cash deposit of $2 million . . . ." (*Motion* 12, ¶ 4.)

- "The Debtors shall have the right to schedule the Auction so that the payment of the Breakup-Fee to [the Loan To Own Bidder] will not be considered in determining the highest price bid for the Assets. However, [the Loan To Own Bidder] shall be authorized to match any qualified overbid and be declared the successful purchaser of the Purchased Assets giving consideration in the amount of the required Breakup-Fee and Prepayment Fee as a component of its matching bid . . . ." (*Motion* 13, ¶ 9.)

### B. The Loan To Own Bidder's Prepetition Conduct

The Loan To Own Bidder was not the Debtors' original prepetition secured lender. On July 25, 2017, the Loan To Own Bidder acquired the Debtors' prepetition secured debt from Capital One, N.A. (*Omnibus Decl. of L. Geoff Greulich in Support of Debtors' Emergency "First Day" Motions* (Dkt. No. 6) ("Greulich Declaration"), ¶ 4.) The Debtors and the Loan To Own Bidder then entered into a series of forbearance agreements that ultimately expired on August 24, 2017. (*Id.* at ¶ 17.) Although the Debtors were in the middle of a marketing process and were in discussions with several prospective lenders and prospective buyers, the Loan To Own Bidder began exercising remedies upon the expiration of the forbearance period and started "sweeping" the Debtors' cash. (*Id.*) Due to this liquidity crisis that was orchestrated by the Loan To Own Bidder, the Debtors had no choice but to cease discussions with other potential buyers and negotiate a purchase agreement and DIP credit facility with the Loan To Own Bidder. (*Id.* at ¶ 18.)

## III.

## ARGUMENT

Having created an artificial liquidity crisis for the Debtors, the Loan To Own Bidder forced the Debtors to agree to Bidding Procedures that are designed to chill bidding. The Motion should be denied or the Bidding Procedures should be revised to ensure that the prospective overbidders are bidding on a fair and level playing field. *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."). BTP objects to four aspects of the Bidding Procedures.

First, as noted above, the Loan To Own Bidder was only required to post a good faith deposit in the amount of $1,000,000. (*See* Section 2.2 of the Stalking Horse Asset Purchase Agreement, Ex. A to Greulich Declaration.) However, the Bidding Procedures require that prospective overbidders submit a cash deposit that is twice that amount (i.e., $2,000,000). The Debtors do not provide any reason why the deposit for prospective overbidders must be larger

than the deposit posted by Loan To Own Bidder, and it is standard, market practice for the deposit requirements to be identical.

Second, the treatment of the Breakup-Fee in the Bidding Procedures is confusing and ambiguous. The Bidding Procedures provide that the Debtors "shall have the right to schedule the Auction so that the payment of the Breakup-Fee to [the Loan To Own Bidder] will not be considered in determining the highest price bid for the Assets." (*Motion* 12, ¶ 4.) Far from setting clear rules that all prospective bidders can understand, this purports to give the Debtors the right (at their discretion) to exclude the Breakup-Fee from consideration. However, this is inconsistent with the provision immediately following that statement, which provides: "However, Radians shall be authorized to match any qualified overbid and be declared the successful purchaser of the Purchased Assets giving consideration in the amount of the required Breakup-Fee and Prepayment Fee as a component of its matching bid . . . ." (emphasis added) (*Id.*) It is highly unusual (if not unprecedented) for a stalking horse purchaser to be permitted to "match" potential overbidders. Why would any prospective overbidder submit a competing bid if the stalking horse purchaser always has the ability to match its bid and be "declared the successful purchaser." In order to be the prevailing bidder at the Auction, the Loan To Own Bidder should be required to submit a valid overbid that is higher than the otherwise next highest bid.

Third, there is no clarity in the Bidding Procedures regarding the purchase price that must be submitted by a prospective overbidder. The proposed Bidding Procedures provide that the overbid purchase price must be either $20,750,000 or $15,750,000 depending on the ultimate stalking horse purchase price. But the stalking horse purchase price is not known at this time and the Bidding Procedures do not state when the purchase price will be known. Competing bidders should not be required to submit overbids until after this uncertainty/contingency has been resolved. This uncertainty chills bidding and discourages other bidders from participating in the sale process.

Fourth, the Breakup-Fee sought in the Motion is unnecessary. The Loan To Own Bidder currently holds the Debtors' prepetition secured debt and is the DIP lender. In light of the Loan To Own Bidder's aggressive prepetition conduct, it is clear that the Loan To Own Bidder is

executing a loan-to-own strategy and does not need the Breakup-Fee to "induce" it to serve as the stalking horse.[2]

## IV.

## CONCLUSION

The foregoing aspects of the Bidding Procedures benefit the Loan To Own Bidder at the expense of the Debtors' estates. They do not create a level playing field and will chill bidding and discourage other prospective overbidders from participating in the sale process. Accordingly, BTP respectfully requests that this Court enter an order denying the Motion and granting such other and further relief as the Court deems just, reasonable and proper.

