SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Proposed Attorneys for the
Official Committee of Equity Holders

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

In re:

IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation,

Debtor and Debtor in Possession.

In re:

IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation,

Debtor and Debtor in Possession.

☒ Affects both Debtors

☐ Affects IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation corporation only

☐ IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation

Lead Case No.: 1:17-bk-12408-MB (Proposed to be) Jointly administered with: 1:17-bk-12409-MB; Chapter 11 Cases

**OFFICIAL COMMITTEE OF EQUITY HOLDERS LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTORS' MOTION FOR AN ORDER: (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT FOR STALKING HORSE BIDDER AND FOR PROSPECTIVE OVERBIDDERS TO USE; (2) APPROVING AUCTION SALE FORMAT, BIDDING PROCEDURES, AND STALKING HORSE BID PROTECTIONS; (3) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES; AND (4) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST BIDDER**

Hearing:
Date: September 25, 2015
Time: 2:00 p.m.
Place: Courtroom 303
21041 Burbank Blvd.
Woodland Hills, CA 90012

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

The Official Committee of Equity Holders (the "Equity Committee") of Ironclad Performance Wear Corporation, a Nevada Corporation ("Ironclad Nevada"), by and through its undersigned counsel Dentons US LLP, respectfully submits its limited objection and reservation of rights (the "Objection and Reservation of Rights") with respect to the *Motion For An Order: (1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective Overbidders To Use; (2) Approving Auction Sale Format, Bidding Procedures, And Stalking Horse Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested Parties; And (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder* (the "Motion") filed by the above-referenced debtors (collectively, the "Debtors"). [Docket No. 1]. In support of the Objection and Reservation of Rights, the Equity Committee respectfully states as follows:

**I.**

**INTRODUCTION**

The Equity Committee supports the Debtors' sale efforts and the proposed timeline for an auction (the "Auction"), subject to evaluating the marketing efforts to date and being in a position to agree with the investment banker's conclusion that the sale has been properly marketed. Thus, the Equity Committee reserves the right to object to the timing of the Auction until the Equity Committee has had an opportunity to meet with the Debtor's prepetition and proposed postpetition investment banker and financial advisor Craig-Hallum Capital Group LLC ("Craig-Hallum Capital Group").

To ensure a robust Auction and that the procedures do not "chill" bidding, the Equity Committee objects to certain proposed bidding procedures (the "Bidding Procedures") in the Motion and requests that these procedures either be eliminated or modified, as set forth below. Since the Bidding Procedures are incorporated into that certain Asset Purchase Agreement (the "APA") that the Debtors also request be approved as part of the Motion, the APA should not be approved until these issues are resolved. The Equity Committee has had preliminary discussions with counsel for the Debtors and Radians Wareham Holdings, Inc. ("Radians") regarding a consensual agreement regarding the aforementioned issues, but a short-continuance may be

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

necessary to negotiate a procedure that is fair, flexible and maximizes value to the estate, creditors and equity holders.

Given that the Equity Committee was formed on Wednesday, September 20, 2017, and that counsel for the Equity Committee was retained on Friday, September 22, 2017, the Equity Committee has not had sufficient time to adequately evaluate all of the relief requested in the Motion, and, thus, hereby reserves all rights with respect to the Motion.

## II.

## DISCUSSION

### *A. The Equity Committee Must Be Able To Evaluate the Marketing Process To Date.*

While the Equity Committee does not want to delay the timing of the proposed Auction, the Equity Committee does require an opportunity to meet with Craig-Hallum Capital Group to test the marketing efforts to date and review evidence that the prepetition and postpetition sale process was well-executed and robust. The Declaration of Steve Rickman (the "Rickman Declaration"),[1] the Managing Director of Investment Banking Mergers and Acquisitions at Craig-Hallum Capital Group, filed in support of the Motion, does not contain sufficient information to be able to evaluate the adequacy of the marketing efforts (*e.g.*, was there a data room, how many strategic and/or financial buyers were contacted?), but instead focuses on his view of Radian's "matching" rights contemplated by the Bidding Procedures. Thus, the Equity Committee cannot conclude that the Bidding Procedures and the timing of the Auction is reasonable until it ascertains that the marketing process was adequate.

