RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 211414)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234; Facsimile: (310) 229-1244
Email: rb@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

**FILED & ENTERED**

**SEP 28 2017**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Reaves    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

In re:

IRONCLAD PERFORMANCE WEAR
CORPORATION, a California corporation,

      Debtor and Debtor in Possession.

_____

In re:

IRONCLAD PERFORMANCE WEAR
CORPORATION, a Nevada corporation,

      Debtor and Debtor in Possession.

_____

☒ Affects both Debtors

☐ Affects Ironclad Performance Wear
Corporation, a California corporation only

☐ Affects Ironclad Performance Wear
Corporation, a Nevada corporation only

Lead Case No.: 1:17-bk-12408-MB
Jointly administered with:
1:17-bk-12409-MB
Chapter 11 Cases

**ORDER: (1) APPROVING FORM OF ASSET PURCHASE AGREEMENT FOR STALKING HORSE BIDDER AND FOR PROSPECTIVE OVERBIDDERS TO USE, (2) APPROVING AUCTION SALE FORMAT, BIDDING PROCEDURES, AND STALKING HORSE BID PROTECTIONS; (3) APPROVING FORM OF NOTICE TO BE PROVIDED TO INTERESTED PARTIES; AND (4) SCHEDULING A COURT HEARING TO CONSIDER APPROVAL OF THE SALE TO THE HIGHEST BIDDER**

DATE:     September 25, 2017
TIME:     2:00 p.m.
PLACE:   Courtroom "303"
           21041 Burbank Blvd.
           Woodland Hills, CA

1

A continued hearing was held on September 25, 2017, at 2:00 p.m., for the Court to consider approval of the emergency motion (the "Bid Procedures Motion") filed by Ironclad Performance Wear Corporation, a California corporation, and Ironclad Performance Wear Corporation, a Nevada corporation (collectively, the "Debtors"), the debtors and debtors-in-possession in the above-captioned Chapter 11 bankruptcy cases, for the entry of an order in substantially the form attached as Exhibit "B" to the Omnibus Declaration of Geoffrey Greulich (the "Greulich Declaration") filed by the Debtors in support of the Bid Procedures Motion as Docket Number 6.  Appearances were made at the hearing as set forth on the record of the Court.

Due and appropriate notice of the continued hearing on the Bid Procedures Motion was provided to all known creditors and equity holders.  In considering the Bid Procedures Motion, the Court considered (i) all of the pleadings filed by the Debtors, (ii) the oppositions filed by the Official Committee of Unsecured Creditors (the "OCUC") and the prospective overbidder Big Time Products, LLC, (iii) the limited objection and reservation of rights filed by the Official Committee of Equity Holders (the "OCEH"), (iv) the oral testimony of Steve Rickman, and (v) the statements, arguments and representations of the parties present at the hearing.  After considering all of the foregoing, and upon the oral findings of fact and conclusions of law rendered in open court pursuant to Federal Rule of Bankruptcy Procedure 7052, the Court hereby finds and concludes as follows:

A.    This Court has jurisdiction over the Debtors, the Debtors' bankruptcy cases, the Bid Procedures Motion, and the parties and property affected by the Bid Procedures Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the Bid Procedures Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    Entry of this Order is in the best interests of the Debtors' estates and is necessary

to enable the Debtors to avoid immediate and irreparable harm.  Good cause has been shown for the entry of this Order.

C.      The Debtors have an immediate need for the entry of this Order to help facilitate the Auction (defined below) and to maximize the prospects for an overbidding to take place at the Auction.

D.      The $500,000 break-up fee proposed to be paid to Radians Wareham Holding, Inc. ("Purchaser" or "Radians") in the event of a successful overbid (the "Breakup Fee") is reasonable and appropriate under the circumstances of these cases, is in the best interests of these bankruptcy estates, and, under the circumstances of these cases, is the best option currently available to the Debtors to enable the Debtors to (i) attract and retain the Radians' bid, (ii) establish a bid standard or minimum for other bidders to follow, and (iii) attract additional bidders.  Radians was not willing to serve as the stalking horse bidder without the payment of the $500,000 Breakup Fee.

E.      The overbid procedures proposed by the Debtors are reasonable and appropriate under the circumstances of these cases, establish a bid standard or minimum for other bidders to follow, and is reasonably likely to enable the Debtors to attract additional bidders.

