RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  rb@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com

Proposed Counsel for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation,<br><br>      Debtor and Debtor in Possession.<br>──────────────────────────────<br>In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation,<br><br>      Debtor and Debtor in Possession.<br>──────────────────────────────<br>☒  Affects both Debtors<br><br>☐ Affects Ironclad Performance Wear Corporation, a California corporation only<br><br>☐ Affects Ironclad Performance Wear Corporation, a Nevada corporation only | Lead Case No.: 1:17-bk-12408-MB<br><br>Jointly administered with:<br>1:17-bk-12409-MB<br><br>(Ironclad Performance Wear Corporation, a Nevada corporation)<br><br>Chapter 11 Cases<br><br>**APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY CRAIG-HALLUM CAPITAL GROUP LLC AS FINANCIAL ADVISOR PURSUANT TO 11 U.S.C. § 327 WITH COMPENSATION PURSUANT TO 11 U.S.C. § 328; DECLARATION OF STEVE RICKMAN IN SUPPORT THEREOF**<br><br>[No Hearing Required Unless Requested Pursuant to Local Bankruptcy Rule 2014-1] |

Ironclad Performance Wear Corporation, a California corporation ("Ironclad California") and its parent corporation Ironclad Performance Wear Corporation, a Nevada corporation ("Ironclad Nevada", and with Ironclad California, collectively, the "Debtors") the debtors and debtors in possession in the above-captioned, jointly-administered, chapter 11 bankruptcy cases, hereby submit their application (the "Application") for Court approval of their employment of Craig-Hallum Capital Group LLC ("C-H") as their financial advisor, effective as of September 8, 2017 (the "Petition Date"), the date that the Debtors filed their voluntary bankruptcy petitions, upon the terms and conditions described below.  In support of this Application, the Debtors respectfully represent as follows:

A.    **Brief Description Of The Debtors And Their Businesses.**

1.    The Debtors each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date.  The Debtors continue to operate their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  On September __, 2017, the Court entered an order jointly administering the Debtors' bankruptcy cases.  No trustee has been appointed and no official committee of unsecured creditors has been formed.

2.    Other than owning all of the shares in Ironclad California, Ironclad Nevada has no business.  All operations of the Debtors effectively function through Ironclad California.

3.    The Debtors are a leading, technology-focused developer and manufacturer of high-performance task-specific gloves and apparel for the "industrial athlete" in a variety of end markets, including construction, manufacturing, oil and gas ("O&G"), automotive, the sporting goods, military, police, fire, and first-responder.  The Debtors' business is based out of Farmers Branch, Texas.  Ironclad Nevada is publicly-traded with its common stock quoted on the OTC Markets under the symbol "ICPW".  As of April 7, 2017, Ironclad Nevada had 85,646,354 shares of common stock, par value $0.001 per share, issued and outstanding.  As of August 30, 2017, the Debtors had approximately 41 full time employees, with 9 of these employees who work overseas.

4.    Ironclad was founded in 1998 by Ed Jaeger.  Mr. Jaeger was inspired to build gloves that offered protection and performance without sacrificing one for the other.  From the beginning, Ironclad built gloves using materials that offered excellent fit to make them an extension of the hand and to make jobs easier for the "industrial athlete".  By 2006, Ironclad offered 35 different task-specific glove types for people wearing gloves as part of their daily jobs.

5.    In 2008, the Debtors launched the KONG (King of Oil 'N' Gas) line to address the high number of hand injuries in the O&G field.  By 2010, the KONG line was comprised of 46 different gloves.  Additionally, Ironclad expanded its presence in the retail and non-professional markets with the launch of the EXO brand in June 2015.  EXO offers lower cost gloves for automotive, DIY, and outdoor sporting applications.  Ironclad offers 30 different EXO glove types.

6.    Ironclad's task-specific technical glove products are specially designed for individual user groups.  Ironclad currently offers over 160 distinct types of gloves for a variety of markets, including industrial, construction, DIY, carpentry, machining, package handling, plumbing, welding, roofing, O&G, mechanics, hunting, and gardening.  Products come in a multitude of colors and cater to the specific demands and requirements of the users based on ease of motion, grip, water and chemical resistance, visibility, and protection from abrasions, cuts, flames, impacts, temperature, and vibration.  Since inception, Ironclad has employed an internal research and development ("R&D") department responsible for identifying and creating new products and applications, and improving and enhancing existing products.  Ironclad is continually evaluating new base materials for gloves, and grip is another key area of focus for R&D.  Ironclad often partners with industry-leading organizations to develop new products.  Ironclad has 13 U.S. patents issued and 11 foreign patents, as well as five pending U.S. patent applications and several pending foreign patent applications.  Ironclad also uses trademarks to strengthen and protect its recognizable brand names.  Ironclad owns 52 registered U.S. trademarks, 39 registered international trademarks, and 13 and 43 trademarks pending in the U.S. and internationally, respectively.

7.    Ironclad currently sells through approximately 10,000 outlets for professional tradesmen as well as "Big Box", hardware, auto parts, and sporting goods retailers. The sales force is organized by 3 business segments: Industrial, Retail, and International. Glove products are currently manufactured by multiple suppliers operating in China, Bangladesh, Cambodia, Vietnam and Indonesia.

**B.    Events Leading To Bankruptcy And The Debtors' Chapter 11 Goals.**

8.    Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth. There have been many reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs. In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their Loan Documents (defined below) to their primary secured lender for the fiscal years ended December 31, 2015 and 2016, and for the fiscal quarters ended March 31, June 30, September 30, 2016 and March 31, 2017. As a result of this discovery, the Debtors' then chief executive officer and other officers were terminated, and L. Geoff Greulich assumed the position of the Debtors' new chief executive officer effective July 6, 2017. Prior to assuming this position, Mr. Greulich had no prior connections or relationship with the Debtors as an insider, equity holder or otherwise. As a Senior Advisor, Operations at Corridor Capital, LLC, where he leads operations through portfolio engagement as well as conducting due diligence, Mr. Greulich was highly qualified to serve as the Debtors' new chief executive officer. Persons or parties interested in obtaining specific historical financial history of the Debtors should review the public filings made by the Debtors with the Securities and Exchange Commission.

9.    The Debtors have filed their bankruptcy cases to consummate a sale of substantially all of their assets for the most money possible. Just prior to their bankruptcy filings,

the Debtors entered into an asset sale agreement with the Debtors' current secured creditor, Radians Wareham Holdings, Inc. ("Radians") or its affiliate/designee, for a purchase price of $20 million or $15 million, subject to an overbid process. Contemporaneously herewith, the Debtors have filed a motion seeking Court approval of their proposed overbid procedures that the Debtors negotiated with Radians prior to their bankruptcy filings. The Debtors' entire sale process is designed to maximize the Debtors' sale price for the benefit of the Debtors' creditors and shareholders. The Debtors believe that they have substantially less than $20 million of total debt. The Debtors therefore expect that their asset sale to Radians or to a successful overbidder will result in all of the Debtors' creditors being paid in full and a significant distribution being made to the Debtors' shareholders.

10. Briefly and as described below, Radians is the Debtors' primary secured creditor which is currently owed approximately $4 million. Radians has agreed to purchase the Debtors' assets for $20 million or $15 million as a stalking horse buyer. The Debtors have no secured debt other than their secured loans to Radians.

11. Pre-petition, the Debtors hired C-H as their financial advisor/investment banker to, among other things, market the Debtors' business for sale. In furtherance of the sale, and by this Application, the Debtors seek authority to employ C-H as their financial advisors to, among other things, continue to market the Debtors' businesses and to locate prospective overbidders for the sale of the Debtors' assets.

**C.    Employment and Compensation of C-H.**

12. To insure that the Debtors are able to consummate a sale of their assets for highest and best price, the Debtors intend to commence marketing immediately. The Debtors require the assistance of an experienced financial advisor to assist the Debtors in this process. The Debtors have decided that C-H is the ideal company to serve as the Debtor's financial advisor taking into account firm size, experience, skill level, and cost. In that regard, the Debtors seek to employ C-H as their financial advisor, at the expense of the Debtors' bankruptcy estates, and to have the Debtors' employment of C-H be deemed effective as of the Petition Date.

13.     C-H has been working with the Debtors in the three-month period leading up to the bankruptcy filings, and C-H has done extensive due diligence with the Debtor's management team and board of directors.  Thus, C-H is uniquely positioned to act as the Debtors' financial advisor immediately without any delay on account of learning about the Debtors' situation.

14.     The Debtors seek to employ C-H on the terms set forth in the engagement letter (the "<u>Engagement Letter</u>"), a true and correct copy of which is attached as **<u>Exhibit "1"</u>** to the annexed declaration of Steve Rickman (the "<u>Rickman Declaration</u>"), except to the extent specifically modified in this Application.

15.     The Debtors seek to employ C-H as their financial advisor to render, among others, the following types of professional services:

a.     identify acquirers, which in the opinion of C-H and the Debtors, are most likely to acquire the Debtors;

b.     assist the Debtors in formulating a strategy for soliciting interest from acquirers, whether approached by C-H or whether the Debtors are approached proactively, which may have an interest in acquiring the Debtors (the "<u>Potential Acquirers</u>"), and the development of procedures and timetable for marketing the Debtors to the Potential Acquirers;

c.     if requested, assist in the preparation of management's confidential memorandum describing the Debtors;

d.     introduce the Debtors to Potential Acquirers, and coordinate due diligence investigations of the Debtors by Potential Acquirers;

e.     along with the Debtors, evaluate proposals from interested parties regarding a "Sale or Restructuring" (as that term is defined in the Engagement Letter), formulate negotiation strategies, and assist in negotiations and closing of a Sale or Restructuring; and

f.     if the Debtors pursue a stand-alone restructuring, C-H will advise and assist the Debtors in developing and seeking approval of a restructuring plan (a "<u>Plan</u>"), which may be a plan under chapter 11 of the Bankruptcy Code; in structuring any new securities to be issued under the Plan; in providing valuation analyses with respect to the Debtors, their assets or

businesses; in seeking and evaluating the terms of any exit financing; and will participate in hearings before the bankruptcy court with respect to the matters upon which C-H has provided advice, including, as relevant, providing testimony in connection therewith in coordination with the Debtors' counsel.

16.     C-H is comprised of over 100 professionals headquartered in Minneapolis with offices in Boston, Greenwich, and Philadelphia.  C-H specializes in middle-market mergers, acquisitions, financial lending restructurings, and capitalizations in myriad industries.  C-H has vast experience in serving as a financial advisor, including in the arena of manufacturing for retail sales.

17.     The Debtors and C-H anticipate that Steve Rickman will be the lead professional providing services on this engagement and will be assisted by Rick Hartfiel, Scott Ames, and Connor Oak.  Mr. Rickman is the Managing Director of Investment Banking Mergers and Acquisitions at C-H and has over 20 years of experience advising companies on strategic mergers and acquisitions, private and public financing, and strategic advisory.  Mr. Rickman has completed over 70 transactions with an aggregate deal value of more than $4 billion.  The firm resume for C-H and the professional biographies of Messrs. Rickman and Hartfiel are collectively attached as **<u>Exhibit "2"</u>** to the annexed Rickman Declaration.

18.     C-H has no retainer and has not been paid any money by the Debtors at any time. C-H will be compensated with a "Sale or Restructuring Fee" in the amount of $275,000 plus 2.5% of the "Aggregate Transaction Value" (as that term is defined in the Engagement Letter) in excess of $20 million up to $22.5 million, plus 4.5% of the Aggregate Transaction Value in excess of $22.5 million.  The definition of the "Aggregate Transaction Value" is set forth in section "E" of the Engagement Letter.

19.     The Debtors and C-H are requesting that the entire Sale or Restructuring Fee be paid in cash to C-H at the closing of the Sale or Restructuring pursuant to 11 U.S.C. § 328 without the need for a fee application.  In the event that the Court requires a formal fee application, the Debtors and C-H shall comply with the Court's wishes.

20.    In addition to any fees payable to C-H, and regardless of whether a Sale or Restructuring is consummated, the Debtors hereby agree to promptly upon receipt of invoice, reimburse C-H for its out-of-pocket expenses incurred in connection with this engagement, including database communication and travel expenses and the fees and expenses of C-H's legal counsel.

21.    The Engagement Letter contains terms for exculpation, indemnification, and contribution by the Debtors to C-H, as set forth in Appendix 1 to the Engagement Letter.  The Debtors will exculpate and indemnify C-H for any action, claim, suit, investigation, or proceeding, actual or threatened by any person against C-H, except for those matters finally determined by a court or arbitral tribunal to have resulted primarily and directly from the willful misconduct or gross negligence of C-H.  The description of the exculpation, indemnification, and contribution terms of Appendix 1 set forth in this paragraph 20 is only a general summary; parties wishing to know the full terms of Appendix 1 are directed to read the Engagement Letter attached as Exhibit "1" to the Rickman Declaration.

22.    During the one-year period prior to the Petition Date, the Debtors did not pay anything to C-H in contemplation of or in connection with the Debtors' chapter 11 cases.

23.    C-H has not received any lien or other interest in property of the Debtors or of a third party to secure payment of C-H's fees or expenses, except for the consent of the secured lender, as set forth in paragraph 21 of the Application, above.

24.    Prior to the Petition Date, the Debtors and C-H entered into an engagement letter (the "Prepetition Engagement Letter") with respect to C-H's services for the Debtors.  Upon approval by the Court, the Debtors will retain C-H (effective as of the Petition Date) pursuant to the Engagement Letter, which will amend and supersede the Prepetition Engagement Letter, at which time C-H will not hold a prepetition claim against the Debtors.

25.    C-H is further requesting that the entire Sale or Restructuring Fee be paid to C-H in cash at the closing of the Sale or Restructuring.

26.    C-H requests Court authority not to have to maintain time records, recognizing

8

that C-H will be maintaining a log of its activities in terms of Potential Acquirers contacted and further interactions with them.

27.     C-H has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its partners and employees.

28.     C-H understands that its employment by the Debtors and ultimate compensation of the Sale and Restructuring Fee and reimbursement of expenses are all subject to Court approval.

### D.  **Disclosures Pursuant to Rule 2014 of the Fed. R. of Bankr. P.**

29.     To the best of the Debtors' knowledge, information, and belief, C-H is not a creditor, an equity security holder or an insider of the Debtors.  John Flood, who is C-H's chairman, owns 100,000 shares of Ironclad Nevada's common stock.  With more than 85 million shares issued and outstanding, Mr. Flood's shares represent approximately .1% of Ironclad Nevada's common stock.

30.     To the best of the Debtors' knowledge, information, and belief, C-H is not and was not an investment banker for any outstanding security of the Debtors and has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

31.     To the best of the Debtors' knowledge, information, and belief, neither C-H nor any member of C-H is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

32.     To the best of the Debtors' knowledge, information, and belief, C-H does not hold or represent any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker for any security of the Debtors, or for any other reason, and is otherwise a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

33.     The Debtors' knowledge, information, and belief regarding the matters set forth herein are based upon, and made in reliance on, the Rickman Declaration.   The Rickman Declaration discloses C-H's connections, if any, to the Parties-In-Interest (as defined in the Rickman Declaration).   Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose C-H's relationships with parties in interest in these chapter 11 cases, C-H is unable to state with absolute certainty that every client relationship or other connection has been disclosed in the Rickman Declaration. C-H, therefore, has informed the Debtors that C-H will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, C-H will promptly file a supplemental declaration with the Court.

34.     The Debtors believe that their employment of C-H upon the terms and conditions set forth above is in the best interest of the Debtors' estates.

**WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors' employment of C-H as their financial advisor effective as of the Petition Date upon the terms and conditions set forth above.

