BROWN RUDNICK LLP
CATHRINE M. CASTALDI, #156089
ccastaldi@brownrudnick.com
2211 Michelson Drive, 7th Floor
Irvine, California 92612
Telephone:    (949) 752-7100
Facsimile:    (949) 252-1514

Proposed Attorneys for OFFICIAL COMMITTEE
OF UNSECURED CREDITORS

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation,<br><br>Debtor and Debtor in Possession. | Lead Case No.: 1:17-bk-12408-MB<br><br>Jointly administered with: 1:17-bk-12409-MB<br><br>Chapter 11 Cases |
| In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation,<br><br>Debtor and Debtor in Possession. | **OPPOSITION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364, AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF** |
| ☒ Affects both Debtors<br><br>☐ Affects Ironclad Performance Wear Corporation, a California corporation only<br><br>☐ Affects Ironclad Performance Wear Corporation, a Nevada corporation only | DATE:    October 6, 2017<br>TIME:    10:00 A.M.<br>CTRM:    303 |

# **TABLE OF CONTENTS**

PAGE

1.    PRELIMINARY STATEMENT ........................................................................... 2

2.    BACKGROUND .............................................................................................. 3

    A.    The Chapter 11 Cases ......................................................................... 3

    B.    DIP Loan Terms ................................................................................. 4

3.    ARGUMENT ................................................................................................... 5

    A.    Automatic Termination of the Automatic Stay Unjustifiably Threatens These
         Estates ............................................................................................. 6

    B.    The November 15th Sale Order Milestone Should be Extended. ............... 7

    C.    Additional DIP Loan Issues ................................................................. 9

4.    CONCLUSION ............................................................................................... 10

i

1        The Official Committee of Unsecured Creditors (the "Committee") of Ironclad

2    Performance Wear Corporation, a California corporation ("Ironclad California"), in the jointly

3    administered chapter 11 cases (the "Chapter 11 Cases") of Ironclad California and Ironclad

4    Performance Wear Corporation, a Nevada corporation (collectively "Debtors", "Ironclad", or the

5    "Company"), in the above-captioned bankruptcy case submits its opposition to *Debtors'*

6    *Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtors To (A) Obtain*

7    *Postpetition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 And 364, And (B) Utilize Cash*

8    *Collateral Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (II) Granting Adequate Protection*

9    *Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (III) Scheduling A Final Hearing Pursuant To*

10   *Bankruptcy Rules 4001(B) And 4001(C); And (IV) Granting Related Relief* [Docket No. 10] (the

11   "DIP Motion") filed by Debtors as follows:[1]

12   1.        PRELIMINARY STATEMENT

13       The Debtors apparently believe that the DIP Loan is necessary and that the terms provided

14   by Radians are preferable to a contested cash collateral request.  While the Committee supports the

15   Debtors' request, the Committee is concerned that some of the terms of the proposed DIP Loan

16   favor Radians—the DIP Lender and Stalking Horse Bidder— and pose a significant risk of

17   diminishing or even eliminating unsecured creditor recoveries.

18       The Committee is most concerned with rigid milestones and onerous default provisions

19   contained in the proposed DIP Final Order and DIP Loan Agreement, which, in the aggregate,

20   jeopardize (i) Ironclad's existence as a going concern, (ii) the full repayment of unsecured

21   creditors, and (iii) potential distributions to equity.  Much of the Committee's trepidation stems

22   from the extraordinary powers Radians seeks from this Court; namely, the authority to terminate

23   the automatic stay to pursue far-reaching remedies following an Event of Default under the DIP

24   / / /

25   / / /

26   / / /

27

28   [1]        Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the DIP Motion.

1237056 v2-iManDB-034260/0001

1  Loan Agreement.[2]  As described below, the Events of Default are broadly defined and easily

2  triggered.

3  2.    BACKGROUND

4      A.    The Chapter 11 Cases

5      On September 8, 2017 (the "Petition Date"), each of the Debtors filed voluntary petitions

6  for relief under Chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors continue

7  to operate and manage their businesses as debtors in possession.  Simultaneous with the filing of

8  these Chapter 11 Cases, and also on the Petition Date, the Debtors executed an asset purchase

9  agreement (the "APA") with Radians Wareham Holding, Inc. ("Radians" or the "Stalking Horse")

10  for substantially all of Ironclad's assets.

