RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Email:  rb@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com

Proposed Counsel for Chapter 11 Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a California corporation,<br><br>     Debtor and Debtor in Possession.<br>_____<br>In re:<br><br>IRONCLAD PERFORMANCE WEAR CORPORATION, a Nevada corporation,<br><br>     Debtor and Debtor in Possession.<br>_____<br><br>☒  Affects both Debtors<br><br>☐ Affects Ironclad Performance Wear Corporation, a California corporation only<br><br>☐ Affects Ironclad Performance Wear Corporation, a Nevada corporation only | Lead Case No.: 1:17-bk-12408-MB<br><br>Jointly administered with:<br>1:17-bk-12409-MB<br><br>(Ironclad Performance Wear Corporation, a Nevada corporation)<br><br>Chapter 11 Cases<br><br>**APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY STUBBS ALDERTON & MARKILES, LLP AS SPECIAL CORPORATE AND SECURITIES, SPECIAL TRADEMARK, AND SPECIAL LITIGATION, COUNSEL PURSUANT TO 11 U.S.C. §§ 327(e) AND 330; DECLARATION OF SCOTT ALDERTON, ESQ. IN SUPPORT THEREOF**<br><br>[No Hearing Required Unless Requested Pursuant to Local Bankruptcy Rule 2014-1] |

Ironclad Performance Wear Corporation, a California corporation ("Ironclad California"), and its parent corporation Ironclad Performance Wear Corporation, a Nevada corporation ("Ironclad Nevada", and with Ironclad California, collectively, the "Debtors"), the debtors and debtors in possession in the above-captioned, jointly-administered, chapter 11 bankruptcy cases, hereby submit their application (the "Application") for Court approval of their employment of Stubbs Alderton & Markiles, LLP ("SAM") as their special corporate and securities, special trademark, and special litigation, counsel pursuant to sections 327(e) and 330 of the Bankruptcy Code, effective as of September 8, 2017 (the "Petition Date"), the date that the Debtors filed their voluntary bankruptcy petitions, upon the terms and conditions described below.  In support of this Application, the Debtors respectfully represent as follows:

**A.    Brief Description Of The Debtors And Their Businesses.**

1.    The Debtors each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date.  The Debtors continue to operate their businesses and manage their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  On September 12, 2017, the Court entered an order jointly administering the Debtors' bankruptcy cases.

2.    Other than owning all of the shares in Ironclad California, Ironclad Nevada has no business.  All operations of the Debtors effectively function through Ironclad California.

3.    The Debtors are a leading, technology-focused developer and manufacturer of high-performance task-specific gloves and apparel for the "industrial athlete" in a variety of end markets, including construction, manufacturing, oil and gas ("O&G"), automotive, sporting goods, military, police, fire, and first-responder.  The Debtors' business is based out of Farmers Branch, Texas.  Ironclad Nevada is publicly-traded with its common stock quoted on the OTC Markets under the symbol "ICPW".  As of May 4, 2017, Ironclad Nevada had 85,646,354 shares of common stock, par value $0.001 per share, issued and outstanding.

4.    Ironclad was founded in 1998 by Ed Jaeger.  Mr. Jaeger was inspired to build gloves that offered protection and performance without sacrificing one for the other.  From the

beginning, Ironclad built gloves using materials that offered excellent fit to make them an extension of the hand and to make jobs easier for the "industrial athlete". By 2006, Ironclad offered 35 different task-specific glove types for people wearing gloves as part of their daily jobs.

5.    In 2008, the Debtors launched the KONG (King of Oil 'N' Gas) line to address the high number of hand injuries in the O&G field. By 2010, the KONG line was comprised of 46 different gloves. Additionally, Ironclad expanded its presence in the retail and non-professional markets with the launch of the EXO brand in June 2015. EXO offers lower cost gloves for automotive, DIY, and outdoor sporting applications. Ironclad offers 30 different EXO glove types.

6.    Ironclad's task-specific technical glove products are specially designed for individual user groups. Ironclad currently offers over 160 distinct types of gloves for a variety of markets, including industrial, construction, DIY, carpentry, machining, package handling, plumbing, welding, roofing, O&G, mechanics, hunting, and gardening. Products come in a multitude of colors and cater to the specific demands and requirements of the users based on ease of motion, grip, water and chemical resistance, visibility, and protection from abrasions, cuts, flames, impacts, temperature, and vibration. Since inception, Ironclad has employed an internal research and development ("R&D") department responsible for identifying and creating new products and applications, and improving and enhancing existing products. Ironclad is continually evaluating new base materials for gloves, and grip is another key area of focus for R&D. Ironclad often partners with industry-leading organizations to develop new products. Ironclad has 13 U.S. patents issued and 11 foreign patents, as well as five pending U.S. patent applications and several pending foreign patent applications. Ironclad also uses trademarks to strengthen and protect its recognizable brand names. Ironclad owns 52 registered U.S. trademarks, 39 registered international trademarks, and 13 and 43 trademarks pending in the U.S. and internationally, respectively.

7.    Ironclad currently sells through approximately 10,000 outlets for professional tradesmen as well as "Big Box", hardware, auto parts, and sporting goods retailers. The sales

force is organized by 3 business segments: Industrial, Retail, and International.  Glove products are currently manufactured by multiple suppliers operating in China, Bangladesh, Cambodia, Vietnam and Indonesia.

**B.    Events Leading To Bankruptcy And The Debtors' Chapter 11 Goals.**

8.    Despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth.  There have been many reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs.  In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their Loan Documents (defined below) to their primary secured lender for the fiscal years ended December 31, 2015 and 2016, and for the fiscal quarters ended March 31, June 30, September 30, 2016 and March 31, 2017.  As a result of this discovery, the Debtors' then chief executive officer and then chief financial officer each resigned, and other officers were terminated. L. Geoff Greulich was appointed to the position of the Debtors' new chief executive officer effective July 6, 2017.  Prior to assuming this position, Mr. Greulich had no prior connections or relationship with the Debtors as an insider, equity holder or otherwise.  As a Senior Advisor, Operations at Corridor Capital, LLC, where he leads operations through portfolio engagement as well as conducting due diligence, Mr. Greulich was highly qualified to serve as the Debtors' new chief executive officer. Persons or parties interested in obtaining specific historical financial history of the Debtors should review the public filings made by the Debtors with the Securities and Exchange Commission.

9.    The Debtors have filed their bankruptcy cases to consummate a sale of substantially all of their assets for the most money possible.  Just prior to their bankruptcy filings, the Debtors entered into an Asset Purchase Agreement ("APA") with the Debtors' current secured creditor, Radians Wareham Holdings, Inc. ("Radians") or its affiliate/designee, for a purchase

4

price of $20 million or, depending on certain conditions set forth in the APA, $15 million, subject to an overbid process.  The Debtors have obtained Court approval of overbid procedures.  The Debtors' entire sale process is designed to maximize the Debtors' sale price for the benefit of the Debtors' creditors and shareholders.  The Debtors believe that they have substantially less than $15 million of total debt.  The Debtors therefore expect that their asset sale to Radians or to a successful overbidder will result in all of the Debtors' creditors being paid in full and a significant distribution being made to the Debtors' shareholders.

10.    Radians is the Debtors' primary secured creditor which is currently owed approximately $4 million.  Radians has agreed to purchase the Debtors' assets for $20 million or, depending on certain conditions set forth in the APA, $15 million as a stalking horse buyer.  The Debtors have no secured debt other than their secured loans to Radians.

