Shiva Delrahim Beck (SBN 228841)
GARDERE WYNNE SEWELL LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
(214) 999-3000
(214) 999-4667 (fax)
Email: sbeck@gardere.com

Attorneys for William M. Aisenberg and Jeffrey Cordes

# UNITED STATES BANKRUPTCY COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>Ironclad Performance Wear Corporation, a California corporation,<br><br>    Debtor and Debtor in Possession.<br><br>In re:<br><br>Ironclad Performance Wear Corporation, a Nevada corporation,<br><br>    Debtor and Debtor in Possession.<br><br>[x] Affects both Debtors<br><br>[ ] Affects Ironclad Performance Wear Corporation a California corporation only<br><br>[ ] Affects Ironclad Performance Wear Corporation a Nevada corporation only | Lead Case No. 1:17-bk-12408-MB<br><br>Jointly administered with: 1:17-bk-12409-MB<br><br>(Ironclad Performance Wear Corporation, a Nevada corporation)<br><br>Chapter 11 Cases<br><br>**LIMITED OBJECTION OF JEFFREY CORDES AND WILLIAM M. AISENBERG TO THE DEBTORS' SALE MOTION**<br><br>Hearing Date: <u>October 30, 2017</u><br>Time: <u>10:00 a.m.</u><br>Ctrm: <u>303</u><br>    21041 Burbank Blvd.<br>    Woodland Hills, CA 91367 |

Jeffrey Cordes and William M. Aisenberg (collectively, "**Movants**"), by and through their undersigned attorney, submit this *Limited Objection of Jeffrey Cordes and William M. Aisenberg to the Debtors' Sale Motion* (the "**Objection**"), and respectfully state as follows:

# I.
# PRELIMINARY STATEMENT

Movants are former officers of Ironclad Performance Wear Corp., a California corporation, and Ironclad Performance Wear Corp., a Nevada corporation, the debtors and debtors-in-possession in the above referenced chapter 11 cases (collectively, the "**Debtors**"). Prior to the Debtors' respective bankruptcy filings, (i) Debtors incurred obligations to Movants, which are mature and remain unpaid and (ii) Movants initiated an action against the Debtors that is currently pending before the American Arbitration Association, Reference No. 1220057366 (the "**AAA Proceeding**") in connection with the Debtors' breaches of certain employment agreements and related documents among the Debtors and Movants. Additionally, Movants incurred, and expect to incur, legal expenses that are recoverable as insureds under Directors and Officers indemnity coverage purchased by Debtors for their benefit and the benefit of Movants.

The Debtors have filed a motion to sell substantially all of their assets and to assume and assign certain, designated executory contracts. Movants file this limited Objection to the Debtors' Sale Motion (defined below) out of abundance of caution to ensure that the proposed sale does not affect Movants' rights to pursue their claims against the Debtors under the employment agreements and to pursue any insurance proceeds to which they may be, or in the future may become, entitled.

# II.
# FACTUAL BACKGROUND

**A. The Cordes Employment Agreement**

1. Prior to the Petition Date, Mr. Cordes served as the Debtors' President and Chief Executive Officer. (Cordes Decl., ¶ 2). On October 3, 2017, Mr. Cordes timely filed his proof of claim with the Bankruptcy Court at Claim No. 8-1 (the "**Cordes Claim**").[1] (Cordes Decl., ¶ 4).

2. The Cordes Claim arises pursuant to three interrelated documents that define

---

[1] A true and correct copy of Mr. Cordes's proof of claim is attached to the Cordes Declaration as **Exhibit A**.

2

1 the terms of Mr. Cordes's former employment with the Debtors. (Cordes Decl., ¶ 5). These
2 include: (a) that certain *Employment Letter Agreement* dated February 3, 2014 between the
3 Debtors and Mr. Cordes (the "**Cordes Agreement**")[2]; (b) that certain *Employee Proprietary*
4 *Information and Inventions Agreement* (the "**Cordes PIIA**")[3] dated February 3, 2014; and (c)
5 an amendment to certain terms of the Cordes Agreement and Cordes PIIA dated January 1,
6 2017 (the "**Cordes Amendment**").[4][5] *Id*.

