RON BENDER (SBN 143364)
MONICA Y. KIM (SBN 180139)
KRIKOR J. MESHEFEJIAN (SBN 255030)
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234; Facsimile:  (310) 229-1244
Email: rb@lnbyb.com; myk@lnbyb.com; kjm@lnbyb.com
Attorneys for Chapter 11 Debtors and Debtors in Possession

Samuel R. Maizel (SBN 189301)
Tania M. Moyron (SBN 235736)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5704
Telephone: (213) 623-9300; Facsimile: (213) 623-9924
Email : samuel.maizel@dentons.com; tania.moyron@dentons.com
Attorneys for Official Committee of Equity Security Holders

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>ICPW Liquidation Corporation, a California corporation,[1]<br><br>　　Debtor and Debtor in Possession.<br><br>In re:<br><br>ICPW Liquidation Corporation, a Nevada corporation,[2]<br><br>　　Debtor and Debtor in Possession.<br><br>Affects:<br><br>☒ Both Debtors<br><br>☐ ICPW Liquidation Corporation, a California corporation<br><br>☐ ICPW Liquidation Corporation, a Nevada corporation. | Lead Case No.: 1:17-bk-12408-MB<br>Jointly administered with:<br>1:17-bk-12409-MB<br>Chapter 11 Cases<br><br>**JOINT MOTION FOR ORDER GRANTING STANDING TO PURSUE CLAIMS FOR THE BENEFIT OF THE DEBTORS' ESTATES; AND APPROVING STIPULATION BETWEEN DEBTORS AND EQUITY COMMITTEE GRANTING STANDING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT**<br><br>DATE:　　December 12, 2017<br>TIME:　　1:30 p.m.<br>PLACE:　　Courtroom "303"<br>　　　　　21041 Burbank Blvd.<br>　　　　　Woodland Hills, CA 91367 |

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

1

ICPW Liquidation Corporation, a California corporation, formerly known as Ironclad Performance Wear Corporation, a California corporation, ICPW Liquidation Corporation, a Nevada corporation, formerly known as Ironclad Performance Wear Corporation, a Nevada corporation (collectively, the "Debtors"), and the Official Committee of Equity Holders (the "Equity Committee"), hereby jointly move for an order: (1) granting leave, standing, and exclusive authority to the Equity Committee to assert, prosecute and/or settle on behalf of the Debtors' estates, subject to Court approval, any and all claims, objections and causes of action against Jeffrey Cordes and William Aisenberg, and counter claims and defenses against any of the claims asserted by Mr. Cordes and Mr. Aisenberg, including those claims asserted in their proofs of claim against the Debtors; and (2) approving that certain *Stipulation Granting Standing To Pursue Certain Estate Based Claims For The Benefit Of The Debtors' Estates* (the "Stipulation") filed concurrently herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF RELEVANT FACTS

**A.    Background Information.**

1.    On September 8, 2017 ("Petition Date"), the Debtors each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. With the Court's approval, the Debtors two chapter 11 cases are being jointly administered.

2.    On September 20, 2017, the Office of the United States Trustee filed its *Notice of Appointment of Official Committee of Equity Holders*.

3.    The Debtors filed their bankruptcy cases to consummate a sale of substantially all of their assets (excluding cash and causes of action) for the most money possible. On October 30, 2017, the Debtors conducted a sale auction which resulted in a winning bidder and a backup bidder approved by the Bankruptcy Court. Brighton-Best International, Inc. ("BBI") was determined by the Court to be the winning bidder.

4.On November 3, 2017, the Court entered an order approving a sale to BBI. The sale to BBI closed on November 14, 2017. The proceeds generated from the sale are sufficient to pay all creditors in full and provide distributions to shareholders in these cases.

