Samuel R. Maizel (SBN 189301)
samuel.maizel@dentons.com
Tania M. Moyron (SBN 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys for Official Committee of
Equity Security Holders

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

In re:

ICPW Liquidation Corporation, a California corporation,[1]

    Debtor and Debtor in Possession.

In re:

ICPW Liquidation Corporation, a Nevada corporation,[2]

    Debtor and Debtor in Possession.

Affects:

☒ Both Debtors

☐ Ironclad Performance Wear Corporation, a California corporation

☐ Ironclad Performance Wear Corporation, a Nevada corporation.

Case No. 1:17-bk-12408-MB
Jointly administered with:
Case No. 1:17-bk-12409-MB

Chapter 11

**FIRST INTERIM APPLICATION OF DENTONS US LLP FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES; DECLARATION OF TANIA M. MOYRON IN SUPPORT THEREOF**

Hearing:
Date: December 12, 2017
Time: 1:30 p.m.
Place: Courtroom "303"
        21041 Burbank Blvd.
        Woodland Hills, CA

    The Official Committee of Equity Security Holders (the "Equity Committee") respectfully submits this *First Interim Application of Dentons US LLP for Approval of Fees and Reimbursement of Expenses* (the "Fee Application") for services rendered and expenses incurred by Dentons US LLP ("Dentons") for the period of September 22, 2017 (the effective date of the

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

105755661\V-1

1

Equity Committee's employment of Dentons) through October 31, 2017 (the "Covered Period"). Any opposition or responsive paper must be filed and served at least fourteen (14) days prior to the hearing on this Fee Application in the form required by Local Bankruptcy Rule 9013-1(f).

## I.

## FEES AND EXPENSES INCURRED AND NOTICE

**A. Request for Allowance and Payment of Fees and Reimbursement of Expenses.**

1. During the Covered Period of September 22, 2017 through October 31, 2017, Dentons incurred total fees of $222,730.30 and total expenses of $4,714.24 for total fees and expenses of $227,444.54.

2. Mindful of the Equity Committees' concerns regarding professional fees and other costs in the in the above-captioned cases (the "Cases"), in the exercise of its billing judgment, Dentons (a) did not bill the Equity Committee for the fees incurred by Tania Moyron on the day of the auction and the sale of the Debtors' assets (described below), which included her meeting with the Debtors prior to the auction and then appearing at the auction and sale before the Court, (b) only billed part of the fees incurred by Peter Wolfson that same day, and (c) "wrote off" other various fees incurred (which are reflected as "No Charge" on the invoices). Further, in accordance with the employment agreement between Dentons and the Equity Committee, Dentons did not bill for fees or costs incurred for Mr. Wolfson's travel to and from New York to Los Angeles. Finally, in the exercise of Dentons billing judgment, Dentons wrote off thousands of dollars of other fees incurred during the month, which entries do not appear on the invoices.

3. Dentons did not receive any retainer in these Cases. Dentons has not been paid any post-petition amounts in the Cases. Dentons seeks Court approval of all $227,444.54 of post-petition fees and expenses incurred by Dentons, and Dentons seeks Court authority to be paid from funds that Ironclad Performance Wear Corporation, a California corporation ("Ironclad California"), will upstream to Ironclad Performance Wear Corporation, a Nevada Corporation ("Ironclad Nevada"), to pay Dentons' fees and expenses. Concurrently with the filing of the Application, the Debtors filed a motion requesting the authority to upstream these funds, as more fully set forth therein. [Docket No. 240].

///

///

**B. Dates of Entry of Order Approving Dentons' Employment and Date Services Commenced.**

4. The Equity Committee filed its application to employ Dentons on October 6, 2017 [Docket No. 92]. On November 14, 2017, the Court entered an order approving the Equity Committee's employment of Dentons as counsel effective as of September 22, 2017. [Docket No. 208].

