Samuel R. Maizel (SBN 189301)
samuel.maizel@dentons.com
Tania M. Moyron (SBN 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:    (213) 623-9300
Facsimile:    (213) 623-9924

Attorneys for Official Committee of
Equity Security Holders

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>ICPW Liquidation Corporation, a California corporation,[1]<br><br>    Debtor and Debtor in Possession. | Case No. 1:17-bk-12408-MB<br>Jointly administered with:<br>Case No. 1:17-bk-12409-MB<br><br>Chapter 11 |
| In re:<br><br>ICPW Liquidation Corporation, a Nevada corporation,[2]<br><br>    Debtor and Debtor in Possession. | **APPLICATION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO EMPLOY SOLOMON & CRAMER LLP AS SPECIAL LITIGATION COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS *NUNC PRO TUNC* AS OF NOVEMBER 29, 2017; DECLARATION OF ANDREW T. SOLOMON IN SUPPORT THEREOF** |
| Affects:<br><br>☐ Both Debtors<br><br>☐ ICPW Liquidation Corporation, a California corporation<br><br>☒ ICPW Liquidation Corporation, a Nevada corporation. | [No Hearing Required Unless Requested Pursuant to Local Bankruptcy Rule 2014-1] |

The Official Committee of Equity Security Holders ("Equity Committee") respectfully submits this application (the "Application") for the entry of an order authorizing the employment of Solomon & Cramer LLP ("Solomon & Cramer") as special litigation counsel to the Equity

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

1

Committee *nunc pro tunc* as of November 29, 2017, pursuant to 11 U.S.C. §§[3] 1103(a) and 328(a), Rule 2014(a) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and Local Bankruptcy Rule 2014-1(b), and with hourly compensation pursuant to 11 U.S.C. §§ 330 and 331 and contingency-fee compensation pursuant to 11 U.S.C. § 328(a), and respectfully represents as follows:

## I.
## RELIEF REQUESTED

1. Pursuant to this Application, the Equity Committee seeks authority to employ Solomon & Cramer as its special litigation counsel to handle certain litigation, including claims against former officers (the "Former Officers") and various third parties (the "Third Parties"), arising from certain prepetition acts as more fully explained below.

2. The Equity Committee selected Solomon & Cramer because it offers a full range of commercial litigation services and has extensive experience in the following areas: legal and accounting malpractice; white collar criminal matters; and claims against directors and officers. Solomon & Cramer has litigated in courts and arbitration proceedings throughout the Country and has broad experience appearing before the SEC. Thus, the Equity Committee believes Solomon & Cramer is well-qualified to represent the Equity Committee.

## II.
## JURISDICTION

3. This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2).

---

[3] All references to "section or "§" herein are to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532, as amended (the "Bankruptcy Code").

# III.

# FACTS

**A.    General Background.**

4.    On September 8, 2017 (the "Petition Date"), ICPW Liquidation Corporation, a California corporation ("ICPW California"), filed a voluntary petition under chapter 11 of the Bankruptcy Code, commencing Case No. 1:17-bk-12048-MB (the "California Case") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

5.    On September 8, 2017, ICPW Liquidation Corporation, a Nevada corporation ("ICPW Nevada"), filed a voluntary petition in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, commencing Case No. 1:17-bk-12049-MB (the "Nevada Case," and together with the California Case, the "Cases").

6.    The Debtors continue to operate their businesses and manage their affairs as debtors in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. Other than owning all of the shares in ICPW California, ICPW Nevada has no business. All operations of the Debtors effectively function through ICPW California. ICPW Nevada is publicly-traded with its common stock quoted on the OTC Markets under the symbol "ICPW." As of May 4, 2017, ICPW Nevada had 85,646,354 shares of common stock, par value $0.001 per share, issued and outstanding.

7.    On September 11, 2017, the Debtors filed their *Ex Parte Motion For Entry Of An Order For Joint Administration Of Cases*. Docket No. 5.

8.    On September 12, 2017, the Court entered an *Order Approving Joint Administration of Cases Authorizing Joint Administration Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 1015(b)*. Docket No. 25.