Dated: September 22, 2017        KING & SPALDING LLP

By:   */s/ Aaron Craig*
    Aaron Craig
    Attorneys for BIG TIME PRODUCTS, LLC

KING & SPALDING LLP
633 West Fifth Street, Suite 1700
Los Angeles, CA  90071
Telephone:  213-443-4355
Facsimile:  213-443-4310
Email:  acraig@kslaw.com

 -and-

Paul K. Ferdinands
Email:  pferdinands@kslaw.com
Jeffrey R. Dutson
Email:  jdutson@kslaw.com
1180 Peachtree Street
Atlanta, GA  30309
Telephone:  404-572-4600
Facsimile:  404-572-5100

---

[2] In support of the Breakup Fee, the Debtors cite several cases, including *In re Dan River, Inc.*, No. 04-10990 (Bankr. N.D. Ga.) and *In re Lake Burton Development, LLC*, No. 09-22830 (Bankr. N.D. Ga.). Counsel to BTP participated in both of those cases (Dan River – debtors' counsel, Lake Burton – Court-approved stalking horse purchaser). Although a breakup fee was authorized in each case, the bidding procedures in those cases did not include the bid-chilling provisions that the Debtors seek here and the stalking horse was not executing a loan-to-own strategy.

**PROOF OF SERVICE**
*In re: Ironclad Performance Wear Corporation, et al.*
United States Bankruptcy Court
Central District of California
San Fernando Valley Division

I, the undersigned, declare: I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles; my business address is 633 West Fifth Street, Suite 1700, Los Angeles, CA 90071.

On the date specified below, I served a copy of the foregoing document described as:

OBJECTION OF BIG TIME PRODUCTS, LLC TO DEBTORS' MOTION FOR ORDER APPROVING BIDDING PROCEDURES

on the interested parties in this action

[ X ]   by causing to be placed [ ] the original [ X ] a true copy thereof enclosed in a sealed envelope addressed as follows:

**SEE ATTACHED SERVICE LIST**

[X ]   BY MAIL: I am readily familiar with the business practice for the collection and processing of correspondence for mailing with the United States Postal Service and the fact that the correspondence would be deposited with the United States Postal Service that same day in the ordinary course of business; on this date, the above-referenced correspondence was placed for deposit at Los Angeles, California, and placed for collection and mailing following ordinary business practices.

[X ]   BY ELECTRONIC MAIL: I caused the document(s) to be sent to the person(s) at their e-mail address(es).

[ ]   BY FACSIMILE: I caused the attached document(s) to be transmitted to the interested party(ies) in this action by faxing a true copy from facsimile telephone number (213) 443-4310. The document(s) was/were transmitted by facsimile transmission and the transmission was reported as complete and without error. The transmission report was properly issued by the transmitting facsimile machine.

[ ]   BY OVERNIGHT DELIVERY: I enclosed the documents in a sealed envelope or package provided by United Parcel Service and addressed to the person(s) listed below by placing the envelope or package(s) for collection and transmittal by United Parcel Service pursuant to my firm's ordinary business practices, which are that on the same day a United Parcel Service envelope or package is placed for collection, it is deposited in the ordinary course of business with United Parcel Service for overnight delivery, with all charges fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on this 22nd day of September, 2017 at Los Angeles, California.

/s/ *Aaron Craig*
Aaron Craig

**SERVICE LIST**

Served Electronically and by U.S Mail:

| | |
|---|---|
| Ron Bender<br>rb@lnbyb.com<br>Monica Y Kim<br>myk@lnbrb.com<br>Krikor J Meshefejian<br>kjm@lnbrb.com<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P<br>10250 Constellation Boulevard<br>Suite 1700<br>Los Angeles, CA 90067<br>Telephone: 310-229-1234<br>Fax : 310-229-1244<br><br>Attorneys for Debtors IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation and IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation | Russell Clementson<br>russell.clementson@usdoj.gov<br>915 Wilshire Boulevard<br>Suite 1850<br>Los Angeles, CA 90017<br>Telephone: 213-894-4505<br>Fax : 213-894-0276<br><br>S. Margaux Ross<br>margaux.ross@usdoj.gov<br>915 Wilshire Boulevard<br>Suite 1850<br>Los Angeles, CA 90017<br>Telephone: 213-894-4494<br>Fax : 213-894-0276<br><br>Attorneys for United States Trustee |

Sharon Z. Weiss
sharon.weiss@bryancave.com
BRYAN CAVE LLP
120 Broadway, Suite 300
Santa Monica, CA 90401-2386
Telephone: (310) 576-2100
Fax: (310) 576-2200 Attorney for RADIANS WAREHAM HOLDINGS, INC.

Served by U.S. Mail only:

The Honorable Martin R. Barash
Judge, United States Bankruptcy Court
21041 Burbank Boulevard
Woodland Hills, CA  91367