### *B. The Bidding Procedures Must Be Fair And Reasonable And Allow And Encourage Qualified Parties To Submit Overbids, Thus Maximizing Value To The Estates and Equity Holders.*

The Equity Committee respectfully requests that the Bidding Procedures identified below be modified to facilitate an open and fair public sale that maximizes value for the estate. *See, e.g., In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding

[1] *Declaration Of Steve Rickman In Support Debtors' Motion For An Order: (1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective Overbidders To Use; (2) Approving Auction Sale Format, Bidding Procedures, And Stalking Horse Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested Parties; And (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder*, at 5-9. [Docket No. 57].

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *see also In re RathGibson, Inc.*, 2010 Bankr. LEXIS 5161, *5 (Bankr. D. Del. Mar. 26, 2010) (approving bid procedures in part because they "are fair, reasonable and appropriate and are designed to maximize the value of the Debtors' estates" and ordering that the auction be "conducted openly"); *In re President Casinos, Inc.*, 314 B.R. 784, 786 (Bankr. E.D. Mo. 2004) ("[B]id procedures should provide a vehicle to enhance the bid process and should not be a mechanism to chill prospective bidders' interests.").

**1. <u>Good-Faith Deposit.</u>**

The Bidding Procedures and APA require that Radians deposit $1,000,000, but proposed overbidders are required to deposit $2,000,000. Motion, at 3 ¶ 2; 12 ¶ 4. Radians, however, should be required to deposit $2,000,000, the same as any other bidder, or the other bidders should only be required to deposit $1,000,000.

**2. <u>Purchase Price.</u>**

The proposed purchase price is either $20 or $15 million (the "Purchase Price"), "depending upon the occurrence of an event which is sensitive and is the subject of a motion the Debtors are filing under seal depending on the terms of the side letter" (the "Side Letter"). Motion, at 3.

There is no specificity in the Motion as to when the Purchase Price will be fixed, but this point should be clarified for interested parties given the large impact on value. Is it not even clear whether it is before or after the auction. Moreover, the reasonableness of the proposed sale schedule is contingent on knowing when the $5 million issue will be resolved. Finally, it is not clear whether any "financially qualified party" may view the Side Letter or whether only a "financially qualified party" that posts $2,000,000 may review the Side Letter. *See Debtors' Emergency Motion For Authority To File Letter Agreement Under Seal*, at 4. Docket No. 11. If it is the latter, certainly this will dissuade otherwise interested competing bidders.

Additionally, bids should be permitted that do not include this contingency with respect to the purchase price. If the $5 million difference in the Purchase Price is a waivable condition precedent, then bidders should be permitted fixed bids waiving that condition precedent (*e.g.*,

$18.5 million and no conditions could be considered better that $20 million pending no waiver of the $5 million condition precedent).

**3. <u>Break-Up Fee & Bidding Increments.</u>**

A break-up fee "'is an incentive payment to an unsuccessful bidder who placed the estate property in a sales configuration mode ... to attract other bidders to the auction.'" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992), *appeal dism'd*, 3 F.3d 49 (2d Cir. 1993) (citation omitted). A break-up fee must take into consideration what is in the best interests of the estate and must be carefully scrutinized to insure that the debtor's estate is not unduly burdened and that the relative rights of the parties in interest are protected. *In re America West Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994). Moreover, a break-up fee is not "necessary to preserve the value of the estate" when the bidder would have bid even without the break-up fee. *See*, *e.g.*, *In re Reliant Energy Channelview LP*, 594 F.3d 200, 210 (3d Cir. 2010) (*citing* Bruce A. Markell, *The Case Against Breakup Fees in Bankruptcy*, 66 Am. Bankr. L.J. 349, 359 (1992)).