F.      The Debtors and their estates are benefitted by having a stalking horse bidder at the price range offered by Radians, and there is no other party who has offered to serve as a stalking horse bidder in these cases on better or comparable terms than have been offered by Radians.

G.      There is no other party who has offered to provide the Debtors with their necessary post-petition financing on better or comparable terms than have been offered by Radians.

H.      There is no other buyer who is in a position at this time to sign a binding sale

agreement at Radians' proposed purchase price, agree to a lower break-up fee than Radians is requiring, and provide the Debtors the necessary post-bankruptcy financing to enable the Debtors to operate their business in the ordinary course pending the Auction.

I.    Proceeding with an auction sale with no stalking horse bidder creates uncertainty. Having a stalking horse bidder in place provides certainty and stability for the Debtors, their employees, their suppliers and their customers as well as supports a clear and organized sale structure and guidelines for potential overbidders to be able to compete against, which is likely to enhance and maximize the prospects for an overbid at the Auction and enhance the ultimate sale price paid for the Debtors' assets.

J.    Of the options available to the Debtors, the overbid structure agreed to by the Debtors and Radians as set forth in this Order is in the best interests of these estates.

Based upon the foregoing findings and conclusions, and upon the record made before this Court, and good and sufficient cause appearing therefor, **IT IS HEREBY ORDERED, DETERMINED AND DECREED AS FOLLOWS:**

1.    The Bid Procedures Motion (as modified herein with the consent of Radians) is granted and all objections that were filed to the Bid Procedures Motion that were not otherwise withdrawn at the hearing are hereby overruled in their entirety.

2.    The form of the Asset Purchase Agreement dated September 8, 2017 (the "APA")[1] between the Debtors and Radians, a true and correct copy of which is attached as Exhibit "A" to the Greulich Declaration, to be used by (a) Purchaser as the stalking horse bidder for the Purchased Assets, and (b) any prospective overbidders (each an "Overbidder" and collectively, the "Overbidders") who seek to participate in a hoped for auction sale ("Auction")

---

[1] All defined terms used herein which are not defined herein but which are defined in the APA shall be deemed to have the same definitions as used in the APA.

of the Purchased Assets is approved, recognizing that the Court is not approving the actual sale of the Purchased Assets by way of this Order.  Any such approval of the sale of the Purchased Assets would occur only pursuant to a separate order of the Court granting a sale motion filed by the Debtors.

3.      In the event that the Debtors receive one or more qualified overbids, an Auction shall take place before the Court on October 30, 2017, commencing at 10:00 a.m.  The Debtors, in consultation with the OCUC and the OCEH, shall have the right to conduct the Auction in an alternative location than the Court.  If there is a dispute between the Debtors and the OCUC and the OCEH regarding the location of the Auction, the Court will determine the location of the Auction.

4.      The hearing for the Court to consider approval of the Debtors' proposed sale of the Purchased Assets to Purchaser or to a successful Overbidder shall be held before the Court on October 30, 2017, commencing at 10:00 a.m. if there are no qualified overbids and, if there are any qualified overbids, shall be held immediately following the conclusion of the Auction if the Auction is held before the Court, and shall be held as soon as possible following the conclusion of any Auction if the Auction is not held before the Court.

5.      In accordance with Section 6.5 of the APA, the following provisions shall apply in respect to any Auction and to any prospective Overbidder becoming qualified to participate in the Auction:

      a.  The initial bid over that submitted by Purchaser in the APA shall be in the amount of at least $20,750,000.00 if Purchaser's Aggregate Purchase Price is Twenty Million Dollars ($20,000,000.00) and shall be in the amount of at least $15,750,000 if Purchaser's Aggregate Purchase Price is Fifteen Million Dollars ($15,000,000.00).

b.  Thereafter, bidding shall be in increments of at least $250,000.00 or figures which are wholly divisible by $250,000.00.