Dated: September __, 2017                IRON  PERFORMANCE  WEAR  CORP.,  a
                                         California  Corp.,  and  IRON  PERFORMANCE
                                         WEAR  CORP., a Nevada Corp.


                                         _____
                                         Geoff Greulich
                                         Chief Operating Officer


Submitted by:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By:___/s/ Ron Bender_____
        RON BENDER
        MONICA Y. KIM
        KRIKOR J. MESHEFIEJIAN

Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

## DECLARATION OF STEVE RICKMAN

I, Steve Rickman, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.  Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the Employment Application to which this Declaration is attached (the "Application").

2.      I am the Managing Director of Investment Banking Mergers and Acquisitions at Craig-Hallum Capital Group LLC ("C-H").  I have over 20 years of experience advising growth companies on strategic mergers and acquisitions, private and public financings, and strategic advisory.  I hold an M.S. from Stanford University, and I obtained my M.B.A. from the University of Minnesota, Carlson School of Management, with Distinction.

3.      The Debtors have requested C-H to serve as their financial advisor in connection with their chapter 11 bankruptcy cases on the terms set forth in the engagement letter (the "Engagement Letter"), a true and correct copy of which is attached as **Exhibit "1"** to my declaration, except to the extent specifically modified in the Application.

4.      C-H has been working with the Debtors in the three-month period leading up to the bankruptcy filings, and C-H has done extensive due diligence with the Debtor's management team and board of directors.  Thus, C-H is uniquely positioned to act as the Debtors' financial advisor immediately without any delay on account of learning about the Debtors' situation.

5.      The Debtors seek to employ C-H as their financial advisor to render, among others, the following types of professional services:

a.      identify acquirers, which in the opinion of C-H and the Debtors, are most likely to acquire the Debtors;

b.      assist the Debtors in formulating a strategy for soliciting interest from acquirers, whether approached by C-H or whether the Debtors are approached proactively, which may have an interest in acquiring the Debtors (the "Potential Acquirers"), and the development of procedures and timetable for marketing the Debtors to the Potential Acquirers;

c.      if requested, assist in the preparation of management's confidential memorandum describing the Debtors;

d.      introduce the Debtors to Potential Acquirers, and coordinate due diligence investigations of the Debtors by Potential Acquirers;

e.      along with the Debtors, evaluate proposals from interested parties regarding a Sale or Restructuring (as those terms are defined in the Engagement Letter), formulate negotiation strategies, and assist in negotiations and closing of a Sale or Restructuring; and

f.      if the Debtors pursue a stand-alone restructuring, C-H will advise and assist the Debtors in developing and seeking approval of a restructuring plan (a "Plan"), which may be a plan under chapter 11 of the Bankruptcy Code; in structuring any new securities to be issued under the Plan; in providing valuation analyses with respect to the Debtors, their assets or businesses; in seeking and evaluating the terms of any exit financing; and will participate in hearings before the bankruptcy court with respect to the matters upon which C-H has provided advice, including, as relevant, providing testimony in connection therewith in coordination with the Debtors' counsel.

6.      C-H is comprised of over 100 professionals headquartered in Minneapolis with offices in Boston, Greenwich, and Philadelphia.  C-H specializes in middle-market mergers, acquisitions, financial lending restructurings, and capitalizations in myriad industries.  C-H has vast experience in serving as a financial advisor, including in the arena of manufacturing for retail sales.

7.      The Debtors and C-H anticipate that I will be the lead professional providing services on this engagement and that I will be assisted by Rick Hartfiel, Scott Ames, and Connor Oak.  I have over 20 years of experience advising companies on strategic mergers and acquisitions, private and public financing, and strategic advisory.  I have completed over 70 transactions with an aggregate deal value of more than $4 billion.  The firm resume for C-H and the professional biographies for myself and Mr. Hartfiel are collectively attached as **Exhibit "2"** to my declaration.

8.      C-H has no retainer and has not been paid any money by the Debtors at any time. C-H will be compensated with a "Sale or Restructuring Fee" in the amount of $275,000 plus 2.5% of the "Aggregate Transaction Value" (as that term is defined in the Engagement Letter) in excess of $20 million up to $22.5 million, plus 4.5% of the Aggregate Transaction Value in excess of $22.5 million.  The definition of the "Aggregate Transaction Value" is set forth in section "E" of the Engagement Letter.

9.      The Debtors and C-H are requesting that the entire Sale or Restructuring Fee be paid in cash to C-H at the closing of the Sale or Restructuring pursuant to Section 328 of the Bankruptcy Code without the need for a fee application.  In the event that the Court requires a formal fee application, C-H shall comply with the Court's wishes.

10.      In addition to any fees payable to C-H, and regardless of whether a Sale or Restructuring is consummated, the Debtors hereby agree to promptly upon receipt of invoice, reimburse C-H for its out-of-pocket expenses incurred in connection with this engagement, including database communication and travel expenses and the fees and expenses of C-H's legal counsel.

11.      The Engagement Letter contains terms for exculpation, indemnification, and contribution by the Debtors to C-H, as set forth in Appendix 1 to the Engagement Letter.  The Debtors will exculpate and indemnify C-H for any action, claim, suit, investigation, or proceeding, actual or threatened by any person against C-H, except for those matters finally determined by a court or arbitral tribunal to have resulted primarily and directly from the willful misconduct or gross negligence of C-H.  The description of the exculpation, indemnification, and contribution terms of Appendix 1 set forth in this paragraph 10 is only a general summary; parties wishing to know the full terms of Appendix 1 are directed to read the Engagement Letter attached as Exhibit "1" to my declaration.

12.      During the one-year period prior to the Petition Date, the Debtors did not pay anything to C-H in contemplation of or in connection with the Debtors' chapter 11 cases.

13.    C-H has not received any lien or other interest in property of the Debtors or of a third party to secure payment of C-H's fees or expenses, except for the consent of the secured lender, as set forth in paragraph 11 of this declaration, above.

14.    Prior to the Petition Date, the Debtors and C-H entered into an engagement letter (the "Prepetition Engagement Letter") with respect to C-H's services for the Debtors.  Upon approval by the Court, the Debtors will retain C-H (effective as of the Petition Date) pursuant to the Engagement Letter, which will amend and supersede the Prepetition Engagement Letter, at which time C-H will not hold a prepetition claim against the Debtors.

15.    C-H is further requesting that the entire Sale or Restructuring Fee be paid to C-H in cash at the closing of the Sale or Restructuring.

16.    C-H requests Court authority not to have to maintain time records, recognizing that C-H will be maintaining a log of its activities in terms of Potential Acquirers contacted and further interactions with them.

17.    C-H has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its partners and employees.

18.    C-H understands that its employment by the Debtors and ultimate compensation of the Sale and Restructuring Fee and reimbursement of expenses are all subject to Court approval.

19.    C-H is not a creditor, an equity security holder or an insider of the Debtors.  John Flood, who is C-H's chairman, owns 100,000 shares of Ironclad Nevada's common stock.  With more than 85 million shares issued and outstanding, Mr. Flood's shares represent approximately .1% of Ironclad Nevada's common stock.

20.    C-H is not and was not an investment banker for any outstanding security of the Debtors.  C-H has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

21.     Neither C-H nor any member of C-H is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

22.     To the best of my knowledge, C-H does not hold or represent any interest materially adverse to the interest of the Debtors' estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker for any security of the Debtors, or for any other reason, and is otherwise a "disinterested person" as that term is defined in the Bankruptcy Code.

23.     As part of its diverse practice, C-H is involved in numerous transactions involving many different professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases. In addition, C-H has in the past and will likely in the future be working with or against other professionals involved in this case in matters unrelated to this case. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these business relations constitute interests materially adverse to the Debtors' estates herein, and none are in connection with these cases.

24.     In line with C-H's general practices, C-H maintains, for purposes of monitoring and avoiding conflicts of interest, a list of companies with which C-H is doing business, either as an advisor or with respect to which is in possession of material nonpublic information or has entered into a confidentiality agreement. On my request, employees of C-H have received a list of parties-in-interest provided by the Debtors (the "Parties-In-Interest") attached as **Exhibit "3"** hereto, and has compared this to C-H's list of connected parties to determine the existence of any possible conflicts (the "Conflict Check"). Subject to the following limitations and disclosures no material connections have been found.

25.     Given the large number of parties in interest in these chapter 11 cases, despite the efforts to identify and disclose C-H's relationships with parties in interest in these chapter 11 cases, I am unable to state with absolute certainty that every client relationship or other

connection has been disclosed in this Declaration. C-H, therefore, has informed the Debtors that C-H will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, C-H will promptly file a supplemental declaration with the Court.

26.    C-H provides certain research and securities brokerage services and regularly enters into transactions in securities, loans, and other financial instruments with or involving other parties as a part of its daily activities. These transactions are generally for the accounts of institutional customers of C-H but may include principal transactions to acquire or sell securities for inventory purposes to facilitate C-H's market-making business. Certain of C-H's customers may include, or be related to Parties-in-Interest but do not include the Debtors. Customers may, through C-H, buy, sell, or otherwise effect transactions in securities of the Debtors or other Parties-in-Interest with C-H acting for the account of such clients. As a result, C-H may, directly or indirectly, hold long or short positions, trade, or otherwise conduct such activities in or with respect to debt or equity securities, or derivative products relating to the Debtors or the Parties-in-Interest for the account of its customers or for market-making purposes. Further, as a market-maker in equity securities, C-H enters into securities transactions with other registered broker-dealers as part of its daily activities. Some of these parties and counterparties may hold a claim or otherwise be a party in interest. C-H believes that none of these business relationships constitute interests adverse to the Debtors and none are in connection with these cases.

27.    I believe that their employment of C-H upon the terms and conditions set forth in the Application is in the best interest of the Debtors' estates.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 21ˢᵗ day of September, 2017, at Minneapolis, Minnesota.

STEVE RICKMAN, Declarant

**Exhibit 1**

**CRAIG-HALLUM**
C A P I T A L   G R O U P   LLC

September 8th, 2017

STRICTLY CONFIDENTIAL

Mr. Geoff Greulich
Chief Executive Officer
Ironclad Performance Wear Corporation
1920 Hutton Court, Suite 300
Farmers Branch, TX 75234

Dear Mr. Greulich:

Reference is made to the letter agreement (the "*Previous Agreement*") dated June 2, 2017 between Craig-Hallum Capital Group LLC ("*Craig-Hallum*") and Ironclad Performance Wear Corporation (together with its subsidiaries and affiliates, "*Ironclad*" or the "*Company*"). Effective from and as of September 8, 2017 the Previous Agreement shall be amended and restated in its entirety as set forth in this letter agreement (the "*Agreement*"), the purpose of which is to confirm the terms under which the Company has engaged Craig-Hallum as its exclusive financial advisor to assist the Company with respect to a Sale or Restructuring (as hereinafter defined) of the Company.

A.    **APPOINTMENT OF CRAIG-HALLUM.**    The Company hereby engages Craig-Hallum exclusively to render services to the Company concerning a potential Sale or Restructuring. Craig-Hallum hereby accepts such engagement on a "reasonable efforts" basis upon the terms and conditions set forth herein.

B.    **SERVICES.** In undertaking this assignment, Craig-Hallum will provide the following services to the Company, subject to the provisions of this Agreement:

1.    identify acquirers, which in the opinion of Craig-Hallum and the Company, are the most likely to acquire the Company;

2.    assist the Company in formulating a strategy for soliciting interest from acquirers, whether approached by Craig-Hallum or whether the Company is approached proactively, which may have an interest in acquiring the Company (the "*Potential Acquirers*"), and the development of procedures and timetables for marketing the Company to the Potential Acquirers;

3.    if requested, assist in the preparation of management's confidential memorandum describing the Company;

4.    introduce the Company to Potential Acquirers, and coordinate due diligence investigations of the Company by Potential Acquirers;

5.    along with the Company, evaluate proposals from interested parties regarding a Sale or Restructuring, formulate negotiation strategies, and assist in negotiations and closing of a Sale or Restructuring; and

6.    if the Company pursues a stand-alone restructuring, Craig-Hallum will advise and assist the Company in developing and seeking approval of a restructuring plan (a "*Plan*"), which may be a plan under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "*Bankruptcy Code*"); in structuring any new securities to be issued under the Plan; in providing valuation analyses with respect to the Company, its assets or businesses; in seeking and evaluating the terms of any exit financing; and will participate in hearings before the bankruptcy court with respect to the matters upon which Craig-Hallum has provided advice, including, as relevant, providing testimony in connection therewith in coordination with the Company's counsel.

Craig-Hallum's obligations to provide the services described herein are contingent upon, and expressly subject to, the execution of a waiver, subordination, or similar agreement (which may be in the form of a consensual cash collateral/debtor-in-possession financing order), in form and substance satisfactory to Craig-Hallum,

pursuant to which the Company's secured lender consents to the payment of Craig-Hallum's fees and expenses described in Paragraph C below, free and clear of such lender's liens and security interests in the Company's assets.

C.    **FEES AND EXPENSES.**

1.    SALE OR RESTRUCTURING FEE.  If the Company completes a Sale or Restructuring, the Company shall pay Craig-Hallum a fee (the "*Sale or Restructuring Fee*"), if either during the Term or within 12 months following the Term: (i) a Sale or Restructuring is consummated, or (ii) a definitive agreement or letter of intent or other evidence of commitment is entered into which subsequently results in a Sale or Restructuring being consummated, equal to $275,000, plus 2.5% of the Aggregate Transaction Value (as hereinafter defined) in excess of $20 million up to $22.5 million, plus 4.5% of the Aggregate Transaction Value in excess of $22.5 million.

The entire Sale or Restructuring Fee payable shall be paid in cash to Craig-Hallum at the closing of the Sale or Restructuring.

2.    EXPENSES.  In addition to any fees payable to Craig-Hallum hereunder and regardless of whether a Sale or Restructuring is consummated, the Company hereby agrees to promptly upon receipt of invoice, reimburse Craig-Hallum for its out-of-pocket expenses incurred in connection with this Agreement, the Previous Agreement and the matters contemplated hereby and therein, including (i) database, communication and travel expenses and (ii) fees and expenses of Craig-Hallum's legal counsel.

D.    **TERM AND TERMINATION OF ENGAGEMENT.**  The term of this Agreement shall run for twelve (12) months from the date of this letter, and may be extended by mutual consent of the parties (the "*Term*"), subject to the provisions in this Section D.  This Agreement may be terminated on either the Company's or Craig-Hallum's written request with 30 days' notice, provided, that such termination shall not affect the exculpation, indemnification and contribution obligations of the Company or the right of Craig-Hallum to receive any fees payable hereunder, any fees which have accrued prior to such termination, or the right of Craig-Hallum to receive reimbursement for its out-of-pocket expenses described above.  It is expressly understood that neither Craig-Hallum nor the Company shall have any continuing obligation or liability to one another under this Agreement upon termination thereof, except in respect of the matters specifically referenced in this Section D.

E.    **DEFINITIONS.**  The following terms shall have the following meanings for the purposes of this Agreement:

"**Sale or Restructuring**" of the Company shall mean (i) any transaction or series or combination of related transactions, other than in the ordinary course of business, whereby, directly or indirectly, a controlling (50% or greater) interest in the Company or its capital stock or all or substantially all of its assets, is transferred from, or issued by, the Company (including pursuant to a Plan) and/or its shareholders to any investor or acquirer (including an acquirer that is an existing creditor and/or shareholder) for consideration (including consideration in the form of a credit bid), including, without limitation, a sale or exchange of capital stock or assets, a lease or license of assets with or without a purchase option, a merger, plan of exchange or consolidation, the formation of a joint venture or partnership, a recapitalization or any similar transaction, including any sale transaction under sections 363, 1129 or any other provision of the Bankruptcy Code; or (ii) any other refinancing and/or recapitalization of the Company's debt obligations.