11      On the Petition Date, the Debtors filed, among other things: (i) *the Omnibus Declaration of*

12  *L. Geoff Greulich in Support of Debtors' Emergency "First Day" Motions* [Docket No. 6] (the

13  "Greulich Declaration"); (ii) the Motion; and (iii) the *Debtors' Motion For An Order: (1)*

14  *Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective*

15  *Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures, And Stalking*

16  *Horse Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested Parties; And*

17  *(4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest*

18  *Bidder*[Docket No. 10] (the "Bidding Procedures Motion").

19      As described more fully in the DIP Motion, the Debtors have obtained a commitment from

20  Radians to provide DIP Financing in a principal amount of up to $2 million (the "DIP Loan" or

21  "DIP Financing"), pursuant to an agreement dated September 8, 2017 (the "DIP Loan

22  Agreement").

23      On September 13, 2017, the Court issued its *Interim Order: (I) Authorizing the Debtors' to*

24  *(A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (B)*

25  *Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; (II) Granting Adequate*

---

26

27  [2]      The Committee is in conversation with the Debtors, Radians, and the Official Committee of Equity Security
        Holders (the "Equity Committee") in an effort to resolve this objection but was unable to do so prior to the
28      DIP Motion objection deadline.

1237056 v2-iManDB-034260/0001

*Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* [Docket No. 31] (the "First Interim DIP Order").

On September 27, 2017, the Court issued its *Second Interim Order: (I) Authorizing the Debtors' to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362 and 364, and (B) Utilize Cash Collateral Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(B) and 4001(C); and (IV) Granting Related Relief* [Docket No. 70] (the "Second Interim DIP Order"). On September 28, 2017, the Court entered an Order (the "Bidding Procedures Order") approving the Bidding Procedures Motion. *See* Docket No. 71.

B.    DIP Loan Terms

The proposed DIP Order and the DIP Loan Agreement include the following, *inter alia*, Events of Default:

- Borrowers shall institute any proceeding or investigation or support the same by any other Person who may challenge the status, validity, perfection or priority of the liens on the Collateral created by the Loan Documents, or the Financing Order, securing the Obligations;[3]
- the entry of an order staying, reversing, or vacating the Credit Advances, any Liens securing the Obligations (or the validity or first priority status thereof) or the Financing Order;[4]
- the entry of an order granting any other super-priority claim or Lien equal or superior in priority to the Lien securing the Obligations granted to Radians, other than the Carve Out, without Radians' prior written consent;[5]
- the failure of Borrowers to have the Bankruptcy Court enter an order not later than November 15, 2017 or such later date as may be agreed upon in writing by the parties hereto (the "Sale Order") approving a sale of substantially all of Borrower's assets and providing for the immediate repayment in full of the Obligations from the proceeds of such sale;[6] and

---

[3]    See DIP Loan Agreement, Art. X, at § 10.1 (f)

[4]    *Id.* at § 10.1(k).

[5]    *Id.* at § 10.1(j).

[6]    *Id.* at § 10.1(n).

4

- the failure of the Debtors to obtain (i) entry of the Interim Financing Order by the Bankruptcy Court in form and substance acceptable to Radians in its sole and absolute discretion within five (5) business days of the Petition Date, and (ii) entry of the Final Financing Order within thirty (30) days of the Petition Date.[7]

Three business days after Radians notifies the Debtors of the occurrence of an Event of Default,[8] the automatic stay immediately terminates, and Radians is authorized to exercise a wide array of remedies, including:

- declare all of the outstanding DIP Loan and the PreBankruptcy Secured Debt due and payable;[9]
- enforce all liens and security interests in the Pre-Petition Collateral and the Collateral;[10]
- institute proceedings to enforce payment of the DIP Loan and the PreBankruptcy Secured Debt;[11]
- terminate Radians' obligation to make an additional Credit Advance;[12] and
- exercise any other remedies and take any other actions available to it at law, in equity, under the Post-Petition Note, the Pre-Bankruptcy Secured Debt, the Bankruptcy Code, other applicable law or pursuant to this Order.[13]

Where, as here, the Debtor and Radians agree that Radians is adequately protected by a significant equity cushion, the remedy of immediate relief from the automatic stay premised on the Events of Default is draconian.

3.    ARGUMENT

To obtain postpetition, debtor-in-possession financing under Bankruptcy Code Section 364(d), a debtor must show, among other things, that the terms of the financing are fair, reasonable, and adequate. *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990).

---

[7] *Id.* at § 10.1(o).

[8] The Debtors may also file an emergency motion with the Court during the Default Notice Period to challenge the Event of Default. *See* Second Interim DIP Order, at p. 9.