**C.    Employment and Compensation of SAM.**

11.    As corporations and one being a public company, the Debtors require the continued services of special corporate and securities counsel.  SAM has been serving as the Debtors' pre-petition special corporate and securities counsel.  SAM therefore has great familiarity with the Debtors' business, corporate structure, debt structure and equity structure.  In addition to the fact that SAM is a premier corporate and securities law firm, employing new special corporate and securities counsel would be highly inefficient and make no sense.  The Debtors therefore seek to jointly employ SAM as their special corporate and securities counsel, at the expense of the Debtors' bankruptcy estates, and to have the Debtors' employment of SAM be deemed effective as of the Petition Date.

12.    In addition, SAM has served as the Debtors' pre-petition trademark filing and enforcement counsel with respect to the registration and enforcement of the Debtors' trademarks domestically and internationally.  As several of the Debtors' trademarks are in various phases of the registration process, the Debtors will require the services of special trademark counsel to render current and continuing advice to facilitate successful registration of their trademarks.  From time to time, the Debtors are required to pay various trademark registration and

enforcement fees.  Sometimes, SAM advances such trademark registration and enforcement fees for the benefit of the Debtors.  Pursuant to this Application, SAM requests authority to be reimbursed for any such fees advanced by SAM for the benefit of the Debtors, in the ordinary course of business.  SAM will disclose any such advances, and the Debtors' reimbursement of such advances, but SAM requests Court authority to be reimbursed for such advances contemporaneously with making such advances, without further Court approval other than in connection with a final fee application.

13.    Furthermore, SAM has served as the Debtors' pre-petition general litigation counsel in connection with litigation matters which may arise from time to time.  While any litigation matters pending pre-petition have now been stayed by the Debtors' bankruptcy filings, to the extent the stay is lifted in those matters, or if other litigation matters arise, the Debtors will require the services of special litigation counsel to advise the Debtors in connection with such litigation matters.

14.    The Debtors seek to employ SAM as their special corporate and securities, special trademark, and special litigation, counsel to render, among others, the following types of professional services:

a.    advising and representing the Debtors in connection with any litigation matters which may arise or which involve the Debtors;

b.    advising the Debtors with regard to, and representing the Debtors in the areas of, corporate law, corporate governance, corporate matters, and securities matters;

c.    advising and representing the Debtors in connection with Securities and Exchange Commission regulatory compliance, including, but not limited to the following:

i.    *Exchange Act Reports*.  SAM will review and comment on the Debtors' Forms 10-K and Forms 10-Q, based on drafts completed by management, and, in consultation with management, will prepare Forms 8-K, Forms 3, 4 and 5, and Schedules 13D and 13G for approved individuals and investors.  SAM will assist the Debtors in ensuring that all such

6

Exchange Act reports are in compliance with applicable Securities and Exchange Commission rules.

ii.      *Annual Proxy Statements.*  SAM will prepare a Proxy Statement for the Debtors' annual meeting of shareholders with respect to proposals for the election of directors, the adoption of compensation plans and any amendments thereto, and charter document amendments.   Shareholder proposals and special matters, such as mergers and acquisitions, and new compensation plans, will be billed separately on an hourly basis.

iii.      *Routine SEC Communications.*  SAM will be responsible for all routine communications with the Securities and Exchange Commission with respect to the Debtors' Exchange Act filings.

iv.      *Securities Due Diligence.*  SAM will be principally responsible for conducting due diligence on behalf of the Debtors' Board of Directors and in collecting the necessary documents and information for inclusion in the Debtors' Exchange Act filings.

v.      *Year End Obligations.*  SAM will monitor and assist the Debtors in meeting the Debtors' year-end disclosure and annual shareholder meeting obligations, including preparation and continued monitoring of a Year-End Time and Responsibility Schedule, and having overall responsibility for the entire timetable of the year-end process.

vi.      *D&O Questionnaires.*  SAM will prepare and distribute Directors' and Officers' Questionnaires to assist the Debtors in complying with the Debtors' disclosure obligations.

vii.      *Rule 144 Opinions.*  At the Debtors' instruction, SAM will prepare Rule 144 opinion letters to the Debtors' transfer agent in connection with Rule 144 sales.

viii.    *Press Release and Reg. FD.*  SAM will advise the Debtors with respect to press releases, all of which SAM will review, and Regulation FD compliance.

ix.    *Board and Shareholder Meetings.*  SAM will attend Shareholder Meetings and quarterly Board meetings, and will prepare Board minutes and written consents.

x.    *Coordination with Auditors.*  SAM will coordinate with the Debtors' accountants as to the timing of the preparation of the Debtors' financial statements and related financial disclosure and will review the accountants' management representation letters and other correspondence with the company;

d.    legal services in connection with commercial and contractual and similar transactional matters and assisting the Debtors in connection with their expected sale efforts;

e.    advising the Debtors with regard to, and representing the Debtors in connection with, registering trademarks, and undertaking trademark enforcement measures, both domestically and internationally, and

f.    performing any other services which may be appropriate in SAM's representation of the Debtors relating to corporate and securities law, trademark law and general business litigation during their bankruptcy cases.

15.    SAM is comprised of attorneys who specialize in the area of corporate and securities law, trademark law and general business litigation.  A copy of SAM's firm resume is attached as **Exhibit "1"** to the annexed Declaration of Scott Alderton, Esq. (the "Alderton Declaration").

16.    SAM will bill its time for its representation of the Debtors on an hourly basis in accordance with SAM's "Emerging Growth" hourly billing rates (which is approximately $50 per hour less than SAM's standard hourly billing rates).[1]  A listing of SAM's current "Emerging

---

[1] Pre-petition, SAM would charge the Debtors a fixed fee of $130,000 per annum for legal

Growth" hourly billing rates is attached as **Exhibit "2"** to the annexed Alderton Declaration. SAM will seek reimbursement of all of its expenses in accordance with the rates set forth in the guidelines promulgated by the Office of the United States Trustee.[2]  The Debtors expect that Scott Alderton and Louis Wharton will be the primary attorneys at SAM responsible for the representation of the Debtors during their chapter 11 cases.

17.    Given the relationship between the Debtors, for efficiency purposes, and with their chapter 11 cases jointly administered, SAM believes that it is not practical or efficient for SAM to bill its time separate for each Debtor.  Therefore, SAM will bill all of their fees and expenses incurred in their representation of the Debtors to one billing number.

18.    SAM understands the provisions of 11 U.S.C. Sections 327, 330 and 331 which require, among other things, Court approval of the Debtors' employment of SAM as special corporate and securities, special trademark, and special litigation, counsel, and of all legal fees and reimbursement of expenses that SAM will receive from the Debtors and the Debtors' estates. SAM seeks to be employed pursuant to 11 U.S.C. § 327(e) with its compensation to be pursuant to 11 U.S.C. §§ 330 and 331.

19.    SAM will seek Court authority to be paid from the Debtors' estates for any and all post-petition fees incurred and expenses advanced by SAM.  SAM recognizes that the payment of any such additional fees and expenses will be subject to further Court order after notice and a hearing.

---

services provided to the Debtors in connection with the Debtors' ordinary course SEC regulatory compliance, in lieu of SAM's hourly fee arrangement.  SAM will not charge the Debtors such fixed fee during the Debtors' bankruptcy cases, and instead, will charge the Debtors for ordinary course SEC regulatory compliance on an hourly basis, because: (1) SAM does not anticipate providing a substantial amount of such services; and (2) SAM anticipates that charging on an hourly basis will result in substantially less fees being charged to the Debtors in connection with ordinary course SEC regulatory compliance.

[2] As set forth above, SAM is requesting the ability to be contemporaneously reimbursed for any advances made for the benefit of the Debtors in connection with the payment of trademark registration and enforcement fees, without further Court approval other than in connection with a final fee application.