7    3.    On or around July 4, 2017, Mr. Cordes resigned from his positions with the
8 Debtors. (Cordes Decl., ¶ 6). Pursuant to the Cordes Agreement and the Cordes
9 Amendment, upon his termination with the Debtors, Mr. Cordes became entitled to an
10 <u>unconditional</u> right to six months of severance pay, in the total aggregate amount of not less
11 than $150,000.00 (the "**Cordes Severance Pay**"). *Id*. Prior to the Petition Date, Mr. Cordes
12 was advised that the Debtors did not intend to pay the Cordes Severance Pay. Mr. Cordes
13 holds a breach of contract claim against the Debtors in connection with the Debtors' failure to
14 pay the Cordes Severance Pay and is entitled to damages resulting from the Debtors'
15 breaches. *Id*. The only obligation remaining under the Cordes Employment Agreement is for
16 the Debtors to pay the Cordes Severance Pay and related fees or costs associated therewith.
17 *Id*.

18    4.    On or about September 7, 2017, Mr. Cordes submitted a demand for
19 arbitration pursuant to JAMS Rule 5(a)(ii), initiating the AAA Proceeding. (Cordes Decl., ¶
20 7).

21    **B. The Aisenberg Employment Agreement**

22    5.    Prior to the Petition Date, Mr. Aisenberg served as the Debtors' Executive
23 Vice President and Chief Financial Officer. (Aisenberg Decl., ¶ 2). On October 3, 2017, Mr.
24 Aisenberg timely filed his proof of claim with the Bankruptcy Court at Claim No. 7-1. (the

---

[2] A true and correct copy of the Cordes Agreement is attached to the Cordes Declaration as **Exhibit B**.

[3] A true and correct copy of the Cordes PIIA is attached to the Cordes Declaration as **Exhibit C**.

[4] A true and correct copy of the Cordes Amendment is attached to the Cordes Declaration as **Exhibit D**.

[5] Collectively, the Cordes Agreement, the Cordes PIIA, and the Cordes Amendment are referred to as the "**Cordes Employment Agreement**."

3

"**Aisenberg Claim**").[6]  (Aisenberg Decl., ¶ 4).

6.     The Aisenberg Claim arises pursuant to three interrelated documents that define the terms of Mr. Aisenberg's former employment with the Debtors. (Aisenberg Decl., ¶ 5). These include: (a) that certain *Employment Letter Agreement* dated April 22, 2014 between the Debtors and Mr. Aisenberg (the "**Aisenberg Agreement**")[7]; (b) that certain *Employee Proprietary Information and Inventions Agreement* (the "**Aisenberg PIIA**")[8] dated April 22, 2014; and (c) an amendment to certain terms of the Aisenberg Agreement and Aisenberg PIIA dated January 1, 2017 (the "**Aisenberg Amendment**").[9] [10] *Id*.

7.     On or around July 4, 2017, Mr. Aisenberg resigned from his positions with the Debtors. (Aisenberg Decl., ¶ 6). Pursuant to the Aisenberg Agreement and the Aisenberg Amendment, upon his termination with the Debtors, Mr. Aisenberg became entitled to an <u>unconditional</u> right to six months of severance pay, in the total aggregate amount of not less than $112,500.00 (the "**Aisenberg Severance Pay**"). *Id*. Prior to the Petition Date, Mr. Aisenberg was advised that the Debtors did not intend to pay the Aisenberg Severance Pay. Mr. Aisenberg holds a breach of contract claim against the Debtors in connection with the Debtors' failure to pay the Aisenberg Severance Pay and is entitled to damages resulting from the Debtors' breaches. *Id*. The only obligation remaining under the Aisenberg Employment Agreement is for the Debtors to pay the Aisenberg Severance Pay and related fees or costs associated therewith. *Id*.

8.     On or about September 7, 2017, Mr. Aisenberg submitted a demand for arbitration pursuant to JAMS Rule 5(a)(ii), initiating the AAA Proceeding. (Aisenberg Decl, ¶ 7).

**C. The Debtors' Professional Liability Policy**

---

[6] A true and correct copy of the Aisenberg Claim is attached to the Aisenberg Declaration as **Exhibit A**.

[7] A true and correct copy of the Aisenberg Agreement is attached to the Aisenberg Declaration as **Exhibit B**.

[8] A true and correct copy of the Aisenberg PIIA is attached to the Aisenberg Declaration as **Exhibit C**.

[9] A true and correct copy of the Aisenberg Amendment is attached to the Aisenberg Declaration as **Exhibit D**.

[10] Collectively, the Aisenberg Agreement, the Aisenberg PIIA, and the Aisenberg Amendment are referred to as the "**Aisenberg Employment Agreement**."