**B.The Former Officers' Claims.**

5.On September 7, 2017, Jeffrey Cordes and William M. Aisenberg (the "Former Officers") submitted an arbitration demand to JAMS in connection with alleged breaches of certain employment agreements and related documents, which initiated a proceeding before the American Arbitration Association ("AAA"),

6.The Former Officers filed proofs of claims against the Debtors on October 3, 2017, which are denominated in the Bankruptcy Court's files as Claims No. 7 and 8 (collectively, the "Proofs of Claim");

7.The Former Officers filed the *Motion Of Jeffrey Cordes And William M. Aisenberg For Relief From The Automatic Stay Under 11 U.S.C. [§] 362(Action In Nonbankruptcy Forum)* (the "Relief From Stay Motion"), as Docket No. 132, and the Debtors' filed the opposition (the "Opposition") thereto, as Docket No. 169, and the Equity Committee filed a joinder therein, as Docket No. 168,

8.On October 15, 2017, the Court temporarily denied the Relief From Stay Motion and set related deadlines, including for the Debtors' estates and/or the Equity Committee to file an adversary proceeding and claim objections against the Former Officers.

9.The Debtors have or may have claims, objections and causes of action against the Former Officers (collectively, the "Claims"), and counter claims and defenses against any of the claims asserted by the Former Officers (the "Defenses"), including those claims asserted in the Proofs of Claim. The Claims are currently being investigated and evaluated, and involve, among other things, the Former Officers' failure to provide materially complete financial information.

10.Specifically, on June 29, 2017, the Audit Committee of the Debtors' Board of Directors (the "Audit Committee") concluded that disclosure should be made and action taken to prevent further reliance on the Debtors' financial statements as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31, 2017 and

March 31, June 30 and September 30, 2016. *See* 8-K filed with Securities and Exchange Commission, on June 29, 2017 (the "8-K Report").

11. The 8-K Report provides that during the second quarter of fiscal year 2017, the Debtors received anonymous reports regarding potential accounting irregularities relating to certain sale transactions (the "Subject Transactions"). The Debtors have subsequently determined that the Subject Transactions affect the periods as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31 and June 30, 2016 (collectively, the "Subject Periods"), and that the corresponding roll-over effect of these misstatements resulting from the Subject Transactions in the Subject Periods also affect the Debtors' financial statements as of and for the fiscal quarters ended September 30, 2016 and March 31, 2017. *See* 8-K Report.

12. The 8-K Report further provides that over the course of approximately six weeks, a consultant retained by the Debtors identified previously undisclosed information pertaining to certain recorded sales that preliminarily indicate that the Subject Transactions should not have been recorded in the Subject Periods. Based upon the review conducted by the consultant and the Audit Committee, which are not yet complete or definitive, the Debtors believe the items in question improperly (increased) reduced, for the quarter ended March 31, 2017 and the years ended December 31, 2016 and 2015, revenues by approximately $292,000 (or approximately 6.6%), ($844,000) (or approximately -3.4%) and ($1,390,000) (or approximately -5.9%), gross profit by approximately $86,000 (or approximately 5.5%), ($322,000) (or approximately -3.6%) and ($402,000) (or approximately -4.9%), and operating loss and net loss by approximately ($86,000), $6,000 and $402,000, respectively. *See* 8-K Report.

13. Therefore, on June 29, 2017, the Audit Committee concluded that the Debtors' financial statements as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31, 2017 and March 31, June 30 and September 30, 2016 should no longer be relied upon due to the misstatements resulting from the Subject Transactions in the Subject Periods and the corresponding roll-over effect of these misstatements outside the Subject Periods. *See* 8-K Report.

14. On July 4, 2017, the Former Officers resigned from their respective positions as officers (and in the case of Mr. Cordes, as a director) of the Debtors.

15. The Debtors and the Equity Committee believe that the foregoing facts give rise to claims against the Former Officers. The Debtors and the Equity Committee have agreed, subject to Court approval, that the Debtors would grant the Equity Committee standing to assert, prosecute, and/or settle any and all of the Debtors' Claims and Defenses on behalf of the Debtors' estates in the AAA Proceeding, the Bankruptcy Court, and/or any other forum.

16. Conferring standing upon the Equity Committee will allow the Debtors to focus their resources and efforts on preparing and proposing a plan in these cases, and focusing their efforts upon reviewing and reconciling all other proofs of claim filed in these cases. Such a division of labor between the Debtors and the Equity Committee will benefit the Debtors' estates, expedite the administration of the Debtors' estates, and ensure that the primary stakeholders (the shareholders) are involved in resolving the Claims against the Former Officers.