**C. Fees and Expenses Previously Requested.**

5. Dentons has not filed any prior fee application in these Cases.

**D. Proper Notice.**

6. Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6) and Local Bankruptcy Rule 2016-1(a)(2), notice of this Fee Application and other fee applications has been served by the Debtors upon all parties entitled to notice, including, without limitation, the Debtor, the Office of the United States Trustee ("OUST"), all creditors, and all parties who have requested special notice. This Fee Application has also been served in accordance with all applicable rules. While Dentons is not the only retained professional in the case at this time, the Court waived the forty-five (45) day notice required by Local Bankruptcy Rules to other professionals.

## II.

**BRIEF NARRATIVE HISTORY OF THE PRESENT POSTURE OF THE CASES, CIRCUMSTANCES THAT LED TO THE FILING OF THESE CASES, AND SIGNIFICANT EVENTS WHICH OCCURRED DURING THE COVERED PERIOD**

**A. Description and History of the Debtor's Business and a Summary of the Circumstances that led to the Filing of the Debtors' Chapter 11 Cases.**

7. On September 8, 2017, Ironclad California filed a voluntary petition under chapter 11 of the United States Code (the "Bankruptcy Code"), commencing Case No. 1:17-bk-12048-MB (the "California Case") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

8. On September 8, 2017, Ironclad Nevada also filed a voluntary petition in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, commencing Case No. 1:17-bk-12049-MB (the "Nevada Case").

9. According to the filings of Ironclad California and Ironclad Nevada's (collectively, the "Debtors"), despite the development and success of the Debtors' products over the years, the

105755661\V-1

Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth. There were a variety of reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs. In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their loan documents to their primary secured lender for the fiscal years ending December 31, 2015 and 2016, and for the fiscal quarters ending March 31, June 30, September 30, 2016 and March 31, 2017. As a result of this discovery, the Debtors' then chief executive officer and other officers were terminated, and L. Geoff Greulich ("Mr. Greulich") assumed the position of the Debtors' new chief executive officer effective July 6, 2017.

10. The Debtors filings indicate that they filed their bankruptcy Cases to consummate a sale of substantially all of their assets for the most money possible. Just prior to their bankruptcy filings, the Debtors entered into an asset purchase agreement with the Debtors' current secured creditor, Radians Wareham Holdings, Inc. ("Radians") or its affiliate/designee, for a purchase price of $20 million or $15 million, subject to an overbid process. The Debtors filed a motion seeking Court approval of their proposed overbid procedures that the Debtors negotiated with Radians prior to their bankruptcy filings, which the Court approved. Pre-petition, the Debtors hired Craig-Hallum Capital Group, LLC ("Craig-Hallum") as their financial advisor/investment banker to, among other things, market the Debtors' business for sale. The Debtors also hired Craig-Hallum to serve as the Debtors' post-petition financial advisor/investment banker to assist the Debtors to locate and negotiate with prospective overbidders and to help facilitate an auction sale process designed to obtain the highest price possible for the Debtors' assets.

**B. Significant Post-Petition Developments.**

11. On September 11, 2017, the Debtors filed their *Ex Parte Motion For Entry Of An Order For Joint Administration Of Cases*. [Docket No. 5].

12. On September 12, 2017, the Court entered an *Order Approving Joint Administration of Cases Authorizing Joint Administration Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 1015(b)*. [Docket No. 25].

4

105755661\V-1

13.  On September 20, 2017, the Office of the United States Trustee filed its *Notice of Appointment of Official Committee of Equity Holders* (the "Notice of Appointment"). [Docket No. 59]. The Notice of Appointment provides for the appointment of the Equity Committee in Ironclad Nevada.

14.  On September 22, 2017, the Office of the United States Trustee filed its *Notice of Appointment of Creditors' Committee*. [Docket No. 62].

15.  On September 11, 2017, the Debtors filed *Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtors To (A) Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 And 364, And (B) Utilize Cash Collateral Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (II) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) And 4001(c); And (IV) Granting Related Relief* (the "DIP Motion"). [Docket No 7].

16.  On September 22, 2017, the Debtors filed the *Motion For An Order: (1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For Prospective Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures, And Stalking Horse Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested Parties; And (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest Bidder; Memorandum Of Points And Authorities* (the "Bid Procedures Motion"). [Docket No. 10].