9.    On September 20, 2017, the Office of the United States Trustee filed its *Notice of Appointment of Official Committee of Equity Holders* (the "Notice of Appointment"). Docket No. 59. The Notice of Appointment provides for the appointment of the Equity Committee in ICPW Nevada.

10.  On September 22, 2017, the Office of the United States Trustee filed its *Notice of Appointment of Creditors' Committee*. Docket No. 62.

**B.  Background Relevant to Application.**

11.  Prior to the Petition Date, in April and May, 2017, the Debtors' Board of Directors received anonymous reports of accounting irregularities at ICPW, resulting in certain revenue figures being inflated in ICPW's financial statements.

12.  After an investigation confirmed the irregularities, on June 29, 2017, the Audit Committee of the Debtors' Board of Directors (the "Audit Committee") concluded that disclosure should be made and action taken to prevent further reliance on the Debtors' financial statements as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31, 2017 and March 31, June 30 and September 30, 2016. *See* 8-K filed with Securities and Exchange Commission, on June 29, 2017 (the "8-K Report").

13.  The 8-K Report provides that during the second quarter of fiscal year 2017, the Debtors received anonymous reports regarding potential accounting irregularities relating to certain sale transactions (the "Subject Transactions"). According to Court filings, the Debtors have subsequently determined that the Subject Transactions affect the periods as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31 and June 30, 2016 (collectively, the "Subject Periods"), and that the corresponding roll-over effect of these misstatements resulting from the Subject Transactions in the Subject Periods also affect the Debtors' financial statements as of and for the fiscal quarters ended September 30, 2016 and March 31, 2017. *See* 8-K Report.

14.  The 8-K Report further provides that over the course of approximately six weeks, a consultant retained by the Debtors identified previously undisclosed information pertaining to certain recorded sales that preliminarily indicate that the Subject Transactions should not have been recorded in the Subject Periods. Based upon the review conducted by the consultant and the Audit Committee, which are not yet complete or definitive, according to Court filings, the Debtors believe the items in question improperly (increased) reduced, for the quarter ended March 31, 2017 and the years ended December 31, 2016 and 2015, revenues by approximately

4

$292,000 (or approximately 6.6%), ($844,000) (or approximately -3.4%) and ($1,390,000) (or approximately -5.9%), gross profit by approximately $86,000 (or approximately 5.5%), ($322,000) (or approximately -3.6%) and ($402,000) (or approximately -4.9%), and operating loss and net loss by approximately ($86,000), $6,000 and $402,000, respectively. *See* 8-K Report.

15. Therefore, on June 29, 2017, the Audit Committee concluded that the Debtors' financial statements as of and for the fiscal years ended December 31, 2016 and 2015, and as of and for the fiscal quarters ended March 31, 2017 and March 31, June 30 and September 30, 2016 should no longer be relied upon due to the misstatements resulting from the Subject Transactions in the Subject Periods and the corresponding roll-over effect of these misstatements outside the Subject Periods. *See* 8-K Report.

16. On July 4, 2017, Former Officers (Jeffrey Cordes, as CEO, and William Eisenberg as CFO) and Tom Felton, the former Senior Vice President of Supply Chain, resigned from their respective positions.

**C.    The Former Officers' Claims.**

17. On September 7, 2017, Former Officers submitted an arbitration demand to JAMS in connection with alleged breaches of certain employment agreements and related documents, which initiated a proceeding before the American Arbitration Association ("AAA").

18. The Former Officers filed proofs of claims against the Debtors on October 3, 2017, which are denominated in the Bankruptcy Court's files as Claims No. 7 and 8 (collectively, the "Proofs of Claim");

19. *The Former Officers filed the Motion Of Jeffrey Cordes And William M. Aisenberg For Relief From The Automatic Stay Under 11 U.S.C. [§] 362(Action In Nonbankruptcy Forum)* (the "Relief From Stay Motion"), as Docket No. 132, and the Debtors' filed the opposition (the "Opposition") thereto, as Docket No. 169, and the Equity Committee filed a joinder therein, as Docket No. 168.