While the Equity Committee is cognizant of the cases cited by the Debtors that indicate the proposed Break-Up Fee falls within the percentage parameters that have been approved by many other courts, Motion, at 18, here the issue is that Radians may have bid without the Break-Up Fee given that it is a competitor of the Debtors that has employed what appears to be a "loan to own strategy."

Additionally, the Break-Up Fee combined with the $250,000 bidding increment may chill bidding and deplete assets. The large increment may have the potential to reduce bidding and the eventual price. Therefore, the Equity Committee recommends that the bidding increment be reduced to $100,000 after the initial overbid.

Additionally, as raised in the objection filed by Big Time Products LLC (the "Big Time Objection"), the Motion is ambiguous as to how the Break-Up Fee will be considered. *See* Big Tie Objection. Docket No. 61. One statement provides that the Break-Up Fee will not be considered in determining the highest price bid for the assets, but the next statement provides that

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Radians will be able to "match" any qualified overbid giving consideration to the Break-up Fee and Pre-Payment Fee. Motion, at 13 ¶ 9. This point should be clarified.

**4. "Matching Rights."**

The Motion provides that "Radians shall be authorized to match any qualified overbid and be declared the successful purchaser of the Purchased Assets giving consideration in the amount of the required Break-up Fee and Prepayment Fee as a component of its matching bid, which Break-up Fee and Prepayment Fee will not be owing by the Debtors if Radians is the winning bidder." Motion, at 13 ¶ 9. This description is unclear.

Simply put, the "matching right" should be eliminated. A break-up fee is primarily designed to compensate the stalking-horse bidder for its costs in working with the debtor to provide an initial bid and contract that may be used as the model for other bidders, and to provide an incentive for someone to set an opening bid price that the debtor finds acceptable. The reason the initial over-bid has to both cover the break-up fee and include an initial overbid is to assure the estate that the next bid will produce a greater recovery for the estate. Here, if the first overbid is $750,000, it would assure the estate of an extra $250,000. The bidding should take off from there without further consideration of the break-up fee and without the right of the stalking horse bidder to match.

A great deal of confusion has already been generated by Radians "matching right," which inevitably will chill bidding and discourage competing bidders from participating in the process, as it already has raised in the Big Time Objection. *See* Docket No. 61. Moreover, the Rickman Declaration further confuses matters with respect to the right to "match" because it incorrectly describes the bidding process and the consequence of chilling bidding. An amended declaration should be filed that clarifies that, after the first topping bid of $750,000 greater than stalking horse bid, all further bids are at least $250,000 greater.

**5. Credit Bid.**

Section 363(k) of the Bankruptcy Code provides that in a sale not in the ordinary course of business, the holder of a lien securing an allowed claim may bid at the sale and, if it is successful, may offset its claim against the purchase price of the property. 11 U.S.C. § 363(k).

The 1984 legislation added a provision to subsection (k) permitting the holder of an allowed secured claim to bid at the sale unless the court for "cause" shown orders otherwise. *See, e.g., In re Fisker Automotive Holdings., Inc.*, 510 B.R. 55 (Bankr. D. Del. 2014) (capping a secured creditor's right to credit bid where "to do otherwise would freeze bidding."); *In re Free Lance-Star Publishing Co.*, 512 B.R. 798 (Bankr. E.D. Va. 2014) (capping a secured creditor's right to credit bid where the creditor lacked a lien on certain of the debtors' assets, the creditor had engaged in inequitable conduct, and "limiting the amount of the credit bid in this case will restore enthusiasm for the sale and foster a robust bidding process"); *see also* 3-363 *Collier on Bankruptcy*, ¶ 363.09, n.1 (16th ed. 2017) (the holder of a lien the validity of which has not been determined may not bid its lien) (*citing In re Daufuskie Island Props., LLC*, 441 B.R. 60 (Bankr. D.S.C. 2010; *National Bank of Commerce of El Dorado v. McMullan (In re McMullan)*, 196 B.R. 818, 835 (Bankr. W.D. Ark. 1996)).