c.  Only financially qualified parties will be eligible to participate in the Auction – with financially qualified parties to mean parties who have demonstrated that they have the financial means to consummate their purchase of the Purchased Assets without financing unless the financing to be used by them is already committed (meaning that any overbid may not contain any financing contingency).  Any party who participates in the Auction will have completed their due diligence of the Debtors and will have no due diligence contingency. The Debtors, with significant input from their financial advisor, Craig-Hallum Capital Group LLC ("C-H"), will determine whether a prospective Overbidder is financially qualified.  Counsel for the Debtors will timely provide counsel for the OCUC and OCEH with all bids received by the Debtors, the Debtors' conclusions as to whether a prospective Overbidder is financially qualified, and all financial information the Debtors have received from prospective Overbidders.  Counsel for the OCUC and OCEH shall retain all such financial information regarding prospective Overbidders' financial information in confidence and will not share copies of or the contents of any such Overbidders' financial information with any other party, including their members unless appropriate confidentiality protections acceptable to the Debtors are put into place with the Court to resolve any disputes over this issue.  If the OCUC and/or the OCEH disagree with the Debtors' conclusions as to whether a prospective Overbidder is financially qualified, they are authorized to file an emergency motion with the Court setting forth their

objection, and the Court will determine whether the prospective Overbidder is financially qualified.

d.  In order to be eligible to participate in the Auction, prospective Overbidders will be required to do all of the following by 5:00 p.m. PST on October 25, 2017) (i) deliver a redlined version of the APA to counsel for the Debtors, counsel for Purchaser, counsel for the OCUC and counsel for the OCEH indicating any changes the prospective Overbidder is requesting to the APA, and (ii) submit a cash deposit of $1 million to counsel for the Debtors which such counsel shall maintain in a segregated trust account pending the outcome of the Auction.  The $1 million deposit of the winning bidder at the Auction (or Radians if there is no Auction) will be non-refundable and forfeited to the Debtors if the winning bidder fails to close its purchase of the Purchased Assets within 14 business days following the entry of the order of the Court approving the Debtors' sale of the Purchased Assets ("Sale Order") whether an appeal has been filed of such Sale Order provided there is no entered stay pending appeal - *i.e.*, no final order requirement.

e.  Purchaser will have the right, but not the obligation, to credit bid the outstanding balances of its Pre-Bankruptcy Secured Debt and the DIP Facility towards its purchase price and any overbid that Purchaser elects to submit. Purchaser shall have the right to participate in any Auction.

f.  If any party other than Purchaser is deemed by the Bankruptcy Court to be the winning bidder at the Auction, then concurrently with the closing of the Debtors' sale of the Purchased Assets to such winning bidder, Purchaser will be paid directly out of the sale proceeds (i) the full amount of the Pre-

Bankruptcy Secured Debt, plus (ii) the full amount then drawn against the DIP Facility, plus (iii) the Breakup Fee.

g.  If any party other than Purchaser is deemed by the Bankruptcy Court to be the winning bidder at the Auction, or if the Debtors elect to proceed with seeking confirmation of a plan of reorganization instead of proceeding with a sale of the Purchased Assets, Purchaser shall receive payment of the $500,000 Breakup Fee upon the consummation of such Alternative Transaction.

h.  The Breakup Fee shall be deemed to be an allowed expense of the kind specified in Section 503(b) of the Bankruptcy Code and shall be paid solely from the proceeds of an Alternative Transaction upon the consummation of such Alternative Transaction.

i.  In the event that there is one or more qualified Overbidders, an Auction will be held before the Court commencing on October 30, 2017, at 10:00 a.m.  The initial bid at the Auction must be an amount that is at least $750,000 more than Radian's stalking horse bid.  Each successive bid by any Overbidder other than Radians must be at least $250,000.00 (or any higher figure which is wholly divisible by $250,000.00) higher than the previous bid.  Subject to Radians' matching right (described immediately below), the winning bid at the Auction will be the highest bid submitted at the Auction.  Radians shall be authorized to match any qualified overbid by bidding the same amount as the overbid in which case Radians' matched bid will be determined to be a higher bid.  For example, if there is only one Overbidder at the Auction and (i) the Overbidder submits an initial overbid of $20,750,000, (ii) Radians submits a matching bid of $20,750,000, and (iii) the Overbidder stops bidding, Radians

will be declared the winning bidder at the Auction with a winning bid and purchase price of $20,750,000.  However, for further example, if there is only one Overbidder at the Auction and (i) the Overbidder submits an initial overbid of $20,750,000, (ii) Radians submits a matching bid of $20,750,000, (iii) the Overbidder submits a further overbid of $21,000,000, and (iv) Radians stops bidding (*i.e.*, meaning Radians does not submit a matching bid of $21,000,000), the Overbidder will be declared the winning bidder at the Auction with a winning bid of $21,000,000 (even though the prior $20,750,000 matching bid of Radians would have resulted in a higher net benefit to the Debtors' estates because the prior $20,750,000 matching bid of Radians would not have required the payment of the Breakup Fee and Prepayment Fee to Radians whereas the $21,000,000 winning bid by the Overbidder will require the payment of the Breakup Fee and Prepayment Fee to Radians).