"**Aggregate Transaction Value**" shall mean the total consideration paid and to be paid (which shall be deemed to include amounts paid or to be paid into escrow) directly or indirectly, regardless of how allocated or the form of consideration the amount of any exit financing raised in connection with any Sale or Restructuring, to the Company or to its security holders or other creditors in connection with the Sale or Restructuring, including, without limitation: (i) cash; (ii) notes, debt or equity securities and other property; (iii) the total amount of indebtedness for borrowed money or similar non-trade liabilities or obligations (including pension liabilities, guarantees, capitalized leases, and the like) of the Company repaid, retired,

extinguished, or assumed in connection with the closing of the Sale or Restructuring; (iv) payments to be made in installments; (v) deferred and/or contingent payments (whether or not related to future earnings or operations); (vi) any assets of the Company which are paid in the form of dividends, capital distributions, partial or total liquidating distributions or otherwise to its Security holders other than in the ordinary course of business; and (vii) any other form of consideration to be paid such as amounts over normal salaries, payments for non-competition agreements, confidentiality agreements, consulting agreements, license agreements and above market rentals. For the avoidance of doubt, Aggregate Transaction value shall include (A) the amount of any credit bid by the Company's secured lender in the case of a sale to the secured lender, and (B) any debt or equity financing raised in connection with any stand-alone reorganization. The value of any non-cash consideration included in Aggregate Transaction Value shall be determined as follows:

        1.      The value of stock and other securities that are Freely Tradable shall be the average closing market price of such stock or securities for the five consecutive business days preceding the public announcement of the definitive agreement to enter into a Sale or Restructuring. For purposes of the foregoing, a security shall be *"Freely Tradable"* if such security is listed or is quoted and traded on the New York Stock Exchange, American Stock Exchange, or NASDAQ Market (or on another U.S. stock exchange or foreign stock exchange of comparable depth and liquidity).

        2.      The value of any promissory note or other debt instrument that is not Freely Tradable and the value of any and all deferred installments of the consideration and any other deferral of payments included in the total consideration shall be deemed to be the face amount of the promissory notes or other debt instruments or the total amount of payments that are deferred with respect to deferred obligations that are not evidenced by promissory notes or other debt instruments, all of which shall be determined as of the time of closing of the Sale or Restructuring.

        3.      Any amounts to be paid contingent upon future events shall be estimated for purposes of fee calculation at an expected present value mutually agreeable to the Company and Craig-Hallum at the time of closing, except that any contingent amounts held in escrow shall be fully valued as if they are due and payable at closing.

        4.      The value of stock and other securities that are not Freely Tradable and the value of all other non-cash consideration, other than consideration of the nature described in paragraphs (b) or (c) above, shall be the fair market value thereof at the time of closing of the Sale or Restructuring.

       F.    **USE OF INFORMATION.** The Company authorizes Craig-Hallum to transmit to Potential Acquirers any memorandum or other written information prepared by the Company and its counsel with such exhibits and supplements as may from time to time be required or appropriate (the *"Documents"*). The Company represents and warrants that the Documents (i) will be prepared by and approved by the management of the Company; and (ii) will not contain any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein or previously made, in light of the circumstances under which they were made, not misleading. The Company will advise Craig-Hallum immediately of the occurrence of any event or any other change known to the Company which results in the Documents containing an untrue statement of a material fact or omitting to state a material fact required to be stated therein or necessary to make the statements therein or previously made, in light of the circumstances under which they were made, not misleading. Craig-Hallum will be relying, without independent verification, on the accuracy and completeness of all financial and other information that is and will be furnished to it by the Company.

       G.    **REPRESENTATIONS AND WARRANTIES.** The Company represents and warrants to, and agrees with, Craig-Hallum that:

        1.      The Company will furnish to Craig-Hallum the names of all parties with which the Company has had discussions or contacts prior to the date hereof or which contact the Company during the Term of this Agreement, concerning a Sale or Restructuring.

        2.      The execution, delivery and performance of this Agreement and the Sale or Restructuring will not violate any provision of the Articles of Incorporation or Bylaws of the Company or any

agreement or other instrument to which the Company is a party or by which it is bound. Any necessary approvals, governmental and private, will be obtained by the Company prior to any closing.

H.    INDEMNIFICATION, CONTRIBUTION AND CONFIDENTIALITY.  The Company agrees to indemnify Craig-Hallum and its controlling persons, representatives and agents in accordance with the indemnification provisions set forth in Appendix I, and the parties agree to the confidentiality provisions of Appendix II, all of which are incorporated herein by this reference.  These provisions will apply regardless of whether the proposed Sale or Restructuring is consummated.

I.    GOVERNING LAW; ARBITRATION.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware without regard to the conflicts of law provisions thereof.  This Agreement contains a pre-dispute arbitration clause.  By signing an arbitration agreement the parties agree as follows:

1. **All parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.**

2. **Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.**

3. **The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.**

4. **The arbitrators do not have to explain the reason(s) for their award unless, in an eligible case, a joint request for an explained decision has been submitted by all parties to the panel at least 20 days prior to the first scheduled hearing date.**

5. **The panel of arbitrators may include a minority of arbitrators who were or are affiliated with the securities industry.**

6. **The rules of some arbitration forums may impose time limits for bringing a claim in arbitration.  In some cases, a claim that is ineligible for arbitration may be brought in court.**

7. **The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.**

Any dispute or controversy arising out of this agreement or regarding the interpretation, application, or breach of this Agreement shall be determined by arbitration conducted in accordance with the rules of the Financial Industry Regulatory Authority as then in effect.  Any arbitration award shall be final and binding upon Clients and C-H, and judgment on the award may be entered in any court having jurisdiction.  No person shall bring a putative or certified class action to arbitration, nor seek to enforce any pre-dispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class who has not opted out of the class with respect to any claims encompassed by the putative class action until: (i) the class certification is denied; or (ii) the class is decertified; or (iii) the customer is excluded from the class by the court.  Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.  Each party will bear its own costs and attorneys' fees, and will share equally in the fees and expenses of the arbitrator and the arbitration.    The proceedings will be conducted in English.  Notwithstanding the foregoing, it is expressly agreed that either party may seek injunctive relief, at any time, in an appropriate court of law or equity to enforce its rights hereunder.

J.    ANNOUNCEMENT OF SALE OR RESTRUCTURING.    The Company and Craig-Hallum acknowledge and agree that Craig-Hallum may, subsequent to the closing of a Sale or Restructuring, make public its involvement with the Company.

K.     **ADVICE TO THE BOARD**. The Company acknowledges that any advice given by Craig-Hallum to the Company is solely for benefit and use of the Company's board of directors and may not be used, reproduced, disseminated, quoted or referred to without Craig-Hallum's prior written consent.

L.     **ENTIRE AGREEMENT**. This Agreement constitutes the entire Agreement between the parties and supersedes and cancels any and all prior or contemporaneous arrangements, understandings and agreements, written or oral, between them relating to the subject matter hereof.

M.     **AMENDMENT**. This Agreement may not be modified except in writing signed by each of the parties hereto.

N.     **NO PARTNERSHIP**. The Company is a sophisticated business enterprise that has retained Craig-Hallum for the limited purposes set forth in this Agreement. The parties acknowledge and agree that their respective rights and obligations are contractual in nature. Each party disclaims an intention to impose fiduciary obligations on the other by virtue of the engagement contemplated by this Agreement.

O.     **SUCCESSORS AND ASSIGNS**. This Agreement shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and Craig-Hallum.

P.     **NOTICE**. All notices and other communications required hereunder shall be in writing and shall be deemed effectively given upon personal delivery; upon confirmed transmission by telecopy or telex; or upon deposit with the United States Post Office, by first-class mail, postage prepaid, or otherwise delivered by hand or by messenger, addressed (i) if to the Company, at the Company's address as set forth above or at such other address as the Company shall have furnished to Craig-Hallum or (ii) if to Craig-Hallum, to Craig-Hallum Capital Group LLC, 222 South Ninth Street, Suite 350, Minneapolis, MN 55402, Attention: Tyler O'Neil, General Counsel and Chief Compliance Officer, or at such other address as Craig-Hallum shall have furnished to the Company.

*[The Next Page Is the Signature Page.]*

In acknowledgment that the foregoing correctly sets forth the understanding reached by Craig-Hallum and the Company, please sign in the space provided below, whereupon this letter shall constitute a binding Agreement as of the date indicated above.

Very truly yours,

**CRAIG-HALLUM CAPITAL GROUP LLC**

By: _____
    Rick Hartfiel
    *Director of Investment Banking*

Address:  222 South Ninth Street, Suite 350
          Minneapolis, Minnesota 55402

**(this agreement contains a predispute arbitration clause on page 4)**

Accepted and agreed to
as of the date first written above:

**IRONCLAD PERFORMANCE WEAR CORPORATION**

By: _____
    **Geoff Greulich**
    *Chief Executive Officer*

**APPENDIX I**

In the event that Craig-Hallum Capital Group LLC or any of its affiliates (collectively, "*C-H*"), the respective shareholders, directors, officers, agents or employees of C-H, or any other person controlling C-H (collectively, together with C-H, "*Indemnified Persons*") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person, including stockholders of Client, in connection with or as a result of (i) the engagement contemplated by the letter agreement to which this Appendix I is attached (the "*engagement*"), or (ii) any untrue statement or alleged untrue statement of a material fact contained in any offering materials, including but not limited to any registration statement, prospectus and any prospectus supplement used to offer securities of Client in a transaction subject to the engagement as such materials may be amended or supplemented (and including but not limited to any documents deemed to be incorporated therein by reference) (collectively, the "*Offering Materials*"), or any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading, Client will reimburse such Indemnified Person for its reasonable legal and other expenses (including without limitation the reasonable costs and expenses incurred in connection with investigating, preparing for and responding to third party subpoenas or enforcing the engagement) incurred in connection therewith as such expenses are incurred; provided, however, that with respect to clause (i) above if it is finally determined by a court or arbitral tribunal in any such action, claim, suit, investigation or proceeding that any loss, claim damage or liability of C-H or any other Indemnified Person has resulted primarily and directly from the gross negligence or willful misconduct of C-H or any other Indemnified Person, then C-H will repay such portion of reimbursed amounts that is attributable to expenses incurred in relation to the act or omission of C-H or any other Indemnified Person which is the subject of such determination. Client will also indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages or liabilities (including actions or proceedings in respect thereof) (collectively, "*Losses*") related to or arising out of (i) the engagement, or (ii) any untrue statement or alleged untrue statement of a material fact contained in the Offering Materials, or any omission or alleged omission to state therein a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading, except, with respect to clause (i) above, to the extent any such Losses are finally determined by a court or arbitral tribunal to have resulted primarily and directly from the willful misconduct or gross negligence of C-H or any other Indemnified Person.

If such indemnification is for any reason not available or insufficient to hold an Indemnified Person harmless (except by reason of the gross negligence or willful misconduct of C-H as described above), Client and C-H shall contribute to the Losses involved in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by Client, on the one hand, and by C-H and/or any other Indemnified Person, on the other hand, with respect to the engagement or, if such allocation is determined by a court or arbitral tribunal to be unavailable, in such proportion as is appropriate to reflect other equitable considerations such as the relative fault of Client on the one hand and of C-H and/or any other Indemnified Person on the other hand; provided, however, that in no event shall the amounts to be contributed by C-H exceed the fees actually received by C-H in the engagement. Relative benefits to Client, on the one hand, and C-H and/or any other Indemnified Person, on the other hand, shall be deemed to be in the same proportion as (i) the total value actually paid or received by Client or its security holders, as the case may be, pursuant to the transaction(s), whether or not consummated, contemplated by the engagement, bears to (ii) all fees actually received by C-H in the engagement.

Client also agrees that neither C-H nor any other Indemnified Person shall have any liability to Client or any person asserting claims on behalf or in right of Client in connection with or as a result of the engagement or any matter referred to in the engagement, except to the extent that any Losses incurred by Client are finally determined by a court or arbitral tribunal to have resulted primarily and directly from

the willful misconduct or gross negligence of C-H or any other Indemnified Person in performing the services that are the subject of the engagement.

Client's obligations hereunder shall be in addition to any rights that any Indemnified Person may have at common law or otherwise.

The provisions of this Appendix I shall apply to the engagement (including related activities prior to the date hereof) and any modification thereof and shall remain in full force and effect regardless of the completion or termination of the engagement.  If any term, provision, covenant or restriction herein is held by a court of competent jurisdiction to be invalid, void or unenforceable or against public policy, the remainder of the terms, provisions and restrictions contained herein shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

**APPENDIX II**

## INFORMATION TO BE SUPPLIED; CONFIDENTIALITY

In connection with Craig-Hallum's activities on behalf of the Company, the Company will furnish Craig-Hallum with all financial and other information regarding the Company that Craig-Hallum reasonably believes appropriate to the assignment (all such information so furnished by the Company, whether furnished before or after the date of this Agreement, being referred to herein as the "*Information*"). The Company will provide Craig-Hallum with access to the officers, directors, employees, independent accountants, legal counsel and other advisors and consultants of the Company. The Company shall also inform Craig-Hallum of any material events or developments concerning prospective material events that may come to the attention of the Company at any point during the Term of the Agreement. The Company recognizes and agrees that Craig-Hallum (i) will use and rely primarily on the Information and information available from generally recognized public sources in performing the services contemplated by this Agreement without independently verifying the Information or such other information, (ii) does not assume responsibility for the accuracy of the Information or such other information, and (iii) will not make an appraisal of any assets or liabilities owned or controlled by the Company or its market competitors.

Craig-Hallum will maintain the confidentiality of the Information and, unless and until such information shall have been made publicly available by the Company or by others without breach of a confidentiality agreement, shall disclose the Information only as authorized by the Company or as required by law or by order of a governmental authority or court of competent jurisdiction. In the event that Craig-Hallum is legally required to make disclosure of any of the Information, Craig-Hallum will give notice to the Company prior to such disclosure, to the extent that they can practically do so.

The foregoing paragraph shall not apply to information that:

(i)    at the time of disclosure by the Company is, or thereafter becomes, generally available to the public or within the industries in which the Company or Craig-Hallum or its affiliates conduct business, other than as a direct result of a breach by Craig-Hallum of its obligations under this Agreement;

(ii)   prior to or at the time of disclosure by the Company, was already in the possession of, or conceived by, Craig-Hallum or any of its affiliates, or could have been developed by them from information then in their possession, by the application of other information or techniques in their possession, generally available to the public, or available to Craig-Hallum or its affiliates other than from the Company;

(iii)  at the time of disclosure by the Company or thereafter, is obtained by Craig-Hallum or any of its affiliates from a third party who Craig-Hallum reasonably believes to be in possession of the information not in violation of any contractual, legal or fiduciary obligation to the Company with respect to that information; or

(iv)   is independently developed by Craig-Hallum or its affiliates.

Nothing in this Agreement shall be construed to limit the ability of Craig-Hallum or its affiliates to pursue, investigate, analyze, invest in, or engage in investment banking, financial advisory or any other business relationship with entities other than the Company, notwithstanding that such entities may be engaged in a business which is similar to or competitive with the business of the Company, and notwithstanding that such entities may have actual or potential operations, products, services, plans, ideas, customers or supplies similar or identical to the Company's, or may have been identified by the Company as potential merger or acquisition targets or potential candidates for some other business combination, cooperation or relationship. The Company expressly acknowledges and agrees that it does not claim any proprietary interest in the identity of any other entity in its industry or otherwise, and that the identity of any such entity is not confidential information.