[9] *See* Proposed Final DIP Order at ¶ (j)(i).

[10] *See id.* at ¶ (j)(ii).

[11] *See id.* at ¶ (j)(iii).

[12] *See id.* at ¶ (j)(iv).

[13] *See id.* at ¶ (j)(v).

5

1  The Court should only approve the proposed DIP Loan to the extent it is "in the best interests of

2  the general creditor body." *See In re Roblin Indus.*, 52 B.R. 241, 244 (Bankr. W.D.N.Y. 1985).

3          Conversely, where, as here, the proposed DIP Loan favors a secured creditor at the

4  expense of the Debtors' general creditor body, it should not be approved. *See Resolution Trust*

5  *Corp. v. Official Unsecured Creditors Comm. (In re Defender Drug Stores, Inc.)*, 145 B.R. 312,

6  317 (B.A.P. 9th Cir. 1992) ("Debtors in possession generally enjoy little negotiating power with a

7  proposed lender, particularly when the lender has a prepetition lien on cash collateral. As a result,

8  lenders often exact favorable terms that harm the estate and creditors."); *In re Tamarack Resort,*

9  *LLC*, Case No. 09-03911-TLM, 2010 WL 4117459, at *10 (Bankr. D. Idaho Oct. 19, 2010)

10  (noting that in connection with obtaining postpetition financing, the debtor-in-possession "often

11  lacks significant negotiating leverage and that creditors may be tempted to overreach"); *A&K*

12  *Endowment, Inc. v. Gen. Growth Props., Inc. (In re Gen. Growth Props., Inc.*, 423 B.R. 716, 725

13  (S.D.N.Y. 2010) ("[P]roposed financing will not be approved where it is apparent that the purpose

14  of the financing is to benefit a creditor rather than the estate.") (quoting *Ames*, 115 B.R. at 39)).

15          A.    <u>Automatic Termination of the Automatic Stay Unjustifiably Threatens These</u>

16              <u>Estates</u>

17          Pursuant to the proposed Final DIP Order, the occurrence of an Event of Default before the

18  Sale Hearing will unnecessarily threaten what the Debtors have previously termed as near-certain

19  full repayment of unsecured creditor claims. Upon the occurrence of an Event of Default, Radians

20  will provide the Debtors a written notice specifying "the effective date of the default, and a

21  description, nature and scope of the default." *See* Second Interim DIP Order at 9. If the Debtors

22  fail to cure the default or file an emergency motion with the Court within three business days

23  contesting the occurrence of the alleged default, the automatic stay immediately terminates and

24  Radians can exercise a multitude of remedies, including foreclosing on its Collateral and

25  demanding immediate repayment of the DIP Loan and the PreBankruptcy Secured Debt.[14] *Id.*

---

26

27  [14]    An Event of Default also triggers the Default Interest Rate, which equals 18% per annum. *See* DIP Loan
        Agreement, Art. II., § 2.3(a). The Default Interest Rate—which is *800 basis points higher* than the standard

28      rate—is exceedingly punitive and is significantly above-market when compared to similar DIP loans recently
        approved by bankruptcy courts. *See, e.g., In re American Apparel, LLC*, Case No. 16-12551 (BLS) (Bankr.

1    The Radians stalking horse bid is premised on the Debtors having significant equity.

2    Under these circumstances, the Committee questions why Radians requires the authority to

3    terminate the automatic stay and pursue collection remedies, a course that will almost certainly

4    destroy any value in these estates beyond repayment of the recently acquired Revolving Loan.

5    The Debtors' own investment banker testified that acquisitive interest has been lively, and all

6    interested parties expect the consummation of a sale that will generate significant proceeds.  In

7    other words, this is not a case where the secured lender must quickly exercise its remedies or the

8    value of its collateral will plummet.  Rather, this is a circumstance where Radians has executed a

9    strategy to deprive the Debtors of cash and then offer them a lifeline at a steep mark-up.

10    Two observations are beyond dispute: First, termination of the automatic stay, without

11    affording the Committee, the opportunity to contest whether termination of the stay is appropriate,

12    cannot be in the best interest of these estates.  *See Roblin Indus.*, 52 B.R. at 244.  Terminating the

13    automatic stay without reference to the protections inherent in Bankruptcy Code Section 362 will

14    foreclose any opportunity of realizing the going concern value of the Debtors' business.  Second,

15    it is clear that this provision was included in the proposed Final DIP Order at Radians' insistence.