20.    SAM will provide monthly billing statements to the Debtors which will set forth the amount of fees incurred and expenses advanced by SAM during the previous month.

**D.    Disclosures Pursuant To Rule 2014 Of The Federal Rules Of Bankruptcy Procedure.**

21.    During the one-year period prior to the Petition Date, the Debtors paid the total sum of $315,082.86 to SAM for legal services.

22.    SAM is a general unsecured creditor of the Debtors' estates.  SAM indicates that it was owed approximately $338,818.99 as of the Petition Date by the Debtors for pre-petition services.

23.    SAM is also an equity security holder of Ironclad Nevada, and holds approximately 3,123 shares, representing less than 0.004% of the total outstanding shares of Ironclad Nevada.

24.    Additionally, certain of SAM's attorneys own equity securities in Ironclad Nevada representing approximately 3% of the outstanding shares in the aggregate, a substantial portion of which were distributed to such attorneys in connection with the exercise of options granted to Scott Alderton for service as a member of Ironclad Nevada's board of directors from 2002 through 2012.

25.    Nevertheless, the Debtors submit that SAM's employment is proper under Section 327(e) of the Bankruptcy Code, as discussed in the Memorandum of Points and Authorities discussed below.

26.    SAM has not received a retainer in connection with the Debtors' bankruptcy filings.

27.    SAM has not received any lien or other interest in property of the Debtors or of a third party to secure payment of SAM's fees or expenses.

28.    SAM has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

29.    The Debtors, who are affiliates of each other (as one is a wholly owned subsidiary of the other), are seeking to jointly employ SAM as their special corporate and securities, special

trademark, and special litigation, counsel. Given that the interests and goals of the Debtors in these cases are aligned, and only one is an operating entity (while the other is the public holding company), the Debtors do not believe that SAM's representation of both of the Debtors presents any conflict which would bar SAM's employment as special counsel for both of the Debtors in these cases. Moreover, the Debtors believe that it would be totally impractical and cost prohibitive for each of the Debtors to employ separate corporate and securities, special trademark, and special litigation, law firms. If it later turns out that any material conflict exists between the Debtors (which the Debtors do not believe will be the case), SAM will not represent the Debtors in regards to any such conflicts or claims. Rather, the Debtors will proceed to employ other special counsel to deal with any such conflicts or claims.

30. The Debtors have engaged the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") to serve as the Debtors' bankruptcy counsel. SAM has worked on a number of matters, both in and outside of chapter 11 bankruptcies, with LNBYB and will presumably continue to do so in the future. SAM will not be serving as counsel to LNBYB in these cases.

31. SAM is not and was not an investment banker for any outstanding security of the Debtors. SAM has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

32. Neither SAM nor any member of SAM is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

33. As set forth in the annexed Alderton Declaration, to the best of SAM's knowledge, SAM does not hold or represent any interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker for any security of the Debtors, or for any other reason, with respect to the matters upon which SAM is to be employed in these cases.

34.     As set forth in the annexed Alderton Declaration, to the best of SAM's knowledge, SAM does not hold or represent any interest materially adverse to the Debtors or the Debtors' estates, and SAM is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, with respect to the matters upon which the Debtors seek to employ SAM. Also, to the best of SAM's knowledge, and other than as indicated in this Application, SAM has no prior material connection with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in these cases, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

**E.      The Employment of SAM Is Warranted Pursuant To Section 327(e) Of The Bankruptcy Code.**

35.     Section 327(e) of the Bankruptcy Code provides: "The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." *See* 11 U.S.C. § 327(e). (Emphasis added.)

36.     "Although an attorney's lack of disinterestedness may preclude employment by the estate for general purposes in conducting a bankruptcy case, the attorney may still be retained by the estate for a 'special purpose.' [ . . . .]  Such an attorney need not be 'disinterested,' as is otherwise required by section 327(a), provided that the attorney represents or holds no interest adverse to the debtor or to the estate in respect of the matter which the attorney is to be engaged." *See Collier on Bankruptcy*, 15th Ed. Rev., §327.04[9], page 327-59; *In re Song*, 2008 WL 6058782, at *7 (9th Cir. BAP Feb. 12, 2008) (special counsel did not need to be a disinterested party to qualify for employment as special counsel under Section 327(e); *In re Mortgages Ltd.*, 2008 WL 5024925, at * 2 (Bank. D. Ariz. Aug. 14, 2008) (standard of "disinterestedness" is applicable only to general counsel employed under § 327(a) and not to special counsel under §

327(e)). In this case, the Debtors are seeking to employ SAM under Section 327(e) and all of the requirements of Section 327(e) are met.

37. <u>SAM Is Being Employed For A Specified Special Purpose</u>.  The Debtors seek to employ SAM as the Debtor's special corporate and securities, special trademark, and special litigation, counsel for the very limited purpose of assisting the Debtor with its corporate law and securities matters, trademark registration and enforcement matters, and general litigation matters. "Typically, special counsel is appropriate when an attorney is employed to handle a specific legal action that is unrelated to the reorganization and the attorney is particularly suited for that action." *In re Goldstein*, 383 B.R. 496, 501 (Bankr. C.D. Cal. 2007) (authorizing employment of special counsel under Section 327(e) in two related bankruptcy estates).  SAM will take no part in administering the Debtors' chapter 11 bankruptcy cases, SAM is not nor will SAM act as general bankruptcy counsel for the Debtors.  SAM is being employed for the very limited and specific purpose of providing focused corporate and securities law advice, including in connection with assisting the Debtors in connection with their sale efforts, trademark registration and enforcement advice, and litigation advice, to the Debtors.  Thus, SAM is being employed for specified special purposes pursuant to 11 U.S.C. § 327(e).

38. <u>SAM Has Represented The Debtors Regarding The Matters For Which The Debtors Presently Seek To Employ SAM</u>.  Prior to the Debtors' bankruptcies, SAM represented the Debtors regarding corporate and securities law and governance, transactional issues, issues related to trademark registration and enforcement, as well as general business litigation matters. It makes perfect sense to employ SAM to represent the Debtors in these regards, going forward. *See In re Goldstein*, 383 B.R. at 501 ("special counsel's familiarity with a case would expedite the process of resolving matters and will lead to advantages for the estate and the creditors").  Since SAM previously represented the Debtors with respect to the subject matters for which the Debtors currently seek to employ SAM as a professional in these bankruptcy cases, this requirement of Section 327(e) is also met, and it is appropriate for the Debtors to employ SAM.

39.    <u>The Employment of SAM Is In The Best Interest Of The Debtors And The
Debtors' Estates</u>.  The Debtors require the services of corporate and securities counsel to ensure that the Debtors remain complaint with their corporate governance obligations while in Chapter 11.  SAM has served as corporate counsel to the Debtors since at least 2002.  SAM has also served as trademark counsel to the Debtors since at least 2013.  Additionally, SAM has served as the Debtors' litigation counsel since at least 2014.  SAM is intimately familiar with all of the Debtors corporate structures, governance mechanisms, debt obligations, trademark portfolio, as well as litigation matters affecting or involving the Debtors.  SAM is the ideal firm to represent the Debtors in connection with corporate law and governance, including in connection with the Debtors' sale efforts, trademark registration and enforcement, and general business litigation.

40.    It is clear here that the employment of SAM in particular is in the best interest of the estates. *See In re Goldstein*, 383 B.R. at 501 (when counsel is very familiar with the nonbankruptcy representation because counsel has previously performed legal services for the debtor, it is obvious that the continuation of counsel's special services is in the best interest of the estate").  It is also clear that representing the Debtors regarding corporate governance obligations, trademark registration and enforcement, and litigation matters, is in the best interest of the Debtors' estates.