9.      As of the Petition Date, the Debtors held a professional liability insurance policy through QBE Insurance Corporation, policy number QPL019727, covering the period of May 11, 2017 through June 1, 2018 (the "**Policy**").[11] (Cordes Decl., ¶ 8; Aisenberg Decl., ¶ 8). Movants are insured persons under the Policy. *Id.* Pursuant to the Policy, Movants are authorized to pursue coverage with respect to legal expenses incurred as a result of any investigation conducted by the Debtors of Movants, and any breach of duty claims pursued by the Debtors or its shareholders against Movants. *Id*.

**D.  The Debtors' Proposed Sale**

10.     On October 9, 2017, the Debtors filed the Debtors' *Motion for an Order: (1) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances; (2) Approving of Debtors' Assumption and Assignment of Certain Unexpired Leases and Executory Contracts and Determining Cure Amounts and Approving of Debtors' Rejection of Those Unexpired Leases and Executory Contracts Which Are Not Assumed and Assigned; (3) Waiving the 14-Day Stay Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d); and (4) Granting Related Relief; Memorandum of Points and Authorities* [Docket No. 95] (the "**Sale Motion**").

11.     Pursuant to the Sale Motion, the Debtors seek an order of the Bankruptcy Court approving of the Debtors' proposed sale of substantially all of their assets to Radians Wareham Holding, Inc. (the "**Purchaser**") in accordance with that certain *Stalking Horse Asset Purchase Agreement* dated September 8, 2017 by and among the Purchaser and the Debtors (the "**APA**"), which is attached to the *Declaration of Geoffrey Greulich* (the **Original Greulich Declaration**") filed on September 11, 2017 at Docket No. 6. In the Sale Motion, the Debtors represent that consummation of the proposed sale is expected to pay the Debtors' creditors in full. (Sale Motion, p. 6, ll. 1-3).

12.     By the Sale Motion, the Debtors seek the Court's approval of the Debtors' assumption and assignment to Purchaser (or the successful over-bidder) of certain unexpired

---

[11] A true and correct copy of the Policy is attached to the Cordes Declaration as **Exhibit E** and to the Aisenberg Declaration as **Exhibit E**.

5

leases and executory contracts that the Purchaser wishes to assume.  (Sale Motion, p. 3, ll. 3-18).  A schedule of all of the Debtors' known executory contracts and unexpired leases, along with the Debtors' belief as to the outstanding cure amounts owing by the Debtors to the counterparties to the executory contracts and unexpired leases (the "**Designated Contracts**") is attached as Exhibit "1" to the *Declaration of Geoffrey Gruelich* (the "**Greulich Declaration**") filed on October 9, 2017 as Docket Number 94. (Greulich Decl., pp. 15-16).

13.  In the Sale Motion, the Debtors also seek a determination by the Court that none of the other parties to the executory contracts and unexpired leases have suffered any actual pecuniary loss resulting from any default by the Debtors so that no further payments beyond the proposed 'Cure Amounts' are required.  (Sale Motion, p. 3, ll. 12-18; p. 9, ll. 15-18).  The Debtors' proposed order (the "**Sale Order**") submitted concurrently with the Sale Motion contains the following language:

> The Debtors have demonstrated that no further parties to any of the Designated Contracts has incurred any actual pecuniary loss resulting from a default prior to the Closing under any of the Designated Contracts within the meaning of 11 U.S.C. § 365(b)(1)(B).

(Sale Order, p. 8, ll. 5-9).

14.  By the Sale Motion, the Debtors seek approval, effective as of the closing date of the proposed sale, of the Debtors' rejection of all of the Debtors' remaining unexpired leases and executory contracts which are not assumed and assigned to the Purchaser or a successful over-bidder.  (Sale Motion, p. 9, ¶ 10).

15.  The Cordes Employment Agreement and the Aisenberg Employment Agreement are not identified on the list of Designated Contracts attached to the Gruelich Declaration.  (*See* Gruelich Decl., pp. 15-16).

16.  The APA establishes that certain "Excluded Liabilities" shall not be assumed by the Purchaser and that certain "Retained Assets" will be retained by the Debtors and not sold, assigned, conveyed, transferred or delivered to the Purchaser under the APA.  (Original Greulich Decl., p. 260, § 2.1(a)).  Among those "Retained Assets" that will remain with the

Debtors and the Estates are "all insurance policies and all rights, claims, credits or causes of action thereunder or in connection therewith." (Original Greulich Decl., p. 262, § 2.1(c)(iv)). Among those "Excluded Liabilities" not being assumed by the Purchaser are "liabilities or obligations associated with any 'Retained Assets,'" and any "liabilities or obligations arising under any Contracts that are not Assumed Contracts." (Original Greulich Decl., p. 262, § 2.1(d)(ii), (iv). Therefore, under the APA, the Debtors appear to retain the Policy, and also appear to remain liable to pay any obligations associated therewith.