## II.    DISCUSSION

A debtor, or trustee, may stipulate to allow a committee appointed in a case to bring actions on behalf of the estate, "[s]o long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial." *Liberty Mut. Ins. Co. v. Official Comm. Of Unsecured Creditors of Spaulding Composites Co. (In re Spaulding Composites Co.)*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997) (finding that an unsecured creditors' committee had standing to initiate an adversary compliant on behalf of the estate where debtor stipulated to confer standing); *see also Official Comm. Of Equity Security Holders v. nVidia Corporation (In re 3dfx Interactive, Inc.)*, 2009 WL 223266, at *6 (Bankr. N.D. Cal. Jan. 6, 2009) (standing to pursue estate's causes of action conferred upon Equity Committee); *Adelphia Communications Corp. and Official Committee of Unsecured Creditors v. Bank of America, N.A. (In re Adelphia Communications Corp.)*, 330 B.R. 364 (Bankr. S.D.N.Y. 2005) (granting standing to equity committee and creditors' committee to pursue estate claims).

Under *In re Spaulding Composites Co.*, a committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2)

5

1 the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and
2 (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy
3 proceedings. *In re Commodore Int'l Ltd.*, 262 F.3d 96, 100 (2d Cir. 2001) (adopting *Spaulding*
4 and setting forth an approach that "permits a reasoned and practicable division of labor between
5 the creditors' committee and the debtor" while also providing for judicial oversight). In addition,
6 courts also consider additional factors including: (i) whether allowing the committee to pursue
7 the claim would permit the debtor to concentrate its resources on reorganization; (ii) whether the
8 committee's interests conflict with those of these estate; (iii) whether granting the committee
9 standing would prejudice the equality of distribution among the debtors' creditors; and (iv)
10 whether litigation is consistent with maximization of value of the estate. *In re Adelphia
11 Communications Corp.*, 330 B.R. at 375 (citing *Spaulding*, 207 B.R. at 904). Courts considering
12 these factors should conduct a fact-dependent cost-benefit analysis to determine whether the
13 committee's assumption of the debtor's litigation responsibilities is justified. *See Spaulding*, 207
14 B.R at 904 (explaining that "[a]llowing the DIP to coordinate litigation responsibilities with…a
15 committee…can be an effective method for the DIP to manage the estate and fulfill its duties").

16 The Court should approve the Stipulation and grant the Equity Committee standing to
17 prosecute the Claims and assert the Defenses, to allow the Debtors to focus on the formulation of
18 a plan and administer and reconcile all other claims. For the avoidance of doubt the Debtors and
19 the Equity Committee will continue to jointly oppose the RFS Motion.

20 Conferring standing upon the Equity Committee will allow the Debtors to focus on their
21 efforts in their bankruptcy cases while the Equity Committee, acting in the interests of the
22 Debtors' estates, creditors, and shareholders, prosecutes the Claims. Indeed, the Court has
23 directed filing of Claims against the Former Officers by January 26, 2018, in order to, among
24 other things, assist the Court in making further determinations on the Relief From Stay Motion.
25 Conferring standing to the Equity Committee also makes sense because the Equity Committee
26 may have additional claims in a representative or other capacity against the Former Officers.
27 Any recovery from bringing the Claims will inure to the benefit of the Debtors' estates.
28 Moreover, the Debtors and the Equity Committee believe that it is in the Debtors' estates best

interests to investigate and bring Claims against the Former Officers, as well as defend and assert counterclaims against the Former Officers' Proofs of Claim. The facts giving rise to the Claims, if proven, may lead to substantial recoveries for the Debtors' estates, for the benefit of shareholders. Given that creditors of the Debtors' estates are expected to be paid in full from the Debtors' existing cash on hand, the pursuit of the Claims will inure to the direct benefit of the remaining primary stakeholders, the equity interest holders of the Debtors' estates. Conferring standing on the Equity Committee is therefore a fair and appropriate request under the circumstances, and will promote the efficient administration of the Debtors' estates.