17.  On September 29, 2017, the Debtors filed the *Application Of Debtors And Debtors In Possession To Employ Craig-Hallum Capital Group LLC As Financial Advisor Pursuant To 11 U.S.C. § 327 With Compensation Pursuant To 11 U.S.C. § 328*, which included as an attachment that certain indemnification agreement between the Debtors and Craig0Hallum Capital Group LLC (the "Indemnification Agreement"). [Docket No. 75].

18.  On November 3, 2017, the Court entered an order approving the sale of substantially all of the assets of the Debtors (the "Sale"). [Docket No. 177]. The Debtors assets were sold for $25,250,000 and the Debtors' total debt in these Cases, including postpetition administrative claims, is estimated at $10.5-$12 million. [Docket No. 111]. Brighton-Best International, Inc. ("BBI") was determined by the Court to be the winning bidder. The Sale closed on November 15, 2017, and after payments to certain third parties authorized by the Court, the Debtors have approximately $16,354,050 cash on hand post-closing, plus certain amounts in the DIP account. The Debtors also maintain $820,000 in a segregated account separate from the balance of the sale proceeds pending further order of the Court.

5

105755661\V-1

## III.

## BRIEF NARRATIVE STATEMENT OF SERVICES RENDERED, TIME EXPENDED, AND FEES CHARGED FOR EACH BILLING CATEGORY

During the Covered Period, Dentons worked diligently and efficiently to advocate for the rights and interests of the Equity Committee while simultaneously protecting and preserving the Debtors' estate from unnecessary expenditure of assets and to obtain the highest possible amount from the Sale. When recording its time, Dentons places all time entries for fees into one of twenty-four categories. These categories consist of: (1) Ironclad Equity Committee; (2) Preparation of Case; (3) Administration; (4) Asset Analysis Recovery; (5) Asset Deposition; (6) Assumption and Rejection of Leases and Contracts; (7) Avoidance Action Analysis; (8) Business Operation; (9) Claims Administration and Objections; (10) Corporate Governance and Board Matters; (11) Employee Benefits and Pensions; (12) Employment Fee Applications; (13) Employment and Fee Application Objections; (14) Financing and Cash Collateral; (15) Litigation Contested Matters and Adversary Proceedings; (16) Meetings and Communications with Creditors; (17) Non-Working Travel; (18) Plan and Disclosure Statement; (19) Real Estate; (20) Relief from Stay and Adequate Protection; (21) Reporting; (22) Tax; (23) Valuation; and (24) Radians Wareham Holdings.

Attached as **Exhibit "A"** to the annexed Declaration of Tania M. Moyron is a (i) summary of the fees sought in the Application, and (ii) a breakdown of time entries into project categories maintained by Dentons. Also included in **Exhibit "B"** is a summary of the hours and fees charged by each of Dentons' attorneys and paralegals that performed services for the Equity Committee. Dentons' blended rate for services rendered during the Covered Period is $539 per hour including paraprofessionals and $563 excluding paraprofessionals. Attached hereto as **Exhibits "C" - "R"** are copies of Dentons' billing statements, which match the number assigned to each category, summarizing and detailing both the services rendered on behalf of the Equity Committee, and expenses incurred in connection therewith. These billings reflect Dentons' time records kept in the ordinary course of business.

6

105755661\V-1

Inevitably, certain time entries do not fit into any one category, while other time entries cross over into more than one category. Dentons does its best to place time entries into categories, which accurately reflect the work performed. However, it is inevitable that there will be some time entries that have been placed into the incorrect category or where various time entries dealing with the same subject matter have been placed into multiple categories. References below made to the "Covered Period" shall mean the period of September 22, 2017 through October 31, 2017. Below is a brief explanation of the benefits Dentons' efforts have brought to the Equity Committee and the Debtors' estates.

1. Ironclad Equity Committee

The services rendered in this category related to analysis regarding Radians, particularly research and analysis regarding equitable disallowance of Radians' claims and its misconduct. The related time entries were inadvertently included in this category.

During the Covered Period, Dentons billed 8 hours (approximately 1.9% of the total services rendered) and incurred fees of $2,484.00 and expenses of $3,625.00 for total fees and expenses of $6,109.00 in this category.

2. Preparation of Case

During the Covered Period, Dentons did not incur any fees in this category.