20. At a hearing on October 15, 2017, the Court temporarily denied the Relief From Stay Motion and set related deadlines, including for the Debtors' estates and/or the Equity

Committee to file an adversary proceeding and claim objections against the Former Officers. The Court entered the related order on December 7, 2017, as Docket No. 302.

**D.    The Debtors' Motion to Assign Claims Against the Former Officers to the Equity Committee.**

21.    The Debtors have or may have claims, objections and causes of action against the Former Officers (collectively, the "Claims"), and counter claims and defenses against any of the claims asserted by the Former Officers (the "Defenses"), including those claims asserted in the Proofs of Claim. The Claims are currently being investigated and evaluated, and involve, among other things, the Former Officers' failure to provide materially complete financial information.

22.    The Debtors and the Equity Committee agreed, subject to Court approval, that the Debtors would grant the Equity Committee standing to assert, prosecute, and/or settle any and all of the Debtors' Claims and Defenses on behalf of the Debtors' estates against the Former Officers in the AAA Proceeding, the Bankruptcy Court, and/or any other forum.

23.    Consequently, on November 21, 2017, the Debtors filed the *Joint Motion For Order Granting Standing To Pursue Claims For The Benefit Of The Debtors' Estates; And Approving Stipulation Between Debtors And Equity Committee Granting Standing* (the "Assignment Motion"). Docket No. 243. The Court granted the Assignment Motion at a hearing on December 12, 2017.

**E.    The Debtors and the Equity Committee's Joint Plan of Liquidation.**

24.    On December 12, 2017, the Debtors and the Equity Committee filed the *Notice Of Filing Of Initial Draft Of Debtors And Official Committee Of Equity Security Holders Joint Plan Of Liquidation Dated December __, 2017* (the "Joint Plan"). Docket No. 334. The Joint Plan and Trust Agreement contain various provisions that create a trust (the "Trust") for the benefit of shareholders. The Debtors' claims and causes of action will be assigned to the Trust and will be pursued by a trustee, with the oversight of a trust board, post-confirmation of the Plan.

## IV.

## SOLOMON & CRAMER'S PROPOSED EMPLOYMENT

25.    Subject to the direction of the Equity Committee and further order of this Court, the professional services to be rendered by Solomon & Cramer include:

(a)    assisting and advising the Equity Committee in the investigation of any claims and causes of actions against the Former Officers and Third Parties based on certain prepetition acts and matters related thereto;

(b)    assisting and advising the Equity Committee in the prosecution of any claims and causes of actions against the Former Officers and Third Parties based on certain prepetition acts and matters related thereto;

(c)    participating in such examinations and depositions of the Former Officers, Third Parties and other witnesses as may be necessary and handling all matters related thereto;

(d)    representing the Equity Committee at hearings to be held before this Court and/or in any other forum and communicating with the Equity Committee regarding the matters heard and the issues raised as well as the decisions and considerations of this Court and any other court or arbitrator;

(e)    preparing and filing any complaint and/or objection against the Former Officers and the Third Parties and handling any matters related thereto;

(f)    performing such other services as the Equity Committee may require of Solomon & Cramer in connection with the Former Officers and the Third Parties; and

(g)    Continuing to pursue any claims and causes of actions after the effective date of any plan.

## V.

## SELECTION OF SOLOMON & CRAMER

26.    The Equity Committee selected Solomon & Cramer based on several factors, including the broad array of commercial litigation services it offers as a boutique business

litigation law firm, and in particular its expertise in litigation involving legal and accounting malpractice, claims against officers, and complaints and matters before the Securities Exchange Commission. A copy of Solomon & Cramer's firm resume is attached to the concurrently filed Declaration of Andrew T. Solomon (the "Solomon Declaration") as Exhibit "A."

27. Solomon & Cramer is a law firm comprising four (4) attorneys, plus various contract attorneys, with an office located in New York, New York and an attorney located in Chicago, Illinois and Dallas, Texas. Solomon & Cramer has expertise in virtually all areas of law related to the potential claims against the Debtors' Officers and Third Parties that the Equity Committee may draw upon from time to time as the need arises.