Here, Radians appears to be a direct competitor of the Debtor. http://www.radians.com/radsite/. Prepetition, on July 25, 2017, Radians acquired the Debtors' prepetition secured debt from Capital One, N.A.. *See Omnibus Decl. of L. Geoff Greulich in Support of Debtors' Emergency "First Day" Motions* ("Greulich Declaration"), at 7-8. Docket No. 6. The evidence of record does not disclose the amount that Radians paid for the debt. *Id.* The Debtors and Radians then entered into a series of short forbearance agreements that ultimately expired on August 24, 2017. *Id.* While the Debtors were in negotiations with a number of prospective lenders and prospective buyers and/or merger partners, Radians began exercising remedies upon the expiration of the forbearance period and started "sweeping" the Debtors' cash. *Id.*

The Equity Committee believes that these circumstances require some investigation to examine whether Radians' credit bid rights need to be limited in any regard to ensure a fair process. Among other things, there should be evidence provided or discovery conducted regarding Radians' prepetition acquisition of the loan. Radians has informally explained that it paid par value and that it would be willing to state the foregoing on the record. The foregoing is helpful, but the Equity Committee will also need additional information regarding the amount of

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the Secured Claim and the Pre-Payment Fee prior to the Auction and, if necessary, other information.

**6. Other Proposed Modifications To Increase Flexibility.**

In order to maximize the value received for the Debtors' assets, bidders should not be limited to payment in all cash. It is entirely possible that another bidder may wish to pay the secured claims in cash and some portion in equity. That should not be foreclosed at that this time, but evaluated upon receipt of such a bid.

**7. Payment From Sale Proceeds.**

The current procedures provide that Radians will be paid the "full amount of the DIP Facility." Motion, at 13 ¶ 6. This should be modified to be limited to the outstanding (drawn) amount of the DIP, and subject to a reservation of rights of the official committees to review the circumstances surrounding the Radians loans.

## III.

## CONCLUSION

WHEREFORE, the Equity Committee requests the Court (i) sustain its objections, (ii) require the Debtors to modify the Bidding Procedures as set forth herein, and (ii) to grant any other relief deemed appropriate by the Court.

Dated: September 25, 2017

DENTONS US LLP
JOHN A. MOE, II
TANIA M. MOYRON

By: */s/ Tania M. Moyron*
TANIA M. MOYRON

ATTORNEYS FOR OFFICIAL COMMITTEE OF EQUITY HOLDERS

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017:

A true and correct copy of the foregoing document entitled (*specify*): **OFFICIAL COMMITTEE OF EQUITY HOLDERS LIMITED OBJECTION AND RESERVATION OF RIGHTS TO DEBTORS' MOTION FOR AN ORDER: (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT FOR STALKING HORSE BIDDER AND FOR PROSPECTIVE ORVERBIDDERS TO USE; (2) APPROVING AUCTION SALE FORMAT, BIDDING PROCEDURES, AND STALKING HORSE BID PROTECTIONS; (3) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES; AND (4) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST BIDDER** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **September 25, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Ron Bender rb@lnbyb.com
- Cathrine M Castaldi ccastaldi@brownrudnick.com
- Russell Clementson russell.clementson@usdoj.gov
- Aaron S Craig acraig@kslaw.com, lperry@kslaw.com
- Monica Y Kim myk@lnbrb.com, myk@ecf.inforuptcy.com
- Krikor J Meshefejian kjm@lnbrb.com
- S Margaux Ross margaux.ross@usdoj.gov
- United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov
- Sharon Z. Weiss sharon.weiss@bryancave.com, raul.morales@bryancave.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On (*date*) **September 25, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **September 25, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**BY PERSONAL DELIVERY**
Hon. Martin R. Barash
US Bankruptcy Court
Central District of California
21041 Burbank Blvd., Suite 342/Ctrm. 303
Woodland Hills, CA 91367

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| September 25, 2017 | Christina O'Meara | /s/Christina O'Meara |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