j.   If Radians is deemed by the Bankruptcy Court to be the winning bidder at the Auction, Radians will not be entitled to the payment of any Breakup Fee or Prepayment Fee.  If Radians is deemed by the Bankruptcy Court to be the winning bidder at the Auction and Radians fails to close its purchase of the Purchased Assets within 14 business days following the entry of the Sale Order (regardless of whether an appeal has been filed of the Sale Order provided there is no entered stay pending appeal - i.e., no final order requirement), then Radians shall forfeit its $1 million Buyer Deposit to the Debtors.

k.  The Debtors shall have the right to accept the second highest bid made at the Auction as a backup bid in the event that the winning bidder at the Auction fails to close its purchase of the Purchased Assets within 14 business days following the entry of the Sale Order (regardless of whether an appeal has been filed of the Sale Order provided there is no entered stay pending appeal - i.e., no final order requirement).  However, even if the Debtors accept a backup bid, the winning bidder at the Auction will still forfeit its $1 million deposit to the Debtors if the winning bidder fails to close its purchase of the Purchased Assets within 14 business days following the entry of the Sale Order (regardless of whether an appeal has been filed of the Sale Order provided there is no entered stay pending appeal - i.e., no final order requirement).

l.  The Debtors' sale of the Purchased Assets to Radians or a successful Overbidder will be free and clear of all liens, claims and interests in accordance with section 363(f) of the Bankruptcy Code.

m.  The Debtors have the right to market the Purchased Assets for overbid pending the Auction and to hire an investment banker, sales agent or financial advisor to assist the Debtors in this process.  However, the collateral of Radians shall not be used to fund the engagement of an investment banker, sales agent or financial advisor with such party only being entitled to compensation from the proceeds of the Closing.

n.  If there are more than one qualified Overbidders, the Debtors (in consultation with the OCUC and/or the OCEH) shall have the right to determine the manner in which the Auction will proceed.  If the Debtors and the OCUC

10

and/or the OCEH are in disagreement over the manner in which the Auction
will proceed in the event there are more than one qualified Overbidders, the
Court will make such determination.

o.  The Court will resolve any disputes relating to the Auction, and, by
participating in the Auction, Radians and all Overbidders are subjecting
themselves to the jurisdiction of the Court for all matters and disputes relating
to the Auction.

6.      In accordance with Section 11.2 of the APA, in the event that the APA is
terminated by the Debtors and the Debtors pursue an Alternative Transaction (defined as a
competing bid that is higher or better than the stalking horse bid after consideration by the
Debtors [in consultation with the OCUC and the OCEH] and the Court), the Debtors shall
immediately become obligated to pay Radians the Break-Up Fee in accordance with the terms of
the APA and this Order, recognizing that the Debtors shall pay the Break-Up Fee to Radians in
connection with the closing or consummation of such Alternative Transaction.   In the event that
the APA is terminated pursuant to any other provision of Section 11.1, Radians shall not be
entitled to the Break-Up Fee.

IT IS SO ORDERED.

### # #

Date: September 28, 2017

Martin R Barash
United States Bankruptcy Judge

1

<u>The foregoing Order is approved:</u>

2

3  Radians Wareham Holding, Inc.

4

5  By: _Sharon Z. Weiss_
   Sharon Z. Weiss
6  Bryan Cave, LLP
   Counsel to Radians Wareham Holding, Inc.
7

8
   Official Committee of Unsecured Creditors
9

10 By: _Cathrine M. Castaldi_
11 Cathrine M. Castaldi
   Brown Rudnick LLP
12 Proposed counsel to the Official Committee of Unsecured Creditors

13

14 Official Committee of Equity Holders

15

16 By:_____
   Samuel R. Maizel
17 Tania M. Moyron
   Dentons US LLP
18 Proposed counsel to the Official Committee of Equity Holders

19

20

21

22

23

24

25

26

27

28