**Exhibit 2**

CONFIDENTIAL

# Craig-Hallum Overview

SEPTEMBER 2017



CRAIG-HALLUM OVERVIEW

# Leading Investment Bank Focused On Growth Companies

### CRAIG-HALLUM IS AN INSTITUTIONAL INVESTMENT BANK FOCUSED SOLELY ON GROWTH COMPANIES

- 100+ employee-owned partnership

- Headquartered in Minneapolis with offices in Boston, Greenwich, and Philadelphia

- Operating history of more than 18 years

- From 2013 through 2016, Craig-Hallum was the #1 ranked investment bank for the most follow-on equity offerings for market caps less than $500 million (excluding biotech and financials)[1]

### OUR MISSION IS SIMPLE:

- Build lasting and impactful relationships with our investment banking clients

- Provide our institutional investor clients with compelling stock ideas that can drive their performance

**CRAIG-HALLUM**
CAPITAL GROUP LLC

### INVESTMENT BANKING

- 37 investment banking transactions completed in 2016

- Over 160 equity offerings completed since January 1, 2013

- Manager for more than $8.7 billion of offerings since January 1, 2013

- Experienced M&A advisory team

### INSTITUTIONAL RESEARCH

- 36 equity research professionals

- 275 public companies under coverage

- Cover all major growth sectors: business services, clean technology, consumer, healthcare, industrial growth, technology, and telecommunications

- Sector knowledge and concentrated experience

### INSTITUTIONAL SALES & TRADING

- 35-member core sales & trading team

- U.S. and Canadian coverage of 600+ institutional accounts

- Deep client relationships with senior portfolio managers

**Source:** S&P Capital IQ
(1)    Includes offerings greater than or equal to $5 million for companies listed on major U.S. exchanges



# How The Craig-Hallum Model Is Different

- **Craig-Hallum is a true research-driven boutique**

  - 34% of our employees are in our research department, which is larger than any of our banking, sales, or trading departments

  - Senior research analysts each cover, on average, 16 stocks, allowing for in-depth coverage of each stock

  - Our model translates to both higher quality results and greater impact for our institutional and corporate clients

- **Big enough to matter – small enough to make a difference**

  - 275 stocks in our coverage universe, not over 500 like many investment banks

  - More time for each stock during every morning meeting, ensuring deep sales knowledge – not just when the company reports quarterly results

  - History of exceptionally strong relationships with leading growth stock portfolio managers across the country

  - Focused trading – we make markets in stocks that we cover

  - Top underwriter for small cap growth stocks[1], having completed over 160 equity offerings since the start of 2013, raising over $8.5 billion

- **We are one of the few remaining partnerships**

  - Craig-Hallum is 100% owned by its employees – no outside capital

  - Performance-oriented culture attracts high performers

  - We care because it is ours

**CRAIG-HALLUM PROFESSIONALS**



**CRAIG-HALLUM LOCATIONS**



**Source:** *S&P Capital IQ*
(1)   *Includes offerings greater than or equal to $5 million for U.S. companies listed on major U.S. exchanges under $500MM market capitalization*



# Proven M&A Process Expertise

| | |
|---|---|
| **COMBINED YEARS EXPERIENCE** | **OVER 100** |
| **# OF TRANSACTIONS COMPLETED** | **OVER 200** |
| **CUMULATIVE ENTERPRISE VALUE CREATED** | **OVER $15 BILLION** |
| **SELLER TYPES REPRESENTED** | **ALL RANGING FROM ENTREPRENEURS AND FAMILIES TO PRIVATE EQUITY AND CORPORATIONS** |
| **BUYER TYPES APPROACHED AND SOLD TO** | **ALL RANGING FROM ENTREPRENEURS AND FAMILIES TO PRIVATE EQUITY AND CORPORATIONS** |
| **INDUSTRY SEGMENTS REPRESENTED** | **VIRTUALLY ALL FROM NICHE MARKETS TO MAJOR INDUSTRIES** |
| **TRANSACTION PROCESS TYPES RUN** | **EVERY CONCEIVABLE PERMUTATION FROM UNILATERAL NEGOTIATIONS TO BROAD AUCTION PROCESSES** |
| **GEOGRAPHIC FOCUS** | **NORTH AMERICA WITH SIGNIFICANT EXPERIENCE INVOLVING INTERNATIONAL BUYERS AND SELLERS** |
| **DEAL SIZE** | **FOCUS ON ENTERPRISE VALUES UNDER $150 MILLION WITH SIGNIFICANT EXPERIENCE UP TO ~$750 MILLION** |

**THE M&A GROUP FOCUSES 100% ON M&A ADVISORY AND OUR COMBINED YEARS OF EXPERIENCE AND NUMBER OF COMPLETED TRANSACTIONS MAKE US EXPERTS IN OUR CRAFT, REGARDLESS OF TRANSACTION TYPE, SIZE, INDUSTRY, SELLER OR BUYER**



# Demonstrated M&A Experience

- **Since 2013, Craig-Hallum has completed over 40 M&A advisory, corporate divestiture, and fairness opinion assignments for public and private companies**

**RECENT M&A TRANSACTIONS**

DreamLine — dream in style
HAS BEEN ACQUIRED BY
MPE Partners
**June 12, 2017**

Binswanger Glass
A PORTFOLIO COMPANY OF
Grey Mountain Partners
HAS BEEN ACQUIRED BY
Wingate Partners
**March 10, 2017**

DES-CASE
A PORTFOLIO COMPANY OF
PFINGSTEN
HAS BEEN ACQUIRED BY
Industrial Growth Partners
**July 6, 2016**

premier
A PORTFOLIO COMPANY OF
Hillcrest Capital Partners
HAS BEEN ACQUIRED BY
Boelter
**June 23, 2016**

CEW — Custom Engineered Wheels
A PORTFOLIO COMPANY OF
Hamilton Robinson Capital Partners
HAS BEEN RECAPITALIZED
**April 29, 2016**

CERTAIN ASSETS OF
Stride Tool
HAVE BEEN ACQUIRED BY
Capitala
**April 5, 2016**

TTG
A PORTFOLIO COMPANY OF
SPELL CAPITAL
HAS BEEN ACQUIRED BY
TENEX Capital Management
**March 14, 2016**

sojos
HAS BEEN ACQUIRED BY
WellPet
A PORTFOLIO COMPANY OF
BERWIND
**January 4, 2016**

Publicis Healthcare Communications Group
HAS ACQUIRED A BUSINESS UNIT OF
PDI — Performance Driven
**December 22, 2015**

All-American Scaffold
HAS BEEN ACQUIRED BY
Safway
A PORTFOLIO COMPANY OF
Odyssey Investment Partners, LLC
**December 12, 2015**

Twin City Container, Inc
HAS BEEN ACQUIRED BY
Industrial Container Services
A PORTFOLIO COMPANY OF
Aurora Capital Group
**December 4, 2015**

CanGen
A PORTFOLIO COMPANY OF
CHB Capital Partners
HAS BEEN ACQUIRED BY
Milacron
A PORTFOLIO COMPANY OF
CCMP Capital
**December 1, 2015**

Arrow Storage Products
A PORTFOLIO COMPANY OF
Wayzata Investment Partners
HAS BEEN ACQUIRED BY
ShelterLogic
A PORTFOLIO COMPANY OF
Charter Oak Equity
**November 13, 2015**

Cleveland Thermal
HAS BEEN ACQUIRED BY
Corix
**October 21, 2015**

Filter Minder
A PORTFOLIO COMPANY OF
SPELL CAPITAL
HAS BEEN ACQUIRED BY
Donaldson Filtration Solutions
**August 31, 2015**



# Why Craig-Hallum?

- **Middle market focus**

  - Craig-Hallum has completed numerous transactions with sub-$500 million market capitalization companies for years

  - Focused on M&A transactions less than $150 million in enterprise value

- **The Craig-Hallum team knows the Ironclad story**

  - We have been working with the Company for over three months

  - We have done our homework – extensive due diligence with the management team and Board of Directors

- **We already has dialogue with many potential strategic buyers for the Company**

  - Several buyers have expressed an interest purchasing the Company in bankruptcy





*(1) Not all contacted buyers are shown*

6

# Industrial Technology Experience

| | | | | | | |
|---|---|---|---|---|---|---|
| DES-CASE<br>A PORTFOLIO COMPANY OF<br>PFINGSTEN<br>HAS BEEN ACQUIRED BY<br>INDUSTRIAL GROWTH PARTNERS | TTG<br>A PORTFOLIO COMPANY OF<br>SPELL CAPITAL<br>HAS BEEN ACQUIRED BY<br>TENEX CAPITAL MANAGEMENT | CANGEN<br>A PORTFOLIO COMPANY OF<br>CHB Capital Partners<br>HAS BEEN ACQUIRED BY<br>MILACRON<br>A PORTFOLIO COMPANY OF<br>CCMP CAPITAL | FILTER MINDER<br>Engineered Products Co.<br>A PORTFOLIO COMPANY OF<br>SPELL CAPITAL<br>HAS BEEN ACQUIRED BY<br>Donaldson. | Columbus Hydraulics Company<br>HAS BEEN ACQUIRED BY<br>ArcticCapital | ASPEQ Holdings, Inc.<br>HAS BEEN ACQUIRED BY<br>Bunker Hill Capital | HERR-VOSS STAMCO<br>A PORTFOLIO COMPANY OF<br>Grey Mountain Partners<br>HAS BEEN ACQUIRED BY<br>ANDRITZ |
| KORTEC<br>A PORTFOLIO COMPANY OF<br>Ampersand<br>HAS BEEN ACQUIRED BY<br>MILACRON | PENTAIR<br>HAS DIVESTED<br>FOAMPRO<br>TO<br>The Sterling Group | HTPG<br>A PORTFOLIO COMPANY OF<br>MONOMOY CAPITAL PARTNERS<br>HAS BEEN ACQUIRED BY<br>Rheem | kason<br>A PORTFOLIO COMPANY OF<br>SPELL CAPITAL<br>HAS BEEN ACQUIRED BY<br>Baird Capital | *<br>UTEX Industries, Inc.<br>A PORTFOLIO COMPANY OF<br>RHÔNE<br>HAS BEEN ACQUIRED BY<br>RIVER STONE | *<br>PENTAIR<br>HAS SOLD<br>Aspen Motion Technologies<br>TO<br>MOOG | *<br>intersystems<br>HAS BEEN ACQUIRED BY<br>THE PRITZKER GROUP |
| *<br>PGI<br>HAS BEEN ACQUIRED BY<br>Parker | *<br>Parker<br>Air Conditioning Division<br>HAS BEEN ACQUIRED BY<br>Continental ContiTech | *<br>EDI<br>HAS BEEN ACQUIRED BY<br>Nordson | *<br>API Heat Transfer<br>HAS BEEN ACQUIRED BY<br>ThermaSys | *<br>O'BRIEN<br>HAS BEEN ACQUIRED BY<br>AMETEK | *<br>DOVER<br>HAS SOLD<br>PALADIN AND Crenlo<br>TO<br>KPS Capital Partners, LP | *<br>EDI<br>HAS BEEN ACQUIRED BY<br>BERTRAM CAPITAL |
| *<br>UTEX Industries, Inc.<br>HAS BEEN ACQUIRED BY<br>RHÔNE | *<br>O'BRIEN<br>HAS BEEN ACQUIRED BY<br>INDUSTRIAL GROWTH PARTNERS | *<br>Standard Refrigeration<br>HAS BEEN ACQUIRED BY<br>ALFA LAVAL | *<br>Dynisco<br>Extrusion<br>HAS BEEN ACQUIRED BY<br>XALOY | *<br>Synventive molding solutions<br>HAS BEEN ACQUIRED BY<br>Advent International Global Private Equity | *<br>API Heat Transfer<br>MADISON CAPITAL PARTNERS<br>HAS BEEN ACQUIRED BY<br>Audax Group | *<br>Dynisco<br>HAS BEEN ACQUIRED BY<br>Audax Group |

** Transaction completed with the involvement of a Craig-Hallum professional while at prior firm*

CRAIG-HALLUM CAPITAL GROUP LLC



# Branded and Consumer Products Experience

sojos
HAS BEEN ACQUIRED BY
WellPet
A PORTFOLIO COMPANY OF
BERWIND

ARROW Storage Products
A PORTFOLIO COMPANY OF
WAYZATA
HAS BEEN ACQUIRED BY
ShelterLogic
A PORTFOLIO COMPANY OF
Charter Oak Equity RFE

GHJ&M
HAS ACQUIRED
CAMERON'S Coffee

*
Homax
A PORTFOLIO COMPANY OF
Harbour Group
HAS BEEN ACQUIRED BY
Olympus Partners

*
GHJ&M
HAS SOLD
claire Sprayway
TO
PLAZE
A PORTFOLIO COMPANY OF
AEA

*
B
A PORTFOLIO COMPANY OF
CHAMPLAIN CAPITAL PARTNERS, LP
HAS BEEN ACQUIRED BY
RANDA ACCESSORIES

*
EB BRANDS
A PORTFOLIO COMPANY OF
MILESTONE PARTNERS
HAS BEEN ACQUIRED BY
CORTEC Group

*
ENTERTAINMENT CRUISES
A PORTFOLIO COMPANY OF
ICV PARTNERS
HAS BEEN ACQUIRED BY
THE PRITZKER GROUP

*
kidsline
HAS BEEN ACQUIRED BY
Kid Brands, Inc.
essentials for infants & kids

*
NIKE
HAS SOLD
BAUER
TO
KOHLBERG & COMPANY

*
TagWorks, LLC
A PORTFOLIO COMPANY OF
THE HILLMAN GROUP
HAS BEEN ACQUIRED BY
OAK HILL

*
MICHE
HAS RECEIVED AN EQUITY INVESTMENT FROM
MILESTONE PARTNERS

*
HUDSON
A PORTFOLIO COMPANY OF
FCP
FIREMAN CAPITAL PARTNERS
HAS BEEN ACQUIRED BY
JOE'S

*
totes » ISOTONER
A PORTFOLIO COMPANY OF
SWANDER PACE CAPITAL
HAS BEEN ACQUIRED BY
BRS

*
MOUNTAIN HARD WEAR
HAS BEEN ACQUIRED BY
Columbia

*
Keepsake Quilting
America's Favorite Quilt Shop
A PORTFOLIO COMPANY OF
Riverside
HAS BEEN ACQUIRED BY
NEW TRACK MEDIA

*
ESCORT
DRIVE SMARTER™
HAS BEEN ACQUIRED BY
American Capital

*
Kodak
Certain Assets of Kodak Gallery
HAVE BEEN ACQUIRED BY
Shutterfly

*
Holmes
HAS SOLD
Simer
TO
Pentair

*
FOX RACING SHOX
HAS BEEN ACQUIRED BY
COMPASS DIVERSIFIED HOLDINGS

** Transaction completed with the involvement of a Craig-Hallum professional while at prior firm*

# Craig-Hallum Coverage Universe

- **Craig-Hallum covers 275 companies across multiple growth sectors including technology, healthcare, consumer, industrial growth, and business services**

## TECHNOLOGY

### Semi. & Components
- Advanced Micro (AMD)
- Ambarella (AMBA)
- Applied Opto (AAOI)
- Broadcom (AVGO)
- ChipMOS (IMOS)
- Cypress (CY)
- Cirrus Logic (CRUS)
- eMagin (EMAN)
- Everspin (MRAM)
- II-VI Incorporated (IIVI)
- Immersion (IMMR)
- Inphi (IPHI)
- Integrated Device (IDTI)
- Knowles (KN)
- Lattice Semi. (LSCC)
- Marvel (MRVL)
- M/A-Com Technology (MTSI)
- Neonode (NEON)
- NeoPhotonics (NPTN)
- Netlist (NLST)
- Oclaro (OCLR)
- Pixelworks (PXLW)
- Qorvo (QRVO)
- QuickLogic (QUIK)
- Sanmina-SCI (SANM)
- Silicon Motion (SIMO)
- Sigma Designs (SIGM)
- STMicro (STM)
- Skyworks (SWKS)
- Synaptics (SYNA)
- Tower Semi. (TSEM)
- Xperi Corp. (XPER)