16    As the *Resolution Trust* court sagely cautioned, given the inequality in bargaining power between

17    a debtor and DIP lender, "lenders often exact favorable terms that harm the estate and creditors."

18    *Resolution Trust*, 145 B.R. at 317.  The proposed termination of the automatic stay just three

19    business days after an Event of Default is exactly that: a Radians-favorable term that harms these

20    estate and creditors.  This Court should not grant the DIP Motion unless the Debtors, the

21    Committee, and the Equity Committee can contest Radians' relief from stay request in the

22    ordinary course.

23    B.    The November 15th Sale Order Milestone Should be Extended.

24    The proposed DIP Loan should not be approved until the requirement that the Court enters

25    the Sale Order by November 15, 2017 is removed.  *See* DIP Loan Agreement, Art. X, § 10.1(n).

26

27    D. Del. Nov. 14, 2016) (200 basis point spread); *In re American Gilsonite Co., Inc.*, Case No. 16-12316
(CSS) (Bankr. D. Del. Oct. 24, 2016) (200 basis points spread); *In re ITT Educational Srvs Inc.*, Case No. 16-
28    07207 (JMC) (Bankr. S.D. Ind. Sept. 16, 2016) (200 basis point spread).

7

1  Under the proposed DIP Loan Agreement, Radians is authorized to pursue a multitude of

2  remedies—including foreclosing on its collateral—beginning on November 20, 2017 (three

3  business days following the Sale Order Event of Default). In the process, Radians would claim

4  the most valuable of the Debtors' assets, effectively barring any possibility of a going concern

5  sale.

6      It is wholly conceivable that the Debtors may determine that a prospective overbidder

7  offers the highest and best bid. However, given the compressed timeline between the Auction

8  (October 27) and the Sale Order Milestone (November 15), it is also possible that the Auction

9  winner and the Debtors are unable to obtain Court approval of the Sale Order by November 15.

10 As written, the DIP Loan Agreement authorizes Radians to foreclose on the very collateral

11 committed to the Auction winner solely because it took longer than projected to obtain Court

12 approval of the Sale Order. Neither the Debtors nor Radians has articulated why scores of jobs,

13 repayment of unsecured creditors, and substantial distribution to equity holders should all be

14 jeopardized because an artificial deadline is not met.

15     The Sale Order Milestone is particularly inappropriate considering Radians is already

16 protected vis-à-vis the Break-Up Fee granted in the Bidding Procedures Order. Specifically, if the

17 Debtors name an entity other the Radians the Auction's winner, Radians will receive a $500,000

18 Break-Up Fee. *See* Bidding Procedures Order at ¶ 5(g). Thus, Radians could conceivably both

19 collect a $500,000 Break-Up Fee, and commence foreclosure proceedings if the November 15

20 Sale Order Milestone is not met in connection with an Auction overbidder. Neither the Debtors

21 nor Radians has articulated a reason for this artificial yet prejudicial deadline.

22     The Committee proposes an alternative that protects Radians' rights but does not

23 jeopardize the continuation of the Debtors' business or the recoveries of their stakeholders. The

24 DIP Loan Agreement provides that the DIP Loan's Maturity Date is January 1, 2018. The

25 Committee believes it is far more sensible to align the Sale Order Milestone with the Maturity

26 Date and require entry of the Sale Order by January 1, 2018. The Debtors anticipate that the DIP

27 Loan will be repaid from sale proceeds of the Debtors' assets. Accordingly, there is no reason to

28 mandate that the event that is expected to fund the DIP Loan's repayment (the sale) precede the

8

1    Maturity Date by 46 days.  The Debtors and other estate professionals could use that time to

2    negotiate the best and fairest deal for these estates, without the arbitrary pressure of a Sale Order

3    Milestone that has no economic rationale.

4        C.    Additional DIP Loan Issues

5        There are several other Events of Default that would trigger automatic relief from stay, or

6    otherwise jeopardize the reorganization of the Debtors.

7        The DIP Loan Agreement includes as an Event of Default "the entry an order staying,

8    reversing, or vacating the Credit Advances, any Liens securing the Obligations (or the validity or

9    first priority status thereof) or the Financing Order."  DIP Loan Agreement, Art. X, § 10.1(k).

10   This provision should contain an express exemption for challenges initiated by the Committee, the

11   Equity Committee, individual creditors, and equity security holders, so that only the Borrower is

12   precluded from instituting such challenge.