41.    <u>SAM Does Not Represent Or Hold Any Interest Adverse To The Debtors Or To
The Estates With Respect To The Matters On Which SAM Is To Be Employed</u>.  The fact that SAM is a creditor and the holder of a very small number of shares in the Debtors' cases does not disqualify its employment under the terms of the Application.  The Debtors' interests, and the estates' interests, are to remain compliant with all corporate governance requirements and obligations, to continue to register and enforce its trademarks, and address any litigation matters which may arise.  By doing so, the Debtors are protected against exposure to any claims against the Debtors related to corporate law and governance requirements, and infringement of its trademarked brands.  SAM's position as a creditor and interest holder, and as the proposed special counsel for the Debtors, is not adverse to the Debtors' interests in complying with their corporate

governance obligations, registering and enforcing their trademarks, or handling special litigation matters which may arise. *See In re Elias*, 2005 WL 4705220, at *5 (Bankr. D. Idaho June 10, 2005) (fact that special counsel is a creditor did not disqualify him from employment under Section 327(e)).  Section 327(e) is clear:  special counsel who is not disinterested because of its status as a creditor, interest holder, or otherwise, is still allowed to be employed by the Debtors.

42.     The Debtors believe that their employment of SAM upon the terms and conditions set forth above is in the best interest of the Debtors' estates.

**WHEREFORE**, the Debtors respectfully request that the Court approve the Debtors' employment of SAM as their special corporate and securities, special trademark, and special litigation, counsel, effective as of the Petition Date, upon the terms and conditions set forth above.


Dated: October 5, 2017

IRON PERFORMANCE WEAR CORP., a California Corp., and IRON PERFORMANCE WEAR CORP., a Nevada Corp.

Geoff Greulich
Chief Executive Officer

Submitted by:

LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.


By:___/s/ Ron Bender_____
        RON BENDER
        MONICA Y. KIM
        KRIKOR J. MESHEFIEJIAN
Proposed Attorneys for Chapter 11 Debtors
and Debtors in Possession

15

## DECLARATION OF SCOTT ALDERTON

I, Scott Alderton, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.  Capitalized terms not otherwise defined herein shall have the same meaning as ascribed to such terms in the Employment Application to which this Declaration is attached (the "Application").

### A.      Employment and Compensation of SAM.

2.      SAM has been requested by the Debtors to serve as the Debtors' special corporate and securities counsel, special trademark filing and enforcement counsel, and special general business litigation counsel, at the expense of the Debtors' bankruptcy estates.

3.      As corporations and one being a public company, the Debtors require the continued services of special corporate and securities counsel.  SAM has been serving as the Debtors' pre-petition special corporate and securities counsel.  SAM therefore has great familiarity with the Debtors' business, corporate structure, debt structure and equity structure.  In addition to the fact that SAM is a premier corporate and securities law firm, employing new special corporate and securities counsel would be highly inefficient and make no sense.

4.      In addition, SAM has served as the Debtors' pre-petition trademark filing and enforcement counsel with respect to the registration and enforcement of the Debtors' trademarks domestically and internationally.  As several of the Debtors' trademarks are in various phases of the registration process, the Debtors will require the services of special trademark counsel to render current and continuing advice to facilitate successful registration of their trademarks.  From time to time, the Debtors are required to pay various trademark registration and enforcement fees.  Sometimes, SAM advances such trademark registration and enforcement fees for the benefit of the Debtors.  Pursuant to the Application, SAM requests authority to be reimbursed for any such fees advanced by SAM for the benefit of the Debtors, in the ordinary course of business.  SAM will disclose any such advances, and the Debtors' reimbursement of such advances, but SAM requests Court authority to be reimbursed for such advances

contemporaneously with making such advances, without further Court approval other than in connection with a final fee application.

5.    Furthermore, SAM has served as the Debtors' pre-petition general litigation counsel in connection with litigation matters which may arise from time to time.  While any litigation matters pending pre-petition have now been stayed by the Debtors' bankruptcy filings, to the extent the stay is lifted in those matters, or if other litigation matters arise, the Debtors will require the services of special litigation counsel to advise the Debtors in connection with such litigation matters.

6.    The Debtors therefore seek to employ SAM as their special corporate and securities, special trademark, and special litigation, counsel to render, among others, the following types of professional services:

a.    advising and representing the Debtors in connection with any litigation matters which may arise or which involve the Debtors;

b.    advising the Debtors with regard to, and representing the Debtors in the areas of, corporate law, corporate governance, corporate matters, and securities matters;

c.    advising and representing the Debtors in connection with Securities and Exchange Commission regulatory compliance, including, but not limited to the following:

i.    *Exchange Act Reports*.  SAM will review and comment on the Debtors' Forms 10-K and Forms 10-Q, based on drafts completed by management, and, in consultation with management, will prepare Forms 8-K, Forms 3, 4 and 5, and Schedules 13D and 13G for approved individuals and investors.  SAM will assist the Debtors in ensuring that all such Exchange Act reports are in compliance with applicable Securities and Exchange Commission rules.

ii.    *Annual Proxy Statements*.  SAM will prepare a Proxy Statement for the Debtors' annual meeting of shareholders with respect to proposals for the election of directors, the adoption of compensation plans and any

amendments thereto, and charter document amendments. Shareholder proposals and special matters, such as mergers and acquisitions, and new compensation plans, will be billed separately on an hourly basis.

    iii.    *Routine SEC Communications*. SAM will be responsible for all routine communications with the Securities and Exchange Commission with respect to the Debtors' Exchange Act filings.

    iv.    *Securities Due Diligence*. SAM will be principally responsible for conducting due diligence on behalf of the Debtors' Board of Directors and in collecting the necessary documents and information for inclusion in the Debtors' Exchange Act filings.

    v.    *Year End Obligations*. SAM will monitor and assist the Debtors in meeting the Debtors' year-end disclosure and annual shareholder meeting obligations, including preparation and continued monitoring of a Year-End Time and Responsibility Schedule, and having overall responsibility for the entire timetable of the year-end process.

    vi.    *D&O Questionnaires*. SAM will prepare and distribute Directors' and Officers' Questionnaires to assist the Debtors in complying with the Debtors' disclosure obligations.

    vii.    *Rule 144 Opinions*. At the Debtors' instruction, SAM will prepare Rule 144 opinion letters to the Debtors' transfer agent in connection with Rule 144 sales.

    viii.    *Press Release and Reg. FD*. SAM will advise the Debtors with respect to press releases, all of which SAM will review, and Regulation FD compliance.

    ix.    *Board and Shareholder Meetings*. SAM will attend Shareholder Meetings and quarterly Board meetings, and will prepare Board minutes and written consents.

x.    *Coordination with Auditors.*    SAM will coordinate with the Debtors' accountants as to the timing of the preparation of the Debtors' financial statements and related financial disclosure and will review the accountants' management representation letters and other correspondence with the company;

d.    legal services in connection with commercial and contractual and similar transactional matters and assisting the Debtors in connection with their expected sale efforts;

e.    advising the Debtors with regard to, and representing the Debtors in connection with, registering trademarks, and undertaking trademark enforcement measures, both domestically and internationally, and

f.    performing any other services which may be appropriate in SAM's representation of the Debtors relating to corporate and securities law, trademark law and general business litigation during their bankruptcy cases.

7.    SAM is comprised of attorneys who specialize in the area of corporate and securities law, trademark law and general business litigation.  A copy of SAM's firm resume is attached as **Exhibit "1"** to this Declaration.