17. On October 9, 2017, Debtors filed their *Notice of Hearing on Debtors' Motion for an Order: (1) Approving Sale of Substantially All of the Debtors' Assets Free and Clear of All Encumbrances; (2) Approving of Debtors' Assumption and Assignment of Certain Unexpired Leases and Executory Contracts and Determining Cure Amounts and Approving of Debtors' Rejection of Those Unexpired Leases and Executory Contracts Which Are Not Assumed and Assigned; (3) Waiving the 14-Day Stay Periods Set Forth in Bankruptcy Rules 6004(h) and 6006(d); and (4) Granting Related Relief; Memorandum of Points and Authorities* [Docket No. 96] (the "**Sale Hearing Notice**"). The Sale Hearing Notice establishes Monday, October 16, 2017 as the deadline to file or otherwise submit an objection to the Sale Motion. (Sale Hearing Notice, p. 7, ll. 19). Movants did not receive the Sale Hearing Notice until Friday, October 13, 2017, only one business day prior to the October 16 objection deadline. (Cordes Decl., ¶ 10; (Aisenberg Decl., ¶ 10).

**III.
RELIEF REQUESTED AND BASIS THEREFOR**

**A. Relief Requested**

By this limited Objection[12], Movants request that the Sale Order include language providing (i) that the Debtors' proposed sale, if approved, shall not affect Movants' rights to pursue their claims against the Debtors under the Cordes Employment Agreement and the Aisenberg Employment Agreement; (ii) that the Debtors' proposed sale, if approved, shall not affect Movants' rights as insured parties under the Policy to pursue any insurance

---

[12] Movants are filing a Motion for Relief From the Automatic Stay contemporaneously herewith in order to seek Bankruptcy Court authority to proceed with the AAA Proceeding.

7

proceeds to which they may be, or in the future may become, entitled; (iii) that the Debtors are prohibited from terminating or otherwise allowing the Policy to lapse; (iv) that the Cordes Employment Agreement and the Aisenberg Employment Agreement (a) are not "executory contracts," as that term is used in the Bankruptcy Code, (b) are not among those Designated Contracts being assumed by the Debtors and Assigned to the Purchaser, and (c) are not rejected by the Debtors; and (v) that any language in the Sale Order establishing that a party to an executory contract has not incurred any pecuniary loss is inapplicable to the Cordes Employment Agreement and the Aisenberg Employment Agreement.

### B. Arguments and Authorities

The Cordes Employment Agreement and the Aisenberg Employment Agreement are not identified on the list of Designated Contracts attached to the Gruelich Declaration. It is unclear whether the Debtors excluded the Cordes Employment Agreement and the Aisenberg Employment Agreement from the list of Designated Contracts because the Debtors (i) do not believe the agreements are "executory," as used in § 365 of the Bankruptcy Code; (ii) do not intend to assume and assign the agreements to the Purchaser; or (iii) for some other reason, or no reason at all.

The Cordes Employment Agreement and the Aisenberg Employment Agreement are not "executory" as that term is used in the Bankruptcy Code. As the Bankruptcy Code does not define the term "executory," the Ninth Circuit has adopted the Countryman definition of that term, which provides:

> [An executory contract is] one on which performance is due to some extent on both sides.... [I]n executory contracts the obligations of both parties are so far unperformed that the failure of either party to complete performance would constitute a material breach and thus excuse the performance of the other.

*In re Texscan Corp.*, 976 F.2d 1269, 1272 (9th Cir. 1992).

Only one party to the Cordes Employment Agreement and the Aisenberg Employment – the Debtor – has any remaining obligation thereunder, and that is to pay Mr. Cordes and Mr. Aisenberg their severance pay. Contracts under which the only obligation

8

remaining is the payment of money is not executory. *See In re Munple, Ltd.*, 868 F.2d 1129, 1130 (9th Cir. 1989) (holding that commission agreement was not executory because conditions precedent to commission being earned had already occurred). Therefore, neither the Cordes Employment Agreement nor the Aisenberg Employment Agreement is executory under the Bankruptcy Code. That means that neither such agreement can be assumed, assigned, or rejected by the Debtors pursuant to the sale or otherwise. Accordingly, none of the provisions in the Sale Motion or Sale Order regarding the Designated Contracts or executory contracts of the Debtor are applicable to or otherwise govern the Cordes Employment Agreement or the Aisenberg Employment Agreement, or affect Movants' rights to pursue their claims thereunder. Specifically, none of the proposed language in the Sale Order establishing that any of the Designated Contracts has incurred any actual pecuniary loss resulting from a default prior to the closing date of the sale is applicable to the Cordes Employment Agreement or the Aisenberg Employment Agreement.