### III.   CONCLUSION

**WHEREFORE**, the Debtors respectfully request that this Court issue an order:

1. Granting this Motion;

2. Granting leave, standing, and exclusive authority to the Equity Committee to assert, prosecute and/or settle on behalf of the Debtors' estates, subject to Court approval, any Claims against Jeffrey Cordes and William Aisenberg, and Defenses against any of the claims asserted by Mr. Cordes and Mr. Aisenberg, including those claims asserted in their proofs of claim against the Debtors;

3. Approving that certain *Stipulation Granting Standing To Pursue Certain Estate Based Claims For The Benefit Of The Debtors' Estates* (the "Stipulation") filed concurrently herewith; and

4. Granting such further relief as the Court deems just and proper.

Dated: November 21, 2017

| | |
|---|---|
| ICPW LIQUIDATION CORPORATION, *et al.* | DENTONS US LLP<br>SAMUEL R. MAIZEL<br>TANIA M. MOYRON |
| By: /s/ Krikor J. Meshefejian<br>    RON BENDER<br>    MONICA Y. KIM<br>    KRIKOR J. MESHEFEJIAN<br>LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.<br>Attorneys for Debtors and Debtors in Possession | By: /s/ Tania M. Moyron<br>Tania M. Moyron<br>Attorneys for the Official Committee of Equity Holders |

**DECLARATION OF L. GEOFFREY GREULICH**

I, L. Geoffrey Greulich, hereby declare as follows:

1. I am the Chief Executive Officer of ICPW Liquidation Corporation, a California corporation, formerly known as Ironclad Performance Wear Corporation, a California corporation ("ICPW California"), and ICPW Liquidation Corporation, a Nevada corporation, formerly known as Ironclad Performance Wear Corporation, a Nevada corporation ("ICPW Nevada", and collectively with ICPW California, the "Debtors"), the debtors and debtors in possession, in the above-referenced, jointly-administered, Chapter 11 bankruptcy cases, which each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code on September 8, 2017 ("Petition Date"). I became the Debtors' Chief Executive Officer effective July 6, 2017.

2. In that capacity, I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

3. On September 8, 2017 ("Petition Date"), the Debtors each filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtors have operated their businesses and managed their affairs as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. With the Court's approval, the Debtors two chapter 11 cases are being jointly administered.

4. The Debtors filed their bankruptcy cases to consummate a sale of substantially all of their assets (excluding cash and causes of action) for the most money possible. On October 30, 2017, the Debtors conducted a sale auction which resulted in a winning bidder and a backup bidder approved by the Bankruptcy Court. Brighton-Best International, Inc. ("BBI") was determined by the Court to be the winning bidder.

5. On November 3, 2017, the Court entered an order approving, among other things, the sale of substantially all of the Debtors' assets to BBI, and the Asset Purchase Agreement by and between the Debtors and BBI. The sale to BBI closed on November 14, 2017. The proceeds generated from the sale are expected to pay all creditors in full and provide distributions to shareholders in these cases.

6. On September 7, 2017, Jeffrey Cordes and William M. Aisenberg (the "Former Officers") submitted an arbitration demand to JAMS in connection with alleged breaches of certain employment agreements and related documents, which initiated a proceeding before the American Arbitration Association ("AAA"),

7. I understand that the Former Officers filed proofs of claims against the Debtors on October 3, 2017, which are denominated in the Bankruptcy Court's files as Claims No. 7 and 8 (collectively, the "Proofs of Claim").

8. I also understand that the Former Officers filed the *Motion Of Jeffrey Cordes And William M. Aisenberg For Relief From The Automatic Stay Under 11 U.S.C. [§] 362(Action In Nonbankruptcy Forum)* (the "Relief From Stay Motion").

9. At a hearing held on October 15, 2017, at which I appeared telephonically, the Court temporarily denied the Relief From Stay Motion and set related deadlines, including for the Debtors' estates to file an adversary proceeding and claim objections against the Former Officers.

10. The Debtors have or may have claims, objections and causes of action against the Former Officers (collectively, the "Claims"), and counter claims and defenses against any of the claims asserted by the Former Officers (the "Defenses"), including those claims asserted in the Proofs of Claim. The Claims are currently being investigated and evaluated, and involve, among other things, the Former Officers' failure to provide materially complete financial information.

11. Based on my review of the Debtors' records and public disclosures and filings, on June 29, 2017, the Audit Committee of the Debtors' Board of Directors (the "Audit Committee") concluded that disclosure should be made and action taken to prevent further reliance on the Debtors' financial statements as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31, 2017 and March 31, June 30 and September 30, 2016. *See* 8-K filed with Securities and Exchange Commission, on June 29, 2017 (the "8-K

Report"). The facts set forth in the 8-K report potentially gives rise to various Claims against the Former Officers.