3. Administration

Services rendered in this category include, but are not limited to, Dentons analysis and review of (i) Debtors' schedules to determine liabilities, including total debt and amount owed to general unsecured creditors and Radians; (ii) documents related to the Cases and public information related to the Debtors; (ii) claims and the prepayment fee and breakup fee proposed to be paid to Radians; (iii) nondisclosure agreements for the professionals and a member of the Equity Committee to enable them to review confidential information related to the sale; and (iv) issues related to use of a financial advisor for Official Committee of Unsecured Creditors ("Creditors Committee") to prevent unnecessary and duplicative expenses.

Dentons researched and analyzed issues related to the Debtors' asserted privilege with respect to certain key documents and exceptions to the privileges related thereto. In connection

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

105755661\V-1

therewith, Dentons also (i) analyzed issues related to the proposed joint interest agreement between the Debtors and the Equity Committee, (ii) corresponded the need for a joint interest agreement with the Debtors and the Equity Committee, and (iii) prepared the joint interest agreement.

Dentons prepared (i) various nondisclosure agreements for professionals in the Cases and a member of the Equity Committee, (ii) drafted a memorandum of critical dates and communicated deadlines to the Equity Committee to keep its members apprised of the timeline of the Cases, and (iii) prepared a modified indemnification agreement between the Debtors and Craig-Hallum to narrow the scope of the indemnification provisions.

Dentons analyzed and responded to arguments raised by Jeffrey Cordes ("Cordes") and William Aisenberg ("Aisenberg") in their motion for relief from the automatic stay, proofs of claim and limited objection to the Sale Motion. Dentons also analyzed various issues concerning the board and corporate documents per the Equity Committee's request.

Throughout the Covered Period, Dentons regularly discussed with the Equity Committee (i) the above matters, (ii) strategy in these Cases, (iii) bylaws, and (iv) incorporated its members' feedback to protect the rights and interests of the Equity Committee and the Debtors' estates. Dentons also discussed the majority above matters with Debtors' counsel and other professionals in these cases.

During the Covered Period, Dentons billed 46.2 hours (approximately 11.2% of the total services rendered) and incurred fees of $23,586.35 in this category.

### 4. Asset Analysis Recovery

During the Covered Period, Dentons did not incur any fees in this category.

### 5. Asset Deposition

The majority of the services rendered in this category relate to sale process, the auction and the sale, including services related to: (i) analyzing the Bid Procedures Motion and preparing and filing a limited objection thereto to ensure a robust auction and that the procedures did not "chill" bidding; (ii) working with the Debtors and Craig-Hallum and serving as a liaison between them and the Equity Committee with respect to documents in the data room, sale progress,

8

105755661\V-1

potential overbidders and other issues; (iii) analyzing various versions of the Sale Motion and incorporating language to, among other things, add clarity with respect to the structure of opening bids to ensure a fair playing field at the auction; (iv) analyzing various versions of the sale order and preparing comments thereto preserving the Equity Committees' rights; (v) analyzing and preparing comments to that certain asset purchase agreement to, among other things, incorporate language to ensure that "retained assets" include certain claims and insurance policies and Ironclad Nevada's equity in Ironclad California; (vi) analyzing various issues related to proposed bonuses; and (vii) participating in and attending the auction and sale hearing and finalizing all documents related thereto.

More specifically, Dentons: (i) reviewed, analyzed, and responded to communications regarding objections to bidding procedures to add clarity with respect to the structure of opening bids to ensure a fair playing field at the auction and to achieve the highest possible amount for the assets; (ii) analyzed case law discussing credit bidding, denial of ability to credit bidding, and own-to-loan scenarios chilling bids; (iii) analyzed loan agreements regarding the prepayment fee to Radians and the assignment from Capital One, N.A ("Capital One") to Radians; (iv) analyzed the DIP Motion; (v) analyzed various versions of the asset purchase agreement(s) to determine its impact on the Debtors' assets and liabilities, including claims against third parties and insurance policies; (vi) prepared comments to Sale Motion and proposed order thereon to incorporate appropriate language to prevent the impairment of rights granted in DIP order; (vii) prepared an objection to a motion to approve bidding procedures in order to preserve and protect the Debtors' estate; (viii) prepared an order approving bidding procedures to present a fair alternative to the Court; and (ix) analyzed the final Sale order and its impact on the debtor-in-possession financing order.