28. All attorneys composing or associated with Solomon & Cramer who will be performing legal services for the Equity Committee in this case will be acting under the supervision of an attorney at Dentons duly admitted to practice law in the courts of the State of California. All attorneys who are expected to appear before this Court are admitted to practice law in the United States District Court for the Central District of California or have applied or will apply for such admission *pro hac vice*. All attorneys who are expected to appear before this Court are familiar with the Bankruptcy Code, Bankruptcy Local Rules and the United States Trustee Guidelines and will comply with them. A summary of the experience and qualifications of those Solomon & Cramer lawyers who are expected to be the primary Solomon & Cramer lawyers rendering services to the Equity Committee is attached to the Solomon Declaration as Exhibit "B."

### VI.
### DISCLOSURES REGARDING SOLOMON & CRAMER'S COMPENSATION AND DISINTERESTEDNESS

29. For this representation, Solomon & Cramer has agreed to reduced hourly rates. Solomon & Cramer proposes to render services to the Equity Committee at a combination of rates discounted twenty-five (25%) percent of standard rates, and a contingency-fee arrangement of ten (10%) percent of the shareholders' net recoveries if the gross recoveries are less than $5,000,000.00 and fifteen (15%) percent of the shareholders' net recoveries if the gross

recoveries are equal to or greater than $5,000,000.00[4] (for the avoidance of doubt, under the foregoing scenario, the fifteen (15%) percent contingency-fee will only apply to the recoveries equal to or greater than the $5,000,000.00). Solomon & Cramer will seek reimbursement for any travel fees or expenses, including experts, without any markup. The current hourly billing rates for the Solomon & Cramer attorneys and paraprofessionals who will provide services on this matter are:.

    a. Andrew T. Solomon (partner): discounted hourly billing rate of $337.50;
    b. Jennifer Cramer (partner): discounted hourly billing rate of $225.00;
    c. Rebecca Zawisky (of counsel): discounted hourly billing rate of $187.50; and
    d. Various contract attorneys (for discovery only): standard hourly billing rate capped at $125.

30. For certain professionals, such rates may be higher or lower than the local rate charged in cases billed out of the office in which the professional is resident. Solomon & Cramer reserves the right to ask this Court to adjust the hourly rates and rates of reimbursement in the future if the rates it charges are increased.

31. Solomon & Cramer will maintain detailed records of fees and expenses incurred in connection with the rendering of the legal services described above, in accordance with applicable rules and guidelines.

32. Pursuant to § 328(a), the Equity Committee may retain counsel pursuant to "reasonable terms and conditions, including . . . on an hourly basis . . . or on a contingent fee basis." 11 U.S.C. § 328(a). The Equity Committee believes that the proposed terms constitute fair and reasonable terms and conditions for the retention by the Equity Committee of Solomon & Cramer as counsel in accordance with § 328(a). The contingency-fee arrangement is equal to or more client-favorable than other similar engagements that Solomon & Cramer has entered into with commercial clients. Under the terms of its proposed retention, Solomon & Cramer will provide actual and necessary services to the Debtors' estates at reduced fees. Only if and when the equity security holders receive a certain level of recoveries from these Cases may Solomon &

---

[4] Note: Solomon & Cramer specifically contemplated the existence of the contingency-fee arrangement described herein when it agreed to reduce its hourly rates by twenty-five (25%) percent of its standard rates. If, for any reason, the Court does not approve the contingency-fee arrangement, Solomon & Cramer reserves the right to request compensation equal to its standard rates and amend the Application accordingly.

Cramer recover an additional amount to make up for its initial discount and out-of-pocket expense. The contingency-fee therefore will not affect any other stakeholders in the Debtors' Cases and will only be paid post-confirmation after certain shareholder recoveries.

33. Solomon & Cramer understands the provisions of §§ 328, 330, 331 and 1103, Bankruptcy Rules 2014(a) and 2016, and Local Rules 2014-1(b) and 2016-1, which require, among other things, Court approval of the Equity Committee's employment of Solomon & Cramer as counsel and of all legal fees and reimbursement of expenses that Solomon & Cramer will receive from the Debtors' estates. Solomon & Cramer understands that the standards related to § 328 will not apply to any compensation sought under the Application—except that, pursuant to the terms discussed herein, Solomon & Cramer seeks the contingency-fee compensation pursuant to § 328(a) (which fees will only be paid after certain recoveries to shareholders).