**SERVED BY U.S. MAIL:**

| | | |
|---|---|---|
| United States Trustee<br>915 Wilshire Blvd., Suite 1850<br>Los Angeles, CA 90017 | U.S. Securities and Exchange Commission<br>Attn: Bankruptcy Counsel<br>444 South Flower Street, Suite 900<br>Los Angeles, CA 90071-9591 | |
| **Secured Creditor**<br>Radians Wareham Holding, Inc.<br>Attn: Mike Tutor, CEO<br>5305 Distriplex Farms<br>Memphis, TN 38141 | **Counsel to Radians Wareham Holdings**<br>E. Franklin Childress, Jr.<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>165 Madison Ave, Suite 2000<br>Memphis, Tennessee 38103 | **Counsel to Radians Wareham Holdings**<br>Sharon Z. Weiss<br>Bryan Cave<br>120 Broadway, Suite 300<br>Santa Monica, CA 90401 |
| **Top 20 Unsecured Creditors:** | | |
| Advantage Media Services, Inc.<br>Attn: Steven Helmle<br>29010 Commerce Center Drive<br>Valencia, CA 91355 | Danny Negara<br>Mercindo Global Manufaktur<br>Jl. Raya Semarang-Bawen Km.29<br>SEemerang, Central Java<br>50661, Indonesia | Eliza Yang<br>Nantong Changbang Gloves Co.<br>Flat/RM 1602 Chit Lee Comm<br>Bldg 30-36, Shau Kei Wan Road<br>Hong Kong, China |
| Gerard<br>BDO USA, LLP<br>P. O. BOX 677973<br>Dallas, TX 75267-7973 | Kwong<br>PT JJ GLOVES INDO<br>JL Ronggowarsito, Mlese, Ceper<br>Bonded Zone, Klaten<br>Central Java, Indonesia, 57463 | Mark Robba<br>PT SPORT GLOVE INDONESIA<br>Krandon Desa Pandowoharjo<br>Sleman<br>Yogyakarta, Indonesia, 55512 |
| Daniel Gomes<br>Capital One Bank<br>P. O. BOX 1917<br>Merrifield, VA 22116-1917 | Brent Waters<br>Resources Global Professionals<br>P.O. Box 740909<br>Los Angeles, CA 90074-0909 | Skadden Arps Slate Meagher & Flom LLP<br>P O Box 1764<br>White Plains, NY 10602 |
| Carol Pearson<br>FedEx<br>PO Box 7221<br>Pasadena, CA 91109-7321 | Risk Consulting Partners<br>24722 Network Place<br>Chicago, IL 60673-1247 | Robert Tejeda<br>Stubbs, Alderton & Markiles, LLP<br>15260 Ventura Blvd<br>20th Floor<br>Sherman Oaks, CA 91403 |
| Ms. Vicz Yue<br>Ka Hung Glove Inustrial Co. Ltd.<br>Fujian Quanzhou Jiacheng Leather<br>Chi Feng Road, Quanzhou City<br>Fujian, 362000, China | Shur-Sales & Marketing, Inc.<br>3830 S Windermere St.<br>Englewood, CO 80110 | John Calhoun<br>Synetra<br>1110 E. State Highway 114<br>Suite 200<br>Southlake, TX 76092 |
| Sky Lin<br>Marusan - Mimasu Tshusho Co. Ltd.<br>No 1 Queen' Road Central<br>Hong Kong<br>China | Carla Durand<br>University of Milwaukee<br>P O Box 500<br>University of Wisconsin - Milwaukee<br>Milwaukee, WI 53201 | Bradley J. S. Weiss<br>Winspeed Sports Shanghai Co., Ltd.<br>858 Mingzhu Road<br>Shanghai<br>China, 00020-1702 |

| | | |
|---|---|---|
| Janice Lee<br>Woneel Midas Leathers<br>Jl Gembor Raya Desa Pasirjaya<br>Tangerang<br>Banten, Indonesia, 15135 | Liliana Dominguez<br>Yellow and Roadway<br>P. O. Box 100129<br>Pasadena, CA 91355 | 1920 Hutton Court<br>Attn: Johnny Clark<br>Inwood National Bank<br>P O Box 857413<br>Richardson, TX 7508 |