**Semiconductor Equipment**
- Aehr Test Systems (AEHR)
- Applied Materials (AMAT)
- Axcelis (ACLS)
- AXT Inc. (AXTI)
- CyberOptics (CYBE)
- Entegris (ENTG)
- FormFactor (FORM)
- PDF Solutions (PDFS)
- Teradyne (TER)
- Ultra Clean (UCTT)
- Xcerra (XCRA)

### Communications & Equip.
- 8x8 (EGHT)
- Boingo Wireless (WIFI)
- Brocade Comm. (BRCD)
- CalAmp (CAMP)
- Calix (CALX)
- DASAN Zhone (DZSI)
- Extreme Networks (EXTR)
- Flextronics (FLEX)
- Finisar (FNSR)
- Fusion Telecom (FSNN)
- Global Telecom (GTT)
- Infinera (INFN)
- Internap Network (INAP)
- Lumentum (LITE)
- Nokia Corporation (NOK)
- ORBCOMM (ORBC)
- ShoreTel (SHOR)
- Trimble (TRMB)
- Viavi (VIAV)
- Vonage (VG)

**Services**
- Dycom (DY)
- InnerWorkings (INWK)
- Digital Turbine (APPS)
- MasTec (MTZ)
- SharpSpring (SHSP)
- TeleTech (TTEC)
- USA Technologies (USAT)

**Storage & Hardware**
- Cray (CRAY)
- Quantum (QTM)
- Seagate (STX)
- Western Digital (WDC)

### Software
- Accelerize (ACLZ)
- Actua (ACTA)
- ARI Network Services (ARIS)
- Attunity (ATTU)
- Blucora (BCOR)
- Callidus (CALD)
- Carbonite (CARB)
- Cyren (CYRN)
- Digimarc (DMRC)
- Datawatch (DWCH)
- Ebix (EBIX)
- eGain (EGAN)
- Five9 (FIVN)
- Hortonworks (HDP)
- ImageWare (IWSY)
- Iteris (ITI)
- LivePerson (LPSN)
- Mattersight (MATR)
- MINDBODY (MB)*
- Model N (MODN)
- NetScout (NTCT)
- Nuance (NUAN)
- Paylocity (PCTY)
- PROS Holdings (PRO)
- Qumu Corp (QUMU)
- RingCentral (RNG)
- SPS Commerce (SPSC)
- Synacor (SYNC)
- Upland Software (UPLD)
- Veritone (VERI)
- Xactly Corporation (XTLY)
- Zendesk (ZEN)
- Zix Corp. (ZIXI)

**Internet Content & Advert.**
- Akamai (AKAM)
- Cars.com (CARS)
- Izea (IZEA)
- Rubicon Project (RUBI)
- SITO Mobile (SITO)
- TechTarget (TTGT)
- The Hackett Group (HCKT)
- TrueCar (TRUE)
- Zillow (ZG)

### eCommerce
- Chegg (CHGG)
- GrubHub (GRUB)*
- Leaf Group (LFGR)
- PetMed Express (PETS)
- PFSWeb (PFSW)
- Quotient Technology (QUOT)*
- Stamps.com (STMP)

**Financial Technology**
- ACI (ACIW)
- BofI (BOFI)
- Blackhawk Network (HAWK)
- Bottomline (EPAY)
- CPI Card Group (PMTS)
- Everi Holdings (EVRI)
- First Data (FDC)
- LendingClub (LC)
- PayPal Holdings (PYPL)
- Planet Payment (PLPM)
- Q2 Holdings (QTWO)
- RE/MAX (RMAX)
- Square (SQ)
- Vantiv (VNTV)
- VeriFone (PAY)

## LIFE SCIENCES/HEALTHCARE

### Diagnostics
- Alere (ALR)
- Caredx Inc (CDNA)
- Chembio (CEMI)
- Enzo Bio. (ENZ)
- Exact Sciences (EXAS)
- Laboratory Corp. (LH)
- Neogen (NEOG)
- Neogenomics (NEO)
- Quest Diagnostics (DGX)

### Med. Equip & Devices
- AngioDynamics (ANGO)
- Apollo Endosurgery (APEN)
- Bovie Medical (BVX)
- CAS Medical (CASM)
- Dextera Surgical (DXTR)
- Henry Schein (HSIC)
- iCAD (ICAD)
- Integer Holdings (ITGR)
- Invuity (IVTY)
- LeMaitre (LMAT)
- Merit Medical (MMSI)
- Novadaq (NVDQ)
- NVE Corp. (NVEC)
- NxStage Medical (NXTM)
- Patterson (PDCO)
- Spectranetics (SPNC)
- Viveve Medical (VIVE)

### Healthcare IT & Svcs.
- Acadia Healthcare (ACHC)
- Advisory Board (ABCO)
- Amedisys (AMED)
- Auxilio (AUXO)
- BioScrip (BIOS)
- eHealth (EHTH)
- Haemonetics (HAE)
- Health Insur. Innov. (HIIQ)
- HealthSouth (HLS)
- Healthstream (HSTM)
- LHC Group (LHCG)
- Omnicell (OMCL)
- Sharps Compliance (SMED)
- Streamline Health (STRM)
- Teladoc (TDOC)
- The Joint Corp. (JYNT)
- Vocera Comm. (VCRA)

### Spec. Pharma & Biologics
- Aceto Corp (ACET)
- Akorn (AKRX)
- Alliqua (ALQA)
- Cambrex (CBM)
- Codexis (CDXS)
- Lannett (LCI)
- Ligand (LGND)
- MiMedx (MDXG)
- Repligen (RGEN)
- Rockwell Medical (RMTI)
- RTI Biologics (RTIX)
- SenesTech (SNES)
- Techne (TECH)
- Teligent (TLGT)
- Zoetis (ZTS)

## INDUSTRIAL GROWTH AND SUSTAINABILITY

### Automobile & Machinery
- Asbury Automotive (ABG)
- Blue Bird (BLBD)
- Carvana Co. (CVNA)
- Dasske (DSKE)
- Douglas Dynamics (PLOW)
- Ford Motor (F)
- General Motors (GM)
- Genthern (THRM)
- Lithia Motors (LAD)
- Motorcar Parts (MPAA)
- Research Frontiers (REFR)
- Sevcon, Inc. (SEV)
- Spartan Motors (SPAR)
- Titan Machinery (TITN)
- Wabash National (WNC)

### Infrastructure
- Aegion (AEGN)
- Apogee (APOG)
- Aspen Aerogels (ASPN)
- Capstone Turbine (CPST)
- Limbach (LMB)
- LiqTech (LIQT)
- Vertex Energy (VTNR)

### Sustainability
- Chart Industries (GTLS)
- Clean Energy (CLNE)
- Daqo New Energy (DQ)*
- Enphase (ENPH)
- EnSync (ESNC)
- FuelCell Energy (FCEL)
- Hudson Tech. (HDSN)
- Ideal Power (IPWR)
- JINKO Solar (JKS)*
- Ormat Technologies (ORA)*
- Pacific Ethanol (PEIX)
- Plug Power (PLUG)
- Power Solutions (PSIX)
- SolarEdge (SEDG)*
- Westport (WPRT)

### Industrial
- Allied Motion (AMOT)
- American Outdoor (AOBC)
- Axon (AAXN)
- Civeo Corp. (CVEO)
- CUI Global (CUI)
- FARO Technologies (FARO)
- Gentex (GNTX)
- Hydrogenics (HYGS)
- Ironclad (ICPW)
- Kornit Industries (KRNT)
- Lakeland Industries (LAKE)
- Methode Electronics (MEI)
- Orion Energy (OESX)
- Perceptron (PRCP)
- Proto Labs (PRLB)
- Stratasys (SSYS)
- Telenav (TNAV)

## CONSUMER

### Consumer Goods & Svcs.
- 1-800-flowers.com (FLWS)
- Amplify Snack (BETR)*
- Barnes & Noble (BKS)
- Barnes & Noble Ed. (BNED)
- Build-a-Bear (BBW)
- Care.com (CRCM)
- Century Casinos (CNTY)
- EVINE (EVLV)
- Famous Dave's (DAVE)
- FTD Companies (FTD)
- Glu Mobile (GLUU)*
- HSN, Inc. (HSNI)
- J. C. Penney (JCP)
- Land's End (LE)
- Liberty Interactive (QVCA)
- MarineMax (HZO)
- MGP Ingredients (MGPI)
- Nutrisystem (NTRI)
- Orchids Paper (TIS)
- Red Lion Hotels (RLH)
- S&W Seed (SANW)
- Scientific Games (SGMS)
- Senomyx (SNMX)
- Weight Watchers (WTW)
- ZAGG (ZAGG)

*\* Denotes companies with suspended coverage*


CRAIG-HALLUM
CAPITAL GROUP LLC

CRAIG-HALLUM OVERVIEW

# Leading Underwriter for Follow-On Equity Offerings (Sub $500 Million Market Caps)

- **Craig-Hallum has completed the most follow-on offerings (74) and second most lead book-run offerings (37) in the last 4 years**
- **Includes underwritten follow-on offerings greater than $5 million for companies with less than $500 million in market capitalization – excludes biotechnology and financial services companies**

## FOUR YEARS ENDED DECEMBER 31, 2016

| Lead Book-Runner | | | Managing Underwriter | | |
|---|---|---|---|---|---|
| Rank | Underwriter | Number | Rank | Underwriter | Number |
| 1 | Roth Capital Partners, LLC | 39 | 1 | **Craig-Hallum Capital Group LLC** | **74** |
| 2 | **Craig-Hallum Capital Group LLC** | **37** | 1 | Roth Capital Partners, LLC | 74 |
| 3 | Cowen and Company, LLC | 31 | 3 | Canaccord Genuity Inc. | 55 |
| 4 | Canaccord Genuity Inc. | 27 | 4 | Cowen and Company, LLC | 48 |
| 5 | Jefferies & Company, Inc. | 21 | 5 | Raymond James & Associates, Inc. | 40 |
| 6 | Aegis Capital Corporation | 17 | 6 | William Blair & Company, LLC | 36 |
| 7 | William Blair & Company, LLC | 16 | 7 | Ladenburg Thalmann & Co. Inc. | 33 |
| 8 | J.P. Morgan Securities LLC | 15 | 8 | Piper Jaffray & Co. | 30 |
| 8 | Stifel, Nicolaus & Company | 15 | 8 | Stifel, Nicolaus & Company | 30 |
| 10 | B. Riley & Co., LLC | 14 | 10 | Needham & Company, LLC | 29 |
| 10 | Barclays Capital Inc. | 14 | 11 | Jefferies & Company, Inc. | 27 |
| 10 | H.C. Wainright | 14 | 12 | J.P. Morgan Securities LLC | 26 |
| 10 | Ladenburg Thalmann & Co. Inc. | 14 | 12 | Wells Fargo Securities, LLC | 26 |
| 10 | Maxim Group, LLC | 14 | 14 | Northland Securities, Inc. | 25 |
| 10 | Piper Jaffray & Co. | 14 | 14 | Oppenheimer & Co. Inc. | 25 |
| 16 | Morgan Stanley & Co. LLC | 12 | 16 | B. Riley & Co., LLC | 24 |
| 16 | Oppenheimer & Co. Inc. | 12 | 17 | Barclays Capital Inc. | 23 |
| 16 | Raymond James & Associates, Inc. | 12 | 17 | H.C. Wainright | 23 |
| 19 | Needham & Company, LLC | 11 | 17 | Maxim Group, LLC | 23 |
| 20 | Citigroup Global Markets, Inc. | 10 | 20 | Aegis Capital Corporation | 21 |

**Source:** _S&P Capital IQ_
_Includes offerings greater than or equal to $5 million for non-biotechnology, non-financial services U.S._
_companies listed on major U.S. exchanges_

10



# Recent Craig-Hallum Financings

- **Managing underwriter or placement agent for over 160 equity offerings since January 1, 2013 – raising over $8.5 billion**

| Amount | Company | Security | Role | Date |
|---|---|---|---|---|
| $10 million | Lakeland Industries, Inc | Common Stock | Joint Book-Runner | August 17, 2017 |
| $5 million | Netlist | Common Stock | Lead Book-Runner | August 17, 2017 |
| $36 million | Apollo Endosurgery | Common Stock | Lead Book-Runner | July 20, 2017 |
| $43 million | USA Technologies | Common Stock | Co-Manager | July 20, 2017 |
| $29 million | Westport Fuel Systems | Common Stock | Lead Manager | July 14, 2017 |
| $120 million | Repligen | Common Stock | Co-Manager | June 27, 2017 |
| $261 million | Exact Sciences | Common Stock | Co-Manager | June 7, 2017 |
| $40 million | Upland | Common Stock | Financial Advisor | June 7, 2017 |
| $5 million | Evine Live | Common Stock | Exclusive Advisor | May 25, 2017 |
| $7 million | eMagin | Common Stock | Exclusive Advisor | May 19, 2017 |
| $38 million | Veritone | Initial Public Offering | Co-Manager | May 12, 2017 |
| $8 million | Dextera | Convertible Preferred | Co-Manager | May 12, 2017 |
| $18 million | FuelCell Energy | Common Stock | Co-Manager | April 28, 2017 |
| $171 million | TrueCar | Common Stock | Co-Manager | April 27, 2017 |
| $17 million | Aehr Test Systems | Common Stock | Sole Manager | April 13, 2017 |
| $25 million | Codexis | Common Stock | Co-Manager | April 7, 2017 |
| $250 million | Orbcomm | Senior Notes | Co-Manager | April 1, 2017 |
| $17 million | QuickLogic | Common Stock | Sole Book-Runner | March 23, 2017 |
| $28 million | CareDx | Convertible Debt | Sole Placement Agent | March 15, 2017 |
| $35 million | axt | Common Stock | Co-Manager | March 2, 2017 |
| $16 million | Mattersight | Common Stock | Sole Placement Agent | February 24, 2017 |
| $24 million | Limbach | Common Stock | Co-Manager | December 16, 2016 |
| $20 million | RLHC | Common Stock | Lead Book-Runner | December 15, 2016 |
| $52 million | Hudson Technologies | Common Stock | Joint Book-Runner | December 9, 2016 |
| $15 million | SenesTech | Initial Public Offering | Co-Manager | December 8, 2016 |
| $3 million | fusion | Common Stock | Sole Placement Agent | November 15, 2016 |
| $150 million | Quantum | Senior Credit Facility | Sole Placement Agent | October 21, 2016 |
| $4 million | ImmuCell | Common Stock | Sole Placement Agent | October 18, 2016 |
| $45 million | Everspin Technologies | Initial Public Offering | Co-Manager | October 7, 2016 |
| $6 million | Aehr Test Systems | Common Stock | Sole Placement Agent | September 23, 2016 |
| $144 million | Oclaro | Common Stock | Co-Manager | September 22, 2016 |
| $12 million | sito | Common Stock | Co-Manager | September 16, 2016 |
| $12 million | Netlist | Common Stock | Joint Book-Runner | September 16, 2016 |
| $107 million | CallidusCloud | Common Stock | Co-Manager | September 16, 2016 |
| $10 million | Evine Live | Common Stock | Sole Placement Agent | September 15, 2016 |
| $288 million | Inphi | Convertible Notes | Co-Manager | September 7, 2016 |
| $5 million | eMagin | Warrant Exercise | Sole Placement Agent | August 19, 2016 |
| $9 million | neonode | Common Stock | Sole Placement Agent | August 12, 2016 |
| $43 million | Digimarc | Common Stock | Co-Manager | August 5, 2016 |
| $14 million | Chembio Diagnostics, Inc | Common Stock | Sole Book-Runner | July 29, 2016 |
| $10 million | Sevcon | Common Stock | Co-Placement Agent | July 7, 2016 |
| $90 million | bioscrip | Common Stock | Co-Manager | June 17, 2016 |
| $16 million | viveve | Common Stock | Joint Book-Runner | June 14, 2016 |
| $6 million | Air Industries Group | Convertible Preferred | Lead Placement Agent | May 26, 2016 |
| $100 million | Repligen | Convertible Notes | Co-Manager | May 19, 2016 |
| $19 million | Vertex Energy | Convertible Preferred | Sole Placement Agent | May 10, 2016 |
| $6 million | ImmuCell | Common Stock | Sole Manager | January 29, 2016 |
| $6 million | eMagin | Common Stock | Sole Placement Agent | December 18, 2015 |
| $19 million | Hydrogenics | Common Stock | Sole Book-Runner | December 11, 2015 |
| $230 million | Inphi | Convertible Notes | Co-Manager | December 3, 2015 |
| $676 million | Nuance | Convertible Notes | Co-Manager | December 2, 2015 |
| $144 million | | Convertible Notes | Co-Manager | November 11, 2015 |
| $6 million | neonode | Common Stock | Sole Manager | October 7, 2015 |
| $100 million | TravelCenters of America | Senior Notes | Co-Manager | October 1, 2015 |
| $5 million | Sysorex | Common Stock | Co-Manager | September 25, 2015 |
| $19 million | GigPeak | Common Stock | Co-Manager | August 21, 2015 |
| $13 million | Cyren | Common Stock | Sole Manager | August 12, 2015 |
| $4 million | SMTP | Common Stock | Sole Manager | August 7, 2015 |
| $16 million | EnteroMedics | Common Stock | Co-Manager | July 7, 2015 |
| $3 million | Transgenomic | Common Stock | Sole Placement Agent | July 7, 2015 |
| $25 million | Vertex Energy | Convertible Preferred | Sole Placement Agent | June 24, 2015 |
| $29 million | SuperCom | Common Stock | Co-Manager | June 18, 2015 |
| $104 million | HealthStream | Common Stock | Co-Manager | May 22, 2015 |
| $50 million | NeoPhotonics | Common Stock | Co-Manager | May 21, 2015 |
| $31 million | RLJ Entertainment | Convertible Preferred | Sole Placement Agent | May 20, 2015 |
| $150 million | Interactive Intelligence | Convertible Notes | Co-Manager | May 20, 2015 |
| $5 million | ARI | Common Stock | Sole Manager | May 7, 2015 |
| $344 million | Acadia Healthcare | Common Stock | Co-Manager | May 6, 2015 |
| $35 million | Alliqua | Common Stock | Co-Manager | April 29, 2015 |
| $35 million | Orchids Paper Products | Common Stock | Co-Manager | April 24, 2015 |
| $115 million | Trinity Biotech | Convertible Notes | Co-Manager | April 2, 2015 |
| $115 million | inContact | Convertible Notes | Co-Manager | March 25, 2015 |
| $13 million | Bovie | Common Stock | Sole Manager | March 12, 2015 |
| $69 million | CallidusCloud | Common Stock | Co-Manager | March 5, 2015 |
| $7 million | Transgenomic | Common Stock | Sole Manager | February 27, 2015 |
| $19 million | Orion | Common Stock | Sole Manager | February 20, 2015 |
| $12 million | Netlist | Common Stock | Sole Manager | February 19, 2015 |