13       At Article X, § 10.1 (f), the DIP Loan Agreement appears to preclude the Debtors from

14   cooperating with any other Person (including the Committee) who may challenge the status,

15   validity, perfection or priority of the Liens on the Collateral created by the Loan Documents, or

16   the Financing Order securing the Obligations.  The Committee understands that the Debtors may

17   not prosecute such actions, but the Debtor may not be prohibited from complying with its

18   fiduciary duties in providing information sought by third parties who seek to challenge the

19   Radians' loan.

20       Finally, at Article XI, § 11.13, the Debtors propose releases of the DIP Lender and their

21   affiliates—just weeks into these cases—from liability.  The release language provides,

22       Borrowers...and on behalf of each of its respective successors and assigns, hereby
         waives, releases and discharges [Radians] and all of their directors, officers,
23       employees, attorneys and agents, from any and all claims, demands, actions or
         causes of action on or before the date hereof and arising out of or in any way
24       relating to this Agreement, the Loan Documents and any other documents,
         instruments, agreements, dealings or other matters connected with this Agreement,
25       including, without limitation, all known and unknown matters, claims, transactions
         or things occurring on or prior to the date hereof relating to this Agreement.
26

27   / / /

28   / / /

9

1  DIP Loan Agreement, Art. XI, § 11.13.  Such broad releases of estate claims and causes of action

2  are appropriate, if ever, only as part of a chapter 11 plan—not as part of a financing order and not

3  only weeks into a debtor's case.  *See, e.g.*, *In re Braniff Airways*, 700 F.2d 935, 940 (5th Cir.

4  1983) (for releases to be permissible, "the parties and the district court must scale the hurdles

5  erected in Chapter 11").  No evidence has been introduced justifying such far-reaching releases at

6  this early juncture.

7      These cases are moving at a rapid clip, and the Committee appreciates Radians'

8  participation, but reasonable safeguards must remain in place to preserve the interests of unsecured

9  creditors and equity security holders in a case where both the Debtors and Radians agree that the

10  proposed sale should make Radians whole and provide a substantial recovery for unsecured

11  creditors and equity security holders.  The Committee remains hopeful that the Debtors'

12  projections will be realized, but the Court must ensure that preventative measures are taken to

13  protect the Debtors' value.

14  4.    CONCLUSION

15      For the foregoing reasons, the Committee respectfully requests that the Court (i) deny the

16  DIP Motion (or condition approval on modifications consistent with this Objection); and (ii) grant

17  such other and further relief as is just and proper.

18

19  DATED: October 3, 2017                    Respectfully submitted,

20                                            BROWN RUDNICK LLP

21                                            By: _____

22                                            CATHRINE M. CASTALDI
                                              Proposed Attorneys for OFFICAL COMMITTEE
23                                            OF UNSECURED CREDITORS

24

25

26

27

28

1237056 v2-iManDB-034260/0001

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
2211 Michelson Drive, Suite 700, Irvine, CA 92612

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN INTERIM ORDER: (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362 AND 364, AND (B) UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; (III) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND 4001(c); AND (IV) GRANTING RELATED RELIEF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 3, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL:**
On (*date*) October 3, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Ironclad Performance Wear Corporation,
a California corporation
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403

Ironclad Performance Wear Corporation,
a Nevada corporation
15260 Ventura Blvd., 20th Floor
Sherman Oaks, CA 91403

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 3, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Martin R. Barash
U.S. Bankruptcy Court
21041 Burbank Blvd.
Woodland Hills, CA 91367

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| October 3, 2017 | JEANNIE MENDEZ | *Jeannie Mendez* |
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) [con't]:**

| | |
|---|---|
| Ron Bender | rb@lnbyb.com |
| Cathrine M Castaldi | ccastaldi@brownrudnick.com |
| Russell Clementson | russell.clementson@usdoj.gov |
| Aaron S Craig | acraig@kslaw.com, lperry@kslaw.com |
| Monica Y Kim | myk@lnbrb.com, myk@ecf.inforuptcy.com |
| Krikor J Meshefejian | kjm@lnbrb.com |
| Tania M Moyron | tania.moyron@dentons.com, chris.omeara@dentons.com |
| S Margaux Ross | margaux.ross@usdoj.gov |
| United States Trustee (SV) | ustpregion16.wh.ecf@usdoj.gov |
| Sharon Z. Weiss | sharon.weiss@bryancave.com, raul.morales@bryancave.com |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**