8.    SAM will bill its time for its representation of the Debtors on an hourly basis in accordance with SAM's "Emerging Growth" hourly billing rates (which is approximately $50 per hour less than SAM's standard hourly billing rates).[3]  A listing of SAM's current "Emerging Growth" hourly billing rates is attached as **Exhibit "2"** to this Declaration.  SAM will seek reimbursement of all of its expenses in accordance with the rates set forth in the guidelines

---

[3] Pre-petition, SAM would charge the Debtors a fixed fee of $130,000 per annum for legal services provided to the Debtors in connection with the Debtors' ordinary course SEC regulatory compliance, in lieu of SAM's hourly fee arrangement.  SAM will not charge the Debtors such fixed fee during the Debtors' bankruptcy cases, and instead, will charge the Debtors for ordinary course SEC regulatory compliance on an hourly basis, because: (1) SAM does not anticipate providing a substantial amount of such services; and (2) SAM anticipates that charging on an hourly basis will result in substantially less fees being charged to the Debtors in connection with ordinary course SEC regulatory compliance.

19

promulgated by the Office of the United States Trustee.[4]  Louis Wharton and I will be the primary attorneys at SAM responsible for the representation of the Debtors during their chapter 11 cases.

9.      Given the relationship between the Debtors, for efficiency purposes, and with their chapter 11 cases jointly administered, SAM believes that it is not practical or efficient for SAM to bill its time separate for each Debtor.   Therefore, SAM will bill all of their fees and expenses incurred in their representation of the Debtors to one billing number.

10.      SAM understands the provisions of 11 U.S.C. Sections 327, 330 and 331 which require, among other things, Court approval of the Debtors' employment of SAM as special corporate and securities, special trademark, and special litigation, counsel, and of all legal fees and reimbursement of expenses that SAM will receive from the Debtors and the Debtors' estates. SAM seeks to be employed pursuant to 11 U.S.C. § 327(e) with its compensation to be pursuant to 11 U.S.C. §§ 330 and 331.

11.      SAM will seek Court authority to be paid from the Debtors' estates for any and all post-petition fees incurred and expenses advanced by SAM.  SAM recognizes that the payment of any such additional fees and expenses will be subject to further Court order after notice and a hearing.

12.      SAM will provide monthly billing statements to the Debtors which will set forth the amount of fees incurred and expenses advanced by SAM during the previous month.

**B.      Disclosures Pursuant To Rule 2014 Of The Federal Rules Of Bankruptcy Procedure.**

13.      During the one-year period prior to the Petition Date, the Debtors paid the total sum of $315,082.86 to SAM for legal services.

14.      SAM is a general unsecured creditor of the Debtors' estates.   SAM was owed approximately $338,818.99 as of the Petition Date by the Debtors for pre-petition services.

---

[4] As set forth above, SAM is requesting the ability to be contemporaneously reimbursed for any advances made for the benefit of the Debtors in connection with the payment of trademark registration and enforcement fees, without further Court approval other than in connection with a final fee application.

15.    SAM is also an equity security holder of Ironclad Nevada, and holds approximately 3,123 shares, representing less than 0.004% of the total outstanding shares of Ironclad Nevada.

16.    Additionally, certain of SAM's attorneys, including me, own equity securities in Ironclad Nevada representing approximately 3% of the outstanding shares in the aggregate, a substantial portion of which were distributed to such attorneys in connection with the exercise of options granted to me for service as a member of Ironclad Nevada's board of directors from 2002 through 2012.

17.    Nevertheless, the Debtors submit that SAM's employment is proper under Section 327(e) of the Bankruptcy Code, as discussed in the Memorandum of Points and Authorities below.

18.    SAM has not received a retainer in connection with the Debtors' bankruptcy filings.

19.    SAM has not received any lien or other interest in property of the Debtors or of a third party to secure payment of SAM's fees or expenses.

20.    SAM has not shared or agreed to share its compensation for representing the Debtors with any other person or entity, except among its members.

21.    The Debtors, who are affiliates of each other (as one is a wholly owned subsidiary of the other), are seeking to jointly employ SAM as their special corporate and securities, special trademark, and special litigation, counsel.  Given that the interests and goals of the Debtors in these cases are aligned, and only one is an operating entity (while the other is the public holding company), I do not believe that SAM's representation of both of the Debtors presents any conflict which would bar SAM's employment as special counsel for both of the Debtors in these cases. Moreover, I believe that it would be totally impractical and cost prohibitive for each of the Debtors to employ separate corporate and securities, special trademark, and special litigation, law firms.  If it later turns out that any material conflict exists between the Debtors (which I do not believe will be the case), SAM will not represent the Debtors in regards to any such conflicts or

claims.  Rather, I understand that in that situation, the Debtors will proceed to employ other special counsel to deal with any such conflicts or claims.

22.    The Debtors have engaged the law firm of Levene, Neale, Bender, Yoo & Brill L.L.P. ("LNBYB") to serve as the Debtors' bankruptcy counsel.  SAM has worked on a number of matters, both in and outside of chapter 11 bankruptcies, with LNBYB and will presumably continue to do so in the future.  SAM will not be serving as counsel to LNBYB in these cases.

23.    SAM is not and was not an investment banker for any outstanding security of the Debtors.  SAM has not been within three years before the Petition Date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

24.    Neither SAM nor any member of SAM is, nor was, within two years before the Petition Date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

25.    To the best of my knowledge, SAM does not hold or represent any interest materially adverse to the interest of the estates or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker for any security of the Debtors, or for any other reason, with respect to the matters upon which SAM is to be employed in these cases.

26.    To the best of my knowledge, SAM does not hold or represent any interest materially adverse to the Debtors or the Debtors' estates, and SAM is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code, with respect to the matters upon which the Debtors seek to employ SAM.  Also, to the best of my knowledge, and other than as indicated in this Application, SAM has no prior material connection with the Debtors, any creditors of the Debtors or their estates, or any other party in interest in these cases, or their respective attorneys or accountants, the United States Trustee or any person employed by the United States Trustee.

**E.    The Employment of SAM Pursuant To Section 327(e) Of The Bankruptcy Code.**

27.    <u>SAM Is Being Employed For A Specified Special Purpose</u>.  SAM will take no part in administering the Debtors' chapter 11 bankruptcy cases, SAM is not nor will SAM act as general bankruptcy counsel for the Debtors.  SAM is being employed for the very limited and specific purpose of providing focused corporate and securities law advice, including in connection with assisting the Debtors in connection with their sale efforts, trademark registration and enforcement advice, and litigation advice, to the Debtors.

28.    <u>SAM Has Represented The Debtors Regarding The Matters For Which The Debtors Presently Seek To Employ SAM</u>.  Prior to the Debtors' bankruptcies, SAM represented the Debtors regarding corporate and securities law and governance, transactional issues, issues related to trademark registration and enforcement, as well as general business litigation matters.

29.    <u>The Employment of SAM Is In The Best Interest Of The Debtors And The Debtors' Estates</u>.  The Debtors require the services of corporate and securities counsel to ensure that the Debtors remain complaint with their corporate governance obligations while in Chapter 11.  SAM has served as corporate counsel to the Debtors since at least 2002.  SAM has also served as trademark counsel to the Debtors since at least 2013.  Additionally, SAM has served as the Debtors' litigation counsel since at least 2014.  SAM is intimately familiar with all of the Debtors corporate structures, governance mechanisms, debt obligations, trademark portfolio, as well as litigation matters affecting or involving the Debtors.