Movants also assert that the Debtors' proposed sale, if approved, shall not affect Movants' rights as insured parties under the Policy to pursue any insurance proceeds to which they may be, or in the future may become, entitled. The APA establishes that the Debtors will retain all insurance policies of the Debtors and that no liabilities associated with such policies shall be assigned to the Purchaser. Because the Policy is not included on the list of Designated Contracts to be assumed and assigned to the Purchaser, there is confusion as to whether the Policy will be rejected under the Sale Order, or retained by the Debtor under the APA. Movants request that the proposed Sale Order (i) be clarified to establish that Movants' rights as insured parties under the Policy to pursue any insurance proceeds to which they may be, or in the future may become, entitled will not be affected by the Sale, and (ii) that the Sale Order prohibit the Debtors from terminating or otherwise allowing the Policy to lapse.

Finally, Movants request that the Court deem this Objection timely filed. The Debtors filed the Sale Hearing Notice on October 9, 2017. The Sale Hearing Notice establishes Monday, October 16, 2017 as the deadline to file or otherwise submit an

objection to the Sale Motion. Movants did not receive the Sale Hearing Notice until Friday, October 13, 2017, only one business day prior to the October 16 objection deadline (Cordes Decl., ¶ 10; Aisenberg Decl., ¶ 10). Movants filed this Objection as soon as reasonably practicable after having received the Sale Hearing Notice. Accordingly, good cause exists to allow the Objection as timely filed.

## IV.
## CONCLUSION

Movants respectfully request that the Court enter an order granting this Objection wherein it provides: (i) that the Debtors' proposed sale, if approved, shall not affect Movants' rights to pursue their claims against the Debtors under the Cordes Employment Agreement and the Aisenberg Employment Agreement; (ii) that the Debtors' proposed sale, if approved, shall not affect Movants' rights as insured parties under the Policy to pursue any insurance proceeds to which they may be, or in the future may become, entitled; (iii) that the Debtors are prohibited from terminating or otherwise allowing the Policy to lapse; (iv) that the Cordes Employment Agreement and the Aisenberg Employment Agreement (a) are not "executory contracts," as that term is used in the Bankruptcy Code, (b) are not among those Designated Contracts being assumed by the Debtors and Assigned to the Purchaser, and (c) are not rejected by the Debtors; and (v) that any language in the Sale Order establishing that a party to an executory contract has not incurred any pecuniary loss is inapplicable to the Cordes Employment Agreement and the Aisenberg Employment Agreement; and (vi) awarding any other relief to Movants to which they may be entitled.

*[Signature Page Follows]*

10

1 | Dated: October 20, 2017

Respectfully submitted,

By: */s/ Shiva Delrahim Beck*
    Shiva Delrahim Beck

Shiva Delrahim Beck (SBN 228841)
sbeck@gardere.com
GARDERE WYNNE SEWELL LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas  75201
(214) 999-3000
(214) 999-4667 (fax)

Attorney for William M. Aisenberg and Jeffrey Cordes

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 2021 McKinney Avenue, Suite 1600, Dallas, TX 75201.

A true and correct copy of the foregoing document described as **LIMITED OBJECTION OF JEFFREY CORDES AND WILLIAM M. AISENBERG TO THE DEBTORS' SALE MOTION, THE DECLARATION OF WILLIAM M. AISENBERG IN SUPPORT OF LIMITED OBJECTION OF JEFFREY CORDES AND WILLIAM M. AISENBERG TO THE DEBTORS' SALE MOTION, AND DECLARATION OF JEFFREY CORDES IN SUPPORT OF LIMITED OBJECTION OF JEFFREY CORDES AND WILLIAM M. AISENBERG TO THE DEBTORS' SALE MOTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Order(s) and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On October 20, 2017 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) stated below:

Ron Bender rb@lnbyb.com

Cathrine M Castaldi ccastaldi@brownrudnick.com

Russell Clementson russell.clementson@usdoj.gov

Aaron S Craig acraig@kslaw.com, lperry@kslaw.com

Monica Y Kim myk@lnbrb.com, myk@ecf.inforuptcy.com

Krikor J Meshefejian kjm@lnbrb.com

Tania M Moyron tania.moyron@dentons.com, chris.omeara@dentons.com

S Margaux Ross margaux.ross@usdoj.gov

United States Trustee (SV) ustpregion16.wh.ecf@usdoj.gov

Sharon Z. Weiss sharon.weiss@bryancave.com, raul.morales@bryancave.com

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) October 20, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| **Debtor** | **Debtor** |
|---|---|
| Ironclad Performance Wear Corporation, a CA corporation | Ironclad Performance Wear Corporation, a Nevada corporation |
| 15260 Ventura Blvd., 20th Floor | 15260 Ventura Blvd., 20th Floor |
| Sherman Oaks, CA 91403 | Sherman Oaks, CA 91403 |

Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served):**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 20, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy – VIA OVERNIGHT**

Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date: October 20, 2017                              By: */s/ Shiva Delrahim Beck*
                                                    Shiva Delrahim Beck

**Served by Overnight Mail:**

Ironclad Performance Wear (8300)
OUST, Secured & Top 20

United States Trustee
915 Wilshire Blvd., Suite 1850
Los Angeles, California 90017

U. S. Securities and Exchange Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

**Secured Creditor**
Radians Wareham Holding, Inc.
Attn: Mike Tutor, CEO
5305 Distriplex Farms
Memphis, TN 38141

**Counsel to Radians Wareham Holdings**  E.
Franklin Childress, Jr.
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
165 Madison Ave, Suite 2000
Memphis, Tennessee 38103

**Counsel to Radians Wareham Holdings**
Sharon Z. Weiss
Bryan Cave
120 Broadway, Suite 300
Santa Monica, CA 90401

**Top 20 Unsecured Creditors:**

Advantage Media Services, Inc. Attn: Steven Helmle
29010 Commerce Center Drive
Valencia, CA 91355

Danny Negara
Mercindo Global Manufaktur
Jl. Raya Semarang-Bawen Km.29
SEemerang,
Central Java 50661, Indonesia

Eliza Yang
Nantong Changbang Gloves Co.
Flat/RM 1602 Chit Lee Comm
Bldg 30-36, Shau Kei Wan Road
Hong Kong, China

Gerard
BDO USA, LLP
P. O. BOX 677973
Dallas, TX 75267-7973

Kwong
PT JJ GLOVES INDO
JL Ronggowarsito, Mlese, Ceper
Bonded Zone, Klaten
Central Java, Indonesia, 57463

Mark Robba
PT SPORT GLOVE INDONESIA
Krandon Desa Pandowoharjo
Sleman
Yogyakarta, Indonesia, 55512

Daniel Gomes
Capital One Bank
P. O. BOX 1917
Merrifield, VA 22116-1917

Brent Waters
Resources Global Professionals
P.O. Box 740909
Los Angeles, CA 90074-0909

Skadden Arps Slate Meagher & Flom LLP
P O Box 1764
White Plains, NY 10602

Carol Pearson
FedEx
PO Box 7221
Pasadena, CA 91109-7321

Risk Consulting Partners
24722 Network Place
Chicago, IL 60673-1247

Robert Tejeda
Stubbs, Alderton & Markiles, LLP
15260 Ventura Blvd
20th Floor
Sherman Oaks, CA 91403

Ms. Vicz Yue
Ka Hung Glove Inustrial Co. Ltd. Fujian Quanzhou Jiacheng Leather Chi Feng Road, Quanzhou City
Fujian, 362000, China

Shur-Sales & Marketing, Inc. 3830 S Windermere St.
Englewood, CO 80110

John Calhoun
Synetra
1110 E. State Highway 114, Suite 200
Southlake, TX 76092

Sky Lin
Marusan - Mimasu Tshusho Co. Ltd.
No 1 Queen' Road Central
Hong Kong China

Carla Durand
University of Milwaukee
P O Box 500
Milwaukee, WI 53201

Bradley J. S. Weiss
Winspeed Sports Shanghai Co., Ltd.
858 Mingzhu Road
Shanghai China, 00020-1702

Janice Lee
Woneel Midas Leathers
Jl Gembor Raya Desa Pasirjaya
Tangerang
Banten, Indonesia, 15135

Liliana Dominguez
Yellow and Roadway
P. O. Box 100129
Pasadena, CA 91355

Inwood National Bank
P O Box 857413
Richardson, TX 75085

Gardere01 - 10806093v.3