12. On July 4, 2017, the Former Officers resigned from their respective positions as officers (and in the case of Mr. Cordes, as a director) of the Debtors.

13. The Debtors and the Equity Committee have agreed, subject to Court approval, that the Debtors would grant the Equity Committee standing to assert, prosecute, and/or settle any and all of the Debtors' Claims and Defenses on behalf of the Debtors' estates in the AAA Proceeding, the Bankruptcy Court, and/or any other forum.

14. Conferring standing upon the Equity Committee will allow the Debtors to focus their resources and efforts on preparing and proposing a plan in these cases, and focusing their efforts upon reviewing and reconciling all other proofs of claim filed in these cases.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed this 21st day of November, 2017 at Los Angeles, California.

_____
L. GEOFFREY GREULICH

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 10250 Constellation Boulevard, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled **JOINT MOTION FOR ORDER GRANTING STANDING TO PURSUE CLAIMS FOR THE BENEFIT OF THE DEBTORS' ESTATES; AND APPROVING STIPULATION BETWEEN DEBTORS AND EQUITY COMMITTEE GRANTING STANDING; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION IN SUPPORT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **November 21, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Shiva D Beck**    sbeck@gardere.com, jcharrison@gardere.com
- **Ron Bender**    rb@lnbyb.com
- **Cathrine M Castaldi**    ccastaldi@brownrudnick.com
- **Russell Clementson**    russell.clementson@usdoj.gov
- **Aaron S Craig**    acraig@kslaw.com, lperry@kslaw.com
- **Matthew A Gold**    courts@argopartners.net
- **Monica Y Kim**    myk@lnbrb.com, myk@ecf.inforuptcy.com
- **Jeffrey A Krieger**    jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- **Samuel R Maizel**    samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com
- **Krikor J Meshefejian**    kjm@lnbrb.com
- **Tania M Moyron**    tania.moyron@dentons.com, chris.omeara@dentons.com
- **S Margaux Ross**    margaux.ross@usdoj.gov
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov
- **Sharon Z. Weiss**    sharon.weiss@bryancave.com, raul.morales@bryancave.com

**2. SERVED BY UNITED STATES MAIL**: On **November 21, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ *Service information continued on attached page*

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **November 21, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

**Served via Attorney Service**
Hon. Martin R. Barash
United States Bankruptcy Court
21041 Burbank Boulevard, Suite 342
Woodland Hills, CA 91367

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| November 21, 2017 | Stephanie Reichert | /s/ Stephanie Reichert |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

| | | |
|---|---|---|
| Ironclad Performance Wear (8300)<br>Debtor, OUST, Committees | *Debtor*<br>ICPW Liquidation Corporation<br>15260 Ventura Blvd., 20th Floor<br>Sherman Oaks, CA 91403 | United States Trustee<br>915 Wilshire Blvd., Suite 1850<br>Los Angeles, California 90017 |

**Creditors Committee:**

| | | |
|---|---|---|
| *Committee Counsel*<br>Brown Rudnick LLP<br>Attn: Cathrine M Castaldi<br>2211 Michelson Dr 7th Fl<br>Irvine, CA 92612 | Resources Global Professionals<br>c/o Brent Waters<br>17101 Armstrong Ave<br>Irvine, CA 92614 | Winspeed Sports (Shanghai) Co., LTD<br>c/o Brian Mitteldorf<br>Creditors Adjustment Bureau<br>14226 Ventura Blvd.<br>Sherman Oaks, CA 91423 |
| PT Sport Glove Indonesia<br>c/o Mark C. Robba<br>Kranoon Desa Pandowoharjo<br>Sleman Yogyakarta 55512<br>Indonesia | | |

**Equity Committee:**

| | | |
|---|---|---|
| *Equity Committee Counsel*<br>Dentons US LLP<br>Attn: Samuel Maizel & Tania Moyron<br>601 South Figueroa St., Suite 2500<br>Los Angeles, CA 90017-5704 | Patrick W O'Brien<br>301 Whitmore Lane<br>Lake Forrest, IL 60045-4707 | Ronald Chez<br>1524 N. Astor Street<br>Chicago, IL 60610 |
| Scott Jarus<br>938 Duncan Avenue<br>Manhattan Beach, CA 90266 | | |