During the Covered Period, Dentons also discussed with the Equity Committee, among other things: (i) the sale process and the sale to keep the its members apprised of the situation; (ii) the marketing efforts employed to ensure highest sale price possible; (iii) concerns regarding proposed bidding procedures to protect the estates and Equity Committee's interests; (iv) alternative bidding procedures to protect the Debtors' estates; (v) the Equity Committee's

105755661\V-1

objection to the bidding procedures; and (vi) the Equity Committee's objection to the retention of a financial advisor by the Creditors Committee as unnecessary for purposes of the Sale in light of the fact that the creditors will all be paid in full. Dentons also corresponded with professionals for the Debtors and the Creditors' Committee regarding the above matters.

During the Covered Period, Dentons billed 147.4 hours (approximately 35.7% of the total services rendered) and incurred fees of $85,076.90 in this category.

### 6. Assumption and Rejection of Leases and Contracts

Services rendered in this category include, but are not limited to, the following: (i) discussed issues with the Equity Committee related to employment contracts; (ii) analyzed the Debtors' supplemental motions regarding assumption and assignment of executory contracts and rejection of other contracts in connection with the Sale Motion; and (iii) conferred with the Debtors regarding certain proposed bonuses being paid to employees.

During the Covered Period, Dentons billed 1.6 hours (approximately .4% of the total services rendered) and incurred $658.50 of fees in this category.

### 7. Avoidance Action Analysis

During the Covered Period, Dentons did not incur any fees in this category.

### 8. Business Operation

Services rendered in this category include, but are not limited to, the following: (i) prepared correspondence to Equity Committee regarding requests made to the Debtors related to the filing of Form 8-Ks; and (ii) discussed with the Equity Committee the impact of the Debtors' bylaws and articles of incorporation in relation to issues related to the board.

During the Covered Period, Dentons billed .3 hours (approximately .07% of the total services rendered) and incurred $148.50 of fees in this category.

### 9. Claims Administration and Objections

Services rendered in this category include, but are not limited to, the analysis and review of the following: (i) various proofs of claim, including the claims filed by Radians, Grainger, Cordes and Aisenberg in connection with issues raised by Equity Committee; (ii) notice of bar date and bar claims order; (iii) case law regarding standards related to employment contracts of professionals and employees in relation to the Court's discretion to award bonuses and compensation; (iv) the Debtors' Form 8-K in connection with objection to claims filed by Cordes and Aisenberg; (v) challenges to the validity of Radians' alleged prepetition secured debt and its

105755661\V-1

assertions to any liens and security interests related thereto; (vi) amendments to the Debtors' schedules; (vii) issues regarding the joint interest agreement between the Debtor and the Equity Committee; (xiii) issues related to the 2017 omnibus incentive plan to pay certain employees bonuses; (ix) issues related to stock ownership; (xi) certain stipulations; and (xii) scheduled liabilities versus amounts referenced in various motions before the Court and prepared correspondence to Debtors' regarding same.

Service in this category also includes (i) preparing comments to those certain stipulations with Grainger, and (ii) research with respect to case law regarding various malpractice claim waivers upon approval of certain professionals' fee applications.

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters, as well as corresponded with professionals for the Debtors and the Creditors' Committee with respect to certain matters.

During the Covered Period, Dentons billed 10.7 hours (approximately 2.6% of the total services rendered) and incurred $5,120.10 of fees in this category.

10. Corporate Governance and Board Matters

Services rendered in this category include, but are not limited to, the following: (i) corresponded regarding various issues related to the board of directors; (ii) conducted research regarding the right to elect the board of directors and various shareholders' rights during bankruptcy; (iii) discussed the Debtors' postconfirmation management structure; (iv) analyzed the Debtors' bylaws; and (v) conducted research regarding the Debtors' filings with the respective Secretary of State related to the articles of incorporation and other corporate documents.

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters.

During the Covered Period, Dentons billed 3.2 hours (approximately .8% of the total services rendered) and incurred $1,640.25 of fees in this category.