34. Solomon & Cramer has not received and will not receive any lien or any other interest in property of the Debtors or of a third party to secure payment of its fees, but reserves the right to seek to surcharge collateral if appropriate. Solomon & Cramer understands that its compensation in this case will be subject to the approval of the Bankruptcy Court upon appropriate application and hearing—except that, pursuant to the terms discussed herein, Solomon & Cramer seeks the contingency-fee compensation pursuant to § 328(a). Solomon & Cramer intends to apply to this Court for fees incurred prior to the confirmation of the Joint Plan in conformity with the Bankruptcy Code and applicable rules, the guidelines for compensation and reimbursement for fees incurred and costs advanced in this matter and any orders of the Court governing application and allowance of compensation in this Case.

35. At the conclusion of this case, Solomon & Cramer will file an appropriate application seeking allowance of all fees and costs, regardless of whether interim compensation has been paid.

36. As set forth in the Solomon Declaration, Solomon & Cramer identified all persons and entities who are, or may be, adverse to the Equity Committee and the Debtors, who are currently represented by Solomon & Cramer, or where a claimant of these estates, may be an

adverse party in litigation where Solomon & Cramer represents the opposing party. A list of the parties and entities searched is attached as Exhibit "C" to the Solomon Declaration.

37. Except as set forth in the Solomon Declaration, Solomon & Cramer and the attorneys composing or employed by it (a) do not have any prior connection with the Debtors, any creditors of the Debtors or their estates, any equity security holders, or any other party in interest in these cases, or their respective attorneys or accounts (other than professional connections and relationships), or these Cases; (b) do not hold or represent an interest materially adverse to the estates or of any class of creditors or equity secured holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or an investment banker for any security of the Debtors, or for any other reason; and (c) are disinterested persons as that term is defined in 11 U.S.C. §101(14). As of the Petition Date, Solomon & Cramer was not a creditor, equity holder, or insider of the estate.

38. Solomon & Cramer is not and was not an investment banker for any outstanding security of the Debtors. Solomon & Cramer has not been within three (3) years before the petition date an investment banker for a security of the Debtors, or an attorney for such an investment banker in connection with the offer, sale or issuance of any security of the Debtors.

39. Neither Solomon & Cramer nor any of its attorneys are, or were, within two (2) years before the petition date, a director, officer or employee of the Debtors or of any investment banker for any security of the Debtors.

40. Solomon & Cramer has not shared or agreed to share such compensation with any other person, except as among partners of Solomon & Cramer. Solomon & Cramer has no prepetition claims against the Debtors. Solomon & Cramer has not received a retainer.

41. Solomon & Cramer understands that any compensation to be received by Solomon & Cramer hereafter is subject to the approval of this Court on appropriate application and hearing—except that, pursuant to the terms discussed herein, Solomon & Cramer seeks the contingency-fee compensation pursuant to § 328(a). Solomon & Cramer intends to file applications for allowance of fees and reimbursements of costs as and when appropriate.

42.  To the best of Solomon & Cramer's knowledge, no attorney employed by Solomon & Cramer is related to any judge of the United States Bankruptcy Court for the Central District of California, the United States Trustee, or to any person employed by the Office of the United States Trustee.

43.  The Equity Committee believes that its employment of Solomon & Cramer upon the terms and conditions set forth above is in the best interest of the Debtors' estates and equity holders.

## VII.
## CONCLUSION

WHEREFORE, the Equity Committee respectfully requests the entry of an order: (i) approving this Application; (ii) approving the Equity Committee's employment of Solomon & Cramer as its special litigation counsel, pursuant to 11 U.S.C. §§ 1103(a) and 328(a), with hourly compensation pursuant to 11 U.S.C. §§ 330 and 331, and contingency-fee compensation pursuant to § 328(a) effective as of November 29, 2017; and (iii) affording such and further relief as is warranted under the circumstances.