# Craig-Hallum Convertible Offerings

▪ **Craig-Hallum has managed over 20 convertible offerings since 2013, raising over $2.8 billion for our clients**

### RECENT CONVERTIBLE TRANSACTIONS

| $28 million | $288 million | $6 million | $115 million | $19 million |
|---|---|---|---|---|
|  |  |  |  |  |
| Convertible Debt<br>Sole Placement Agent<br>**March 15, 2017** | Convertible Notes<br>Co-Manager<br>**September 7, 2016** | Convertible Preferred Stock<br>Lead Placement Agent<br>**May 26, 2016** | Convertible Debt<br>Co-Manager<br>**May 18, 2016** | Convertible Preferred Stock<br>Sole Placement Agent<br>**May 10, 2016** |
| $230 million | $676 million | $144 million | $25 million | $150 million |
|  |  |  |  |  |
| Convertible Debt<br>Co-Manager<br>**December 1, 2015** | Convertible Debt<br>Co-Manager<br>**November 30, 2015** | Convertible Debt<br>Co-Manager<br>**November 11, 2015** | Convertible Preferred Stock<br>Sole Placement Agent<br>**June 24, 2015** | Convertible Debt<br>Co-Manager<br>**May 20, 2015** |
| $31 million | $115 million | $115 million | $27 million | $245 million |
|  |  |  |  |  |
| Convertible Preferred Stock<br>Sole Placement Agent<br>**May 20, 2015** | Convertible Debt<br>Co-Manager<br>**April 2, 2015** | Convertible Debt<br>Co-Manager<br>**March 25, 2015** | Convertible Debt<br>Lead Placement Agent<br>**December 31, 2014** | Convertible Debt<br>Co-Manager<br>**August 13, 2014** |



# Craig-Hallum Senior Banker Biographies

**STEVE RICKMAN,** *Managing Director - Investment Banking M&A*

Mr. Rickman has over 20 years of experience advising growth companies on strategic M&A, private and public financings and strategic advisory. Mr. Rickman has completed over 70 transactions with an aggregate deal value of more than $4 billion.

Prior to joining Craig-Hallum, Mr. Rickman was a Managing Director with Excellerate Advisors where he focused on companies in the healthcare and technology sectors. Previously, Mr. Rickman was Head of Technology Investment Banking at Cantor Fitzgerald where he led a team of more than 20 investment bankers and research analysts. Mr. Rickman has also held previous positions including Head of the Internet and Software M&A team at Piper Jaffray and Senior Vice President with Dain Rauscher Wessels where he focused on healthcare technology and services for more than five years .

**Stanford University,** M.S., **University of Minnesota, Carlson School of Management**, M.B.A., with Distinction

**JOHN FLOOD,** *Managing Partner, Chairman*

Mr. Flood has over 30 years of capital markets, investment banking, and equity sales experience across a wide variety of sectors. He has overseen transactions totaling over $2.5 billion in value, assisting companies in accessing the institutional public market. Mr. Flood was a founding partner at Craig-Hallum in 1997 and has been with the company for more than 20 years. At Craig-Hallum, he has completed well over 100 equity offerings primarily for small and mid-cap companies. Prior to Craig-Hallum, Mr. Flood initiated the Institutional Equity efforts at Summit Investments and Miller, Johnson and Kuehn.

**University of Minnesota,** *B.S.*

**RICK HARTFIEL,** *Partner, Head of Investment Banking*

Mr. Hartfiel joined Craig-Hallum as the Director of Investment Banking in 2005. He brings over 25 years of investment banking experience focused on emerging growth companies. At Craig-Hallum, Rick has managed over 200 equity offerings (IPOs, follow-on offerings, registered directs and PIPEs) and M&A transactions.

Prior to joining Craig-Hallum, Rick was a Managing Director at Dain, Rauscher, Wessels — a national investment banking firm covering technology, consumer, and healthcare companies. Previously, Rick was an investment banker at Credit Suisse First Boston. Mr. Hartfiel has a B.A., *magna cum laude*, from Amherst College, and an MBA from Harvard Business School.

**Amherst College,** *B.A., magna cum laude,* **Harvard Business School,** *M.B.A.*



**Exhibit 3**

| Name | Address1 | Address2 | Address3 | City | State | Zip |
|---|---|---|---|---|---|---|
| Radians Wareham Holding, Inc. | Attn: Mike Tutor, CEO | 5305 Distriplex Farms | | Memphis | TN | 38141-0000 |
| Yellow and Roadway | P. O. Box 100129 | | | Pasadena | CA | 91355-0000 |
| WONEEL MIDAS LEATHERS | JL GEMBOR RAYA DESA PASIRJAYA | TANGERANG | | BANTEN, INDONESIA | | 15135-0000 |
| WINSPEED SPORTS SHANGHAI CO., LTD. | 858 MINGZHU ROAD | SHANGHAI | | China | | 00020-1702 |
| Windstream | PAETEC | P O Box 9001013 | | Louisville | KY | 40290-1013 |
| University of Milwaukee | P O Box 500 | University of Wisconsin - Milwaukee | | Milwaukee | WI | 53201-0000 |
| Tyco Integrated Security, LLC | P.O. Box 371967 | | | Pittsburgh | PA | 15250-7967 |
| TRI/AUSTIN, INC | P O BOX  207097 | | | DALLAS | TX | 75063-0000 |
| Three Part Advisors, LLC | P O Box 92698 | | | Southlake | TX | 76092-0000 |
| Synetra | 1110 E. State Highway 114 | Suite 200 | | Southlake | TX | 76092-0000 |
| Superior Printing, Inc. | P O Box 844550 | | | Los Angeles | CA | 90084-4550 |
| Stubbs, Alderton & Markiles, LLP | 15260 Ventura  Blvd | 20th Floor | | Sherman Oaks | CA | 91403-0000 |
| SPRING HILL INC | 9629 El Poche St. | | | South El Monte | CA | 91733-0000 |
| Skadden Arps Slate Meagher & Flom LLP | P O Box 1764 | | | White Plains | NY | 10602-0000 |
| Shur-Sales & Marketing, Inc. | 3830 S Windermere St. | | | Englewood | CO | 80110-0000 |
| Safeco Building Maintenance | 5013 Brandenburg Lane | | | The Colony | TX | 75056-0000 |
| Risk Consulting Partners | 24722 Network Place | | | Chicago | IL | 60673-1247 |
| Resources Global Professionals | P O BOX 740909 | | | LOS ANGELES | CA | 90074-0909 |
| PT SPORT GLOVE INDONESIA | Krandon Desa Pandowoharjo | Sleman | | Yogyakarta, Indonesia | | 55512-0000 |
| PT SEOK HWA INDONESIA | Room 1218, Krantz Techno Bldg. | 5442-1 Sang Dae Won-Dong, Sung Nam | | Kyung Gi-Do, Indonesia | | 00046-2819 |
| PT JJ GLOVES INDO | JL Ronggowarsito, Mlese, Ceper | Bonded Zone, Klaten | | Central Java, Indonesia | | 57463-0000 |
| Precision Testing Laboratories | POB 100268 | | | Nashville | TN | 37224-0000 |
| Pitney Bowes Credit Corp. | P.O.Box  371887 | | | Pittsburg | PA | 15250-7887 |
| Perry HVAC | 10000 North Central Expressway | Suite 400 | | Dallas | TX | 75231-0000 |
| Pacific Stock Transfer Company | 6725 Via Austi Pkwy | Suite 300 | | Las Vegas | NV | 89119-0000 |
| Office Depot Acct 31A | P.O. Box 88040 | | | Chicago | IL | 60680-1040 |
| Office Depot | PO Box 78004 | Dept 56 - 8302627096 | | Phoenix | AZ | 85062-8004 |
| nChannel, Inc. | 8760 Orion Place, Ste 210 | | | Columbus | OH | 43240-0000 |
| National Safety Council | P.O. Box 558 | | | Itasca | IL | 60143-0000 |
| NANTONG CHANGBANG GLOVES CO. | Flat/RM 1602 Chit Lee Comm | Bldg 30-36, Shau Kei Wan Road | | Hong Kong, China | | |
| MERCINDO GLOBAL MANUFAKTUR | JL. RAYA SEMARANG-BAWEN KM.29 | SEemerang, Central Java | | 50661, Indonesia | | |
| MARUSAN - MIMASU TSHUSHO CO. LTD. | NO 1 QUEEN' ROAD CENTRAL | HONG KONG | | CHINA | | |
| Levene, Neale, Bender, Yoo & Brill LLP | 10250 Constellation Blvd Ste. 1700 | | | Los Angeles | CA | 90067-0000 |
| KA HUNG GLOVE INUSTRIAL CO. LTD. | FUJIAN QUANZHOU JIACHENG LEATHER | CHI FENG ROAD, QUANZHOU CITY | | FUJIAN, 362000, China | | |
| Ginger Hill | 6524 Deseo Apt. 358 | | | Irving | TX | 75039-0000 |
| FedEx | PO Box 7221 | | | Pasadena | CA | 91109-7321 |
| Expeditors | 5757 W. Century Blvd. Ste. 200 | | | Los Angeles | CA | 90045-0000 |
| DRG Strategic, LLC - Bob Goldstein | P O BOX 191981 | | | Dallas | TX | 75219-0000 |
| Dival Safety & Supplies | 1721 Niagra Street | | | Buffalo | NY | 14207-0000 |
| DESUN GARMENTS, LTD. | 89/1, Birulia Road, Savar, Dhaka | Dhaka | | Savar-1340, Bangladesh | | |
| DESIGN GALLERY (PVT.) LTD. | PLOT #322/B, MEDICAL ROAD | HELAL MARKET, UTTARKHAN | | DHAKA-1230, Bangladesh | | |
| Daylight Transport | P O Box 93155 | | | Long Beach | CA | 90809-0000 |
| Commerce Technologies, Inc. | 25736 Network Place | | | Chicago | IL | 60673-1257 |
| Capital One Bank | P. O. BOX 1917 | | | Merrifield | VA | 22116-1917 |
| Business Systems Integrators, LLC | P O Box 495 | | | Lawson | MO | 64062-0000 |
| Broadridge | P.O. Box 416423 | | | Boston | MA | 02241-6423 |

| | | | | |
|---|---|---|---|---|
| BNSF | 75 Remittance Dr. Ste. 1748 | Chicago | IL | 60675-1748 |
| BIC ALLIANCE | P O Box 40166 | Baton Rouge | LA | 70835-0000 |
| BDO USA, LLP | P. O. BOX 677973 | Dallas | TX | 75267-7973 |
| Amster, Rothstein & Ebenstein, LLP | 90 Park Avenue | New York | NY | 10016-0000 |
| Advantage Media Services, Inc. | 29010 Commerce Center Drive | Valencia | CA | 91355-0000 |
| Account Temps | P.O. BOX 743295 | Los Angeles | CA | 90074-3295 |