30.    <u>SAM Does Not Represent Or Hold Any Interest Adverse To The Debtors Or To The Estates With Respect To The Matters On Which SAM Is To Be Employed</u>.  The fact that SAM is a creditor and the holder of a very small number of shares in the Debtors' cases does not disqualify its employment under the terms of the Application.  The Debtors' interests, and the estates' interests, are to remain compliant with all corporate governance requirements and obligations, to continue to register and enforce its trademarks, and address any litigation matters which may arise.  By doing so, the Debtors are protected against exposure to any claims against the Debtors related to corporate law and governance requirements, and infringement of its trademarked brands.  SAM's position as a creditor and interest holder, and as the proposed special

counsel for the Debtors, is not adverse to the Debtors' interests in complying with their corporate governance obligations, registering and enforcing their trademarks, or handling special litigation matters which may arise.

I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 5th day of October, 2017, at Los Angeles, California.

_____

SCOTT ALDERTON, Declarant

# EXHIBIT "1"

## PRACTICE AREAS
# BUSINESS LITIGATION



### Group Chairperson
## MICHAEL SHERMAN

msherman@stubbsalderton.com

The Firm's business litigators have significant depth and breadth of resources and a detailed knowledge of clients' industries and business concerns. As trusted counselors to middle market businesses, and particularly early stage, growth companies and entrepreneurs, we understand that how a company or entrepreneur handles dispute risk oftentimes is the difference between business success and failure.

**LOS ANGELES**
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, CA 91403
Phone: 818.444.4500

**SANTA MONICA**
1453 3rd Street Promenade, Suite
300 Santa Monica, CA 90401
Phone: 310.746.9800

www.stubbsalderton.com

PRACTICE AREAS
## BUSINESS LITIGATION
CONTINUED

Litigation is often about efficiently analyzing complex legal and business challenges, and understanding litigation risk. All too often attorneys think and express themselves in terms of "cause and effect" or "action/reaction." While our business litigators have impressive records as trial lawyers, we additionally focus on achieving creative, efficient, cost-effective solutions for our clients.

Of course, there are times that disputes cannot be quickly resolved, and our clients face the prospect of a trial or an arbitration that may "go all the way". Our attorneys have deep pre-trial, trial and alternative dispute resolution experience in connection with both state and federal court actions Our attorneys can take tough cases to trial or arbitration, and win.

Our business litigators have represented household name Fortune 500 companies, middle market companies, and emerging growth companies and entrepreneurs. Our business litigators along with the other attorneys at the Firm seek to forge long term relationships with our clients throughout their evolutionary path. We deliver efficiency and value to every client we serve through a well-defined budget and clear communication about their case. Team members include:

- MICHAEL SHERMAN

- HARRIS COHEN

- BARAK KAMELGARD

PRACTICE AREAS
## CORPORATE & BUSINESS MATTERS



We provide a broad range of services relating to corporate and business matters, including corporate and other entity formation, joint venture and strategic partnership transactions, stock incentive plans, executive and other employment agreements, and commercial and business agreements. The Firm acts to assess clients' business needs and develop innovative legal strategies to help them achieve their goals, directly undertaking those matters for which the Firm has substantial expertise, and identifying and managing the most appropriate legal resources to handle specialty areas outside of the Firm's core discplines.

LOS ANGELES
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, CA 91403
Phone: 818.444.4500
Fax: 818.444.4520

SANTA MONICA
1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401
Phone: 310.746.9800
Fax: 310.746.9820

www.stubbsalderton.com

PRACTICE AREAS
## PUBLIC SECURITIES PRACTICE



Group Chairperson
## JOHN MCILVERY

jmcilvery@stubbsalderton.com

We cover a wide-range of matters for existing public companies and underwriters, as well as private companies contemplating "going public."

- PUBLIC SECURITIES COMPLIANCE

- CORPORATE GOVERNANCE COUNSELING

- ALTERNATIVE PUBLIC OFFERINGS

- SEC FIXED FEE

LOS ANGELES
15260 Ventura Boulevard,20th Floor
Sherman Oaks, CA 91403
Phone: 818.444.4500

SANTA MONICA
1453 3rd Street Promenade, Suite
300 Santa Monica, CA 90401
Phone: 310.746.9800

www.stubbsalderton.com

PRACTICE AREAS
## PUBLIC SECURITIES PRACTICE

## Corporate Governance Counseling
CONTINUED

Our public securities attorneys provide the following corporate governance services:

- Advising clients on corporate governance and disclosure requirements of the Securities and Exchange Commission (SEC) and the relevant stock exchanges.

- Monitoring the rule-making activities and actions of the SEC, the Financial Accounting Standards Board (FASB) and Public Company Accounting Oversight Board (PCAOB), and counseling clients on the implications of emerging securities laws and accounting and auditing standards.

- Advising on fiduciary duties of directors and special and independent committees, including with respect to related- party transactions, executive compensation, acquisition proposals, and other transaction that might give rise to potential conflicts of interest.

- Advising clients on SEC reviews, enforcement actions, SEC requirements for securities offerings and corporate disclosures, and Sarbanes-Oxley (SOX)-related issues.

- Advising on stock exchange requirements, monitoring administrative proceedings related to SEC and Financial Industry Regulatory Authority (FINRA) enforcement actions, and tracking significant legislative developments and judicial decisions affecting enforcement of federal securities laws and state corporate laws.

- Advising privately held companies pursuing public offerings and exit strategies on compliance with state corporate law, as well as SEC, SOX, and national stock exchange requirements.

PRACTICE AREAS
## PUBLIC SECURITIES PRACTICE

## Corporate Governance Counseling
CONTINUED

Our public securities attorneys provide the following corporate governance services:

- Advising clients on corporate governance and disclosure requirements of the Securities and Exchange Commission (SEC) and the relevant stock exchanges.

- Monitoring the rule-making activities and actions of the SEC, the Financial Accounting Standards Board (FASB) and Public Company Accounting Oversight Board (PCAOB), and counseling clients on the implications of emerging securities laws and accounting and auditing standards.

- Advising on fiduciary duties of directors and special and independent committees, including with respect to related- party transactions, executive compensation, acquisition proposals, and other transaction that might give rise to potential conflicts of interest.

- Advising clients on SEC reviews, enforcement actions, SEC requirements for securities offerings and corporate disclosures, and Sarbanes-Oxley (SOX)-related issues.

- Advising on stock exchange requirements, monitoring administrative proceedings related to SEC and Financial Industry Regulatory Authority (FINRA) enforcement actions, and tracking significant legislative developments and judicial decisions affecting enforcement of federal securities laws and state corporate laws.

- Advising privately held companies pursuing public offerings and exit strategies on compliance with state corporate law, as well as SEC, SOX, and national stock exchange requirements.

PRACTICE AREAS
## PUBLIC SECURITIES PRACTICE

## Alternative Public Offerings

We are a leader in alternative capital raising techniques, such as registered direct offerings, PIPEs, and reverse mergers into public "shells", and we have been in the forefront of this rapidly developing area. Since early 2001, the market for traditional, firmly underwritten initial public offerings of micro-cap and small-cap companies in the United States has been significantly constrained. There are fewer and fewer underwriters interested in investing the resources to bring micro-cap and small-cap companies to market, which has cut-off what once was a viable financing source for smaller companies. In recent years, an alternative to the traditional, firmly underwritten initial public offering has emerged. The "reverse merger" transaction, when coupled with a PIPE financing, allows smaller companies to access a large pool of capital without the need of an underwriter. While a typical transaction still requires the assistance of a "place-ment agent" to assist in raising capital, if structured properly, the placement agent is not an "underwriter" under United States securities laws, and thus not subject to the liability that has driven many traditional underwriters from the market for micro- cap and small-cap initial public offerings.