11. Employee Benefits and Pensions

During the Covered Period, Dentons did not incur any fees in this category.

12. Employment Fee Applications

Services rendered in this category include, but are not limited to, the following: (i) communicated with the Equity Committee regarding Creditors Committee's requests for a financial advisor; (ii) analyzed case law regarding objections to fee application issues; (iii) analyzed employment issues; (iv) analyzed and discussed the Debtors' application to employ

11

105755661\V-1

SAM; (v) prepared Dentons' application for employment and notice and declaration in support thereof; (vi) conducted research regarding implications of non-objection to employment applications in the context of potential malpractice claims; (vii) analyzed Debtors' application to employ Craig-Hallum, including request not requiring a fee application and proposed Indemnification Agreement; (viii) analyzed case law regarding the employment of a financial advisor in circumstances where creditors are paid in full; (ix) analyzed and discussed issues related to the objection filed by the Office of the United States Trustee regarding employment and payment; (x) drafted application to employ financial advisor, M. Schwarzmann, for the Equity Committee and declaration in support thereof; (xi) prepared application and order regarding non-resident attorney to appeal *pro hac vice*; and (xii) conducted research regarding prepetition employment contracts with respect to proposed bonuses to be paid postpetition.

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters.

During the Covered Period, Dentons billed 45.2 hours (approximately 10.9% of the total services rendered) and incurred fees of $21,915.95 and expenses of $211.90 for total fees and expenses of $22,127.85 in this category.

13.    Employment and Fee Application Objections

Services rendered in this category include, but are not limited to, the following: (i) prepared a limited objection to the application of SAM to preserve the Equity Committee's and estates' potential claims and to limit postpetition services; (ii) prepared an objection to the application of Province LLC, as financial advisor to the Creditors' Committee; and (iii) prepared the revised Indemnification Agreement between the Debtors and Craig-Hallum to, among other things, narrow the scope of the indemnification agreement consistent with applicable law and requiring the filing of a fee application by Craig-Hallum as financial advisor. Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters.

During the Covered Period, Dentons billed 31.1 hours (approximately 7.5% of the total services rendered) and incurred fees of $13,002.15 and expenses of $131.50 for total fees and expenses of $13,133.65 in this category.

105755661\V-1

### 14. Financing and Cash Collateral

Services rendered in this category include, but are not limited to, the following: (i) analysis of the DIP Motion and related documents, including the proposed DIP facility; (ii) prepared limited objection to the DIP Motion to, among other things, preserve the rights of the Equity Committee (a) to challenge the amount of pre-bankruptcy secured debt of Radians or any of the liens and security interest related thereto, and (b) to pursue any other claims against Radians. Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters.

During the Covered Period, Dentons billed 47.0 hours (approximately 11.4% of the total services rendered) and incurred fees of $24,469.90 and expenses of $525.00 for total fees and expenses of $24,994.90 in this category.

### 15. Litigation Contested Matters and Adversary Proceedings

The majority of the services in this category related to the analysis of Radians' claim and any potential claims against Radians, which included, among other things, the following: (i) analyzed public information regarding Radians, Safety Supply Corporation, and their affiliates to determine their connection with the Debtors and interests in the Debtors' business; (ii) analyzed the Debtors' bankruptcy filings and public information to piece together factual and potential legal claims against Radians; (iii) prepared motion for Rule 2004 examination; and (iv) negotiated a stipulation with Radians to produce documents and depose Michael Tutor ("Mr. Tutor").

Additionally, services rendered in this category include, but are not limited to, the following: (i) analyzed various employment agreements between the Debtors and certain employees, including the chief executive officer ("CEO"), to determine, among other things, their impact on the assets of the Debtors' estate; (ii) conducted research and analysis regarding equitable disallowance and the impact of a transferor's misconduct on claims against the transferee; and (iii) drafted a common interest agreement between the Equity Committee and the Debtors.

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters.

13

105755661\V-1

During the Covered Period, Dentons billed 64.9 hours (approximately 15.7% of the total services rendered) and incurred fees of $40,843.65 and expenses of $220.84 for total fees and expenses of $41,064.49 in this category.