Dated: December 19th, 2017     DENTONS US LLP
                               SAMUEL R. MAIZEL
                               TANIA M. MOYRON

                               By: _/s/ Tania M. Moyron_
                               Tania M. Moyron, Counsel to the
                               Official Committee of Equity Holders

105939894\V-4

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017:

A true and correct copy of the foregoing document entitled (*specify*): **APPLICATION OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS TO EMPLOY SOLOMON & CRAMER LLP AS SPECIAL LITIGATION COUNSEL TO THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS NUNC PRO TUNC AS OF NOVEMBER 29, 2017; DECLARATION OF ANDREW T. SOLOMON IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **December 19, 2017**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Shiva D Beck    sbeck@gardere.com, jcharrison@gardere.com
- Ron Bender    rb@lnbyb.com
- Cathrine M Castaldi    ccastaldi@brownrudnick.com
- Russell Clementson    russell.clementson@usdoj.gov
- Aaron S Craig    acraig@kslaw.com, lperry@kslaw.com
- Matthew A Gold    courts@argopartners.net
- Monica Y Kim    myk@lnbrb.com, myk@ecf.inforuptcy.com
- Jeffrey A Krieger    jkrieger@ggfirm.com, kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Samuel R Maizel    samuel.maizel@dentons.com, alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com
- Krikor J Meshefejian    kjm@lnbrb.com
- Tania M Moyron    tania.moyron@dentons.com, chris.omeara@dentons.com
- S Margaux Ross    margaux.ross@usdoj.gov
- Susan K Seflin    sseflin@brutzkusgubner.com
- John M Stern    john.stern@oag.texas.gov, bk-mbecker@oag.texas.gov
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Sharon Z. Weiss    sharon.weiss@bryancave.com, raul.morales@bryancave.com
- Susan K. Seflin sseflin@bg.law.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **December 19, 2017**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **December 19, 2017**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012
105437348\V-1

**F 9013-3.1.PROOF.SERVICE**

**BY PERSONAL DELIVERY**
Hon. Martin R. Barash
US Bankruptcy Court
Central District of California
21041 Burbank Blvd., Suite 342/Ctrm. 303
Woodland Hills, CA  91367

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 19, 2017 | Christina O'Meara | /s/Christina O'Meara |
|---|---|---|
| Date | Printed Name | Signature |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

105437348\V-1

**SERVED BY U.S. MAIL:**

| <u>Secured Creditor</u><br>Radians Wareham Holding, Inc.<br>Attn: Mike Tutor, CEO<br>5305 Distriplex Farms<br>Memphis, TN 38141 | <u>Counsel to Radians Wareham Holdings</u><br>E. Franklin Childress, Jr.<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>165 Madison Ave, Suite 2000<br>Memphis, Tennessee 38103 | U.S. Securities and Exchange Commission<br>Attn: Bankruptcy Counsel<br>444 South Flower Street, Suite 900<br>Los Angeles, CA 90071-9591 |
|---|---|---|
| CRG Financial LLC<br>100 Union Avenue<br>Cresskill, NJ 07626 | | |
| <u>Governmental Agencies</u> | | |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101-7346 | Franchise Tax Board<br>Bankruptcy Section, MS: A-340<br>P.O. Box 2952<br>Sacramento, CA 95812-2952 | State Board of Equalization<br>Account Information Group, MIC: 29<br>P.O. Box 942879<br>Sacramento, CA 94279-0029 |
| Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA 94280-0001 | Office of Unemployment Compensation Tax Services<br>Department of Labor and Industry<br>Commonwealth of Pennsylvania<br>651 Boas Street, Room 702<br>Harrisburg, PA 17121 | |
| <u>Equity Holders - SERVED BY EMAIL</u> | | |
| Patrick W. O'Brien<br>301 Whitmore Lane<br>Lake Forest, IL 60045-4707<br>Email: obrien.pat@me.com | Ronald Chez<br>1524 N. Astor Street<br>Chicago, IL 60610<br>Email: rlchez@rcn.com | Scott Jarus<br>938 Duncan Avenue<br>Manhattan Beach, CA 90266<br>Email: scott.jarus@verizon.net |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

105437348\V-1

**F 9013-3.1.PROOF.SERVICE**