# PACIFIC STOCK TRANSFER COMPANY

## PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION

### Security Holder Listing

**Certificates  All Stock Types    Active Shares as of 09/08/17**

| Shareholder | | No. of Shares | % Owned |
|---|---|---|---|
| CEDE & CO (FAST)<br>570 WASHINGTON BLVD<br>JERSEY CITY, NJ 07310 | | 55,552,267 | 64.97 |
| REBECCA D JARUS & SCOTT M JARUS TTEES<br>U/A DTD 10/19/2007<br>JARUS FAMILY FAMILY TRUST<br>938 DUCAN AVE<br>MANHATTAN BEACH, CA 90266-6626 | | 2,818,033<br>2,818,033 RESTRICTED | 3.30 |
| JARUS FAMILY TRUST U/A DTD 10/19/2007<br>938 DUNCAN AVE<br>MANHATTAN BEACH, CA 90266 | | 2,500,000<br>2,500,000 RESTRICTED | 2.92 |
| THE SASSOLA III FAMILY TRUST<br>7771 HERON COURT<br>GOLETA, CA 93117 | | 2,000,000<br>2,000,000 RESTRICTED | 2.34 |
| THE ORCUTT FAMILY TRUST<br>3221 N SAN SEBASTIAN DRIVE<br>TUSCON, AZ 85715 | | 2,000,000<br>2,000,000 RESTRICTED | 2.34 |
| *WILLIAM AISENBERG*<br>*3900 LEGACY TRAIL CIR*<br>*CARROLLTON, TX 75010* | *OFFICER/DIRECTOR* | *1,827,506*<br>*589,125 RESTRICTED* | *2.14* |
| EDUARD ALBERT JAEGER<br>443 CONCORD ST<br>EL SEGUNDO, CA 90245 | | 1,453,468<br>235,534 RESTRICTED | 1.70 |
| JAEGER FAMILY LLC<br>1408 CAMBRIDGE CROSSING<br>SOUTHLAKE, TX 76092 | | 1,365,272<br>1,365,272 RESTRICTED | 1.60 |
| RICHARD KRONMAN & MAUREEN KRONMAN REV<br>DTD 2/28/02<br>30111 HARVESTER RD<br>MAILBU, CA 90265 | | 1,000,000<br>1,000,000 RESTRICTED | 1.17 |
| JARUS FAMILY TRUST<br>938 DUNCAN AVE<br>MANHATTAN BEACH, CA 90266 | | 1,000,000<br>1,000,000 RESTRICTED | 1.17 |
| RHONDA HOFFARTH<br>462 CALLE DE ARAGON<br>REDONDO BEACH, CA 90277 | | 805,224<br>31,587 RESTRICTED | 0.94 |
| *DAVID L JACOBS*<br>*335 LEE HILL DRIVE*<br>*BOULDER, CO 80302* | *OFFICER/DIRECTOR* | *648,310*<br>*448,310 RESTRICTED* | *0.76* |
| SCOTT ALDERTON<br>19687 LOS ALIMOS ST | | 588,131<br>539,630 RESTRICTED | 0.69 |

# PACIFIC STOCK TRANSFER COMPANY

## PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION

**Security Holder Listing**

**Certificates  All Stock Types    Active Shares as of 09/08/17**

| Shareholder | | No. of Shares | % Owned |
|---|---|---|---|
| *CLAYTON WYOMING LLC*<br>*1364 NORTHPARK DRIVE*<br>*LAFAYETTE, CO 80026* | *OFFICER/DIRECTOR* | *531,855*<br>*365,188 RESTRICTED* | *0.62* |
| **EMIL IANNACCONE TTEE UA DTD 9/16/2010**<br>**EMIL IANNACCONE SEPERATE PROPERT TRUST**<br>**11855 WOODLEY AVE**<br>**GRANADA HILLS, CA 91344** | | **500,000**<br>**500,000 RESTRICTED** | 0.58 |
| **JEFFREY ORR**<br>**733 21ST ST**<br>**MERMOSA BEACH, CA 90254** | | **500,000**<br>**500,000 RESTRICTED** | 0.58 |
| **JEFFREY F GERSH & ARIE J GERSH LIVING TRUS**<br>**09/26/1991**<br>**5465 ROUND MEADOW RD**<br>**HIDDEN HILLS, CA 91302** | | **500,000**<br>**500,000 RESTRICTED** | 0.58 |
| **RICHARD KRONMAN & IAN MATTHEW TRUSTEES**<br>**KRONMAN MATTHEW & ASSOC DEFINED BENEFIT PLAN DT**<br>**1/1/99**<br>**30111 HARVESTER RD**<br>**MALIBU, CA 90265** | | **500,000**<br>**500,000 RESTRICTED** | 0.58 |
| *PATRICK W O'BRIEN*<br>*301 WHITMORE LANE*<br>*LAKE FOREST, IL 60045* | *OFFICER/DIRECTOR* | *440,821*<br>*174,155 RESTRICTED* | *0.52* |
| **MICHAEL A DIGREGORIO**<br>**1420 KINSGBORO COURT**<br>**WESTLAKE VILLAGE, CA 91362** | | **399,999**<br>**133,333 RESTRICTED** | 0.47 |
| *VANE CLAYTON*<br>*1364 NORTH PARK DRIVE*<br>*LAFAYETTE, CO 80026* | *OFFICER/DIRECTOR* | *398,950*<br>*398,950 RESTRICTED* | *0.47* |
| *CHARLES H GIFFEN*<br>*6000 ELBA PLACE*<br>*WOODLAND HILLS, CA 91367* | *OFFICER/DIRECTOR* | *387,077*<br>*187,077 RESTRICTED* | *0.45* |
| **V JOSEPH STUBBS**<br>**C/O STUBBS ALDERTON & MARKILES**<br>**15260 VENTURA BLVD 20TH FL**<br>**SHERMAN OAKS, CA 91403** | | **375,911**<br>**221,889 RESTRICTED** | 0.44 |
| **R D PETE BLOOMER**<br>**7542 CRESTVIEW DRIVE**<br>**LONGMONT, CO 80504** | | **361,291**<br>**361,291 RESTRICTED** | 0.42 |
| *MICHAEL ANTHONY DIGREGORIO TRUSTEE*<br>*U/A DTD 03-31-00* | *OFFICER/DIRECTOR* | *348,310*<br>*348,310 RESTRICTED* | *0.41* |

**PACIFIC STOCK TRANSFER COMPANY**

**PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION**

**Security Holder Listing**

Certificates  All Stock Types    Active Shares as of 09/08/17

| Shareholder | No. of Shares | % Owned |
|---|---:|---:|
| *THE DIGREGORIO REVOCABLE TRUST*<br>*1420 KINGSBORO CT*<br>*WESTLAKE VILLAGE, CA 91362* | | |
| **MURRAY MARKILES**<br>**C/O STUBBS ALDERTON & MARKILES**<br>**15260 VENTURA BLVD 20TH FLOOR**<br>**SHERMAN OAKS, CA 91403** | **327,410**<br>**221,889 RESTRICTED** | **0.38** |
| *JEFFREY D CORDES*<br>*1570 BENT CREEK DRIVE*          OFFICER/DIRECTOR<br>*SOUTHLAKE, TX 76092* | *243,817*<br>*243,817 RESTRICTED* | *0.29* |
| **ERIC JAEGER**<br>**1408 CAMBRIDGE CROSSING**<br>**SOUTHLAKE, TX 76092** | **239,051**<br>**145,765 RESTRICTED** | **0.28** |
| **JOHN MCILVERY**<br>**C/O STUBBS ALDERTON & MARKILES**<br>**15260 VENTURA BLVD 20TH FL**<br>**SHERMAN OAKS, CA 91403** | **210,615**<br>**120,442 RESTRICTED** | **0.25** |
| ALL IN THE BEHL FAMILY RLLP<br>37271 S STONEY CLIFF DR<br>TUCSON, AZ 85739 | 190,616 | 0.22 |
| JOSEPH D RYAN<br>1986 CLOVERDALE AVE<br>HIGHLAND PARK, IL 60035 | 190,000 | 0.22 |
| **JONATHAN HODES**<br>**C/O STUBBS ALDERTON & MARKILES**<br>**15620 VENTURA BLVD 20TH FL**<br>**SHERMANOAKS, CA 91403** | **187,509**<br>**106,083 RESTRICTED** | **0.22** |
| **MICHAEL GROSSMAN**<br>**5557 GROEHMANN LN**<br>**FREDERICKSBURG, TX 78624** | **166,419**<br>**166,419 RESTRICTED** | **0.19** |
| **MARC S PESTER**<br>**278 DALE RD**<br>**SHORT HILLS, NJ 07078** | **160,618**<br>**160,618 RESTRICTED** | **0.19** |
| MARK HAWKING<br>2278 CAMARILLAR DR<br>CAMARILLO, CA 93010 | 152,493 | 0.18 |
| FAMILY TRUST OF EARL G LUNCEFORD<br>8850 E FERNAN LAKE RD<br>COEUR DALENE, ID 83814 | 152,493 | 0.18 |
| B.A.T.B. LLC<br>5750 SOUTH BEECH CT | 152,493 | 0.18 |

# PACIFIC STOCK TRANSFER COMPANY

## PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION

### Security Holder Listing

**Certificates  All Stock Types    Active Shares as of 09/08/17**

| Shareholder | No. of Shares | % Owned |
|---|---:|---:|
| GREENWOOD VILLAGE, CO 80121 | | |
| | | |
| **SCOTT GALER** | **139,113** | **0.16** |
| **C/O STUBBS ALDERTON & MARKILES** | **73,859 RESTRICTED** | |
| **15260 VENTURA BLVD 20TH FL** | | |
| **SHERMAN OAKS, CA 91403** | | |
| | | |
| **SEAMARK FUND LP** | **134,333** | **0.16** |
| **223 WILMINGTON W CHESTER PIKE** | **134,333 RESTRICTED** | |
| **#115** | | |
| **CHADDS FORD, PA 19317** | | |
| | | |
| SPM CENTER LLC | 131,909 | 0.15 |
| 27909 SMYTH DR | | |
| VALENCIA, CA 91355 | | |
| | | |
| **GREG AKSELRUD** | **130,442** | **0.15** |
| **C/O STUBBS ALDERTON & MARKILES LLP** | **65,130 RESTRICTED** | |
| **15260 VENTURA BLVD 20TH FL** | | |
| **SHERMAN OAKS, CA 91403** | | |
| | | |
| **KEVIN DEBRE** | **127,411** | **0.15** |
| **C/O STUBBS ALDERTON & MARKILES LLP** | **70,040 RESTRICTED** | |
| **15260 VENRUA BLVD 20TH FL** | | |
| **SHERMAN OAKS, CA 91403** | | |
| | | |
| **THOMAS ELLIOTT** | **118,571** | **0.14** |
| **115 BROOKS AVE** | **118,571 RESTRICTED** | |
| **VENICE, CA 90291** | | |
| | | |
| EDWIN BALDRIDGE TTEE UA DTD 10/30/1992 EDW | 114,370 | 0.13 |
| BALDRIDGE DECLARATION TRUST | | |
| 605 SAN ANTONIA AVE | | |
| MANY LA, LA 71449 | | |
| | | |
| BRUCE G KLASS | 114,370 | 0.13 |
| 447 KENSINGTON DR | | |
| CORDILERA, CO 81632 | | |
| | | |
| RONALD D BLOOMER | 111,591 | 0.13 |
| 7542 CRESTVIEW DR | | |
| NIWOT, CO 80504 | | |
| | | |
| ROBERT MEOTTLE | 108,977 | 0.13 |
| 27909 SMYTH DR | | |
| VALENCIA, CA 91355 | | |
| | | |
| **DENNIS TORRES & AVERI TORRES** | **107,698** | **0.13** |
| **6779 LAS OLAS WAY** | **107,698 RESTRICTED** | |
| **MALIBU, CA 90265** | | |
| | | |
| **CATHERINE A SEAK** | **101,280** | **0.12** |
| **1643 OAKPOINT DR** | **101,280 RESTRICTED** | |

**PACIFIC STOCK TRANSFER COMPANY**

**PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION**

**Security Holder Listing**

**Certificates  All Stock Types    Active Shares as of 09/08/17**

| Shareholder | No. of Shares | % Owned |
|---|---:|---:|
| **WACONIA, MN 55387** | | |
| **MICHAEL B JOHNSON**<br>**7255 RADFORD AVE**<br>**N HOLLYWOOD, CA 91605** | **98,969**<br>**98,969 RESTRICTED** | **0.12** |
| PATRICK JUETTEN<br>11417 HASTINGS ST NE<br>BLAINE, MN 55449 | 96,719 | 0.11 |
| **DENNIS TORRES & AVERI TORRES TRUST**<br>**6779 LAS OLAS WAY**<br>**MAILBU, CA 90265** | **92,302**<br>**92,302 RESTRICTED** | **0.11** |
| **THOMAS W. MASON & LISA L. MASON JT TEN**<br>**6856 WISH AVENUE**<br>**LAKE BALBOA, CA 91406** | **78,969**<br>**78,969 RESTRICTED** | **0.09** |
| **DONALD P ELLIOTT**<br>**9400 E CLIFF AVE**<br>**#361**<br>**DENVER, CO 80231** | **78,969**<br>**78,969 RESTRICTED** | **0.09** |
| **HAROLD F SCHAFF & CHERYL A SCHAFF TTEES**<br>**SCHAFF TRUST DTD 1-17-03**<br>**780 GLEN ANNIE RD**<br>**GOLETA, CA 93114** | **78,969**<br>**78,969 RESTRICTED** | **0.09** |
| **SEGAL FAMILY TRUST**<br>**10100 SANTA MONICA BLVD #1300**<br>**LOS ANGELES, CA 90067** | **78,969**<br>**78,969 RESTRICTED** | **0.09** |
| STANLEY M RUMBOUGH JR<br>44 COCOANUT ROW STE B103<br>PALM BEACH, FL 33480 | 76,246 | 0.09 |
| KLEIN PARTNERS LTD<br>4973 CLUBHOUSE CT<br>BOULDER, CO 80301 | 76,246 | 0.09 |
| HORACE DUNBAR HOSKINS JR & ANN REID HOSK<br>7 PENENSULA RD<br>BELVEDERE, CA 94920 | 76,246 | 0.09 |
| GREAT PANDA INVESTMENT CO LLLP<br>1325 PITKIN AVE<br>SUPERIOR, CO 80027 | 76,246 | 0.09 |
| ROBERT F CHARLES JR<br>2955 PARK LAKE DR<br>BOULDER, CO 80301 | 76,246 | 0.09 |
| WILLIAM L BOETTCHER | 76,246 | 0.09 |

**Security Holder Listing**

Certificates  All Stock Types    Active Shares as of 09/08/17

| Shareholder | | No. of Shares | % Owned |
|---|---|---|---|
| 727 HAYS CIR<br>LONGMONT, CO 80501 | | | |
| MCDERMOTT & BULL<br>2 VENTURE<br>SUITE 100<br>IRVINE, CA 92618 | | 75,505<br>75,505 RESTRICTED | 0.09 |
| DANIEL SHELLEY WARD FAMILY TRUST DTD 12-2 | | 71,909<br>71,909 RESTRICTED | 0.08 |
| BROCK GANELES<br>41 W 72ND ST<br>APT 14A<br>NEW YORK, NY 10023 | | 69,853<br>69,853 RESTRICTED | 0.08 |
| RYAN AZLEIN<br>1137 Calle Elaina<br>Thousand Oaks, CA 91630 | | 69,414<br>47,750 RESTRICTED | 0.08 |
| STEVEN W TOWN<br>6301 E CRESTLINE AVE<br>GREENWOOD VILLAGE, CO 80111 | | 68,525<br>68,525 RESTRICTED | 0.08 |
| THOMAS W. MASON<br>6856 WISH AVENUE<br>LAKE BALBOA, CA 91406 | | 66,666<br>66,666 RESTRICTED | 0.08 |
| WILLIAM MECK<br>11027 LIMERICK AVENUE<br>CHATSWORTH, CA 91311 | | 64,356<br>64,356 RESTRICTED | 0.08 |
| TAMALPAIS PARTNERS<br>24 TAMALPAIS AVE<br>MILL VALLEY, CA 94941 | | 60,549<br>60,549 RESTRICTED | 0.07 |
| *THOMAS FELTON*<br>*2006 TOUCH GOLD COURT*<br>*ROWLETT, TX 75088* | *OFFICER/DIRECTOR* | *58,192*<br>*34,831 RESTRICTED* | *0.07* |
| GREGORY AKSELRUD<br>15260 VENTURA BLVD<br>20TH FL<br>SHERMAN OAKS, CA 91403 | | 56,838<br>56,838 RESTRICTED | 0.07 |
| XIN GUO<br>540 LAKE FOREST DR<br>COPPELL, TX 75019 | | 50,438 | 0.06 |
| TODD GITLIN<br>269 S BEVERY DR STE 1213<br>BEVERLY HILLS, CA 90212 | | 50,336<br>50,336 RESTRICTED | 0.06 |