Our public securities attorneys provide the following services in connection with reverse merger transactions:

- Assisting clients in locating an existing public reporting "shell" company, that has little or no assets or business, is current in its periodic reporting obligations with the SEC, has no or only limited liabilities that can be confirmed with some certainty in

- due diligence, preferably has common stock quoted on the Over-The-Counter Bulletin Board held by at least 400 shareholders of record, and does not need to first obtain stockholder approval to consummate any aspect of the transaction.

- Introducing clients to other professionals with experience in reverse merger transactions, including owners and bro-kers of shell companies, accounting firms, placement agents, investors, and investor relations firms.

- Conducting due diligence on the shell company, and restructuring the shell company to the extent necessary in advance of the transaction.

- Structuring, negotiating and documenting the reverse merger transaction documents, including the acquisition agreement and all ancillary agreements.

PRACTICE AREAS
# PUBLIC SECURITIES PRACTICE

## Alternative Public Offerings
CONTINUED

- Advising on compliance with securities laws and stock exchange rules.

- Assisting in the preparation and filing of all reports to be filed with the SEC in connection with the reverse merger transaction, including all Section 16 forms, Forms 8-K, and Schedules 13D, 14f-1 and 14C.

- Coordinating the responsibilities of management, opposing counsel and the other professionals involved in the process, including independent auditors, promoters and placement agents.

- Structuring, negotiating and documenting of the PIPE financing documents, including the securities purchase agreement, registration rights agreement and all ancillary agreements, and assisting in the preparation and filing with the SEC of the resale registration statement for the shares sold in the PIPE.

## SEC Fixed Fee

We offer legal services to existing publicly traded companies in connection with SEC regulatory compliance on a monthly "Fixed Fee" basis in lieu of our standard hourly fee arrangements.

Our clients can pick and choose from a suite of services that they would like us to provide for a Fixed Fee, which often includes the following:

- Exchange Act Reports. We review and comment on Forms 10-K, Forms 10-Q, Forms 8-K, Forms 3, 4 and 5, and Schedules 13D and 13G for approved individuals and investors. We assist in ensuring that all such Exchange Act reports are in compliance with applicable SEC rules.

- Annual Proxy Statements. We prepare a Proxy Statement for the annual meeting of shareholders.

- Routine SEC Communications. We coordinate all routine communications with the SEC with respect to Exchange Act filings.

- Securities Due Diligence. We review company documents and information to enable comprehensive and accurate disclosure in Exchange Act filings.

PRACTICE AREAS
## PUBLIC SECURITIES PRACTICE

## SEC Fixed Fee
CONTINUED

- Year End Obligations. We monitor and assist in meeting year-end disclosure and annual shareholder meeting obligations.

- D&O Questionnaires. We prepare and distribute Directors' and Officers' Questionnaires to assist in complying with disclosure obligations.

- Rule 144 Opinions. Upon request, we prepare Rule 144 opinion letters to transfer agents in connection with Rule 144 sales.

- Press Release and Reg. FD. We advise with respect to company-drafted press releases, and Regulation FD compliance.

- Board and Shareholder Meetings. We attend and prepare minutes for Shareholder Meetings and quarterly Board Meetings.

- Coordination with Auditors. We coordinate with accountants as to the timing of the preparation of financial statements and related financial disclosure.

At the beginning of a Fixed Fee representation, we meet with such of the company's key personnel as are designated to review files and agreements for purposes of orientation in order to gain a better insight into and understanding of the company and its business, define and agree upon a satisfactory client service plan, define the scope of our legal representation, and prioritize legal assignments. This orientation process is included within the Fixed Fee arrangement, and becomes the basis for establishing the amount of the Fixed Fee monthly payment. We asses this amount annually to make sure the Fixed Fee amount for successive years is commensurate with the services provided in the prior year.

PRACTICE AREAS
## TRADEMARK &
## COPYRIGHT PRACTICE

Our firm attorneys have more than 30 years of experience in counseling clients on the creation  of brand identification, registration and procure-ment of brands and creative content, as well as the litigation of disputed matters involving  trademarks, copyrights, unfair competition,   domain names, websites, rights of publicity and related claims.

- BRAND DEVELOPMENT

- CONTENT PROTECTION

- LITIGATION

- REGISTRATION

- ENFORCEMENT

LOS ANGELES
15260 Ventura Boulevard, 20th Floor
Sherman Oaks, CA 91403
Phone: 818.444.4500

SANTA MONICA
1453 3rd Street Promenade, Suite 300
Santa Monica, CA 90401
Phone: 310.746.9800

www.stubbsalderton.com

PRACTICE AREAS
# TRADEMARK & COPYRIGHT PRACTICE

## Brand Development

Our firm attorneys are uniquely positioned to assist clients in the development of their brand strategies – from start-ups to established marketers. Our attorneys have worked in non- legal positions, such as product brand management, sales, and advertising, and work with clients in the development of business plans for the establishment, marketing and growth of their intellectual property assets. Our attorneys and the support staff are prepared to conduct strategic audits of existing brands as a precursor to any IP asset acquisition or transfer. In addition, we work closely with outside experts in the areas of valuation as well as tax-driven structuring on a domestic and international basis.

## Content Protection

For those in the "Creative Community" content has always been viewed as king. Copyright protection is a right provided for in the U.S. Constitution. Our attorneys and support staff will work with clients at various stages of the creative process to insure that their creative output is protected. We work with a diverse community from advertisers and video producers to musicians, actors, writers, and fine artists. In addition, we work closely with our clients to "vet" creative works to determine that they do not infringe upon the work of others. The Internet has created an enormous marketplace for content and for those pirates who would seek to infringe upon the rights of the creators. We develop protection programs including monitoring of the Internet, notice and take-down programs to try to control the amount of content piracy that our clients find on the Internet. The practice group also represents the full range of clients in copyright litigation matters in the federal courts.

PRACTICE AREAS
# TRADEMARK &
# COPYRIGHT PRACTICE

## Litigation

Our firm represents clients in the courts throughout California and across the United States. Our attorneys have years of experience in all aspects of intellectual property litigation from development of litigation strategy, discovery planning, creation of pleadings through to the conducting of trials. Our litigation clients have represented diverse economic and creative interests from Fortune 500 companies to individual artists. Litigation matters have included claims of trademark infringement, copyright infringement, counterfeiting and piracy, trade dress infringement, unfair competition, violations of rights of publicity and privacy, licensing and merchandising disputes, domain name infringement, web site infringement and other Internet-related matters, breach of contract, commercial disputes, business disparagement, business torts, idea submission, and libel and slander claims.

## Registration

Our firm provides its clients with a complete range of registration services for the protection of their trade-marks in the United States and around the world. Our practice involves not only the development of clearance strategies, but legal opinions with regard to availability of trademarks for purposes of registration and use. Our lawyers and trademark paralegals work with our clients to file appropriate applications for trademark protection at the United States Patent & Trademark Office as well as registrations in countries throughout the world. We also work with our clients to register their creative works with the U.S. Copyright Office as well as with various guilds and other government agencies where appropriate. With respect to patent registrations, our firm works with several firms who have the expertise in the particular fields of invention, from mechanical to bio-tech, to be certain that our clients' novel works are protected.

Representing clients in inter-partes proceedings before the United States Trademark Trial and Appeal Board. Our attorneys have extensive experience representing clients

PRACTICE AREAS
# TRADEMARK &
# COPYRIGHT PRACTICE

## Registration
CONTINUED

whose registrations are being opposed or who are opposing other applications for trademarks likely to cause confusion to the consuming public. We also represent both Petitioners and Registrants in cancellation proceedings before the same federal body.