16.     Meetings and Communications with Creditors

During the Covered Period, Dentons attended the section 341 Meetings of Creditors and the rescheduled meeting.

During the Covered Period, Dentons billed 5.9 hours (approximately 1.4% of the total services rendered) and incurred $2,920.50 of fees in this category.

17.     Non-Working Travel

During the Covered Period, Dentons did not bill for any fees incurred in this category.

18.     Plan and Disclosure Statement

Services rendered in this category include, but are not limited to, analysis of issues related to the Debtors' exclusivity period.

During the Covered Period, Dentons billed .2 hours (approximately .04% of the total services rendered) and incurred $99.00 of fees in this category.

19.     Real Estate

During the Covered Period, Dentons did not incur any fees in this category.

20.     Relief from Stay and Adequate Protection

Services rendered in this category include, but are not limited to, the following: (i) reviewed and analyzed the Motion for Relief from Stay; (ii) corresponded with the Equity Committee regarding same; and (iii) prepared limited objection to same.

During the Covered Period, Dentons billed 1.2 hours (approximately .3% of the total services rendered) and incurred $517.05 of fees in this category.

21.     Reporting

During the Covered Period, Dentons did not incur any fees in this category.

22.     Tax

During the Covered Period, Dentons did not incur any fees in this category.

14

105755661\V-1

23. <u>Valuation</u>

During the Covered Period, Dentons did not incur any fees in this category.

24. <u>Radians Wareham Holdings</u>

Services rendered in this category include, but are not limited to, the following: (i) discussed with the Equity Committee concerns regarding the activities of Radians; (ii) discussed with the Equity Committee the proposed joint privilege agreement with the Debtors regarding certain reports and the exceptions to attorney-client privilege; and (iii) conferred with the Debtors regarding the proposed joint privilege agreement.

During the Covered Period, Dentons billed .5 hours (approximately .1% of the total services rendered) and incurred $247.50 of fees in this category.

## IV.

## ADDITIONAL REQUIRED INFORMATION

**A. Detailed Listing of All Time Spent by the Professional on the Matter for Which Compensation is Sought.**

As discussed above, attached as Exhibit B is a summary of the hours and fees charged by each of Dentons' attorneys and paralegals that performed services for the Equity Committee.

**B. Detailed Listing of Expenses by Category.**

Attached hereto as **Exhibit "S"** to the annexed Declaration of Tania M. Moyron is a summary listing by category and an itemization of all expenses that Dentons advanced on behalf of the Equity Committee during these Cases. These include Dentons' expenses incurred in using Lexis and Westlaw, as well as filing fees with USA Legal, Inc. When Dentons uses Lexis and Westlaw, the user inputs the client account number or case name for the research to be performed. Each month, Dentons receives a Lexis and Westlaw invoice which reflects both an aggregate total of charges incurred by Dentons for the month, as well as a break out of the specific charges incurred on behalf of each client (identified by name or client account number). Similarly, Dentons receives an invoice from USA Legal, Inc. The amount(s) reflected on the monthly invoice is then entered by Dentons staff to the appropriate client account number as identified on

105755661\V-1

the invoice. There is no profit or other additional charge added to the amount reflected in the Lexis, Westlaw, and USA Legal, Inc. invoice.

### C. Description of Professional Education and Experience.

Dentons is currently comprised of 8,000+ lawyers. Dentons' Restructuring, Insolvency, and Bankruptcy practice is comprised of attorneys who specialize in and limit their practice to matters of insolvency, reorganization, and bankruptcy law, and commercial litigation matters, and are well qualified to represent the Equity Committee.

Attached to the annexed Declaration of Tania M. Moyron as **Exhibit " T"** is a copy of Dentons' firm résumé. Résumés reflecting the background and qualifications of each of the attorneys who rendered services to and on behalf of the Equity Committee are also attached collectively to the annexed Declaration of Tania M. Moyron as **Exhibit "T"**.

### D. Source and Amount of Cash Available to Pay Dentons' Allowed Fees and Expenses.

Dentons seeks Court authority to be paid the whole amount or a partial amount from funds that Ironclad California will upstream to Ironclad Nevada to pay Dentons' fees and expenses, as set forth above.