# PACIFIC STOCK TRANSFER COMPANY

## PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION

### Security Holder Listing

**Certificates All Stock Types Active Shares as of 09/08/17**

| Shareholder | No. of Shares | % Owned |
|---|---:|---:|
| ARTHUR GERRICK<br>172 WILD LILAC<br>IRVINE, CA 92620 | 50,000 | 0.06 |
| **MICHAEL GRANT**<br>**222 ROUND HILL RD**<br>**TIBURON, CA 94920** | **48,539**<br>**48,539 RESTRICTED** | **0.06** |
| **THE WILLIAM J. & SEEMAH W. IDELSON FAMILY**<br>**DATED APRIL 29 1997**<br>**710 BROOKTREE ROAD**<br>**PACIFIC PALISADES, CA 90272** | **44,824**<br>**44,824 RESTRICTED** | **0.05** |
| **JAMES SEIBEL**<br>**1430 N HARPER AVE**<br>**#305**<br>**W HOLLYWOOD, CA 90046** | **43,334**<br>**43,334 RESTRICTED** | **0.05** |
| HUBERT L BROWN III & ANNABELLE BROWN FOW<br>& QUINTARD P COURTNEY III TRUSTEES<br>U/A DTD 12-07-07<br>H L BROWN JR CHARITABLE LEAD ANNUITY TRUST<br>PO BOX 2237<br>MIDLAND, TX 79702 | 38,123 | 0.04 |
| ROBERT H KEELEY & SANDRA D KEELEY JT TEN<br>PO BOX 240<br>HILLSIDE, CO 81232 | 38,123 | 0.04 |
| ENSCO INC<br>3110 FAIRVIEW PARK DR STE 300<br>FALLS CHURCH, VA 22042 | 38,123 | 0.04 |
| **ELI ARRIV**<br>**4340 COLETA RD**<br>**AGOURA, CA 91301** | **35,954**<br>**35,954 RESTRICTED** | **0.04** |
| **GLEN K INGALLS & RENEE PACHECO TTEES U/A**<br>**4-5-05 THE INGALLS PACHECO 2005 TRUST**<br>**747 ROSEMOUNT RD**<br>**OAKLAND, CA 94610** | **35,076**<br>**35,076 RESTRICTED** | **0.04** |
| **PETER SEAMANS**<br>**1360 WALNUT ST**<br>**#205**<br>**BOULDER, CO 80302** | **32,176**<br>**32,176 RESTRICTED** | **0.04** |
| **ANNALOUISE JAEGER & KEITH VERWOEST**<br>**532 PAUMAKUA PL**<br>**KAILUS, HI 96734** | **31,793**<br>**31,793 RESTRICTED** | **0.04** |
| **HEIDI JAEGER**<br>**26800 PACIFIC COAST HWY** | **30,710**<br>**30,710 RESTRICTED** | **0.04** |

**PACIFIC STOCK TRANSFER COMPANY**
**PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION**
**Security Holder Listing**

Certificates  All Stock Types     Active Shares as of 09/08/17

| Shareholder | No. of Shares | % Owned |
|---|---|---|
| **MALIBY, CA 90265** | | |
| | | |
| JOHN E ORCUTT & MARCIA ORCUTT JT TEN | 30,000 | 0.04 |
| 3221 N SAN SEBASTIAN DRIVE | | |
| TUSCON, AZ 85715 | | |
| | | |
| **KYLE EDLUND** | **29,954** | **0.04** |
| **3893 FAIRWAY DR** | **29,954 RESTRICTED** | |
| **WOODBURY, MN 55125** | | |
| | | |
| **JARUS FAMILY TRUST TR SCOTT M JARUS TTEE** | **26,667** | **0.03** |
| **D JARUS TTEE U/A DTD 10/19/2007** | **26,667 RESTRICTED** | |
| **938 DUCAN AVE** | | |
| **MANHATTAN BEACH, CA 90266** | | |
| | | |
| **GEMINI PARTNERS INC** | **26,667** | **0.03** |
| **10900 WILSHIRE BLVD** | **26,667 RESTRICTED** | |
| **STE 300** | | |
| **LOS ANGELES, CA 90024** | | |
| | | |
| **KNUTE LEE** | **25,887** | **0.03** |
| **9109 WILSHIRE COURT NE** | **25,887 RESTRICTED** | |
| **ALBUQUERQUE, NM 87122** | | |
| | | |
| VALORIE STANSBERRY | 25,318 | 0.03 |
| 3227 N RICHMOND | | |
| CHICAGO, IL 60618 | | |
| | | |
| **CHRIS JUETTEN** | **25,318** | **0.03** |
| **2906 NW ENDICOTT ST** | **25,318 RESTRICTED** | |
| **CAMAS, WA 98607** | | |
| | | |
| MATTHEW JUETTEN | 25,318 | 0.03 |
| 633 HAWKSBILL ISLAND DR | | |
| SATELLITE BEACH, FL 32937 | | |
| | | |
| MATTHEW LAUBERT | 23,361 | 0.03 |
| C/O IRONCLAD PERFORMANCE WEAR CORP | | |
| 1920 HUTTON COURT #300 | | |
| FARMERS BRANCH, TX 75234 | | |
| | | |
| **KATHERINE BERCI DEFEVERE TRUSTEE DEFEVE** | **22,622** | **0.03** |
| **UAD 9/28/98** | **22,622 RESTRICTED** | |
| **24200 ALBERS STREET** | | |
| **WOODLAND HILLS, CA 91367** | | |
| | | |
| **WILLIAM MECK & TERESA MECK JT TEN** | **20,000** | **0.02** |
| **11027 LIMERICK AVENUE** | **20,000 RESTRICTED** | |
| **CHATSWORTH, CA 91311** | | |
| | | |
| ROBERT C CLARK | 19,062 | 0.02 |
| 12151 WEST 32ND DR | | |
| WHEEATRIDGE, CO 80033 | | |

**PACIFIC STOCK TRANSFER COMPANY**

**PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION**

**Security Holder Listing**

**Certificates  All Stock Types    Active Shares as of 09/08/17**

| Shareholder | No. of Shares | % Owned |
|---|---|---|
| **THOMAS KENDALL**<br>**1112 MONTANA AVENUE # 716**<br>**SANTA MONICA, CA 90403** | **18,911**<br>**18,911 RESTRICTED** | **0.02** |
| **MELISSA DERBY**<br>**393 LAUREL AVENUE**<br>**NOVATO, CA 94945** | **16,809**<br>**16,809 RESTRICTED** | **0.02** |
| **DANIEL THOMAS GIEBER**<br>**PO BOX 7298**<br>**MENLO PARK, CA 94026** | **16,809**<br>**16,809 RESTRICTED** | **0.02** |
| LOUIS WHARTON<br>15260 VENTURA BLVD<br>20TH FLOOR<br>SHERMAN OAKS, CA 91403 | 15,051 | 0.02 |
| **PAMELA SULLIVAN**<br>**1682 HAYES STREET APT C**<br>**EUGENE, OR 97402** | **14,005**<br>**14,005 RESTRICTED** | **0.02** |
| **MICHAEL CASEY HOCH**<br>**291 BROADWAY**<br>**COSTA MESA, CA 92627** | **13,334**<br>**13,334 RESTRICTED** | **0.02** |
| STEPHEN GOODHUE<br>203 STAR CARLISLE<br>W AUSTRAILIA,,  6101<br>AUSTRAILIA | 13,333 | 0.02 |
| **JOANNA WALDEAR-LUCAS AS TTEE FBO THE JO**<br>**WALDEAR-LUCAS LIVING TRUST DTD 4-12-06**<br>**PO BOX 101**<br>**MALIBU, CA 90265** | **13,333**<br>**13,333 RESTRICTED** | **0.02** |
| **HAROLD F SCHAFF**<br>**780 GLEN ANNIE RD**<br>**GOLETA, CA 93114** | **13,333**<br>**13,333 RESTRICTED** | **0.02** |
| **BIRCH FAMILY TRUST**<br>**1435 OLIVE ST**<br>**SANTA BARBARA, CA 93101** | **13,333**<br>**13,333 RESTRICTED** | **0.02** |
| **KIM WOODWORTH & BILL WOODWORTH**<br>**101 VALLEY HILL RD**<br>**EXTON, PA 19401** | **13,000**<br>**13,000 RESTRICTED** | **0.02** |
| ETHAN AISENBERG<br>3900 LEGACY TRAIL CIR<br>CARROLLTON, TX 75010 | 12,000 | 0.01 |
| DAVID J COOK | 11,440 | 0.01 |

Case 17-alk-11655-MM Doc 47 Filed 09/29/17    Entered 09/29/17 12:13:35    Desc
Main Document    Page 54 of 57

| Shareholder | No. of Shares | % Owned |
|---|---|---|
| 2163 LIMA LOOP PMB 071156 LAREDO, TX 78045 | | |
| CINDY MATTHEWS 6725 WHALEY DR BOULDER, CO 80303 | 11,440 | 0.01 |
| **BRIAN SHEENY 11711 DARLINGTON AVE UNIT 7 LOS ANGELES, CA 90049** | **10,126** **10,126 RESTRICTED** | **0.01** |
| CHARLES E FRISCO JR 12749 Norwalk Blvd. Ste 100 Norwalk, CA 90650 | 9,999 | 0.01 |
| **THE ELLEN IDELSON TRUST DATED MARCH 20 2 710 BROOKTREE ROAD PACIFIC PALISADES, CA 90272** | **8,966** **8,966 RESTRICTED** | **0.01** |
| DAVID G HILL 1712 PEARL ST BOULDER, CO 80302 | 7,622 | 0.01 |
| JAMES R YOUNG 2009 RIVERVIEW DR BERTHOUD, CO 80513 | 7,622 | 0.01 |
| ED WETHERBEE 7269 SIENA WAY BOULDER, CO 80301 | 5,796 | 0.01 |
| CHRISTOPHER M HAZLITT 1063 Mapleton Avenue Boulder, CO 80304 | 5,716 | 0.01 |
| **STEVE FEDEA 2040 W BELMONT #201 CHICAGO, IL 60618** | **5,061** **5,061 RESTRICTED** | **0.01** |
| CHARLES E FRISCO JR 8135 FLORENCE AVENUE SUITE 101 DOWNEY, CA 90240 | 5,000 | 0.01 |
| RONALD S WEAVER MD 536 PALISADES AVENUE SANTA MONICA, CA 90402 | 5,000 | 0.01 |
| JOE WORDEN 4335 FOX CIRCLE MESA, AZ 85205 | 3,292 | 0.00 |

PACIFIC STOCK TRANSFER COMPANY
Case 16-11501-CSS  Doc 481-1  Filed 09/29/17  Entered 09/29/17 12:13:35  Desc
Main Document  Page 55 of 57
PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION
Security Holder Listing
9/14/17
2:13 pm
Page 11 of 12

Certificates  All Stock Types    Active Shares as of 09/08/17

| Shareholder | No. of Shares | % Owned |
|---|---|---|
| **KEALA STANFILL**<br>**12049 SWANUKER TERR**<br>**BEAVERTON, OR 97007** | **3,157**<br>**3,157 RESTRICTED** | **0.00** |
| **STUBBS ALDERTON & MARKILES LLP**<br>**15260 VENTURA BLVD**<br>**26TH FL**<br>**SHERMAN OAKS, CA 91403** | **3,123**<br>**3,123 RESTRICTED** | **0.00** |
| ANTHONY KEATS<br>15260 VENTURA BLVD<br>20TH FLOOR<br>SHERMAN OAKS, CA 91403 | 2,590 | 0.00 |
| TARBY BRYANT<br>4 HAWTHORNE CIR<br>SANTA FE, NM 87506 | 2,434 | 0.00 |
| CHERYL WASHINGTON<br>1920 HUTTON CT<br>STE 300<br>FARMERS BRANCH, TX 75234 | 2,000 | 0.00 |
| BARBARA ASHTON<br>2417 LESTER AVENUE<br>CLOVIS, CA 93619 | 2,000 | 0.00 |
| MARK W FISCHER<br>285 IROQUOIS DR<br>BOULDER, CO 80303 | 1,905 | 0.00 |
| KONRAD GATIEN<br>15260 VENTURA BLVD<br>20TH FLOOR<br>SHERMAN OAKS, CA 91403 | 1,884 | 0.00 |
| REYHEENA EIDARIUS<br>23436 CAMINITO VALLE<br>LAGUNA HILLS, CA 92563 | 1,500 | 0.00 |
| MIKE SALOMON<br>1440 E 1st Street Ste. 100<br>SANTA ANA, CA 92701 | 1,313 | 0.00 |
| **NATASHA H BEN**<br>**104 Saratoga Drive**<br>**Belle Chasse, LA 70037** | **1,079**<br>**1,079 RESTRICTED** | **0.00** |
| **STEVEN C EARNSHAW**<br>**5679 POLAR WAY**<br>**PARK CITY, UT 84098** | **16**<br>**16 RESTRICTED** | **0.00** |

# PACIFIC STOCK TRANSFER COMPANY
## PS211 - IRONCLAD PERFORMANCE WEAR CORPORATION
### Security Holder Listing

**Certificates  All Stock Types      Active Shares as of 09/08/17**

| Shareholder | No. of Shares | % Owned |
|---|---|---|
| **Total  Reported Shares for 135 Shareholders** | **85,500,228** | **100%** |

# PROOF OF SERVICE OF DOCUMENT

1

2  I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business
address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

3  A true and correct copy of the foregoing document entitled **APPLICATION OF DEBTORS AND
DEBTORS IN POSSESSION TO EMPLOY CRAIG-HALLUM CAPITAL GROUP LLC AS FINANCIAL
4  ADVISOR PURSUANT TO 11 U.S.C. § 327 WITH COMPENSATION PURSUANT TO 11 U.S.C. §
328; DECLARATION OF STEVE RICKMAN IN SUPPORT THEREOF** will be served or was served **(a)**
5  on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner
stated below:

6

7  **1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to
controlling General Orders and LBR, the foregoing document will be served by the court via NEF and
hyperlink to the document. On **September 29, 2017**, I checked the CM/ECF docket for this bankruptcy
8  case or adversary proceeding and determined that the following persons are on the Electronic Mail
Notice List to receive NEF transmission at the email addresses stated below:

9
- Ron Bender    rb@lnbyb.com
10
- Cathrine M Castaldi    ccastaldi@brownrudnick.com
- Russell Clementson    russell.clementson@usdoj.gov
11
- Aaron S Craig    acraig@kslaw.com, lperry@kslaw.com
- Monica Y Kim    myk@lnbrb.com, myk@ecf.inforuptcy.com
12
- Krikor J Meshefejian    kjm@lnbrb.com
- Tania M Moyron    tania.moyron@dentons.com, chris.omeara@dentons.com
13
- S Margaux Ross    margaux.ross@usdoj.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
14
- Sharon Z. Weiss    sharon.weiss@bryancave.com, raul.morales@bryancave.com

15  **2.  SERVED BY UNITED STATES MAIL**: On **September 29, 2017**, I served the following persons
and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a
16  true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid,
and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u>
17  <u>completed</u> no later than 24 hours after the document is filed.

18                                                        ☐  *Service information continued on attached page*

19  **3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR
EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR,
20  on **September 29, 2017**, I served the following persons and/or entities by personal delivery, overnight
mail service, or (for those who consented in writing to such service method), by facsimile transmission
21  and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or
overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

22  ***Served via Attorney Service***
Hon. Martin R. Barash
23  United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
24  Woodland Hills, CA 91367

25  I declare under penalty of perjury under the laws of the United States of America that the foregoing is
true and correct.
26

27  September 29, 2017          Jason Klassi                    */s/ Jason Klassi*
    *Date*                             *Type Name*                      *Signature*

28

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                            **F 9013-3.1.PROOF.SERVICE**