We offer the following services:

- Counseling with respect to the selection and clearance

of trademarks, including assignments of potentially conflicting trademarks. For example, our attorneys worked with a major cable television channel in the selection of the name for its new fashion and home- lifestyle cable channel.

- Counseling with respect to appropriate searching strategies. For example, often clients will select a number of possible marks for use in connection with their business. We often assist clients in determining the most cost-effective way of searching for conflicts and clearing the marks whether it be for several new film and entertainment companies or an air cargo carrier. We utilize both in-house generated on-line

searches as a quick preliminary screening mechanism as well as outside professional vendors for more comprehensive searches.

- Preparing and filing applications to register trademarks

with the United States Patent & Trademark Office, as well as state authorities, where appropriate. For example, our attorneys and trained trademark paralegals will engage in the filing of a variety of trademarks, design marks and logos for goods in services in more than 45 International Classifications before the United States Patent and Trademark Office. Our firm also tracks the applications through the registration and beyond through the use of an in-house trademark database.

- Directing a network of Stubbs Alderton's foreign associates in preparing and filing applications to register trademarks worldwide. Our seasoned attorneys have developed working relationships with hundreds of foreign trademark lawyers who assist our clients in obtaining protection in hundreds of countries and territories. As global trademark registration programs require substantial resources to establish, we work with our clients to prioritize those foreign jurisdictions with respect to business activity, future market growth, and likelihood of infringing activity.

PRACTICE AREAS
# TRADEMARK & COPYRIGHT PRACTICE

## Enforcement

Our attorneys have been leaders in conceiving and implement-ing programs to protect client intellectual property rights. They are nationally recognized for their particular efforts in battling counterfeiting and piracy in the United States and overseas. We have implemented these important enforcement programs, domestically, internationally, and online for a wide variety of clients and with respect to numerous properties-from movies and sports teams and trade associations, to luxury goods from the world's most famous designers, to consumer and personal care products from manufacturers around the world. Our attorneys work closely with our clients to develop strategic plans, including budgeting, specifically tailored to protect our clients' rights in their valuable intellectual property.

Among our enforcement activities are:

- Obtaining and executing nationwide ex parte seizure orders; and other unique remedies such as renewable orders, asset-freezing orders, and civil contempt orders.

- Obtaining and executing ex parte seizure orders simultaneously at numerous locations.

- For "events" such as the release of blockbuster films or television shows, music concerts, and major sporting events (e.g. the Rose Bowl game, the Major League Baseball All-Star Game and playoff games), combating infringement through nationwide street sweeps by investigators, criminal enforcement, U.S. Customs enforcement, nationwide ex parte seizure orders, and voluntary relinquishments.

- Maintaining programs which address infringement by numerous individuals and companies throughout the United States and worldwide.

- Litigating against non-cooperative infringers.

- Providing training and working with law enforcement agencies such as the local police or U.S. Customs to combat counterfeiting and piracy.

PRACTICE AREAS
# TRADEMARK &
# COPYRIGHT PRACTICE

## Enforcement
CONTINUED

- Working with law enforcement agencies and U.S. Customs to combat criminal infringement and illegal importation of infringing items.

- Protecting our clients' rights with respect to venue owners where infringing and counterfeit products are sold.

- Employing and supervising investigators worldwide who uncover and report intellectual property infringements and who gather vital information necessary to combat this infringement.

- Obtaining voluntary relinquishment of infringing products.

- Maintaining a detailed database of infringers.

- Assisting our clients in developing public relations and advertising campaigns aimed at educating consumers re-garding intellectual property rights.

- Implementing hotlines for consumers to report intellectual property infringement.

# EXHIBIT "2"

**2017 BILLING RATES**

| Class Year | Emerging Growth Rate | Standard Corporate Rate |
|---|---|---|
| Associate Intern (Class of 2016) | $250 | $300 |
| 2nd (Class of 2015) | $350 | $400 |
| 3rd (Class of 2014) | $400 | $450 |
| 4th (Class of 2013) | $450 | $500 |
| 5th (Class of 2012) | $485 | $535 |
| 6th (Class of 2011) | $505 | $555 |
| 7th (Class of 2010) | $525 | $575 |
| 8th (Class of 2009) | $550 | $600 |
| Senior Counsel | $575 | $625 |

| Attorney | EG | Standard |
|---|---|---|
| Akselrud, Greg (Partner) | $650 | $700 |
| Alderton, Scott (Partner) | $650 | $700 |
| Bagley, Adam (Senior Counsel 2008) | $575 | $625 |
| Bergmann, Joshua (2013) | $450 | $500 |
| Carroll, Stephen (Paralegal) | $250 | $300 |
| Cherkassky, Caroline (Senior Counsel 2010) | $575 | $625 |
| Cohen, Harris (Of Counsel) | $475 | $525 |
| Cory, Heather | $250 | $300 |
| Correia, Gina (2015) | $350 | $400 |
| DeBré, Kevin (Partner) | $650 | $700 |
| Duckett, Ryan (2012) | $485 | $535 |
| Feldman, Nicholas (2014) | $400 | $450 |
| Friedman, Jonathan (Partner) | $600 | $650 |
| Galer, Scott (Partner) | $650 | $700 |
| Gatien, Konrad (Partner) | $600 | $650 |
| Gonzaque, Monique (Paralegal) | $250 | $300 |
| Gersh, Jeff (Partner) | $600 | $650 |
| Greaney, Sean (Partner) | $600 | $625 |
| Harris, David (Senior Counsel 2006) | $575 | $625 |
| Hodes, Jonathan (Partner) | $670 | $720 |
| Kamelgard, Barak (2014) | $400 | $450 |
| Keats, Tony (Partner) | $625 | $675 |
| Kim, Grace (Associate Intern 2016) | $250 | $300 |
| Laffey, Kelly (2013) | $450 | $500 |
| Markiles, Murray (Partner) | $650 | $700 |
| McIlvery, John (Partner) | $650 | $700 |
| Morigi, Christine (Paralegal) | $250 | $300 |
| Orme Mann, Darrell (Paralegal) | $250 | $275 |
| Sedivy, Jim | $495 | $545 |
| Sherman, Michael (Partner) | $625 | $675 |
| Solomon, Tami (Paralegal) | $225 | $275 |
| Shaff, Mike (Of Counsel) | $600 | $650 |
| Stubbs, Joe (Partner) | $670 | $720 |
| Wharton, Louis (Partner) | $600 | $650 |
| Ziegler, Julie (Paralegal) | $250 | $300 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **APPLICATION OF DEBTORS AND DEBTORS IN POSSESSION TO EMPLOY STUBBS ALDERTON & MARKILES, LLP AS SPECIAL CORPORATE AND SECURITIES, SPECIAL TRADEMARK, AND SPECIAL LITIGATION, COUNSEL PURSUANT TO 11 U.S.C. §§ 327(e) AND 330; DECLARATION OF SCOTT ALDERTON, ESQ. IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:   Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **October 6, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Ron Bender    rb@lnbyb.com**
- **Monica Y Kim    myk@lnbrb.com, myk@ecf.inforuptcy.com**
- **Krikor J Meshefejian    kjm@lnbrb.com**
- **S Margaux Ross    margaux.ross@usdoj.gov**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Sharon Z. Weiss    sharon.weiss@bryancave.com, raul.morales@bryancave.com**

**2.  SERVED BY UNITED STATES MAIL**: On **October 6, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

Russell Clementson
S Margaux Ross
Office of the U.S. Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, CA 90017

☐ *Service information continued on attached page*

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**:  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **October 6, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| October 6, 2017 | Lourdes Cruz | /s/ Lourdes Cruz |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                      **F 9013-3.1.PROOF.SERVICE**