### V.

### STANDARD OF LAW

In determining the amount of allowable fees under § 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *In re Manoa Finance Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988); *see Meronk v. Arter & Hadden, LLP (In re Meronk)*, 249 B.R. 208, 213 (B.A.P. 9th Cir. 2000) (reiterating that *Manoa Finance* is the controlling authority and characterizing the factor test[3] identified in *Johnson v. Georgia Highway*

---

[3] The original twelve Johnson/Kerr factors were: (1) time and labor required, (2) novelty and difficulty of the questions involved, (3) skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) amount involved and results obtained, (9) experience,

16

105755661\V-1

*Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and *Kerr v. Screen Extras Guild, Inc.*, 526 F. 2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976), as an "obsolete laundry list" now subsumed within more refined analyses).

The Supreme Court has evaluated the lodestar approach and endorses its usage. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), a civil rights case, the Supreme Court held that while the Johnson factors might be considered in setting fees, the lodestar amount subsumed many of those factors. *Hensley*, at 434, n. 9.[4] The following year, another civil rights case, *Blum vs. Stenson*, 465 U.S. 886 (1984), provided the so-called lodestar calculation: "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate . . . . Adjustments to that fee then may be made as necessary in the particular case." *Blum,* at 888.

Then, in 1986, the Supreme Court more explicitly indicated that the factors relevant to determining fees should be applied using the lodestar approach, rather than an *ad hoc* approach. While holding that the attorney's fee provision of the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, should be interpreted like that of the Civil Rights Act, the Supreme Court expressly rejected the ad hoc application of the factors set forth in *Johnson* and thus *Kerr*, stating that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee . . . ." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("we have said repeatedly that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate").

While the lodestar approach is the primary basis for determining fee awards under the federal fee-shifting statutes and Bankruptcy Code, some of the *Johnson/Kerr* factors, previously

---

reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) nature and length of the professional relationship with client, and (12) awards in similar cases.

[4] For discussion of the *Johnson/Kerr* subsumed factors, *see Morales v. City of San Rafael*, 96 F.3d 359, 364, n. 9 (9th Cir. 1996) ("among the subsumed factors ... are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained"); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993) (extending *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), which held that sixth factor "whether the fee is fixed or contingent, may not be considered in the lodestar calculation").

17

applied in an ad hoc fashion, can still apply in calculating the appropriate hourly rate to use under the lodestar approach. *In re Charles Russell Buckridge*, 367 B.R. 191, 201 (C.D. Cal. 2007) ("a court is permitted to adjust the lodestar up or down using a multiplier based on the criteria listed in §330 and its consideration of the *Kerr* factors not subsumed within the initial calculations of the lodestar"); *see also Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005) (court may "adjust the lodestar amount after considering other factors that bear on the reasonableness of the fee"); *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991) ("Although *Manoa* suggests that starting with the 'lodestar' is customary, it does not mandate such an approach in all cases.... Fee shifting cases are persuasive, but due to the uniqueness of bankruptcy proceedings, they are not controlling").

Dentons respectfully submits that the hourly rates for its attorneys and paraprofessionals are reasonable and appropriate in the relevant community and in view of the circumstances of this case and the successful results achieved on behalf of the Equity Committee thus far by Dentons. Therefore, for the reasons set forth above, Dentons respectfully submits that the foregoing establishes that Dentons' requested fees and expenses are reasonable and appropriate and should be approved by the Court.

## VI.
## CONCLUSION

WHEREFORE, the Equity Committee respectfully requests the entry of an order: (i) approving Dentons' total fees of $222,730.30 and total expenses of $4,714.24 for total fees and expenses of $227,444.54; (ii) authorizing the Debtors to pay Dentons its total fees of $222,730.30 and total expenses of $4,714.24 for total fees and expenses of $227,444.54; and (iii) granting such other and further relief as the Court deems is just and proper.

105755661\V-1

Dated: November 21, 2017

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA A. MOYRON

By: */s/Tania M. Moyron*
Tania M. Moyron, Proposed Counsel to the
Official Committee of Equity Holders

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

19

105755661\V-1