1  SAMUEL R. MAIZEL (SBN 189301)
   TANIA M. MOYRON (SBN 235736)
2  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
3  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300; Facsimile: (213) 623-9924
4  Email : samuel.maizel@dentons.com; tania.moyron@dentons.com
   Attorneys for Matthew A. Pliskin, as Trustee, and
5  The Trust Board

6  ANDREW T. SOLOMON (admitted pro hac vice)
   JENNIFER G. CRAMER
7  asolomon@solomoncramer.com; jcramer@solomoncramer.com
   SOLOMON & CRAMER LLP
8  1441 BROADWAY, SUITE 6026
   NEW YORK, NY 10018
9  Telephone: (212) 884-9102; Facsimile: (516) 368-3896
   Special Litigation Counsel to Matthew A. Pliskin, as the Trustee,
10 and The Trust Board

11

12              **UNITED STATES BANKRUPTCY COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
13               **SAN FERNANDO VALLEY DIVISION**

14 In re:                                    Lead Case No.: 1:17-bk-12408-MB
                                             Jointly administered with:
15 ICPW Liquidation Corporation, a California 1:17-bk-12409-MB Chapter 11 Cases
   corporation,[1]
16           Debtor and Debtor in Possession. **NOTICE OF MOTION AND MOTION TO
                                             ESTIMATE CLAIMS NO. 7 AND 8 FILED
17 ─────────────────────────────────────────  **BY JEFFREY CORDES AND WILLIAM
                                             AISENBERG PURSUANT TO 11 U.S.C. §
18 In re:                                    502(c); DECLARATION OF MATTHEW
                                             A. PLISKIN IN SUPPORT THEREOF**
19 ICPW Liquidation Corporation, a Nevada
   corporation,[2]
20           Debtor and Debtor in Possession. DATE:     April 3, 2018__
                                             TIME:     1:30 p.m.
21 ─────────────────────────────────────────  PLACE:    Courtroom "303"
     Affects:                                          21041 Burbank Boulevard
22                                                      Woodland Hills, California 91367
   ☒ Both Debtors
23
   ☐ ICPW Liquidation Corporation, a California
24   corporation

25 ☐ ICPW Liquidation Corporation, a Nevada
     corporation
26

27 ─────────────────────────────────────────
   [1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
28 [2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    **PLEASE TAKE NOTICE** that Matthew A. Pliskin, the trustee (the "Trustee"), under the

2    trust created pursuant to the Debtors and Official Committee of Equity Security Holders Joint

3    Plan of Liquidation Dated February 9, 2018 (the "Plan"), and that certain trust agreement dated as

4    of February 28, 2018 (the "Trust Agreement"), entered into by and among the Trustee, ICPW

5    Liquidation Corporation, a California corporation, formerly known as Ironclad Performance

6    Wear Corporation, a California corporation, and ICPW Liquidation Corporation, a Nevada

7    corporation, formerly known as Ironclad Performance Wear Corporation, a Nevada corporation,

8    and the Trust Board established under the Plan and the Trust Agreement, hereby respectfully

9    submit this motion to estimate Claim Nos. 7 and 8 filed by Jeffrey Cordes and William

10    Ainsenberg, pursuant to 11 U.S.C. § 502 (c).

11    **PLEASE TAKE FURTHER NOTICE** that the Motion is based on this Notice, the

12    Motion and all pleadings filed in support of the Motion, the entire record of these cases, the

13    statements, arguments and representations of counsel to be made at the hearing on the Motion, if

14    any, and any other evidence properly presented to the Court.

15    **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f), any party

16    opposing or responding to the Motion must, not later than fourteen (14) days before the hearing,

17    file a written objection and serve such objection on counsel for the Debtors and the Equity

18    Committee whose name and address appear at the top, left-hand corner of the first page of this

19    Notice.

20    **PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(h), failure to file

21    and serve a timely objection may be deemed by the Court to be consent to the relief requested

22    herein.

DATED: March 12, 2018          OFFICIAL COMMITTEE OF EQUITY
23                                     HOLDERS

24

25                         By: */s/ Tania M. Moyron*
                             TANIA M. MOYRON
26                             SAMUEL R. MAIZEL
                       DENTONS US LLP
27                       Attorneys for Matthew A. Pliskin, as Trustee,
28                       and the Trust Board

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ...................................................................................... 1

        A.      GENERAL BACKGROUND. ...................................................................... 1

        B.      THE PREPETITION ARBITRATION AND THE RELIEF FROM STAY
                MOTION. .................................................................................................. 2

        C.      THE PROOFS OF CLAIM. ........................................................................ 3

        D.      THE ADVERSARY PROCEEDING. ............................................................ 4

        E.      THE PLAN. ............................................................................................... 5

        F.      ADDITIONAL RELEVANT BACKGROUND. ............................................... 5

III.    ARGUMENT ......................................................................................................... 6

        A.      LEGAL STANDARDS. ............................................................................... 6

        B.      THE FORMER OFFICERS' AMENDED PROOFS OF CLAIM FOR
                INDEMNITY ARE TIME-BARRED ......................................................... 11

        C.      THE FORMER OFFICERS ARE NOT ENTITLED TO INDEMNIFICATION . 18

        D.      THE FORMER OFFICERS ARE NOT ENTITLED TO INDEMNIFICATION
                UNDER THEIR INDEMNIFICATION AGREEMENTS ................................. 21

        E.      THE FORMER OFFICERS ARE NOT ENTITLED TO INDEMNIFICATION
                UNDER ICPW'S BYLAWS ..................................................................... 23

        F.      THE FORMER OFFICERS ARE NOT ENTITLED TO SEVERANCE
                BECAUSE THE AMENDMENTS TO THEIR EMPLOYMENT AGREEMENTS
                WERE PROCURED BY FRAUD OR IN BAD FAITH .................................. 24

        G.      A FAIR ESTIMATE WOULD BE $0; AT MOST $500,000 IS A REASONABLE
                RESERVE ............................................................................................... 25

IV.     CONCLUSION ................................................................................................... 26

106796755\V-1

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Bittner v. Borne Chem. Co.*,
   691 F.3d 134 (3d Cir. 1984).................................................................................9

*Bittner v. Borne Chem. Co., Inc.*,
   691 F.2d 134 (3d Cir.1982).................................................................................8

*Cal. Dept. of Health Servs. v. Jensen (In re Jensen)*,
   995 F.2d 925 (9th Cir. 1993)................................................................13, 14, 15

*Cool Fuel v. Board of Equalization (In re Cool Fuel, Inc.)*,
   210 F.3d 999 (9th Cir. 2000)........................................................................13, 14

*Employees' Retirement System of the State of Hawaii v. Osborne (In re THC Financial Corp.)* 686 F.2d 799 (9th Cir. 1982)..................................................13, 14

*First City Beaumont v. Durkay (In re Ford)*,
   967 F.2d 1047 (5th Cir. 1992)..........................................................................7, 8

*In re Ahrens*,
   No. 14-BK-29813-MSM, 2016 WL 6427279 (B.A.P. 9th Cir. Oct. 27, 2016) ...........7, 8, 9, 10

*In re Aspen Limo. Serv. (In re Aspen Limo. Serv.)*,
   193 B.R. 325 (D. Colo. 1996) .....................................................................7, 8, 10

*In re Audre, Inc.*,
   202 B.R. 490 (Bankr. S.D. Cal. 1996), *aff'd*, 216 B.R. 19 (B.A.P. 9th Cir. 1997) ............................................................................................................9, 10

*In re Baroni*,
   558 B.R. 916 (Bankr. C.D. Cal. 2016) (Barash, J.), *aff'd*, CC-16-1345-TaKuL, 2017 WL 3014268 (9th Cir. July 14, 2017) ......................................... *passim*

*In re Baroni*,
   Case No. 12-10986, 2017 WL 4404141 (Bankr. C.D. Cal. Sep. 29, 2017) ...........13, 15, 16, 17

*In re Cantu*,
   No. 08-70260, 2009 Bankr. LEXIS 2044 (Bankr. S.D. Tex. May 15, 2009) ............................8

*In re Castellino Villas, A.K.F. LLC*,
   836 F.3d 1028 (9th Cir. 2016)........................................................................12, 15

*In re Comstock Fin. Servs., Inc.*,
   111 B.R. 849 (Bankr. C.D. Cal. 1990).................................................................8

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- ii -

*In re Corey*,
    892 F.2d 829 (9th Cir. 1989)......................................................................................9

*In re Eli Witt Co.*,
    213 B.R. 396 (Bankr. M.D. Fla. 1997) ....................................................................10

*In re Fostvedt*,
    823 F.2d 305 (9th Cir. 1987).....................................................................................12

*In re Frontier Airlines, Inc.*,
    137 B.R. 811 (D. Colo. 1992) .....................................................................................7

*In re Innovasystems, Inc.*,
    No. 11-36228-ABA, 2014 WL 7235527 (Bankr. D.N.J. Dec. 18, 2014) ...................10

*In re Jackson*,
    541 B.R. 887 (B.A.P. 9th Cir. 2015).........................................................................11

*In re Kaplan*,
    186 B.R. 871 (Bankr. D.N.J. 1995)...........................................................................10

*In re Kreisler*,
    407 B.R. 321 (Bankr. N.D. Ill. 2009) .........................................................................7

*In re N. Am. Health Care, Inc.*,
    544 B.R. 684 (Bankr. C.D. Cal. 2016)................................................................7, 8, 9

*In re Nat'l Gypsum Co.*,
    139 B.R. 397 (N.D. Tex. 1992)..................................................................................15

*In re Nat'l Merch. Co., Inc.*,
    206 B.R. 993 (Bankr. M.D. Fla. 1997) ....................................................................11

*In re Osborne*,
    159 B.R. 570 (Bankr. C.D. Cal. 1993), *aff'd*, 167 B.R. 698 (B.A.P. 9th Cir.
    1994), *aff'd*, 76 F.3d 306 (9th Cir. 1996).................................................................11

*In re Pac. Gas & Elec. Co.*,
    295 B.R. 635 (Bankr. N.D. Cal 2003)..............................................................7, 8, 9, 10

*In re Pac. Gas & Elec. Co.*,
    311 B.R. 84 (N.D. Cal. 2004) ...................................................................................18

*In re SNTL Corp.*,
    571 F.3d 826 (9th Cir. 2009).................................................................................14, 15

*In re Trident Shipworks, Inc.*,
    247 B.R. 513 (Bankr. M.D. Fla. 2000) .......................................................................7

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

*In re Tsai,*
     No. 2:13-BK-27391-PC, 2014 WL 1154032 (Bankr. C.D. Cal. Mar. 19, 2014) .................7, 9

*In re Vodenos,*
     553 B.R. 786 (Bankr. C.D. Cal. 2016) .................................................................10

*Key Bar Investments, Inc. v. Cahn (In re Cahn),*
     188 B.R. 627 (9th Cir. BAP 1995) .....................................................................18

*Kostrikin v. United States,*
     106 F. Supp. 2d 1005 (E.D. Cal. 2000) ................................................................19

*Matter of Donovan Wire & Iron Co.,*
     822 F.2d 38 (8th Cir. 1987) ...............................................................................11

*Mud King Prods., Inc. v. Nat'l Oilwell Varco, L.P.,*
     No. H-14-2316, 2015 U.S. Dist. LEXIS 23855 (S.D. Tex. Feb. 27, 2015) .................8

*Pepper v. Litton,*
     308 U.S. 295 (1939) ........................................................................................25

*Schnelling v. Thomas (In re Agribiotech, Inc.),*
     319 B.R. 216 (D. Nev. 2004) .............................................................................19

*Siegel v. Fed. Home Loan Mortgage Corp.,*
     143 F.3d 525 (9th Cir. 1998) .............................................................................14

*Spokane Law Enf't Fed. Credit Union v. Barker (In re Barker),*
     839 F.3d 1189 (9th Cir. 2016) ...........................................................................18

*ZiLOG, Inc. v. Corning (In re Zilog, Inc.),*
     450 F.3d 996 (9th Cir. 2006) .............................................................................14

**California Cases**

*Ryan v. Gifford,*
     918 A.2d 341 ..................................................................................................19

**Other State Cases**

*Bedore v. Familian,*
     122 Nev. 5, 125 P.3d 1168 (2006) ......................................................................20

*Cwikla v. Sheir,*
     345 Ill. App. 3d 23, 280 Ill. Dec. 158, 801 N.E.2d 1103 (2003) .............................25

*ICD Publ'ns, Inc. v. Gittlitz,*
     2014 IL App (1st) 133277, 388 Ill. Dec. 618, 24 N.E.3d 898 (App. Ill. 2014) ..........25

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- iv -

106796755\V-1

*In re Falk*,
    No. NC-12-1385-DJuPa, 2013 WL 5405564 (B.A.P. 9th Cir. Sep. 26, 2013) ......................8, 9

*In re Walt Disney Co. Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005) .........................................................................................19

*Talbot v. Nevada Fire Insurance Co.*,
    52 Nev. 145, 283 P. 404 (1930) .....................................................................................19

*W. Indus. v. Gen. Ins. Co.*,
    91 Nev. 222, 533 P.2d 473 (1975) ................................................................................19

*Wal-Mart Stores, Inc. v. Coughlin*,
    369 Ark. 365, 255 S.W.3d 424 (2007) ..........................................................................25

**Federal Statutes**

11 United States Code
    § 101(5) ..........................................................................................................................12
    § 362 ................................................................................................................................2
    § 502 ................................................................................................................................7
    § 502(b) ...........................................................................................................................14
    § 502 (c) ..............................................................................................................2, 6, 7, 8
    § 502(c)(1) .......................................................................................................................9
    § 553.03[1][i] ..................................................................................................................15
    § 1141(d)(1)(A) ..............................................................................................................16

Bankruptcy Act .........................................................................................................13, 14

Racketeer Influenced and Corrupt Organizations Act (RICO) ...........................................5

Securities Exchange Act of 1934
    § 13 ................................................................................................................................19

**State Statutes**

Nevada Revised Statutes
    § 78-138 ..........................................................................................................................22
    § 78-138 ..........................................................................................................................22
    § 78.138 ..........................................................................................................................24
    § 78.7502 ........................................................................................................................22
    § 78.7502 ........................................................................................................................24
    § 78.7502(a) ...................................................................................................................22

**Federal Rules and Regulations**

17 Code of Federal Regulations Part 211 ...........................................................................20

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

**Other Authorities**

Available at
https://www.sec.gov/Archives/edgar/data/1301712/000072174817000447/icp
w8k070517.htm.................................................................................................................2

Available at
https://www.sec.gov/Archives/edgar/data/1301712/000072174817000681/icp
w8k092717.htm.................................................................................................................6

Black's Law Dictionary..............................................................................................................19

Black's Law Dictionary 1182 (7th ed. 1999) ............................................................................19

H.R.Rep. No. 595, 95th Cong., 2d Sess. 1, 309 (1978), *reprinted in* 1978
U.S.C.C.A.N. 5963 ............................................................................................................13

*Notice of Appointment and Appointment of Official Committee of Equity Holders*
(the "Notice of Appointment") ..........................................................................................2

S.Rep. No. 598, 95th Cong., 2d Sess. 1, 22, *reprinted in* 1978 U.S.C.C.A.N. 5787 ...............13, 14

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

106796755\V-1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

By all rights, the Court should estimate Jeffrey Cordes's and William Aisenberg's (collectively, the "Former Officers") alleged claims for indemnification at $0 for at least four reasons. First, the Former Officers did not timely assert an indemnity claim in their original proofs of claim, and, thus, their attempt to amend their claim to assert new and separate indemnity claims is time barred and fails under Ninth Circuit precedent. Second, they have virtually no chance of success on their alleged severance claims or defenses, having breached their contractual and legal duties to the Debtors by intentionally causing the Debtors to misstate their financial information in violation of the federal securities laws and the SEC regulations. [*See* Docket No. 292]. Their misconduct not only negates any right to severance but also disqualifies them from obtaining indemnification. Third, even if indemnification were reasonably possible, their conclusory and unsubstantiated demand of approximately $1.2 million above their $300,000 severance claim is unreasonable and far above their prior demands—the most recent being $500,000 (inclusive of their severance claims). Fourth, and finally, the parties have entered into stipulations that allow the Former Officers to draw $800,000 on the D&O policies to pay for their attorneys' fees, and, thus, they are not out of pocket for any attorneys' fees.

### II.     STATEMENT OF FACTS

#### A.  GENERAL BACKGROUND.

1.      On September 8, 2017, ICPW Liquidation Corporation, a California corporation ("ICPW California"), formerly known as Ironclad Performance Wear Corporation, a California corporation ("Ironclad California"), and ICPW Liquidation Corporation, a Nevada corporation ("ICPW Nevada," and together with ICPW California, the "Post-Confirmation Debtors"), formerly known as Ironclad Performance Wear Corporation, a Nevada corporation ("Ironclad

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 1 -

106796755\V-1

Nevada," and together with Ironclad California, "ICPW" or the "Debtors") each filed a Voluntary

Petition under chapter 11 of the Bankruptcy Code (the "Petition Date").

2.    On September 14, 2017, the Court entered an Order establishing October 20, 2017

as the bar date (the "Bar Date") by which parties who wish to assert pre-petition claims against

the Debtors must file proofs of claim (the "Bar Date Order") [Docket No. 37].

3.    On September 20, 2017, the Office of the United States Trustee filed its *Notice of*

*Appointment and Appointment of Official Committee of Equity Holders* (the "Notice of

Appointment") [Docket No. 59].  The Notice of Appointment provides for the appointment of the

Equity Committee in Ironclad Nevada.

## B.  THE PREPETITION ARBITRATION AND THE RELIEF FROM STAY MOTION.

4.    Prior to the Petition Date, Cordes and Aisenberg were CEO and CFO, respectively,

of ICPW from 2014 until they resigned under internal investigation on July 4, 2017.    They

resigned following ICPW's announcement that its investors could no longer rely on its financial

statements for 2015, 2016, and the first quarter of 2017.  *See* ICPW, Current Report (Form 8-K)

(June 29, 2017).[3]

5.    On September 7, 2017, the day before the Petition Date, the Former Officers

submitted a demand for arbitration against ICPW (AAA Reference No. 1220057366), seeking to

recover their severance payments under their employment agreements. *See* Motion for Relief

from Stay, at 5.

6.    On the Bar Date, the Former Officers filed a motion requesting relief from the

automatic stay imposed by section 362 of the Bankruptcy Code to (a) pursue their arbitration

claims against the Debtor and (b) to seek insurance coverage payments from the Debtors' D&O

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

[3] Available at https://www.sec.gov/Archives/edgar/data/1301712/000072174817000447/icpw8k070517.htm

106796755\V-1

insurance policy (the "Relief from Stay Motion") [Docket Nos. 132-33, 136]. The Relief from Stay Motion attached copies of the Former Officers' Indemnification Agreements as exhibits.

7.    On November 1, 2017, the Debtors and the Equity Committee opposed the Relief from Stay Motion [Docket Nos. 168-69].

8.    On December 7, 2017, the Court temporarily denied the Relief From Stay Motion and set related deadlines [Docket No. 302].

9.    On February 20, 2018, the Debtors and the Equity Committee withdrew [Docket No. 452] the opposition [Docket No. 168], the joinder [Docket No. 169] and supplement thereto [Docket No. 422] to the Relief From Stay Motion.  On February 21, 2018, the Formers Officers withdrew their Relief from Stay Motion [Docket No. 453].

## C.  THE PROOFS OF CLAIM.

10.    On October 3, 2017, the Former Officers filed proofs of claim against the Debtors (Claim Nos. 7-1 and 8-1) (the "Proofs of Claim").  In their Proofs of Claim, the Former Officers asserted claims to recover the severance payments sought in the arbitration proceeding they commenced one day prior to the Petition Date – Aisenberg (Claim No. 7-1) in the amount of $129,406.75; Cordes (Claim No. 8-1) in the amount of $166,906.75.

11.    On November 21, 2017, the Debtors filed a motion to make certain payments on undisputed pre-petition claims (the "Payment Motion") [Docket No. 241].

12.    On November 21, 2017, the Debtors and the Equity Committee filed their *Joint Motion For Order Granting Standing to Pursue Claims for the Benefit of the Debtors' Estates and Approving Stipulation Between Debtors and Equity Committee Granting Standing* (the "Standing Motion") [Docket No. 243].  Among other things, the Standing Motion requested that the Equity be "grant[ed] leave, standing, and exclusive authority . . . to assert, prosecute and/or settle on behalf of the Debtors' estates, subject to Court approval, any and all claims, objections

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 3 -

and causes of action against Jeffrey Cordes and William Aisenberg, and counter claims and defenses against any of the claims asserted by Mr. Cordes and Mr. Aisenberg, including those claims asserted in their proofs of claim against the Debtors." Standing Motion, at 2, lns. 5-10.

13.    On November 28, 2017, the Former Officers filed a limited objection to the Payment Motion (the "Limited Objection") [Docket No. 266], in which they made a specific request that "to avoid any prejudice to Messers. Cordes and Aisenberg, at a minimum, $500,000 should be set aside in a segregated trust account to ensure that there will be sufficient monies to pay the Cordes Claim and the Aisenberg Claim, which amounts would include the face value of the claim, accrued interest, and/or any attorneys' fees, to the extent such are awarded." Limited Objection, at 6, lns. 6-10.

14.    On December 19, 2017, the Court entered an Order granting the Standing Motion [Docket No. 357].

15.    On February 12, 2018, the Former Officers filed so-called amendments to the Proofs of Claim (Claim Nos. 7-2 and 8-2)  (the "Amended Proofs of Claim"), in which they purported to (a) increase the total face amount on each Proof of Claim to $1.5 million, and (b) assert, among other things, a new indemnity claim.

**D.   THE ADVERSARY PROCEEDING.**

16.    On January 26, 2018, the Equity Committee commenced an adversary proceeding [Adv. P. No. 18-01011] against the Former Officers (the "Adversary Complaint"), which complaint also serves as an objection to the Proofs of Claim.

17.    The Adversary Complaint asserts several counts arising out of the Former Officers' intentional misconduct in connection with ICPW's revenue recognition practices, which caused ICPW to restate its financials from December 2015 through the first quarter of 2017, triggered covenant defaults on its debt, and forced it into bankruptcy.  The counts, which include

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 4 -

106796755\V-1

Breach of Fiduciary Duty, Civil RICO, Declaratory Judgment, Breach of Contract, and Faithless

Servant, also serve as defenses against the Former Officers' demands for severance contained in

their Proofs of Claim.

## E.  THE PLAN.

18.    On January 12, 2018, the Debtors and Equity Committee filed a joint plan of

liquidation (the "January Plan") [Docket No. 383].

19.    On February 2, 2018, the Former Officers filed an objection to the January Plan

(the "Plan Objection") [Dkt. No. 425].  In their objection, they continued to "reserve their rights

to assert that the underlying disputes should proceed in arbitration, as was contractually agreed

among the parties." *See* Plan Objection, at 5, lns. 25-27.  In connection with their contingent

indemnification claim, the Former Officers asserted that they "have indemnification rights against

the Debtor in relation to Adversary Proceeding for defense expenses incurred by the Insureds.

Such payments are payable to the Insureds in the event the Debtors do not prevail in the

Adversary Proceeding and to the extent not covered by applicable insurance." *Id.*, at 4, lns. 22-26.

The Former Officers also "assert[ed] that their damages are in excess of $1 million." *Id.*, at 5, lns.

3-4.

20.    On February 9, 2018, the Debtors and Equity Committee filed the Plan [Docket

No. 438].

21.    On February 13, 2018, the Court entered an Order confirming the Plan (the

"Confirmation Order") [Docket No. 442].  The Confirmation Order directed the Post-

Confirmation Debtors to file this Motion by March 12, 2018.

## F.  ADDITIONAL RELEVANT BACKGROUND.

22.    On September 22, 2017, ICPW announced in a public filing with the United States

Securities and Exchange Commission (the "September 8-K") the findings of its internal

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 5 -

106796755\V-1

1    investigation and auditor's recommendations concerning the misstated financials.  The findings

2    including a detailed description of the Former Officers' culpability:  "[T]he Company's former

3    management – former Chief Executive Officer, Jeff Cordes and former Chief Financial Officer,

4    Bill Aisenberg, with assistance from Tom Felton, the former Senior Vice President of Supply

5
6    Chain – appear to have manipulated the accounting and financial results of the Registrant through

7    improper revenue recognition and sales practices from the fourth quarter of 2015 through the

8    second quarter of 2017."  ICPW, Current Report (Form 8-K) (Sep. 22, 2017).[4]  ICPW also

9    disclosed that it was "<u>exploring possible courses of action with respect to its former executives.</u>"

10   *Id.* (emphasis added).

### III.   **ARGUMENT**

#### A.  **LEGAL STANDARDS**

23.    Pursuant to the Plan and Confirmation Order, the Post-Confirmation Debtors seek

to estimate the Former Officers' contingent and unliquidated claims under 11 U.S.C. § 502(c),

which provides:

> There shall be estimated for purpose of allowance under this
> section--
>
> (1)  any contingent or unliquidated claim, the fixing or liquidation
> of which, as the case may be, would unduly delay the
> administration of the case; or
>
> (2)  any right to payment arising from a right to an equitable
> remedy for breach of performance.

11 U.S.C. § 502(c); *see also* Plan, Article V.M. ("As provided by § 502(c) of the Bankruptcy

Code, the Court may estimate for purpose of allowance any contingent or unliquidated claim, the

fixing or liquidation of which, as the case may be, would unduly delay the administration of the

Cases.").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

[4] Available at https://www.sec.gov/Archives/edgar/data/1301712/000072174817000681/icpw8k092717.htm

10679675\V-1

24.   This section of the Bankruptcy Code serves at least two purposes. *In re Kreisler*, 407 B.R. 321, 328 (Bankr. N.D. Ill. 2009) (citing *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1053 (5th Cir. 1992)). First, it avoids the need to await the resolution of pending lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions. *Id.* Second, it promotes a fair distribution to creditors through a realistic assessment of uncertain claims. *Id.*

25.   The estimation provisions of section 502 are mandatory in nature, and impose upon this Court an affirmative duty to estimate any contingent or unliquidated claim, the resolution of which would unduly delay the closing of the case. *See In re N. Am. Health Care, Inc.*, 544 B.R. 684, 688 (Bankr. C.D. Cal. 2016) ("The statute's use of the words 'there shall be' makes it clear that estimation of contingent or unliquidated claims is mandated and required if the claims are such that their fixing or liquidation would "unduly delay" the case's administration."); *In re Frontier Airlines, Inc.*, 137 B.R. 811 (D. Colo. 1992).

26.   "An estimation under section 502(c) may be for broad or narrow purposes." *In re Pac. Gas & Elec. Co.* ("*PG&E*"), 295 B.R. 635, 642 (Bankr. N.D. Cal 2003). "Estimation can take various forms and can be made for different purposes." *In re N. Am. Health Care, Inc.*, 544 B.R. 684, 688 (Bankr. C.D. Cal. 2016); *see also In re Tsai*, No. 2:13-BK-27391-PC, 2014 WL 1154032, at *2 (Bankr. C.D. Cal. Mar. 19, 2014). Estimation may be made for purposes of allowance, "meaning that the Bankruptcy Code expressly authorizes the trustee to pay it, as if it was not contingent or unliquidated." *See In re Ahrens*, No. 14-BK-29813-MSM, 2016 WL 6427279, at *7 (B.A.P. 9th Cir. Oct. 27, 2016); *see also Colo. Mtn. Express Inc. v. In re Aspen Limo. Serv. (In re Aspen Limo. Serv.)*, 193 B.R. 325, 337 (D. Colo. 1996); *In re Trident Shipworks, Inc.*, 247 B.R. 513, 514 (Bankr. M.D. Fla. 2000) ("[T]he estimation proceeding may be used for the purpose of voting on a Plan of Reorganization, and also to determine the allowed

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 7 -

106796755\V-1

amount for distribution purposes."); *In re Comstock Fin. Servs., Inc.*, 111 B.R. 849, 856-57 (Bankr. C.D. Cal. 1990).

27.     This Court has broad latitude in estimating contingent and unliquidated claims and any determination is reviewed for abuse of discretion. *See Ahrens*, 2016 WL 6427279, at *6; *In re Falk*, No. NC-12-1385-DJuPa, 2013 WL 5405564, at *7 (B.A.P. 9th Cir. Sep. 26, 2013); *N. Am. Health Care*, 544 B.R. at 688; *but see Aspen Limo.*, 193 B.R. at 339 ("whether a bankruptcy court used an appropriate method to estimate a claim" is reviewed for abuse of discretion; whereas "whether it reached valid findings of fact" is reviewed for clear error). Neither the rule nor the statute prescribes the method or standards for estimating a claim, all of which is left to the sound discretion of the court, as is "best suited to the particular contingencies at issue." *PG&E*, 295 B.R. at 642 (quoting *Bittner v. Borne Chem. Co., Inc.*, 691 F.2d 134, 135–36 (3d Cir.1982)); *see also Ahrens*, 2016 WL 6427279, at *7; *Falk*, 2013 WL 5405564, at *5 (citing *First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1049 n. 3 (5th Cir.1992)); *In re Cantu*, No. 08-70260, 2009 Bankr. LEXIS 2044, at *5 (Bankr. S.D. Tex. May 15, 2009).   As this Court has explained:

> Although Congress has subordinated the goal of accuracy with respect to determining the value of unliquidated claims to the overarching goal of avoiding undue delay in a case's administration—because it has made such estimation mandatory under section 502(c)—Congress has not precisely defined the mode or method of claim estimation nor has it required a bankruptcy court to employ a particular mode or method of unliquidated claim estimation. Instead, it has left the particular mode or method of claim estimation to a bankruptcy court's sound discretion (and the reported cases so hold).

*N. Am. Health Care*, 544 B.R. at 689.

28.     Methods of estimation include "summary trials, evidentiary hearings, and simple review of the pleadings and oral argument." *Mud King Prods., Inc. v. Nat'l Oilwell Varco, L.P.*, No. H-14-2316, 2015 U.S. Dist. LEXIS 23855, at *7 (S.D. Tex. Feb. 27, 2015). But, at bottom,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    "[e]stimation is a summary procedure whereby the Court *estimates* the value of a claim. A

2    bankruptcy court need only reasonably estimate the probable value of a claim. Such an estimate

3    necessarily implies no certainty and is not a finding or fixing of an exact amount; it is merely the

4    court's best estimate for the purpose of permitting the case to go forward." *N. Am. Health Care*,

5    544 B.R. at 688 (citing *Falk*, 2013 WL 5405564, at \*7).

6

7        29.    "The bankruptcy court must follow 'the substantive law governing the nature of

8    the claim (such as following contract law when estimating a breach of contract claim).'" *PG&E*,

9    295 B.R. at 642; *see also Tsai*, at \*3; *Falk*, 2013 WL 5405564, at \*7. "Estimation . . .

10   contemplates that the bankruptcy court will, in effect, put itself in the place of a nonbankruptcy

11   court or jury to estimate whether a debtor is liable to the claimant and, if so, to estimate the

12   amount of the debt." *In re Audre, Inc.*, 202 B.R. 490, 493 n.7 (Bankr. S.D. Cal. 1996), *aff'd*, 216

13   B.R. 19 (B.A.P. 9th Cir. 1997). "Where the claimant is unlikely to recover under applicable

14   nonbankruptcy law, the claim may properly be estimated at zero." *In re Tsai*, No. 2:13-BK-

15   27391-PC, 2014 WL 1154032, at \*3 (Bankr. C.D. Cal. Mar. 19, 2014) (citing *Bittner v. Borne

16   Chem. Co.*, 691 F.3d 134 (3d Cir. 1984) ("Assuming however that the bankruptcy court did

17   estimate their claims according to their ultimate merits rather than the present value of the

18   probability that they would succeed in their state court action, we cannot find that such a

19   valuation method is an abuse of the discretion conferred by section 502(c)(1).")); *see also In re

20   Corey*, 892 F.2d 829, 834 (9th Cir. 1989) (estimating claims at zero because of their "highly

21   speculative nature"); *Ahrens*, 2016 WL 6427279, at \*8 (finding bankruptcy court had not abused

22   its discretion by estimating deficiency claim at zero because more likely than not that creditor

23   would not have to look to collateral); *Falk*, 2013 WL 5405564, at \*8 (The bankruptcy court

24   "estimated Claim # 21 at zero because it believed it was inappropriate for it to decide how the

25   Community Property Assets should be divided and saw no reason to hold up distributions to other

- 9 -

106796755\V-1

creditors."); *Aspen Limo.*, 193 B.R. at 339 ("Even assuming the truth of what was offered, the $0 valuation of CME's antitrust claims was not clearly erroneous."); *In re Vodenos*, 553 B.R. 786, 794 (Bankr. C.D. Cal. 2016) (quoting earlier Court statement: "*This Court has never determined that the . . . claims wholly lack merit, but merely estimated them at zero.*"); *In re Innovasystems, Inc.*, No. 11-36228-ABA, 2014 WL 7235527, at *8 (Bankr. D.N.J. Dec. 18, 2014) (applying an "all or nothing approach" to estimate the claim at zero); *PG&E*, 295 B.R. at 675-76 (estimating antitrust claims at zero where claimants failed to make their case, the debtor asserted defenses that appeared to have merit, and the claimants had not established any meaningful measure of damages); *In re Eli Witt Co.*, 213 B.R. 396, 400 (Bankr. M.D. Fla. 1997) (disallowing insurance company's future claims against the debtor which were "based on its own statistical analysis of the likelihood such claims will occur" but not on anything "in this record which would enable this Court to estimate these future claims"); *In re Kaplan*, 186 B.R. 871, 874, 878 (Bankr. D.N.J. 1995) (noting that "the court must determine the value of the claim according to its best estimate of the claimant's chances of ultimately succeeding in a state court action" and estimating the claim at zero because the claimant "most likely would not succeed on a state court action").

30.    "[T]he burden of proof in claims estimation is preponderance of the evidence." *Ahrens*, 2016 WL 6427279, at *8.   The burden of proof to establish the claim rests with the claimant, whereas the burden of proof to establish a defense or counterclaim rests with the debtor. *Cf. PG&E*, 295 B.R. at 672.  If this were simply a motion to disallow or expunge proofs of claim, the burden of proof would rest entirely with the claimants. *See Vodenos*, 553 B.R. at 801; *Audre*, 202 B.R. at 499.

31.    Estimation is necessary to avoid a protracted delay in the distribution of monies to the victims of the Former Officers' malfeasance based on cooked-up indemnity demands with no practical chance of success.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 10 -

106796755\V-1

## B. THE FORMER OFFICERS' AMENDED PROOFS OF CLAIM FOR INDEMNITY ARE TIME-BARRED

32.     The Former Officers' Amended Proofs of Claim asserting indemnity for the first time are time-barred. A creditor is permitted to file a proof of claim after the bar date when the proof of claim is an amendment to a timely filed claim, but not when the proof of claim constitutes a separate and distinct claim. *See In re Osborne*, 159 B.R. 570, 573 (Bankr. C.D. Cal. 1993) (disallowing amended claim for separate tax liability), *aff'd*, 167 B.R. 698 (B.A.P. 9th Cir. 1994), *aff'd*, 76 F.3d 306 (9th Cir. 1996).[5] Moreover, in order for the indemnity claims to relate back to the original proofs of claim filed by the Former Officers, they must prove that "the claim or defense asserted in the amendment rises out of the same conduct, transaction, or occurrence set forth in the original pleading." *Id.*

33.     The Proofs of Claim do not seek indemnification nor does the Former Officers' misconduct have anything to do with their originally asserted severance claims. In fact, the Former Officers specifically negate the correlation between their bad acts (and thus the claim for indemnification) and severance payment when they state, "upon his termination with the Debtor, Mr. [. . .] became entitled to an unconditional right to six months severance pay[.]" *See* Proofs of Claim, at 5. In other words, the Former Officers specifically intended to make a distinction or separation between the act of termination that results in payment of severance and their misconduct that may (or may not) have led to their severance. Thus, the asserted indemnity claims are separate and distinct claims from the claims asserted in the Proofs of Claim, and, thus, the Former Officers cannot amend their Proofs of Claim to assert new indemnity claims. *See, e.g., Osborne*, 159 B.R. at 573.

---

[5] *See also In re Nat'l Merch. Co., Inc.*, 206 B.R. 993, 999 (Bankr. M.D. Fla. 1997) (even "changing an unsecured claim to a secured claim equates filing a new claim"); *cf. In re Jackson*, 541 B.R. 887, 891 (B.A.P. 9th Cir. 2015) (allowing IRS to amend claim to provide specific rather than estimated tax liability); *Matter of Donovan Wire & Iron Co.*, 822 F.2d 38, 39 (8th Cir. 1987) (allowing claimant to amend claim by providing proper supporting documentation for original claim).

106796755\V-1

34.    That said, the Former Officers certainly should have included the indemnity claims in their original Proofs of Claim – or in separate proofs of claim filed by the Bar Date – on account of their being contingent, unliquidated, and fairly contemplated claims existing on the Petition Date.

35.    The Bankruptcy Code defines "claim" as including those that are contingent and unliquidated. *See* 11 U.S.C. § 101(5) ("The term 'claim' means . . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ."). "A claim is 'contingent' when 'the debtor will be called upon to pay [it] only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor. . . . A claim is 'unliquidated' when it is not 'subject to ready determination and precision in computation of the amount due.'" *In re Castellino Villas, A.K.F. LLC*, 836 F.3d 1028, 1033 (9th Cir. 2016) (quoting *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir. 1987)). As the Former Officers are calling upon the Debtors to pay the indemnity claims only upon the occurrence of the Adversary Proceeding, and in amounts still not readily determinable or precisely computed, before the commencement of the proceeding such claims were merely contingent and continue to be unliquidated. And the Former Officers acknowledge as much. *See* Amended Proofs of Claim, at 3-4 ("Mr. [. . .]'s claim is hereby properly amended to cover his contingent and unliquidated right to payment for D&O indemnity . . . .").

36.    Courts within this Circuit have recognized that contingent claims that are not triggered until post-petition may arise pre-petition. *See, e.g., In re Baroni*, 558 B.R. 916, 922 (Bankr. C.D. Cal. 2016) (Barash, J.) ("Whether a claim exists generally is determined as of the date of the filing of the bankruptcy petition, irrespective of whether the claim is contingent or unmatured at the time."), *aff'd*, CC-16-1345-TaKuL, 2017 WL 3014268 (9th Cir. July 14, 2017);

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 12 -

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*see also In re Baroni*, Case No. 12-10986, 2017 WL 4404141, at *4 (Bankr. C.D. Cal. Sep. 29, 2017) (Barash, J.) ("*Baroni 2*").[6] This is true "no matter how remote" the contingency. *See Cal. Dept. of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30 (9th Cir. 1993) (quoting H.R.Rep. No. 595, 95th Cong., 2d Sess. 1, 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S.Rep. No. 598, 95th Cong., 2d Sess. 1, 22, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808 (same)). This is also true where the contingency trigger is a cause of action. *See Cool Fuel v. Board of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000) ("It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued."). Accordingly, it is not enough that the indemnity claims were contingent or unliquidated prior to the commencement of the Adversary Proceeding to take them out of the purview of the Bar Date Order; the question is whether they existed (as contingent and unliquidated) on the Petition Date.

37.    "The determination of *when* a claim arises is central to determining whether it is . . . entitled to treatment under a chapter 11 plan." *Baroni*, 558 B.R. at 922 (emphasis in original); *see also Baroni 2*, 2017 WL 4404141, at *5. Put another way, the determination of whether a claim constitutes a pre-petition claim is central to determining whether it is allowable against a debtor.

38.    In *Employees' Retirement System of the State of Hawaii v. Osborne (In re THC Financial Corp.)*, the Ninth Circuit Court of Appeals affirmed a bankruptcy court's characterization, under the Bankruptcy Act, of an indemnification claim as an allowable but untimely filed contingent claim against the debtor. 686 F.2d 799 (9th Cir. 1982). As the Court later relevantly summarized:

> In *In re THC*, 686 F.2d at 803–04, we did hold that a contractual claim for indemnification based on events that occurred post-petition was provable

---

[6] *Baroni 2* concerns a different creditor with a different proof of claim in the same bankruptcy case as *Baroni*.

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

in bankruptcy because the contractual provision was a contingent claim entered pre-petition. As such, the plaintiff's claim for indemnification, which was wholly contingent and unmatured at the time when creditors could file proofs of claim, was time barred. *See id.* at 801. In reaching that conclusion, we accepted the bankruptcy court's rationale that the creditor's claim arose when the indemnification agreement was executed, not when the contingency took place.

*Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 532-33 (9th Cir. 1998). Although decided under the Bankruptcy Act, THC is informative on similar facts here. The Former Officers make a claim for indemnification based on a "contractual provision . . . entered pre-petition." Accordingly, even though "the contingency took place post-petition," the Former Officers' indemnity "claim arose when the indemnification agreement was executed"; and as such claim "was wholly contingent and unmatured at the time when creditors could file proofs of claim, was time barred."

39. In the time since *THC* was decided, "[t]he Ninth Circuit has adopted the 'fair contemplation' test for determining when a claim accrues for the purposes of section 502(b). . . . Under that test, a claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *In re SNTL Corp.*, 571 F.3d 826, 844 (9th Cir. 2009) (citing *ZiLOG, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1000 (9th Cir. 2006); *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1007 (9th Cir. 2000); *Cal. Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929-30 (9th Cir. 1993)). The Former Officers' indemnity claims constitute pre-petition, and thus time-barred, claims under that standard as well.

40. Before this Circuit really developed its "fair contemplation" jurisprudence, it explored the concept in the context of contingent environmental cleanup claims. In *Jensen,* the Court attempted to reconcile "the policy goals of the environmental laws and the bankruptcy code." 95 F.2d at 929. As the Court put it, "Few would doubt that courts should not encourage

- 14 -

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

the frustration of environmental cleanup efforts, just as courts should not override congressional attempts to legislate bankruptcy procedures and goals." *Id.* at 931. The Court found these "sometimes competing policy goals . . . carefully balanced by . . . [w]hat might be called the 'fair contemplation' test [which] provides that 'all future response and natural resource damages cost based on pre-petition conduct that can be fairly contemplated by the parties at the time of [d]ebtors' bankruptcy are claims under the [Bankruptcy] Code." *Id.* (quoting *In re Nat'l Gypsum Co.,* 139 B.R. 397, 409 (N.D. Tex. 1992)). In that case, the Court "conclude[d] that the state had sufficient knowledge of the [debtors'] potential liability to give rise to a contingent claim for cleanup costs before the [debtors] filed their personal bankruptcy petition. The claim filed by California DHS against the [debtors] therefore was discharged in the [debtors'] bankruptcy.

41.    Since then, this Circuit has massaged the "fair contemplation" test, and "harmonized" it with prior outlier cases. *See Baroni,* 558 B.R. at 924; *see also Castellino Villas,* 836 F.3d at 1035-36; *Baroni 2,* 2017 WL 4404141, at *6. The courts within this Circuit have applied the test several times in the context of post-petition attorneys' fees. For example, the Circuit Court determined that "[p]ostpetition fees can be fairly contemplated when the parties have provided for them in their contracts and thus are contingent claims as of the petition date." *SNTL,* 571 F.3d at 844. In so holding, the Court cited to the leading bankruptcy treatise as stating:

> In general, if the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred.

*Id.* (quoting 5 Collier on Bankruptcy § 553.03[1][i] (15th ed. Updated 2007)); *see also Baroni,* 558 B.R. at 918 (concluding that post-petition "attorneys' fee award should be treated as an

106796755\V-1

1  unsecured, prepetition claim against [debtor], subject to treatment and discharge under the Plan");

2  *Baroni 2*, 2017 WL 4404141, at *1.

3      42.    Also in the context of post-petition fees, this Court's decision in *Baroni* is highly

4  relevant and worth quoting at length. As stated in the opinion, there claimant

5

6        held a contingent and unliquidated claim for attorneys' fees under its
   prepetition loan documents with [debtor], at the time she filed her chapter

7        11 petition. [Creditor's] claim for attorneys' fees became liquidated and
   non-contingent following confirmation of [debtor's] plan, which is when

8        the attorneys' fees were incurred and a fee award granted. But this does
   not alter the fact that the claim arose from a prepetition agreement and

9        existed before confirmation of the Plan (albeit contingent and
   unliquidated). . . . As such, [creditor's] claim for attorneys' fees is a claim

10       subject to discharge under the Plan, pursuant to Bankruptcy Code section
   1141(d)(1)(A).

11

12       That [debtor's] objection to the [creditor's] proof of claim was litigated
   largely after entry of the order confirming the Plan is of no moment. The

13       Plan (and the accompanying disclosure statement) put [creditor] on notice
   that [debtor] objected to the [creditor's] claim, indicated that the claim

14       would be litigated after confirmation of the Plan, and specifically provided
   for alternative treatment under the Plan, depending on the outcome of the

15       litigation. . . .

16       In other words, [creditor] could fairly and reasonably contemplate that it

17       would incur attorneys' fees associated with the enforcement of its claim in
   [debtor's] case, and that it would have a claim for such attorneys' fees

18       under its prepetition loan documents, at the time the case was commenced.
   Further, [creditor] could fairly and reasonably contemplate prior to plan

19       confirmation that it would incur such fees after plan confirmation because
   the Plan: (i) advised of [debtor's] objection to the [creditor's] claim, (ii)

20       contemplated that the allowance of the claim would be litigated after plan
   confirmation, and (iii) provided for alternative treatment depending on the

21       outcome of that litigation.

22

23 558 B.R. at 927; *see also Baroni 2*, 2017 WL 4404141, at *9. The *Baroni* decision was later

24 affirmed by the Ninth Circuit. 2017 WL 3014268, at *1.

25     43.    The above facts from *Baroni* translate easily to the instant facts. *See, e.g.*, 558

26 B.R. at 929 ("That [creditor] might be sued on these related theories was no less within the

27 contemplation of the parties—both on the petition date and prior to confirmation of the plan—

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1  than the possibility that [creditor's] claim might be disputed.").[7] That is, with one major

2  exception: *Baroni* applies to whether a claim for post-petition attorneys' fees constitutes a post-

3  petition claim payable upon demand or a dischargeable pre-petition claim; and *Baroni*'s analysis

4  is premised on the fact that the creditor therein filed a proof of claim for such contingent future

5  attorneys' fees.  558 B.R. at 919; *see also Baroni 2*, 2017 WL 4404141, at *1. To the contrary,

6  here the context of the Former Officers' indemnity claims fit the *Baroni* analysis, thereby

7  supporting their timing as pre-petition claims subject to discharge *had they been timely filed by*

8  *the Bar Date*.  However, the Former Officers' failure to file these claims by the Bar Date is fatal

9  to their allowability.

10

11      44.     The Former Officers' indemnity claims were fairly contemplatable if not on the

12  Petition Date, then at least as of the Bar Date. Two months pre-petition, the Former Officers

13  resigned on account of being under internal investigation by ICPW. By September 22, 2017, the

14  date of publication of ICPW's September 8-K, the Former Officers were fully aware of the

15  Debtors' view that they had engaged in serious misconduct and were likely to be sued. On

16  October 3, 2017, with full knowledge of the Debtors' position regarding their misconduct, and

17  with the advice of experienced bankruptcy counsel, the Former Officers timely filed their original

18  Proofs of Claim, by which they sought to recover their severance and legal fees, and expressly

19  reserved their contingent right to claim post-petition legal fees. On the Bar Date itself, the Former

20  Officers filed the Relief from Stay Motion to pursue their arbitration claims against the Debtors,

21  in defense of which the Debtors could reasonably be anticipated to raise their own claims in

22  defense.

---

[7] This Court also pointed out that "it is not uncommon for a chapter 11 plan to defer the process of objecting to proofs of claim or pursuing affirmative causes of action until the post-confirmation period, in order to expedite the Debtor's emergence from chapter 11 and minimize administrative fees and costs." *Baroni*, 558 B.R. 928 n.8; *see also Baroni 2*, 2017 WL 4404141, at *10 n.10.  Accordingly, "fair contemplation" does not require actual expectation or knowledge of future disputes.

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

45.    Based on the foregoing, the Amended Proofs of Claim are simply late claims filed without justification or legitimate excuse. *Spokane Law Enf't Fed. Credit Union v. Barker (In re Barker)*, 839 F.3d 1189, 1194 (9th Cir. 2016) ("bankruptcy court may disallow a claim for many reasons, including if the proof of claim was untimely"). The burden of presenting facts excusing the late filing of a proof of claim is on the movant. *Key Bar Investments, Inc. v. Cahn (In re Cahn)*, 188 B.R. 627, 631 (9th Cir. BAP 1995); *In re Pac. Gas & Elec. Co.*, 311 B.R. 84, 89 (N.D. Cal. 2004). The Former Officers have not and cannot meet this burden. At all relevant times during this proceeding they were aware of the factual allegations against them, the likelihood that claims would be asserted against them, and their contractual agreements concerning indemnification. They were also represented by highly experienced counsel, who certainly understood the likelihood and implications of potential claims by the Debtors against them. Yet the Former Officers sole explanation for their late-filed claims contained in the Amended Proofs of Claim is that they are in response to the Debtors' objection to their original Proofs of Claim. *See* Amended Proofs of Claim, at 3-4 ("Since the Debtor is taking the position [in the objection to the Proofs of Claim] . . . , [. . .]'s claim is hereby properly amended to cover his contingent and unliquidated right  to payment for D&O indemnity . . . ."). Such is not a sufficient excuse.

46.    In reliance on the Former Officers' originally filed Proofs of Claim, the Debtors prepared and obtained approval of a bankruptcy Plan. That Plan should not be upset by the Former Officers' tardy amendment, which increased their claims fivefold. Because the Former Officers have not explained their delay, the Amended Proofs of Claim should be disallowed.

### C. THE FORMER OFFICERS ARE NOT ENTITLED TO INDEMNIFICATION

47.    Tardiness aside, any estimation of the Former Officers' claims should not include money for indemnification because their chances of any recovery are near zero.

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

48.    As detailed in the Adversary Complaint, the Former Officers engineered numerous end-of-quarter transactions with the intent of manipulating ICPW's revenue results. Their violations were not of esoteric accounting standards, but of basic requirements for recognizing revenues, which are well known and were described in ICPW's public financial statements that the Former Officers signed.

49.    Under Nevada law and as a general principle, "a corporate officer and director has a fiduciary relationship with his corporation and thus owes a duty of good faith, honesty and full disclosure." *W. Indus. v. Gen. Ins. Co.*, 91 Nev. 222, 228, 533 P.2d 473, 476 (1975) (*citing Talbot v. Nevada Fire Insurance Co.*, 52 Nev. 145, 283 P. 404 (1930)); *Schnelling v. Thomas (In re Agribiotech, Inc.)*, 319 B.R. 216, 223 (D. Nev. 2004) (applying Nevada law). A lack of "good faith" in this context includes where "the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 755 (Del. Ch. 2005); *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007. According to Black's Law Dictionary, the term "positive law," means "enacted law -- the codes, statutes, and regulations that are applied and enforced by the courts." *Kostrikin v. United States*, 106 F. Supp. 2d 1005, 1008 (E.D. Cal. 2000) (citing Black's Law Dictionary 1182 (7th ed. 1999)).

50.    An officer acts in bad faith if he intentionally violates positive law, which includes the federal securities laws and the SEC regulations enacted pursuant thereto. Here, the Former Officers undoubtedly violated numerous provisions of the securities laws. But the most obvious violation is under Section 13 of the Securities Exchange Act of 1934 and the SEC regulations thereunder. These provision require public issuers to file annual and quarterly reports, which

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

comply with Generally Accepted Accounting Principles ("GAAP"). They further require that a company maintain accurate books and records, as well as maintain adequate internal accounting controls to reasonably assure that transactions are bona fide, authorized, and accounted for in accordance with GAAP.

51.    The detailed allegations in the Adversary Complaint show that the Former Officers intentionally violated the law by directing sham transactions and misreporting revenues in the wrong periods and in violation of GAAP. *See* SAB No. 101 and SAB 104, 17 CFR Part 211. These allegations reflect ICPW's internal investigation findings contained in the September 8-K:

> On August 17, 2017, Skadden reported to the Board that it had completed its investigation and concluded that the Company's former management – former Chief Executive Officer, Jeff Cordes and former Chief Financial Officer, Bill Aisenberg, with assistance from Tom Felton, the former Senior Vice President of Supply Chain – appear to have manipulated the accounting and financial results of the Registrant through improper revenue recognition and sales practices from the fourth quarter of 2015 through the second quarter of 2017. According to Skadden's report the improper revenue recognition practices consisted of:
>
> ·    Posting a sale of goods for items that never shipped;
>
> ·    Posting a sale in a reporting period before goods shipped;
>
> ·    Sending goods to a customer without a valid purchase order;
>
> ·    Sending goods to a third-party warehouse or freight forwarder; and
>
> ·    Delaying recording of an RGA (Return Goods Authorization).

ICPW, Current Report (Form 8-K) (Sep. 22, 2017).

52.    Given their intentional misconduct and bad faith, the Former Officers cannot recover their legal fees in defending the claims against them. *See Bedore v. Familian,* 122 Nev. 5, 14, 125 P.3d 1168, 1174 (2006) ("directors and officers are not entitled to indemnification for conduct constituting bad faith and intentional misconduct").

53.    Even if their misconduct were not disqualifying (although it is), any indemnity claim would be subject to other significant limitations. First, the Amended Proofs of Claim fail to

106796755\V-1

1  sufficiently support an indemnification claim. They provide no calculation for the amounts, much

2  less an explanation for the increase from $500,000 from November 28, 2017.  They make no

3  effort to parse out which claims or defenses are indemnifiable, which are not, and what is the

4  source of the indemnification rights.

5

6  54.    Second, and moreover, the two possible sources of indemnification for the Former

7  Officers are: the "Indemnification Agreement" and ICPW's bylaws.    Neither provides for

8  indemnity here, as further described below.

9  **D.  THE FORMER OFFICERS ARE NOT ENTITLED TO
INDEMNIFICATION UNDER THEIR INDEMNIFICATION
AGREEMENTS**

10

11  55.    The Former Officers are parties to certain identically worded indemnification

12  agreements (the "Indemnification Agreement").[8] The Indemnification Agreements are attached to

13  the declaration of Matthew Pliskin (the "Pliskin Declaration") as Exhibit A.

14

15  56.    The procedures for obtaining indemnification are set forth in Section 2 of the

16  Indemnification Agreements.   The notice provision is under Section 2(b), which provides as

17  follows:

18

19      **(b)    Notice/Cooperation by Indemnitee.  Indemnitee shall, as a condition
precedent to Indemnitee's right to be indemnified under this Agreement, give the Company notice
in writing as soon as practicable of any Claim made against Indemnitee for which indemnification
will or could be sought under this Agreement. Notice to the Company shall be directed to the Chief
Executive Officer of the Company at the address shown on the signature page of this Agreement
(or such other address as the Company shall designate in writing to Indemnitee).  In addition,
Indemnitee shall give the Company, at the Company's expense, such information and cooperation
as it may reasonably require and as shall be within Indemnitee's power.**

20

21

22

23

24  57.    To date, neither Cordes nor Aisenberg has given formal notice to ICPW "of any

25  Claim made against Indemnitee for which Indemnification will or could be sought under" the

26

27

28

---

[8] A copy of the Indemnification Agreements are attached as Exhibits – and – to the Declaration of Matthew Pliskin.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

Indemnification Agreement. Thus, the condition precedent to indemnification has not been met and no indemnification is due.

58.     Even had the Former Officers timely and properly sought indemnification, their claim would fail for the following reasons:

59.     First, under § 8(a), the Former Officers are not entitled to indemnification "for acts or omissions or transactions from which Indemnitee may not be relieved or liability under applicable law." § 8(a).   Applicable law is Nevada's law.   Under NRS § 78.7502, a corporation may indemnify an officer or director, if that person is not "(a) not liable pursuant to NRS 78-138; or (b) Acted in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the corporation."   NRS § 78-138 provides that an officer or director can be liable for damages to a corporation if it is proven that: "(1) The director's or officer's act or failure to act constituted a breach of his or her fiduciary duties as a director or officer; and (2) Such breach involved intentional misconduct, fraud or a knowing violation of law."   The Former Officers are not entitled to indemnification under either NRS § 78.7502(a) or (b).   They acted in bad faith and their conduct constituted a breach of fiduciary duty arising from "intentional misconduct, fraud or a knowing violation of law."

60.     Second, under § 8(b) the Former Officers are not entitled indemnification for "expenses . . . with respect to Claims initiated or brought voluntarily by Indemnitee and not by way of defense . . . ."   This provision thus bars the Former Officers from obtaining indemnification because they initiated the claims against ICPW, first in the arbitration and then in this action.

61.     Third, under § 8(d) of the Indemnification Agreement, the Former Officers are not entitled to indemnification for "expenses or liabilities of any time whatsoever . . . which have been paid directly to Indemnitee by an insurance carrier under a policy of officers' and directors'

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 22 -

106796755\V-1

1   liability insurance maintained by the Company . . . ."  And beyond their generic statement that the

2   Debtors have "denied indemnity," neither have the Former Officers *contended* that they have

3   been denied reimbursement of legal fees under the Debtor's officers' and directors' policy (the

4   "D&O Policy").  To that point, the Debtor has agreed to permit them access to insurance funds

5   for that very purpose  [Docket. Nos. 300 and 462].  Because the Former Officers are obtaining

6   reimbursement of their fees and expenses under the D&O Policy, their purportedly Amended

7   Proofs of Claim claim no loss (but rather seek to defend the D&O carrier's theoretical

8   "subrogation rights"), and they are not entitled to indemnification from the Debtor.  A copy of the

9   D&O Policy is attached to the Pliskin Declaration as Exhibit B.

10      62.    Fourth, under § 8(g), the Former Officers are not entitled to indemnification "for

11  any breach by Indemnitee of any employment agreement between Indemnitee and the Company .

12  . . ."  Count four of the Adversary Complaint against the Former Officers is directly for breach of

13  employment agreement.  *See* Adversary Complaint, at 25, ln.19, to 26, ln.9.  To that extent, they

14  are certainly not entitled to indemnification.  Moreover, three of the other four counts (1, 3, and

15  5)—breach of fiduciary duty (arising out of their positions as CEO and CFO), declaratory

16  judgment (relating to the amendment to the employment agreements), and faithless servant (to

17  recover compensation paid under their employment agreements)—arise out of the employment

18  relationship and are also not indemnifiable.

19      63.    For the above reasons, the Former Officers are not entitled to indemnification

20  under the Indemnification Agreements.  At a minimum, their claims would be severely limited.

### E.  THE FORMER OFFICERS ARE NOT ENTITLED TO INDEMNIFICATION UNDER ICPW'S BYLAWS

21      64.    ICPW's Bylaws also provide for indemnification of officers and directors, but the

22  Former Officers do not qualify for substantially the same reasons they are not indemnified under

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

their Indemnification Agreements. A copy of the Bylaws are attached to the Pliskin Declaration as Exhibit C.

65.     Article XI, Section 1(b) of the Bylaws provides as follows:

(b)     DIRECTORS AND OFFICERS. The Corporation will indemnify its directors and officers to the fullest extent not prohibited by Nevada law; provided, however, that the Corporation may modify the extent of such indemnification by individual contracts with its directors and officers; provided, further, that the Corporation shall not be required to indemnify any director or officer in connection with any proceeding (or part thereof) initiated by such person unless (A) such indemnification is expressly required to be made by law, (B) the proceeding was authorized by the Board of Directors, (C) such indemnification is provided by the Corporation, in its sole discretion, pursuant to the powers vested in the Corporation under Nevada law or (D) such indemnification is required to be made pursuant to these Bylaws.

66.     Even the "fullest extent of Nevada law" does not cover the Former Officers. Under Nevada law, a company may indemnify only if one of the two conditions under NRS 78.7502 is satisfied: either (a) the person is not liable under NRS 78.138 or (b) the person acted in good faith and in a manner which he or she reasonably believed to be in or not opposed to the best interests of the corporation. Neither is met here. The Former Officers did not act in good faith and their conduct not only involved breaches of fiduciary duty, but also involved "intentional misconduct, fraud or a knowing violation of law."

67.     Apart from the nature of their misconduct, the Former Officers' right to indemnity is further diminished or eliminated because they initiated the claims against ICPW.

68.     The nature of the Former Officers' misconduct, which involved knowing and intentional violations of positive law, negate any claim for indemnity by them under the Bylaws.

**F. THE FORMER OFFICERS ARE NOT ENTITLED TO SEVERANCE BECAUSE THE AMENDMENTS TO THEIR EMPLOYMENT AGREEMENTS WERE PROCURED BY FRAUD OR IN BAD FAITH**

69.     The Former Officers have sued the Debtor for severance under the January 1, 2017 amendments to their employment agreements. They seek this payment even though they voluntarily quit while under internal investigation and despite having breached their fiduciary and contractual duties to ICPW, as explained above.

- 24 -

70.    Under their original employment agreements, the Former Officers had no right to severance under these circumstances.    But the January 1, 2017 made severance available regardless of the circumstances of their departure.    These amendments, however, are not enforceable because they were procured by fraud, omission (the non-disclosure by the Former Officers of their misconduct) and in breach of their fiduciary duties, which required them to make an honest account of their illegal actions. *ICD Publ'ns, Inc. v. Gittlitz*, 2014 IL App (1st) 133277, 388 Ill. Dec. 618, 636, 24 N.E.3d 898, 916 (App. Ill. 2014); *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 33, 280 Ill. Dec. 158, 167, 801 N.E.2d 1103, 1112 (2003) ("a severance agreement arising out of a fiduciary relationship is voidable if one party withheld facts that were material to the agreement"); *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 372, 255 S.W.3d 424, 429 (2007). Moreover, as a general equitable matter, the Former Officers' claims should be disallowed. *See Pepper v. Litton*, 308 U.S. 295, 307-09 (1939).

### G.  A FAIR ESTIMATE WOULD BE $0; AT MOST $500,000 IS A REASONABLE RESERVE

71.    For all the reasons stated above, the Post-Confirmation Debtors believe all the Former Officers' claims are meritless, with little likelihood of success, and that the indemnity claims are further time-barred.    The Post-Confirmation Debtors further assert that the "all or nothing" approach to claims estimation is appropriate here, especially where the Former Officers have contributed nothing factual to the record in support of their claims.    Accordingly, the Post-Confirmation Debtors aver that the Former Officers' claims should be estimated at $0.

72.    The above notwithstanding, in their Limited Objection to the Payment Motion, the Former Officers requested an escrow of $500,000 to cover their potential claims with full knowledge of the circumstances. This amount is undoubtedly high, but in the event the Court believes that the claims should not be estimated at $0, the Trustee submits that this amount would be a more than reasonable reserve given the slim chances of the Former Officers' success in the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106796755\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    litigation. Moreover, under the Plan, there is already a reserve in the amount of $301,492 for the

2    Former Officers disputed priority wage claims and severance claims with interest.

3
## IV.    CONCLUSION
4

5        WHEREFORE, the Post-Confirmation Debtors respectfully requests the entry of an order:

6    (i) approving the Motion; (ii) estimating the Claims at $0, or in the alternative, as a good faith

7    compromise, $500,000; and (iii) affording such and further relief as is warranted under the

8    circumstances.

9

10   OFFICIAL COMMITTEE OF EQUITY            OFFICIAL COMMITTEE OF EQUITY
     HOLDERS                                 HOLDERS
11

12   By: _____           By: _/s/ Tania M. Moyron_____
         ANDREW T. SOLOMON                        TANIA M. MOYRON
13   SOLOMON & CRAMER LLP                         SAMUEL R. MAIZEL
     Special Litigation Counsel to Matthew A.  DENTONS US LLP
14   Pliskin, as the Trustee, and the Trust Board  Attorneys for Matthew A. Pliskin, as the
                                                Trustee, and the Trust Board
15

16

17

18

19

20

21

22

23

24

25

26

27

28

106796755\V-1

## DECLARATION OF MATTHEW A. PLISKIN

I, Matthew A. Pliskin, hereby declare as follows:

1.       I am the trustee (the "Trustee"), under the trust created pursuant to the *Debtors' and Official Committee of Equity Security Holders' Joint Plan of Liquidation Dated February 9, 2018* (the "Plan"), and that certain trust agreement dated as of February 28, 2018, entered into by and among the Trustee, ICPW Liquidation Corporation, a California corporation ("ICPW California"), formerly known as Ironclad Performance Wear Corporation, a California corporation, and ICPW Liquidation Corporation, a Nevada corporation, formerly known as Ironclad Performance Wear Corporation, a Nevada corporation ("Ironclad Nevada," and together with ICPW California, "ICPW" or the "Debtors"). Formerly, I served as Debtors' Chief Financial Officer ("CFO") from August 2017 through the Effective Date of the Plan on February 28, 2018.

2.       I have personal knowledge of the facts set forth herein and, if called to testify, would and could competently testify thereto. This Declaration is based upon my review of pertinent portions of the ICPW California and ICPW Nevada's books and records, and the information I have obtained in my position as CFO and the Trustee of ICPW.

3.       Attached hereto and incorporated herein as Exhibit "A" are true and correct copies of the indemnity agreements between ICPW Nevada and Jeffrey Cordes and William Aisenberg.

4.       Attached hereto and incorporated herein as Exhibit "B" is a true and correct copy of ICPW's professional liability insurance policy through QBE Insurance Corporation, policy number QPL019727.

5.       Attached hereto and incorporated herein as Exhibit "C" is a true and correct copy of the Amended and Restated Bylaws of ICPW Nevada.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to the best of my knowledge, true and correct.

Executed this 12th day of March, 2018 at Tampa, Florida.

_____
MATTHEW A. PLISKIN

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

- 27 -

106796755\V-1

# EXHIBIT A

# EXHIBIT A

## IRONCLAD PERFORMANCE WEAR CORPORATION
## INDEMNIFICATION AGREEMENT

This Indemnification Agreement ("*Agreement*") is effective as of February 11, 2014, by and between Ironclad Performance Wear Corporation, a Nevada corporation (the "*Company*"), and Jeff Cordes ("*Indemnitee*").

WHEREAS, the Company and Indemnitee recognize the increasing difficulty in obtaining liability insurance for its officers and directors, the significant increases in the cost of such insurance and the general reductions in the coverage of such insurance; and

WHEREAS, the Company and Indemnitee further recognize the substantial increase in corporate litigation, subjecting officers and directors to expensive litigation risks at the same time as the availability and coverage of liability insurance has been severely limited; and

WHEREAS, Indemnitee does not regard the current protection available as adequate under the present circumstances, and the Indemnitee and other officers and directors of the Company may not be willing to continue to serve in such capacities without additional protection; and

WHEREAS, the Company desires to attract and retain the services of highly qualified individuals, such as Indemnitee, to serve the Company and, in part, in order to induce Indemnitee to continue to provide services to the Company, wishes to provide for the indemnification and advancing of expenses to Indemnitee to the maximum extent permitted by law.

NOW, THEREFORE, in consideration for Indemnitee's agreement to continue to serve the company, the Company and Indemnitee hereby agree as follows:

1.    **Indemnification.**

(a)    **Indemnification of Expenses.** The Company shall indemnify Indemnitee to the fullest extent permitted by law if Indemnitee was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation that Indemnitee in good faith believes might lead to the institution of any such action, suit, proceeding or alternative dispute resolution mechanism, whether civil, criminal, administrative, investigative or other, including any proceeding by or in the right of the Company or any subsidiary of the Company (hereinafter a "*Claim*") by reason of (or arising in part out of) any event or occurrence, arising or occurring at any time before or after the date of this Agreement, related to the fact that Indemnitee is or was a director, officer, employee or agent of the Company, or any subsidiary of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or by reason of any action or inaction on the part of Indemnitee while serving in such capacity (hereinafter an "*Indemnifiable Event*") against any and all expenses (including attorneys' fees, disbursements of and retainers, accounting and witness fees, travel and deposition costs, and all other costs, expenses and obligations incurred in connection with investigating, defending, being a witness in or participating in (including an appeal), or preparing to defend, be a witness in or participate in, any such action, suit, proceeding, alternative dispute resolution mechanism, hearing, inquiry or investigation),

judgments, fines, penalties and amounts paid in settlement (if such settlement is approved in advance by the Company, which approval shall not be unreasonably withheld) of such Claim and any federal, state, local or foreign taxes imposed on the Indemnitee as a result of the actual or deemed receipt of any payments under this Agreement (collectively hereinafter, *"Expenses"*), including all interest, assessments and other charges paid or payable in connection with or in respect of such Expenses.

(b)    **Reviewing Party.**    Notwithstanding the foregoing, (i) the obligation of the Company under Section 1(a) shall be subject to the condition that the Reviewing Party (as defined in Section 10(e) hereof) shall not have determined (in a written opinion in any case in which the Independent Legal Counsel referred to in Section 1(c) hereof is involved) that Indemnitee would not be permitted to be indemnified under applicable law, and (ii) the obligation of the Company to make an advance payment of Expenses to Indemnitee pursuant to Section 2(a) (an *"Expense Advance"*) shall be subject to the condition that, if, when and to the extent that the Reviewing Party shall have determined that Indemnitee would not be permitted to be so indemnified under applicable law, the Company shall be entitled to be reimbursed by Indemnitee (who hereby agrees to reimburse the Company) for all such amounts theretofore paid; provided, however, that if Indemnitee has commenced or thereafter commences legal proceedings in a court of competent jurisdiction to secure a determination that Indemnitee should be indemnified under applicable law, any determination made by the Reviewing Party that Indemnitee would not be permitted to be indemnified under applicable law shall not be binding and Indemnitee shall not be required to reimburse the Company for any Expense Advance until a final judicial determination is made with respect thereto (as to which all rights of appeal therefrom have been exhausted or lapsed). Indemnitee's obligation to reimburse the Company for any Expense Advance shall be unsecured and no interest shall be charged thereon. If there has not been a Change in Control (as defined in Section 10(c) hereof), the Reviewing Party shall be selected by the Board of Directors, and if there has been such a Change in Control (other than a Change in Control which has been approved by a majority of the Company's Board of Directors who were directors immediately prior to such Change in Control), the Reviewing Party shall be the Independent Legal Counsel referred to in Section 1(c) hereof. If there has been no determination by the Reviewing Party or if the Reviewing Party determines that Indemnitee substantively would not be permitted to be indemnified in whole or in part under applicable law, Indemnitee shall have the right to commence litigation seeking an initial determination by the court or challenging any such determination by the Reviewing Party or any aspect thereof, including the legal or factual bases therefor, and the Company hereby consents to service of process and to appear in any such proceeding. Any determination by the Reviewing Party otherwise shall be conclusive and binding on the Company and Indemnitee.

(c)    **Change in Control.**    The Company agrees that if there is a Change in Control of the Company (other than a Change in Control which has been approved by a majority of the Company's Board of Directors who were directors immediately prior to such Change in Control) then with respect to all matters thereafter arising concerning the rights of Indemnitee to payments of Expenses and Expense Advances under this Agreement or any other agreement or under the Company's Articles of Incorporation or Bylaws as now or hereafter in effect, Independent Legal Counsel (as defined in Section 10(d) hereof) shall be selected by Indemnitee and approved by the Company (which approval shall not be unreasonably withheld). Such counsel, among other things, shall render its written opinion to the Company and Indemnitee as to whether and to what extent Indemnitee would be permitted to be indemnified under applicable law

2

IC001964

and the Company agrees to abide by such opinion. The Company agrees to pay the reasonable fees of the Independent Legal Counsel referred to above and to indemnify fully such counsel against any and all expenses (including attorneys' fees), claims, liabilities and damages arising out of or relating to this Agreement or its engagement pursuant hereto.

(d)     **Mandatory Payment of Expenses.** Notwithstanding any other provision of this Agreement other than Section 9 hereof, to the extent that Indemnitee has been successful on the merits or otherwise, including, without limitation, the dismissal of an action without prejudice, in defense of any action, suit, proceeding, inquiry or investigation referred to in Section 1(a) hereof or in the defense of any claim, issue or matter therein, Indemnitee shall be indemnified against all Expenses incurred by Indemnitee in connection therewith.

2.     **Expenses; Indemnification Procedures.**

(a)     **Advancement of Expenses.** The Company shall advance all Expenses incurred by Indemnitee in connection with the investigation, defense, settlement or appeal of any Claim referenced in Sections 1(a) hereof. Indemnitee hereby undertakes to repay such amounts advanced only if, and to the extent that, it shall ultimately be determined that Indemnitee is not entitled to be indemnified by the Company as authorized hereby. The advances to be made hereunder shall be paid by the Company to Indemnitee within thirty (30) days following delivery of a written request therefor by Indemnitee to the Company.

(b)     **Notice/Cooperation by Indemnitee.** Indemnitee shall, as a condition precedent to Indemnitee's right to be indemnified under this Agreement, give the Company notice in writing as soon as practicable of any Claim made against Indemnitee for which indemnification will or could be sought under this Agreement. Notice to the Company shall be directed to the Chief Executive Officer of the Company at the address shown on the signature page of this Agreement (or such other address as the Company shall designate in writing to Indemnitee). In addition, Indemnitee shall give the Company, at the Company's expense, such information and cooperation as it may reasonably require and as shall be within Indemnitee's power.

(c)     **Procedure.** Any indemnification and advances of Expenses provided for in this Agreement shall be made no later than thirty (30) days after receipt of the written request of Indemnitee. If a claim under this Agreement is not paid in full by the Company within thirty (30) days after a written request for payment therefor has first been received by the Company, Indemnitee may, but need not, at any time thereafter bring an action against the Company to recover the unpaid amount of the claim and, subject to Section 13 of this Agreement, Indemnitee shall also be entitled to be paid for the expenses (including attorneys' fees) of bringing such action. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in connection with any action, suit or proceeding in advance of its final disposition) that Indemnitee has not met the standards of conduct which make it permissible under applicable law for the Company to indemnify Indemnitee, but the burden of proving such defense shall be on the Company and Indemnitee shall be entitled to receive interim payments of Expenses pursuant to Section 2(a) unless and until such defense is finally adjudicated by court order or judgment from which no further right of appeal exists. It is the intention of the parties that if the Company contests Indemnitee's right to indemnification under this Agreement or applicable law, the question of Indemnitee's right to indemnification shall be for the court to decide, and neither

3

IC001965

the failure of the Reviewing Party to have made a determination that indemnification of Indemnitee is proper in the circumstances because Indemnitee has met the applicable standard of conduct required by this Agreement or by applicable law, nor an actual determination by the Reviewing Party that Indemnitee has not met such applicable standard of conduct, shall create a presumption that Indemnitee has not met the applicable standard of conduct.

(d)    **Notice to Insurers.**  If, at the time of the receipt by the Company, of a notice of a Claim pursuant to Section 2(b) hereof, the Company has liability insurance in effect which may cover such claim, the Company shall give prompt notice of the commencement of such Claim to the insurers in accordance with the procedures set forth in the respective policies. The Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of the Indemnitee, all amounts payable as a result of such action, suit, proceeding, inquiry or investigation in accordance with the terms of such policies.

(e)    **Selection of Counsel.**  In the event the Company shall be obligated hereunder to pay the Expenses of any Claim, the Company, if appropriate, shall be entitled to assume the defense of such Claim with counsel approved by Indemnitee, upon the delivery to Indemnitee of written notice of its election so to do; *provided, however,* that (i) the Company shall have no right to assume the defense of any Claim which seeks, in whole or in part, any remedy other than monetary damages (e.g., injunction, specific performance, criminal sanctions) or which could, if Indemnitee were not to prevail therein, materially damage Indemnitee's personal or business reputation, and (ii) the Company shall have no right to assume the defense of any Claim unless the Company first agrees fully and unconditionally, in writing, that the Company is obligated to indemnify Indemnitee in full with respect thereto, and waives any and all defenses, counterclaims or set-offs which might otherwise be asserted in limitation or mitigation of such indemnification obligation.  After delivery of such notice, approval of such counsel by Indemnitee and the retention of such counsel by the Company, the Company will not be liable to Indemnitee under this Agreement for any fees of counsel subsequently incurred by Indemnitee with respect to the same Claim; provided that, (i) Indemnitee shall have the right to employ Indemnitee's counsel in any such Claim at Indemnitee's expense and (ii) if (A) the employment of counsel by Indemnitee has been previously authorized by the Company, (B) Indemnitee shall have reasonably concluded that there may be a conflict of interest between the Company and Indemnitee in the conduct of any such defense, or (C) the Company shall not, in fact, have retained or continued to retain such counsel to defend such Claim, then the reasonable fees and expenses of Indemnitee's counsel shall be at the expense of the Company.

3.    **Additional Indemnification Rights; Nonexclusivity.**

(a)    **Scope.**  Notwithstanding any other provision of this Agreement, the Company hereby agrees to indemnify the Indemnitee to the fullest extent permitted by law, notwithstanding that such indemnification is not specifically authorized by the other provisions of this Agreement, the Company's Articles of Incorporation, the Company's Bylaws or by statute. In the event of any change after the date of this Agreement in any applicable law, statute or rule which expands the right of a Nevada corporation to indemnify a member of its Board of Directors or an officer, such changes shall be, ipso facto, within the purview of an Indemnitee's rights, and the Company's obligations, under this Agreement.  In the event of any change in any applicable law, statute or rule which narrows the right of a Nevada corporation to indemnify a member of its

4

IC001966

Board of Directors or an officer, such changes, to the extent not otherwise required by such law, statute or rule to be applied to this Agreement, shall have no effect on this Agreement or the parties' rights and obligations hereunder.

(b) **Nonexclusivity.** The indemnification provided by this Agreement shall not be deemed exclusive of any rights to which an Indemnitee may be entitled under the Company's Articles of Incorporation, the Company's Bylaws, any agreement, any vote of stockholders or disinterested Directors, the Nevada Revised Statutes, or otherwise, both as to action in Indemnitee's official capacity and as to action in another capacity while holding such office. The indemnification provided under this Agreement shall continue as to Indemnitee for any action taken or not taken while serving in an indemnified capacity even though Indemnitee may have ceased to serve in such capacity at the time of any action, suit or other covered proceeding.

4. **No Duplication of Payments.** The Company shall not be liable under this Agreement to make any payment in connection with any Claim made against Indemnitee to the extent Indemnitee has otherwise actually received payment (under any insurance policy, Articles of Incorporation, Bylaw or otherwise) of the amounts otherwise indemnifiable hereunder.

5. **Partial Indemnification.** If Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of Expenses incurred by him in connection with any Claim, but not, however, for the total amount thereof, the Company shall nevertheless indemnify Indemnitee for the portion of such Expenses to which Indemnitee is entitled.

6. **Mutual Acknowledgment.** Both the Company and Indemnitee acknowledge that in certain instances, Federal law or applicable public policy may override Nevada law and prohibit the Company from indemnifying its directors and officers under this Agreement or otherwise. For example, the Company and Indemnitee acknowledge that the Securities and Exchange Commission has taken the position that indemnification is not permissible for liabilities arising under certain federal securities laws, and federal legislation prohibits indemnification for certain ERISA violations. Indemnitee understands and acknowledges that the Company has undertaken or may be required in the future to undertake with the Securities and Exchange Commission to submit the question of indemnification to a court in certain circumstances for a determination of the Company's right under public policy to indemnify Indemnitee. The Company agrees to assert vigorously, in any such action pertaining to the Company's right to indemnify Indemnitee, the position that the Company has the full and unfettered right to so indemnify Indemnitee, and further agrees that Indemnitee may, at any time and in Indemnitee's sole discretion, assume control of the Company's defense of such right (including without limitation selection of counsel and determination of strategy), with such defense nonetheless being conducted at the Company's expense.

7. **Officers and Director Liability.** The Company will obtain and maintain a policy or policies of insurance with reputable insurance companies providing the officers and directors of the Company with coverage for losses from wrongful acts, or to ensure the Company's performance of its indemnification obligations under this Agreement. In all policies of director and officer liability insurance, Indemnitee shall be named as an insured in such a manner as to provide Indemnitee the same rights and benefits as are accorded to the most favorably insured of

5

IC001967

the Company's directors, if the Indemnitee is a director; or of the Company's officers, if the Indemnitee is not a director of the Company but is an officer; or of the Company's key employees, if Indemnitee is not an officer or director but is a key employee. Notwithstanding the foregoing, the Company shall have no obligation to obtain or maintain such insurance if the Company determines in good faith that such insurance is not reasonably available, the premium costs for such insurance are disproportionate to the amount of coverage provided, the coverage provided by such insurance is limited by exclusions so as to provide an insufficient benefit, or Indemnitee is covered by a similar insurance maintained by a subsidiary or parent of the Company.

8.    **Exceptions.**    Any other provision herein to the contrary notwithstanding, the Company shall not be obligated pursuant to the terms of this Agreement:

(a)    **Excluded Action or Omissions.**    To indemnify Indemnitee for acts, omissions or transactions from which Indemnitee may not be relieved of liability under applicable law;

(b)    **Claims Initiated by Indemnitee.**    To indemnify or advance expenses to Indemnitee with respect to Claims initiated or brought voluntarily by Indemnitee and not by way of defense, except (i) with respect to actions or proceedings brought to establish or enforce a right to indemnification under this Agreement or any other agreement or insurance policy or under the Company's Articles of Incorporation or Bylaws now or hereafter in effect relating to Claims for Indemnifiable Events, (ii) in specific cases if the Board of Directors has approved the initiation or bringing of such Claim, or (iii) as otherwise required under Section 78.7502 of the Nevada Revised Statutes, regardless of whether Indemnitee ultimately is determined to be entitled to such indemnification, advance expense payment or insurance recovery, as the case may be;

(c)    **Lack of Good Faith.**    To indemnify Indemnitee for any expenses incurred by the Indemnitee with respect to any proceeding instituted by Indemnitee to enforce or interpret this Agreement, if a court of competent jurisdiction determines that each of the material assertions made by Indemnitee in such proceeding was not made in good faith or was frivolous;

(d)    **Insured Claims.**    To indemnify Indemnitee for expenses or liabilities of any type whatsoever (including, but not limited to, judgments, fines, ERISA excise taxes or penalties, and amounts paid in settlement) which have been paid directly to Indemnitee by an insurance carrier under a policy of officers' and directors' liability insurance maintained by the Company or any parent or subsidiary of the Company;

(e)    **Claims Under Section 16(b).**    To indemnify Indemnitee for expenses or the payment of profits arising from the purchase and sale by Indemnitee of securities in violation of Section 16(b) of the Securities Exchange Act of 1934, as amended, or any similar successor statute;

(f)    **Failure to Settle Proceeding.**    In the event that Indemnitee Fails to Pursue a Recommended Settlement of a Qualifying Claim, to indemnify Indemnitee (i) for amounts paid or payable in settlement of such Qualifying Claim in excess of the amount of such Recommended Settlement thereof, or (ii) for any Expenses directly related to such Qualifying Claim incurred by Indemnitee following the date upon which Indemnitee Fails To Pursue such Recommended

6

IC001968

Settlement. For purposes of this clause, *"Qualifying Claim"* shall mean any claim the defense of which may be assumed by the Company under Section 2(e) above (i.e., any claim that (A) is not described in the first clause (i) of said Section 2(e) and (B) with respect to which the Company has acknowledged its unconditional duty to indemnify as described in first clause (ii) of said Section 2(e)), *"Recommended Settlement"* shall mean a reasonable written settlement proposal, in full and final executable form in all material respects, and *"Fails To Pursue"* shall mean either (i) Indemnitee's failure to communicate a Recommended Settlement to the principal adverse party in the subject matter within 30 days after Indemnitee' receipt thereof from the Company, or (ii) Indemnitee's failure to agree to any Recommended Settlement that has been accepted by all adverse parties in the subject matter within 30 days after receipt thereof, *provided* the Company has (A) irrevocably deposited all funds necessary to satisfy all of Indemnitee's obligations under such Recommended Settlement in an account subject to Indemnitee's or a third party's control and (B) irrevocably taken all actions and given all instructions necessary or appropriate to permit such funds to be applied in satisfaction of such obligations of Indemnitee; or

(g)     **Breach of Employment Agreement.**  To indemnify Indemnitee for any breach by Indemnitee of any employment agreement between Indemnitee and the Company or any of its subsidiaries.

9.     **Period of Limitation.**  No legal action shall be brought and no cause of action shall be asserted by or in the right of the Company against Indemnitee, Indemnitee's estate, spouse, heirs, executors or personal or legal representatives after the expiration of two years from the date of accrual of such cause of action, and any claim or cause of action of the Company shall be extinguished and deemed released unless asserted by the timely filing of a legal action within such two-year period; provided, that if any shorter period of limitations is otherwise applicable to any such cause of action, such shorter period shall govern.

10.     **Construction of Certain Phrases.**

(a)     For purposes of this Agreement, references to the *"Company"* shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its officers and directors, so that if Indemnitee is or was an officer or director of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, employee benefit plan, trust or other enterprise, Indemnitee shall stand in the same position under the provisions of this Agreement with respect to the resulting or surviving corporation as Indemnitee would have with respect to such constituent corporation if its separate existence had continued.

(b)     For purposes of this Agreement, references to *"other enterprises"* shall include employee benefit plans; references to *"fines"* shall include any excise taxes assessed on Indemnitee with respect to an employee benefit plan; and references to *"serving at the request of the Company"* shall include any service as an officer or director of the Company which imposes duties on, or involves services by, such officer or director with respect to an employee benefit plan, its participants or its beneficiaries and if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit

7

plan, Indemnitee shall be deemed to have acted in a manner "not opposed to the best interests of the Company" as referred to in this Agreement.

(c)    For purposes of this Agreement a *Change in Control* shall be deemed to have occurred if (i) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), other than a trustee or other fiduciary holding securities under an employee benefit plan of the Company or a corporation owned directly or indirectly by the stockholders of the company in substantially the same proportions as their ownership of stock of the Company, (A) who is or becomes the beneficial owner, directly or indirectly, of securities of the Company representing 10% or more of the combined voting power of the Company's then outstanding Voting Securities, increases his beneficial ownership of such securities by 5% or more over the percentage so owned by such person, or (B) becomes the "beneficial owner" (as defined in Rule 13d-3 under said Act), directly or indirectly, of securities of the Company representing more than 20% of the total voting power represented by the Company's then outstanding Voting Securities, (ii) during any period of two consecutive years, individuals who at the beginning of such period constitute the Board of Directors of the Company and any new director whose election by the Board of Directors or nomination for election by the Company's stockholders was approved by a vote of at least two-thirds of the directors then still in office who either were directors at the beginning of the period or whose election or nomination or election was previously so approved, cease for any reason to constitute a majority thereof, or (iii) the stockholders of the Company approve a merger or consolidation of the Company with any other corporation other than a merger or consolidation which would result in the Voting Securities of the company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into Voting Securities of the surviving entity) at least 80% of the total voting power represented by the Voting Securities of the company or such surviving entity outstanding immediately after such merger or consolidation, or the stockholders of the company approve a plan of complete liquidation of the Company or an agreement for the sale or disposition by the Company of (in one transaction or a series of transactions) all of substantially all of the Company's assets.

(d)    For purposes of this Agreement, *Independent Legal Counsel* shall mean an attorney or firm of attorneys, selected in accordance with the provisions of Section 1(c) hereof, who shall not have otherwise performed services for the Company or Indemnitee within the last three years (other than with respect to matters concerning the rights of Indemnitee under this Agreement, or of other indemnitees under similar indemnity agreements).

(e)    For purposes of this Agreement, a *Reviewing Party* shall mean any appropriate person or body consisting of a member or members of the Company's Board of Directors or any other person or body appointed by the Board of Directors who is not a party to the particular claim for which Indemnitee is seeking indemnification, or Independent Legal Counsel.

(f)    For purposes of this Agreement, *Voting Securities* shall mean any securities of the Company that vote generally in the election of directors.

11.    **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall constitute an original.

8

IC001970

12.    **Binding Effect; Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, assigns, including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of the company, spouses, heirs and personal and legal representatives. The Company shall require and cause any successor (whether direct or indirect by purchase, merger, consolidation or otherwise) to all, substantially all, or a substantial part, of the business and/or assets of the Company, by written agreement in form and substance satisfactory to Indemnitee, expressly to assume and agree to perform the Company's obligations under this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place. This Agreement shall continue in effect regardless of whether Indemnitee continues to serve as a director or officer of the Company or of any other enterprise at the Company's request.

13.    **Attorneys' Fees.** In the event that any action is instituted by Indemnitee under this Agreement or under any liability insurance policies maintained by the Company to enforce or interpret any of the terms hereof or thereof, Indemnitee shall be entitled to be paid all Expenses incurred by Indemnitee with respect to such action, regardless of whether Indemnitee is ultimately successful in such action, and shall be entitled to the advancement of Expenses with respect to such action, unless as a part of such action a court of competent jurisdiction over such action determines that each of the material assertions made by Indemnitee as a basis for such action were not made in good faith or were frivolous. In the event of an action instituted by or in the name of the Company under this Agreement to enforce or interpret any of the terms of this Agreement, Indemnitee shall be entitled to be paid all Expenses incurred by Indemnitee in defense of such action (including costs and expenses incurred with respect to Indemnitee's counterclaims and crossclaims made in such action), and shall be entitled to the advancement of Expenses with respect to such action, unless as a part of such action a court having jurisdiction over such action determines that each of Indemnitee's material defenses to such action were made in bad faith or were frivolous.

14.    **Notice.** All, notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed duly given (i) if delivered by hand and signed for by the party addressed, on the date of such delivery, or (ii) if mailed by domestic certified or registered mail with postage prepaid, on the third business day after the date postmarked. Addresses for notice to either party are as shown on the signature page of this Agreement, or as subsequently modified by written notice.

15.    **Severability.** The provisions of this Agreement shall be severable in the event that any of the provisions hereof (including any provision within a single section, paragraph or sentence) are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, and the remaining provisions shall remain enforceable to the fullest extent permitted by law. Furthermore, to the fullest extent possible, the provisions of this Agreement (including, without limitation, each portion of this Agreement containing any provision held to be invalid, void or otherwise unenforceable, that is not itself invalid, void or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

IC001971

16.    **Choice of Law.** This Agreement shall be governed by and its provisions construed and enforced in accordance with the laws of the State of Nevada without regard to the conflict of laws principles thereof.

17.    **Subrogation.** In the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of Indemnitee, who shall execute all documents required and shall do all acts that are necessary to secure such rights and to enable the Company effectively to bring suit to enforce such rights.

18.    **Amendments and Termination.** No amendment, modification, termination or cancellation of this Agreement shall be effective unless it is in writing signed by both the parties hereto. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

19.    **Integration and Entire Agreement.** This Agreement sets forth the entire understanding between the parties hereto and supersedes and merges all previous written and oral negotiations, commitments, understandings and agreements relating to the subject matter hereof between the parties hereto.

20.    **No Construction as Employment Agreement.** Nothing contained in this Agreement shall be construed as giving Indemnitee any right to be retained in the employ of the Company or any of its subsidiaries.

*[Signature Page Follows]*

10

IC001972

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

IRONCLAD PERFORMANCE WEAR CORPORATION
a Nevada corporation, as the Company

By: _____
Name: Vane Clayton
Title: Director

Notice Address:

Ironclad Performance Wear Corporation
2201 Park Place, Suite 101
El Segundo, CA 90245
Attn:   EVP of Finance

AGREED TO AND ACCEPTED:

INDEMNITEE:

_____
(Signature)

Jeff Cordes, CEO Ironclad

Notice Address:

1570 BENT CREEK DIV
SOUTHLAKE, TX 76092

11

IC001973

## IRONCLAD PERFORMANCE WEAR CORPORATION
### INDEMNIFICATION AGREEMENT

This Indemnification Agreement ("*Agreement*") is effective as of April 22, 2014, by and between Ironclad Performance Wear Corporation, a Nevada corporation (the "*Company*"), and William Aisenberg ("*Indemnitee*").

WHEREAS, the Company and Indemnitee recognize the increasing difficulty in obtaining liability insurance for its officers and directors, the significant increases in the cost of such insurance and the general reductions in the coverage of such insurance; and

WHEREAS, the Company and Indemnitee further recognize the substantial increase in corporate litigation, subjecting officers and directors to expensive litigation risks at the same time as the availability and coverage of liability insurance has been severely limited; and

WHEREAS, Indemnitee does not regard the current protection available as adequate under the present circumstances, and the Indemnitee and other officers and directors of the Company may not be willing to continue to serve in such capacities without additional protection; and

WHEREAS, the Company desires to attract and retain the services of highly qualified individuals, such as Indemnitee, to serve the Company and, in part, in order to induce Indemnitee to continue to provide services to the Company, wishes to provide for the indemnification and advancing of expenses to Indemnitee to the maximum extent permitted by law.

NOW, THEREFORE, in consideration for Indemnitee's agreement to continue to serve the company, the Company and Indemnitee hereby agree as follows:

I.     **Indemnification.**

(a)     **Indemnification of Expenses.** The Company shall indemnify Indemnitee to the fullest extent permitted by law if Indemnitee was or is or becomes a party to or witness or other participant in, or is threatened to be made a party to or witness or other participant in, any threatened, pending or completed action, suit, proceeding or alternative dispute resolution mechanism, or any hearing, inquiry or investigation that Indemnitee in good faith believes might lead to the institution of any such action, suit, proceeding or alternative dispute resolution mechanism, whether civil, criminal, administrative, investigative or other, including any proceeding by or in the right of the Company or any subsidiary of the Company (hereinafter a "*Claim*") by reason of (or arising in part out of) any event or occurrence, arising or occurring at any time before or after the date of this Agreement, related to the fact that Indemnitee is or was a director, officer, employee or agent of the Company, or any subsidiary of the Company, or is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or by reason of any action or inaction on the part of Indemnitee while serving in such capacity (hereinafter an "*Indemnifiable Event*") against any and all expenses (including attorneys' fees, disbursements of and retainers, accounting and witness fees, travel and deposition costs, and all other costs, expenses and obligations incurred in connection with investigating, defending, being a witness in or participating in (including an appeal), or preparing to defend, be a witness in or participate in,



IC001365

any such action, suit, proceeding, alternative dispute resolution mechanism, hearing, inquiry or investigation), judgments, fines, penalties and amounts paid in settlement (if such settlement is approved in advance by the Company, which approval shall not be unreasonably withheld) of such Claim and any federal, state, local or foreign taxes imposed on the Indemnitee as a result of the actual or deemed receipt of any payments under this Agreement (collectively hereinafter, "*Expenses*"), including all interest, assessments and other charges paid or payable in connection with or in respect of such Expenses.

(b)    **Reviewing Party.** Notwithstanding the foregoing, (i) the obligation of the Company under Section 1(a) shall be subject to the condition that the Reviewing Party (as defined in Section 10(e) hereof) shall not have determined (in a written opinion in any case in which the Independent Legal Counsel referred to in Section 1(c) hereof is involved) that Indemnitee would not be permitted to be indemnified under applicable law, and (ii) the obligation of the Company to make an advance payment of Expenses to Indemnitee pursuant to Section 2(a) (an "*Expense Advance*") shall be subject to the condition that, if, when and to the extent that the Reviewing Party shall have determined that Indemnitee would not be permitted to be so indemnified under applicable law, the Company shall be entitled to be reimbursed by Indemnitee (who hereby agrees to reimburse the Company) for all such amounts theretofore paid; provided, however, that if Indemnitee has commenced or thereafter commences legal proceedings in a court of competent jurisdiction to secure a determination that Indemnitee should be indemnified under applicable law, any determination made by the Reviewing Party that Indemnitee would not be permitted to be indemnified under applicable law shall not be binding and Indemnitee shall not be required to reimburse the Company for any Expense Advance until a final judicial determination is made with respect thereto (as to which all rights of appeal therefrom have been exhausted or lapsed). Indemnitee's obligation to reimburse the Company for any Expense Advance shall be unsecured and no interest shall be charged thereon. If there has not been a Change in Control (as defined in Section 10(c) hereof), the Reviewing Party shall be selected by the Board of Directors, and if there has been such a Change in Control (other than a Change in Control which has been approved by a majority of the Company's Board of Directors who were directors immediately prior to such Change in Control), the Reviewing Party shall be the Independent Legal Counsel referred to in Section 1(c) hereof. If there has been no determination by the Reviewing Party or if the Reviewing Party determines that Indemnitee substantively would not be permitted to be indemnified in whole or in part under applicable law, Indemnitee shall have the right to commence litigation seeking an initial determination by the court or challenging any such determination by the Reviewing Party or any aspect thereof, including the legal or factual bases therefor, and the Company hereby consents to service of process and to appear in any such proceeding. Any determination by the Reviewing Party otherwise shall be conclusive and binding on the Company and Indemnitee.

(c)    **Change in Control.** The Company agrees that if there is a Change in Control of the Company (other than a Change in Control which has been approved by a majority of the Company's Board of Directors who were directors immediately prior to such Change in Control) then with respect to all matters thereafter arising concerning the rights of Indemnitee to payments of Expenses and Expense Advances under this Agreement or any other agreement or under the Company's Articles of Incorporation or Bylaws as now or hereafter in effect, Independent Legal Counsel (as defined in Section 10(d) hereof) shall be selected by Indemnitee and approved by the Company (which approval shall not be unreasonably withheld). Such

2



IC001366

counsel, among other things, shall render its written opinion to the Company and Indemnitee as to whether and to what extent Indemnitee would be permitted to be indemnified under applicable law and the Company agrees to abide by such opinion. The Company agrees to pay the reasonable fees of the Independent Legal Counsel referred to above and to indemnify fully such counsel against any and all expenses (including attorneys' fees), claims, liabilities and damages arising out of or relating to this Agreement or its engagement pursuant hereto.

(d)    **Mandatory Payment of Expenses.** Notwithstanding any other provision of this Agreement other than Section 9 hereof, to the extent that Indemnitee has been successful on the merits or otherwise, including, without limitation, the dismissal of an action without prejudice, in defense of any action, suit, proceeding, inquiry or investigation referred to in Section 1(a) hereof or in the defense of any claim, issue or matter therein, Indemnitee shall be indemnified against all Expenses incurred by Indemnitee in connection therewith.

2.    **Expenses; Indemnification Procedures.**

(a)    **Advancement of Expenses.** The Company shall advance all Expenses incurred by Indemnitee in connection with the investigation, defense, settlement or appeal of any Claim referenced in Sections 1(a) hereof. Indemnitee hereby undertakes to repay such amounts advanced only if, and to the extent that, it shall ultimately be determined that Indemnitee is not entitled to be indemnified by the Company as authorized hereby. The advances to be made hereunder shall be paid by the Company to Indemnitee within thirty (30) days following delivery of a written request therefor by Indemnitee to the Company.

(b)    **Notice/Cooperation by Indemnitee.** Indemnitee shall, as a condition precedent to Indemnitee's right to be indemnified under this Agreement, give the Company notice in writing as soon as practicable of any Claim made against Indemnitee for which indemnification will or could be sought under this Agreement. Notice to the Company shall be directed to the Chief Executive Officer of the Company at the address shown on the signature page of this Agreement (or such other address as the Company shall designate in writing to Indemnitee). In addition, Indemnitee shall give the Company, at the Company's expense, such information and cooperation as it may reasonably require and as shall be within Indemnitee's power.

(c)    **Procedure.** Any indemnification and advances of Expenses provided for in this Agreement shall be made no later than thirty (30) days after receipt of the written request of Indemnitee. If a claim under this Agreement is not paid in full by the Company within thirty (30) days after a written request for payment therefor has first been received by the Company, Indemnitee may, but need not, at any time thereafter bring an action against the Company to recover the unpaid amount of the claim and, subject to Section 13 of this Agreement, Indemnitee shall also be entitled to be paid for the expenses (including attorneys' fees) of bringing such action. It shall be a defense to any such action (other than an action brought to enforce a claim for expenses incurred in connection with any action, suit or proceeding in advance of its final disposition) that Indemnitee has not met the standards of conduct which make it permissible under applicable law for the Company to indemnify Indemnitee, but the burden of proving such defense shall be on the Company and Indemnitee shall be entitled to receive interim payments of Expenses pursuant to Section 2(a) unless and until such defense is finally adjudicated by court

3



order or judgment from which no further right of appeal exists. It is the intention of the parties that if the Company contests Indemnitee's right to indemnification under this Agreement or applicable law, the question of Indemnitee's right to indemnification shall be for the court to decide, and neither the failure of the Reviewing Party to have made a determination that indemnification of Indemnitee is proper in the circumstances because Indemnitee has met the applicable standard of conduct required by this Agreement or by applicable law, nor an actual determination by the Reviewing Party that Indemnitee has not met such applicable standard of conduct, shall create a presumption that Indemnitee has not met the applicable standard of conduct.

(d)    **Notice to Insurers.** If, at the time of the receipt by the Company, of a notice of a Claim pursuant to Section 2(b) hereof, the Company has liability insurance in effect which may cover such claim, the Company shall give prompt notice of the commencement of such Claim to the insurers in accordance with the procedures set forth in the respective policies. The Company shall thereafter take all necessary or desirable action to cause such insurers to pay, on behalf of the Indemnitee, all amounts payable as a result of such action, suit, proceeding, inquiry or investigation in accordance with the terms of such policies.

(e)    **Selection of Counsel.** In the event the Company shall be obligated hereunder to pay the Expenses of any Claim, the Company, if appropriate, shall be entitled to assume the defense of such Claim with counsel approved by Indemnitee, upon the delivery to Indemnitee of written notice of its election so to do; *provided, however,* that (i) the Company shall have no right to assume the defense of any Claim which seeks, in whole or in part, any remedy other than monetary damages (e.g., injunction, specific performance, criminal sanctions) or which could, if Indemnitee were not to prevail therein, materially damage Indemnitee's personal or business reputation, and (ii) the Company shall have no right to assume the defense of any Claim unless the Company first agrees fully and unconditionally, in writing, that the Company is obligated to indemnify Indemnitee in full with respect thereto, and waives any and all defenses, counterclaims or set-offs which might otherwise be asserted in limitation or mitigation of such indemnification obligation. After delivery of such notice, approval of such counsel by Indemnitee and the retention of such counsel by the Company, the Company will not be liable to Indemnitee under this Agreement for any fees of counsel subsequently incurred by Indemnitee with respect to the same Claim; provided that, (i) Indemnitee shall have the right to employ Indemnitee's counsel in any such Claim at Indemnitee's expense and (ii) if (A) the employment of counsel by Indemnitee has been previously authorized by the Company, (B) Indemnitee shall have reasonably concluded that there may be a conflict of interest between the Company and Indemnitee in the conduct of any such defense, or (C) the Company shall not, in fact, have retained or continued to retain such counsel to defend such Claim, then the reasonable fees and expenses of Indemnitee's counsel shall be at the expense of the Company.

3.    **Additional Indemnification Rights; Nonexclusivity.**

(a)    **Scope.** Notwithstanding any other provision of this Agreement, the Company hereby agrees to indemnify the Indemnitee to the fullest extent permitted by law, notwithstanding that such indemnification is not specifically authorized by the other provisions of this Agreement, the Company's Articles of Incorporation, the Company's Bylaws or by statute. In the event of any change after the date of this Agreement in any applicable law, statute

4



IC001368

or rule which expands the right of a Nevada corporation to indemnify a member of its Board of Directors or an officer, such changes shall be, ipso facto, within the purview of an Indemnitee's rights, and the Company's obligations, under this Agreement. In the event of any change in any applicable law, statute or rule which narrows the right of a Nevada corporation to indemnify a member of its Board of Directors or an officer, such changes, to the extent not otherwise required by such law, statute or rule to be applied to this Agreement, shall have no effect on this Agreement or the parties' rights and obligations hereunder.

(b)    **Nonexclusivity.**  The indemnification provided by this Agreement shall not be deemed exclusive of any rights to which an Indemnitee may be entitled under the Company's Articles of Incorporation, the Company's Bylaws, any agreement, any vote of stockholders or disinterested Directors, the Nevada Revised Statutes, or otherwise, both as to action in Indemnitee's official capacity and as to action in another capacity while holding such office.  The indemnification provided under this Agreement shall continue as to Indemnitee for any action taken or not taken while serving in an indemnified capacity even though Indemnitee may have ceased to serve in such capacity at the time of any action, suit or other covered proceeding.

4.    **No Duplication of Payments.**  The Company shall not be liable under this Agreement to make any payment in connection with any Claim made against Indemnitee to the extent Indemnitee has otherwise actually received payment (under any insurance policy, Articles of Incorporation, Bylaw or otherwise) of the amounts otherwise indemnifiable hereunder.

5.    **Partial Indemnification.**  If Indemnitee is entitled under any provision of this Agreement to indemnification by the Company for some or a portion of Expenses incurred by him in connection with any Claim, but not, however, for the total amount thereof, the Company shall nevertheless indemnify Indemnitee for the portion of such Expenses to which Indemnitee is entitled.

6.    **Mutual Acknowledgment.**  Both the Company and Indemnitee acknowledge that in certain instances, Federal law or applicable public policy may override Nevada law and prohibit the Company from indemnifying its directors and officers under this Agreement or otherwise.  For example, the Company and Indemnitee acknowledge that the Securities and Exchange Commission has taken the position that indemnification is not permissible for liabilities arising under certain federal securities laws, and federal legislation prohibits indemnification for certain ERISA violations.  Indemnitee understands and acknowledges that the Company has undertaken or may be required in the future to undertake with the Securities and Exchange Commission to submit the question of indemnification to a court in certain circumstances for a determination of the Company's right under public policy to indemnify Indemnitee.  The Company agrees to assert vigorously, in any such action pertaining to the Company's right to indemnify Indemnitee, the position that the Company has the full and unfettered right to so indemnify Indemnitee, and further agrees that Indemnitee may, at any time and in Indemnitee's sole discretion, assume control of the Company's defense of such right (including without limitation selection of counsel and determination of strategy), with such defense nonetheless being conducted at the Company's expense.

5



IC001369

7.    **Officers and Director Liability.** The Company will obtain and maintain a policy or policies of insurance with reputable insurance companies providing the officers and directors of the Company with coverage for losses from wrongful acts, or to ensure the Company's performance of its indemnification obligations under this Agreement. In all policies of director and officer liability insurance, Indemnitee shall be named as an insured in such a manner as to provide Indemnitee the same rights and benefits as are accorded to the most favorably insured of the Company's directors, if the Indemnitee is a director; or of the Company's officers, if the Indemnitee is not a director of the Company but is an officer; or of the Company's key employees, if Indemnitee is not an officer or director but is a key employee. Notwithstanding the foregoing, the Company shall have no obligation to obtain or maintain such insurance if the Company determines in good faith that such insurance is not reasonably available, the premium costs for such insurance are disproportionate to the amount of coverage provided, the coverage provided by such insurance is limited by exclusions so as to provide an insufficient benefit, or Indemnitee is covered by a similar insurance maintained by a subsidiary or parent of the Company.

8.    **Exceptions.** Any other provision herein to the contrary notwithstanding, the Company shall not be obligated pursuant to the terms of this Agreement:

(a)    **Excluded Action or Omissions.** To indemnify Indemnitee for acts, omissions or transactions from which Indemnitee may not be relieved of liability under applicable law;

(b)    **Claims Initiated by Indemnitee.** To indemnify or advance expenses to Indemnitee with respect to Claims initiated or brought voluntarily by Indemnitee and not by way of defense, except (i) with respect to actions or proceedings brought to establish or enforce a right to indemnification under this Agreement or any other agreement or insurance policy or under the Company's Articles of Incorporation or Bylaws now or hereafter in effect relating to Claims for Indemnifiable Events, (ii) in specific cases if the Board of Directors has approved the initiation or bringing of such Claim, or (iii) as otherwise required under Section 78.7502 of the Nevada Revised Statutes, regardless of whether Indemnitee ultimately is determined to be entitled to such indemnification, advance expense payment or insurance recovery, as the case may be;

(c)    **Lack of Good Faith.** To indemnify Indemnitee for any expenses incurred by the Indemnitee with respect to any proceeding instituted by Indemnitee to enforce or interpret this Agreement, if a court of competent jurisdiction determines that each of the material assertions made by Indemnitee in such proceeding was not made in good faith or was frivolous;

(d)    **Insured Claims.** To indemnify Indemnitee for expenses or liabilities of any type whatsoever (including, but not limited to, judgments, fines, ERISA excise taxes or penalties, and amounts paid in settlement) which have been paid directly to Indemnitee by an insurance carrier under a policy of officers' and directors' liability insurance maintained by the Company or any parent or subsidiary of the Company;

(e)    **Claims Under Section 16(b).** To indemnify Indemnitee for expenses or the payment of profits arising from the purchase and sale by Indemnitee of securities in violation

6



IC001370

of Section 16(b) of the Securities Exchange Act of 1934, as amended, or any similar successor statute;

(f)     **Failure to Settle Proceeding.** In the event that Indemnitee Fails to Pursue a Recommended Settlement of a Qualifying Claim, to indemnify Indemnitee (i) for amounts paid or payable in settlement of such Qualifying Claim in excess of the amount of such Recommended Settlement thereof, or (ii) for any Expenses directly related to such Qualifying Claim incurred by Indemnitee following the date upon which Indemnitee Fails To Pursue such Recommended Settlement. For purposes of this clause, "*Qualifying Claim*" shall mean any claim the defense of which may be assumed by the Company under Section 2(e) above (i.e., any claim that (A) is not described in the first clause (i) of said Section 2(e) and (B) with respect to which the Company has acknowledged its unconditional duty to indemnify as described in first clause (ii) of said Section 2(e)), "*Recommended Settlement*" shall mean a reasonable written settlement proposal, in full and final executable form in all material respects, and "*Fails To Pursue*" shall mean either (i) Indemnitee's failure to communicate a Recommended Settlement to the principal adverse party in the subject matter within 30 days after Indemnitee' receipt thereof from the Company, or (ii) Indemnitee's failure to agree to any Recommended Settlement that has been accepted by all adverse parties in the subject matter within 30 days after receipt thereof, *provided* the Company has (A) irrevocably deposited all funds necessary to satisfy all of Indemnitee's obligations under such Recommended Settlement in an account subject to Indemnitee's or a third party's control and (B) irrevocably taken all actions and given all instructions necessary or appropriate to permit such funds to be applied in satisfaction of such obligations of Indemnitee; or

(g)     **Breach of Employment Agreement.** To indemnify Indemnitee for any breach by Indemnitee of any employment agreement between Indemnitee and the Company or any of its subsidiaries.

9.     **Period of Limitation.** No legal action shall be brought and no cause of action shall be asserted by or in the right of the Company against Indemnitee, Indemnitee's estate, spouse, heirs, executors or personal or legal representatives after the expiration of two years from the date of accrual of such cause of action, and any claim or cause of action of the Company shall be extinguished and deemed released unless asserted by the timely filing of a legal action within such two-year period; provided, that if any shorter period of limitations is otherwise applicable to any such cause of action, such shorter period shall govern.

10.     **Construction of Certain Phrases.**

(a)     For purposes of this Agreement, references to the "*Company*" shall include, in addition to the resulting corporation, any constituent corporation (including any constituent of a constituent) absorbed in a consolidation or merger which, if its separate existence had continued, would have had power and authority to indemnify its officers and directors, so that if Indemnitee is or was an officer or director of such constituent corporation, or is or was serving at the request of such constituent corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, employee benefit plan, trust or other enterprise, Indemnitee shall stand in the same position under the provisions of this Agreement

7



with respect to the resulting or surviving corporation as Indemnitee would have with respect to such constituent corporation if its separate existence had continued.

(b)    For purposes of this Agreement, references to *"other enterprises"* shall include employee benefit plans; references to *"fines"* shall include any excise taxes assessed on Indemnitee with respect to an employee benefit plan; and references to *"serving at the request of the Company"* shall include any service as an officer or director of the Company which imposes duties on, or involves services by, such officer or director with respect to an employee benefit plan, its participants or its beneficiaries and if Indemnitee acted in good faith and in a manner Indemnitee reasonably believed to be in the interest of the participants and beneficiaries of an employee benefit plan, Indemnitee shall be deemed to have acted in a manner "not opposed to the best interests of the Company" as referred to in this Agreement.

(c)    For purposes of this Agreement a *"Change in Control"* shall be deemed to have occurred if (i) any "person" (as such term is used in Sections 13(d) and 14(d) of the Securities Exchange Act of 1934, as amended), other than a trustee or other fiduciary holding securities under an employee benefit plan of the Company or a corporation owned directly or indirectly by the stockholders of the company in substantially the same proportions as their ownership of stock of the Company, (A) who is or becomes the beneficial owner, directly or indirectly, of securities of the Company representing 10% or more of the combined voting power of the Company's then outstanding Voting Securities, increases his beneficial ownership of such securities by 5% or more over the percentage so owned by such person, or (B) becomes the "beneficial owner" (as defined in Rule 13d-3 under said Act), directly or indirectly, of securities of the Company representing more than 20% of the total voting power represented by the Company's then outstanding Voting Securities, (ii) during any period of two consecutive years, individuals who at the beginning of such period constitute the Board of Directors of the Company and any new director whose election by the Board of Directors or nomination for election by the Company's stockholders was approved by a vote of at least two-thirds of the directors then still in office who either were directors at the beginning of the period or whose election or nomination or election was previously so approved, cease for any reason to constitute a majority thereof, or (iii) the stockholders of the Company approve a merger or consolidation of the Company with any other corporation other than a merger or consolidation which would result in the Voting Securities of the company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into Voting Securities of the surviving entity) at least 80% of the total voting power represented by the Voting Securities of the company or such surviving entity outstanding immediately after such merger or consolidation, or the stockholders of the company approve a plan of complete liquidation of the Company or an agreement for the sale or disposition by the Company of (in one transaction or a series of transactions) all or substantially all of the Company's assets.

(d)    For purposes of this Agreement, *"Independent Legal Counsel"* shall mean an attorney or firm of attorneys, selected in accordance with the provisions of Section 1(c) hereof, who shall not have otherwise performed services for the Company or Indemnitee within the last three years (other than with respect to matters concerning the rights of Indemnitee under this Agreement, or of other indemnitees under similar indemnity agreements).

8



IC001372

(e)    For purposes of this Agreement, a *"Reviewing Party"* shall mean any appropriate person or body consisting of a member or members of the Company's Board of Directors or any other person or body appointed by the Board of Directors who is not a party to the particular claim for which Indemnitee is seeking indemnification, or Independent Legal Counsel.

(f)    For purposes of this Agreement, *"Voting Securities"* shall mean any securities of the Company that vote generally in the election of directors.

11.    **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall constitute an original.

12.    **Binding Effect; Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors, assigns, including any direct or indirect successor by purchase, merger, consolidation or otherwise to all or substantially all of the business and/or assets of the company, spouses, heirs and personal and legal representatives. The Company shall require and cause any successor (whether direct or indirect by purchase, merger, consolidation or otherwise) to all, substantially all, or a substantial part, of the business and/or assets of the Company, by written agreement in form and substance satisfactory to Indemnitee, expressly to assume and agree to perform the Company's obligations under this Agreement in the same manner and to the same extent that the Company would be required to perform if no such succession had taken place. This Agreement shall continue in effect regardless of whether Indemnitee continues to serve as a director or officer of the Company or of any other enterprise at the Company's request.

13.    **Attorneys' Fees.** In the event that any action is instituted by Indemnitee under this Agreement or under any liability insurance policies maintained by the Company to enforce or interpret any of the terms hereof or thereof, Indemnitee shall be entitled to be paid all Expenses incurred by Indemnitee with respect to such action, regardless of whether Indemnitee is ultimately successful in such action, and shall be entitled to the advancement of Expenses with respect to such action, unless as a part of such action a court of competent jurisdiction over such action determines that each of the material assertions made by Indemnitee as a basis for such action were not made in good faith or were frivolous. In the event of an action instituted by or in the name of the Company under this Agreement to enforce or interpret any of the terms of this Agreement, Indemnitee shall be entitled to be paid all Expenses incurred by Indemnitee in defense of such action (including costs and expenses incurred with respect to Indemnitee's counterclaims and crossclaims made in such action), and shall be entitled to the advancement of Expenses with respect to such action, unless as a part of such action a court having jurisdiction over such action determines that each of Indemnitee's material defenses to such action were made in bad faith or were frivolous.

14.    **Notice.** All, notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed duly given (i) if delivered by hand and signed for by the party addressed, on the date of such delivery, or (ii) if mailed by domestic certified or registered mail with postage prepaid, on the third business day after the date postmarked. Addresses for notice to either party are as shown on the signature page of this Agreement, or as subsequently modified by written notice.

9



IC001373

15.   **Severability.**   The provisions of this Agreement shall be severable in the event that any of the provisions hereof (including any provision within a single section, paragraph or sentence) are held by a court of competent jurisdiction to be invalid, void or otherwise unenforceable, and the remaining provisions shall remain enforceable to the fullest extent permitted by law. Furthermore, to the fullest extent possible, the provisions of this Agreement (including, without limitation, each portion of this Agreement containing any provision held to be invalid, void or otherwise unenforceable, that is not itself invalid, void or unenforceable) shall be construed so as to give effect to the intent manifested by the provision held invalid, illegal or unenforceable.

16.   **Choice of Law.**   This Agreement shall be governed by and its provisions construed and enforced in accordance with the laws of the State of Nevada without regard to the conflict of laws principles thereof.

17.   **Subrogation.**   In the event of payment under this Agreement, the Company shall be subrogated to the extent of such payment to all of the rights of recovery of Indemnitee, who shall execute all documents required and shall do all acts that are necessary to secure such rights and to enable the Company effectively to bring suit to enforce such rights.

18.   **Amendments and Termination.**   No amendment, modification, termination or cancellation of this Agreement shall be effective unless it is in writing signed by both the parties hereto. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provisions hereof (whether or not similar) nor shall such waiver constitute a continuing waiver.

19.   **Integration and Entire Agreement.**   This Agreement sets forth the entire understanding between the parties hereto and supersedes and merges all previous written and oral negotiations, commitments, understandings and agreements relating to the subject matter hereof between the parties hereto.

20.   **No Construction as Employment Agreement.**   Nothing contained in this Agreement shall be construed as giving Indemnitee any right to be retained in the employ of the Company or any of its subsidiaries.

*[Signature Page Follows]*

10



IC001374

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

IRONCLAD PERFORMANCE WEAR CORPORATION
a Nevada corporation, as the Company

By: _____
Name: Jeffrey Cordes
Title: President and CEO

Notice Address:

Ironclad Performance Wear Corporation
2201 Park Place, Suite 101
El Segundo, CA 90245
Attn:   EVP of Finance

AGREED TO AND ACCEPTED:

INDEMNITEE:

_____
(Signature)

William Aisenberg, CFO

Ironclad Performance Wear Corporation

Notice Address:

3900 Legacy Trail Circle
Carrollton TX 75010

11

IC001375

# EXHIBIT B

# EXHIBIT B

# QBE® Insurance Corporation

A Stock Company



## *The Solution* for Public Company D&O

---

**Home Office:**                **Administrative Office:**

c/o CT Corporation System       Wall Street Plaza
116 Pine Street, Suite 320      88 Pine Street
Harrisburg, Pennsylvania 17101  New York, New York 10005
                                1-877-772-6771

QBE and the links logo are registered service marks of QBE Insurance Group Limited.

**QBPD-3000 (05-14)**                              **Page 1 of 2**

**This policy consists of:**    Declarations
One or more coverage parts.
A coverage part consists of:
— One or more coverage forms
— Applicable forms and endorsements

**QBE Insurance Corporation**

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

Robert V. James
President

Jose Ramon Gonzalez, Jr.
Secretary

QBPD-3000 (05-14)                                                                 **Page 2 of 2**

POLICY NUMBER:  QPL0109727

QBPD-3002 (05-14)

**QBE®**

*The Solution* for Public Company D&O
Declarations

**QBE Insurance Corporation**
Wall Street Plaza, 88 Pine Street, New York, New York 10005
Home Office:  c/o CT Corporation System,116 Pine Street, Suite 320, Harrisburg, Pennsylvania  17101

**THIS POLICY PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD.  THE LIMIT OF LIABILITY TO PAY JUDGMENTS OR SETTLEMENT AMOUNTS SHALL BE REDUCED AND MAY BE EXHAUSTED BY PAYMENT OF DEFENSE COSTS.  PLEASE READ THIS POLICY CAREFULLY.**

**Item 1:**  Parent Company:  Ironclad Performance Wear Corporation

Mailing Address:  1920 Hutton Court, Suite 300
Farmers Branch, Texas 75234

**Item 2:**  Policy Period:  From: May 11, 2016 To: May 11, 2017
At 12:01 A.M. Standard Time at the mailing address stated in Item 1

**Item 3:**  A.  Limit of Liability:  $5,000,000 in the aggregate

B.  Securityholder Derivative Demand Investigation Limit: $500,000

**Item 4:**  Retentions:

| | |
|---|---|
| A.  Insuring Clause B – Claims other than Securities Claims: | $100,000 per Claim |
| B.  Insuring Clauses B and C – Securities Claims only: | $250,000 per Claim |
| C.  Insuring Clauses B and C – Merger Objection Claim: | $500,000 per Claim |

**Item 5:**  A. Notice to Insurer of a Claim or circumstance:    B. All Other Notices to Insurer:

QBE Insurance Corporation
Attn: The Claims Manager
Wall Street Plaza
88 Pine Street, 18th Floor
New York, New York 10005
Telephone: (877) 772-6771
Email: professional.liability.claims@us.qbe.com

QBE Insurance Corporation
Attn: Underwriting
Wall Street Plaza
88 Pine Street, 18th Floor
New York, New York 10005
Telephone: (877) 772-6771
Email: MLPLadmin@us.qbe.com

**Item 6:**  Pending or Prior Proceedings Date: May 11, 2006

**Item 7:**  Extended Reporting Period
Premium: 150% of annual premium
Length:    One Year

In witness whereof, the Insurer has caused this Policy to be executed, but it shall not be valid unless also signed by a duly authorized representative of the Insurer.

QBE and the links logo are registered service marks of QBE Insurance Group Limited.



*The Solution* for Public Company D&O

In consideration of the payment of the premium, the Insurer and the **Insureds** agree as follows:

## I.    INSURING CLAUSES

A.  Side A - Non-Indemnifiable Loss Coverage for Insured Persons

The Insurer shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent that such **Loss** has not been paid or indemnified by any **Company**.

B.  Side B - Corporate Reimbursement Coverage for Indemnification of Insured Persons

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Claim** first made during the **Policy Period** to the extent the **Company** pays or indemnifies an **Insured Person** for such **Loss**.

C.  Side C - Entity Coverages

The Insurer shall pay, on behalf of a **Company**, **Loss** on account of a **Securities Claim**, and **Defense Costs** on account of a **Securityholder Derivative Demand Investigation**, first made during the **Policy Period**.

## II.    EXCLUSIONS

No coverage shall be provided under this Policy for **Loss** on account of that portion of a **Claim**:

A.  Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal profit or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action;

With respect to Exclusion A: 1. the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication; and 2. no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**;

Exclusions B - F below shall not apply to any **Claim** under Insuring Clause A;

B.  Bodily Injury/Property Damage - for bodily injury, violation of a right of privacy, mental anguish, emotional distress, humiliation, sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof, whether or not it is damaged or destroyed, provided that this exclusion shall not apply to: 1. a violation of a right of privacy, mental anguish, emotional distress or humiliation for which a claimant seeks compensation in an employment-related claim; or 2. a **Securities Claim**;

C.  Entity v. Insured - brought by, or on behalf of: 1. a **Company** against another **Company**; or 2. a **Company** or **Outside Entity** against an **Insured Person**, provided that this exclusion shall not apply to a **Claim** brought: (a) outside the United States of America, Canada or their territories or possessions; (b) while the **Parent Company** or **Outside Entity** is in **Financial Impairment**; (c) as a securityholder derivative action; or (d) while an **Insured Person** is no longer serving in his capacity as such;

D.  ERISA - for any violation of the responsibilities, obligations or duties imposed by **ERISA** or for any functions identified in ERISA Section 3(21)(A) as not being the functions of a fiduciary and commonly referred to as "settlor" functions;

E.  Pending or Prior Proceedings - based upon, arising out of or resulting from any action, proceeding, or **Claim** described in paragraphs 1(a) and 2 of the definition of **Claim**, pending against an **Insured** on or before the Pending or Prior Proceedings Date stated in Item 6 of the Declarations; and

F.  Prior Notice - based upon, arising out of or resulting from any claim reported, or any circumstance reported and accepted, under the insurance policy (including any policies of which such policy is a renewal policy) replaced by this Policy;

Exclusions E and F above shall not apply where this Policy is a renewal of a policy issued by the Insurer to the **Parent Company**.

## III.    RETENTION

The applicable Retentions are stated in Item 4 of the Declarations. No retention shall apply to any **Claim** under Insuring Clause A or to any **Securityholder Derivative Demand Investigation**. If different parts of a single **Claim** are subject to different Retentions, then the total amount of **Loss** applied to the applicable Retentions shall not exceed the largest applicable Retention.

## IV.  LIMIT OF LIABILITY

A.  The Limit of Liability, stated in Item 3A of the Declarations, represents the maximum amount payable under this Policy during the **Policy Period** for all **Loss**.

B.  The Securityholder Derivative Demand Investigation Limit, stated in Item 3B of the Declarations, represents the maximum amount payable under this Policy during the **Policy Period** for **Defense Costs** on account of all **Securityholder Derivative Demand Investigations**, which amount shall be part of, and not in addition to the Limit of Liability stated in Item 3A of such Declarations.

C.  **Defense Costs**, including those incurred on account of a **Securityholder Derivative Demand Investigation**, are part of and not in addition to the Limit of Liability.

D.  The Limit of Liability shall be the limit of liability available during any applicable Extended Reporting Period.

## V.  ADVANCEMENT

A.  If a **Company** fails to respond to an **Insured Person's** request for indemnification within 60 days of the **Insured Person's** request to the **Company** for such indemnification, then upon the reporting of the **Claim**, the Insurer shall advance **Defense Costs** and any other incurred **Loss** until such time that the **Company** accepts the **Insured's** request for indemnification or the Limit of Liability stated in Item 3A of the Declarations has been exhausted, whichever occurs first. In any other **Claim**, the Insurer shall advance **Defense Costs** on a current basis, but no later than 60 days after receipt of the legal bills and any supporting documentation.

B.  If it is determined by a final adjudication that any advanced **Defense Costs** are not covered under this Policy, the **Insureds**, severally according to their respective interests, shall repay such uncovered **Defense Costs** to the Insurer, provided that nothing in this paragraph B shall limit the final non-appealable adjudication requirement in Exclusion A. Conduct.

## VI.  REPORTING

A.  Notice of any **Claim** described in paragraphs 1(a) and 2 of the definition of **Claim** is considered timely when reported to the Insurer as soon as practicable after the **Parent Company's** Risk Manager or General Counsel first becomes aware of such **Claim**.  However, the Insurer shall not assert that notice of a **Claim** is untimely unless the Insurer is materially prejudiced by the untimely notice, as determined by a final adjudication rendered only after the Insurer has exhausted all other reasonable means of determining whether it has been materially prejudiced.

B.  Notice of any **Claim** described in paragraph 1(b) of the definition of **Claim** or a **Securityholder Derivative Demand Investigation** is optional, but only **Loss** incurred after such **Claim** or **Securityholder Derivative Demand Investigation** is reported is eligible for coverage under this Policy.

C.  Notice of any circumstance which could give rise to a **Claim** under this Policy is optional.

D.  If an **Insured** elects to report any circumstance which could give rise to a **Claim** or a **Securityholder Derivative Demand Investigation**:

1.  such notice shall include information regarding the nature of any **Wrongful Acts** or alleged or potential damages and the names of any actual or potential defendants; and

2.  any **Claim** that may subsequently arise out of a reported circumstance and any reported **Securityholder Derivative Demand Investigation** shall be deemed to have been first made during the **Policy Period** in which such circumstance or investigation was first reported.

## VII.  DEFENSE AND SETTLEMENT

With respect to any **Claim**:

A.  the **Insured** shall:

1.  have the duty to defend;

2.  not agree to any settlement, stipulate to any judgment, incur any **Defense Costs**, admit any liability or assume any contractual obligation, without the Insurer's prior written consent, provided that the **Insured** may settle any **Claim**, without the Insurer's prior written consent, where the amount of such settlement, including **Defense Costs**, does not exceed the applicable Retention;

3.  not do anything that could prejudice the Insurer's position or its potential or actual rights of recovery; and

4.  agree to provide the Insurer with all information, assistance and cooperation which the Insurer may reasonably require,

provided that the failure of any **Insured** to comply with any of the requirements in paragraphs 1 - 4 above, shall not impair the rights of any **Insured Person** under this Policy; and

B.   the Insurer:

1.   shall have the right to effectively associate in the investigation, defense and settlement of any **Claim** reasonably likely to be covered under this Policy; and

2.   shall not be liable for any such settlement, stipulation, incurred **Defense Costs**, admission or assumed obligation to which it has not given its prior written consent, and the Insurer shall not unreasonably withhold such consent.

## VIII.   ALLOCATION

The Insurer and the **Insureds** shall use their best efforts to determine a fair and proper allocation between **Loss** that is covered and loss, or any other amount, that is not covered based on the relative legal and financial exposures of the covered parties to the covered matters. However, in the event the Insurer and the Insured cannot agree on an allocation percentage, nothing in this section shall preclude the Insurer from advancing **Defense Costs** in accordance with Section V. ADVANCEMENT of this Policy.

## IX.   TREATMENT OF RELATED CLAIMS

All **Related Claims** shall be deemed a single **Claim** first made during the policy period in which the earliest of such **Related Claims** was either first made or deemed to have been first made in accordance with Section VI. REPORTING.

## X.   OTHER INSURANCE

A.   With the exception of insurance written specifically as excess of the Limit of Liability of this Policy, this Policy shall be excess of and shall not contribute with any valid and collectible insurance providing coverage for **Loss** for which this Policy also provides coverage, provided that any payment by an **Insured** of a retention or deductible under any such other insurance shall reduce the applicable Retention under this Policy by the amount of such payment which would otherwise have been **Loss** under this Policy.

B.   This Policy shall also be excess of and shall not contribute with any indemnity provided, and any valid and collectible insurance maintained, by an **Outside Entity** for an **Insured Person** serving in his capacity as such for the **Outside Entity**.

C.   Any personal umbrella excess liability insurance, independent directors liability insurance or any other similar personal liability insurance available to an **Insured Person** shall be specifically excess of this Policy.

## XI.   SUBROGATION

A.   In the event of any payment of **Loss** under this Policy, the Insurer shall be subrogated to the extent of such payment to all of the **Insureds'** rights of recovery with respect to such **Loss**, and the **Insureds** shall take all reasonable actions to secure and preserve the Insurer's subrogation rights.

B.   In no event shall the Insurer exercise any subrogation right against an **Insured Person**.  In any subrogation action against a **Company**, it is agreed that each **Company** agrees to fulfill its indemnification obligations to each **Insured Person** to the fullest extent permitted by law and any contract or agreement providing an indemnification obligation exceeding any such law.

C.   If the Insurer recovers, either through subrogation or recoupment, any portion of an amount paid for **Loss** under this Policy, the Insurer shall reinstate the applicable limit of liability stated in Item 3 of the Declarations with any amounts recovered up to such amount paid, less any costs incurred by the Insurer in its recovery efforts.

## XII.   EXTENDED REPORTING PERIOD

A.   If this Policy does not renew or terminates for any reason other than for non-payment of premium, the **Insureds** shall have the right to purchase an Extended Reporting Period ("ERP") for the premium and time period stated in Item 7 of the Declarations. This right shall lapse, however, unless written notice of election to purchase such ERP, together with payment of the specified premium, is received by the Insurer within 60 days after the effective date of non-renewal or termination of the Policy. In the event the **Parent Company** elects not to purchase an ERP and an **Insured Person** or group of **Insured Persons** elects to purchase such ERP, such ERP shall only apply to **Claims** against such **Insured Person** or group of **Insured Persons**.

B.   The premium for the ERP shall be deemed fully earned at the inception of the ERP.

C.   Any ERP purchased shall become part of the **Policy Period**, extending such **Policy Period** to the expiration of the time period stated in Item 7 of the Declarations, but with respect to a **Claim** described in paragraphs 1(a) and 2 of the definition of **Claim**, the **Wrongful Act** which gives rise to such **Claim** must have occurred prior to the effective date of non-renewal or termination.

## XIII. CHANGES IN EXPOSURE

A. New Companies and Old Companies

1. Any **Insured** of a **Subsidiary**:

    (a) acquired before or during the **Policy Period** is eligible for coverage under this Policy, but only for a **Wrongful Act**, or a request or sworn statement described in paragraph 1(b) of the definition of **Claim**, which occurs after the date of such acquisition; or

    (b) ceasing to be a **Subsidiary** before or during the **Policy Period** is eligible for coverage under this Policy, but only for a **Wrongful Act**, or a request or sworn statement described in paragraph 1(b) of the definition of **Claim**, which occurred while such entity was a **Subsidiary**.

2. If the total assets of any **Subsidiary** acquired during the **Policy Period** exceed 20% of the total assets of the **Parent Company** (as reflected in the most recent audited consolidated financial statements of the **Parent Company** as of the date of such acquisition), the **Parent Company** shall have 90 days from the date of the acquisition to notify the Insurer of such acquisition. Following such notice to the Insurer, the **Parent Company** shall be required to provide the Insurer with any additional information the Insurer may reasonably require regarding the acquisition, and any coverage for an **Insured** of such newly acquired **Subsidiary** may be subject to additional or different terms or conditions under the Policy and the payment of additional premium. If the **Parent Company** fails to provide the foregoing 90 days notice and additional information, coverage under this Policy for any **Insured** of such newly acquired **Subsidiary** shall terminate with respect to any **Claim** first made more than 90 days after the date of the acquisition.

B. Acquisition of the **Parent Company**

In the event of a **Change in Control** of the **Parent Company** during the **Policy Period**:

1. this Policy shall remain in force until the expiration of the **Policy Period**, but only for any **Claim** for a **Wrongful Act**, or request or sworn statement described in paragraph 1(b) of the definition of **Claim**, which occurred prior to such acquisition;

2. the entire premium for this Policy shall be deemed fully earned as of the effective date of such **Change in Control**; and

3. the **Parent Company** shall be entitled to receive a quote for up to a 6 year extension of coverage ("Run-Off Coverage") solely for **Claims** for a **Wrongful Act**, or a request or sworn statement described in paragraph 1(b) of the definition of **Claim**, which occurred prior to a **Change in Control**. Coverage offered pursuant to such quote shall be subject to additional or different terms and conditions and payment of an additional premium. Any Run-Off Coverage purchased shall replace the ERP that would be available to an **Insured** pursuant to Section XII. EXTENDED REPORTING PERIOD.

## XIV. NOTICE

A. All notices to the Insurer under this Policy of a **Claim** or circumstances which could give rise to a **Claim** shall be given in writing to the address listed in Item 5A of the Declarations.

B. All other notices to the Insurer under this Policy shall be given in writing to the address listed in Item 5B of the Declarations.

C. Any notice under this Policy shall be effective on the date of mailing or receipt by the Insurer, whichever is earlier.

## XV. TERMINATION OF POLICY

This Policy shall terminate at the earliest of:

A. 20 days after receipt by the **Parent Company** of written notice from the Insurer of termination for non-payment of premium;

B. expiration of the **Policy Period**; or

C. such other time as may be mutually agreed upon by the Insurer and the **Parent Company**, in which case any returned premium shall be computed on a pro rata basis.

## XVI. REPRESENTATIONS, SEVERABILITY AND NON-RESCINDABLE COVERAGE

A. In issuing this Policy, the Insurer has relied upon the information and representations in the **Application** as being true and accurate, and the **Application** is the basis for, and considered incorporated into, this Policy.

B. The **Application** shall be construed as a separate request for coverage by each **Insured**, without any knowledge possessed by an **Insured** being imputed to any other **Insured Person**.

C. If the **Application** contains any misrepresentation made with the actual intent to deceive or which, for reasons other than simple negligence or oversight, materially affect the Insurer's acceptance of the risk or the hazard assumed, the Insurer shall not be liable for **Loss** on account of any **Claim** based upon, arising out of or resulting from either of such misrepresentations:

   1. with respect to any **Insured Person** who had actual knowledge of any misrepresentation described in paragraph C above, and the Insurer can demonstrate that with such actual knowledge, such **Insured Person** reasonably believed that a **Claim** would arise from such misrepresentation;

   2. with respect to any **Company**, if the **Insured Person** described in paragraph 1 above is a past or present chief executive officer or chief financial officer of the **Parent Company**.

D. The Insurer shall not be entitled under any circumstances to void or rescind this Policy with respect to any **Insured**.

## XVII. PRIORITY OF PAYMENTS

In the event that **Loss** under Insuring Clause A and any other **Loss** are concurrently due under this Policy, then the **Loss** under Insuring Clause A shall be paid first. In all other instances, the Insurer may pay **Loss** as it becomes due under this Policy without regard to the potential for other future payment obligations under this Policy.

## XVIII. EFFECT OF BANKRUPTCY

A. Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of its obligations nor deprive the Insurer of its rights or defenses under this Policy.

B. The coverage provided by this Policy is intended first and foremost for the benefit and protection of **Insured Persons**. In the event a liquidation or reorganization proceeding is commenced by or against a **Company** pursuant to United States bankruptcy law:

   1. the **Company** and the **Insureds** hereby agree not to oppose or object to any efforts by the Insurer, the **Company** or an **Insured** to obtain relief from any stay or injunction issued in such proceeding; and

   2. the Insurer shall first pay **Loss** on account of a **Claim** for a **Wrongful Act** occurring prior to the date such liquidation or reorganization proceeding commences, and then pay **Loss** in connection with a **Claim** for a **Wrongful Act** occurring after the date such liquidation or reorganization proceeding commences.

## XIX. WORLDWIDE TERRITORY AND APPLICATION OF LAW

A. This Policy shall apply anywhere in the world, and any reference to laws, however described, shall include all U.S. federal, state and local statutory laws, all amendments to and rules and regulations promulgated under any such laws, common law, and any equivalent body of law anywhere in the world, unless specifically stated to the contrary.

B. Considering the worldwide applicability of this Policy, unless otherwise prohibited by applicable law, the Insurer shall use its best efforts to make payment under this Policy for **Loss** incurred in a jurisdiction outside the United States of America or its territories or possessions (a "foreign jurisdiction"). If the Insurer is unable to make payment of **Loss** to an **Insured Person** in a foreign jurisdiction pursuant to Insuring Clause A of this Policy, to the extent permitted by law, the Insurer shall pay such **Loss** in an alternative jurisdiction mutually acceptable to such **Insured Person** and the **Insurer**. Similarly, if the Insurer is unable to make payment of **Loss** under Insuring Clauses B or C of this Policy to a **Company** in a foreign jurisdiction, the Insurer shall pay such **Loss** to the **Parent Company** at the address listed at Item 1 of the Declarations.

## XX. ROLE OF THE PARENT COMPANY

The **Parent Company** shall act on behalf of each **Insured** with respect to paying premiums, receiving any return premiums, agreeing to endorsements to this Policy and the giving or receiving of any notice provided for in this Policy (except notices of a **Claim** or circumstance which could give rise to a **Claim** or notice to apply for an ERP).

## XXI. VALUATION AND FOREIGN CURRENCY

All premiums, limits, retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If any element of **Loss** under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the exchange rate published in The Wall Street Journal on the date the element of **Loss** is due.

## XXII. ALTERATION, ASSIGNMENT AND HEADINGS

A. Any change in or modification of this Policy or assignment of interest under this Policy must be agreed to in writing by the Insurer.

B. The descriptions and headings and sub-headings of this Policy are solely for convenience, and form no part of the terms, conditions and limitations of coverage.

## XXIII. TRADE SANCTIONS

This insurance coverage does not apply to the extent that trade or economic sanctions of any country prohibit the insurer or any member of the insurer's group from providing insurance coverage.

## XXIV. GLOSSARY

A. **Application** means:

1. where provided to the Insurer, the application and any accompanying documentation submitted to the Insurer for this Policy or any documentation submitted to the Insurer in connection with the underwriting of this Policy; and

2. all publicly available documents filed by a **Company** with the Securities and Exchange Commission during the 12 months preceding this Policy's inception date.

B. **Change in Control** means:

1. the **Parent Company's** merger with, or acquisition by, another entity or the acquisition of all or substantially all of its assets by another entity, such that the **Parent Company** is not the surviving entity; or

2. when a person or entity or group of persons or entities acting in concert, acquires securities or voting rights which result in ownership or voting control by such person(s) or entity(ies) of more than 50% of the outstanding securities or voting rights representing the present right to vote for or appoint directors or **Managers** of the **Parent Company**.

C. **Claim** means:

1. with respect to Insuring Clauses A and B:

   (a) an investigation, evidenced by any written document, including a subpoena, target letter or search warrant, against an **Insured Person** for a **Wrongful Act**; and

   (b) any request to interview, depose or otherwise meet with, or a sworn statement obtained from, an **Insured Person** or any request for an **Insured Person** to produce documents or information in connection with:

   (i) an **Insured Person** acting in his capacity as such;

   (ii) a **Company's** business activities;

   (iii) an **Insured** responding to or cooperating with an inquiry or investigation by an **Investigative Body**; or

   (iv) a **Company** or its legal counsel investigating a securityholder derivative demand or any alleged violation of law,

   provided that any such request or sworn statement included in this paragraph shall not include any request by an **Investigative Body** that is part of any routine or regularly scheduled **Investigative Body** oversight, compliance, audit, inspection or examination; and

2. with respect to Insuring Clauses A, B and C:

   (a) a written demand for monetary or non-monetary (including injunctive) relief, including demands for arbitration, mediation, waiving or tolling of a statute of limitations or **Extradition**;

   (b) a civil or criminal proceeding, evidenced by: (i) the service of a complaint or similar pleading in a civil proceeding; or (ii) the filing of an indictment, information or similar document or an arrest in a criminal proceeding; and

   (c) an administrative or regulatory proceeding, evidenced by the filing of a formal notice of charges or the entry of a formal order of investigation,

   against an **Insured** for a **Wrongful Act**, including any appeal therefrom, provided that with respect to any administrative or regulatory proceeding against a **Company**, such proceeding is also made and continuously maintained against an **Insured Person**.

The time when a **Claim** shall be deemed first made for the purposes of this Policy shall be: (i) with respect to any **Claim** described in paragraphs 1(a) and 2 above, the date on which the **Claim** is first made against, served upon or received by the **Insured** or the applicable notice or order is filed or entered; and (ii) with respect to any

**Claim** described in paragraph 1(b) above, the date on which notice of such **Claim** is provided to the Insurer in accordance with the Reporting and Notice provisions in this Policy.

D. **Company** means the **Parent Company** and any **Subsidiary**, any foundation, political action committee or charitable trust controlled or sponsored by the **Parent Company** or any **Subsidiary**, and the **Parent Company** or any **Subsidiary** in its capacity as a debtor in possession under United States bankruptcy law.

E. **Defense Costs** means that part of **Loss** consisting of:

1. reasonable costs, charges, fees (including, attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any **Insured**): incurred in: (a) investigating, defending, opposing or appealing any **Claim**; or (b) any **Securityholder Derivative Demand Investigation** and;

2. the premium for appeal, attachment or similar bonds (but the Insurer shall be under no obligation to furnish any bond).

F. **ERISA** means the Employee Retirement Income Security Act of 1974 (including amendments relating to the Consolidated Omnibus Budget Reconciliation Act of 1985 and the Health Insurance Portability and Accountability Act of 1996).

G. **Extradition** means any formal process by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial or otherwise to answer any criminal accusation, including the execution of an arrest warrant where such execution is an element of such process.

H. **Financial Impairment** means the status of a **Company** resulting from: 1. the appointment by a state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate such **Company**; or 2. such **Company** becoming a debtor in possession under United States bankruptcy law.

I. **Insured** means any **Company** or **Insured Person**.

J. **Insured Person** means:

1. any natural person who was, now is or shall become:

   (a) a duly elected or appointed director, officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent or comparable role to any of the foregoing;

   (b) a holder of a functionally equivalent position or comparable role to those described in paragraph (a) above in a **Company** that is organized in a jurisdiction other than the United States of America;

   (c) a shadow director pursuant to the United Kingdom Companies Act or any equivalent statute;

   (d) any full or part-time employee of a **Company**, but only with respect to a **Claim**: (i) brought by a securityholder of a **Company** in his capacity as such; or (ii) that is also brought and maintained against an **Insured Person** included in paragraphs (a), (b) or (c) above; or

   (e) a holder of an equivalent position to those included in paragraph (a) or (b) above in an **Outside Entity**, while serving at the specific request or direction of the **Company**;

2. the estate, heirs, legal representatives or assigns of any **Insured Person** included in paragraph 1(a) above, if such **Insured Person** is deceased, legally incompetent, insolvent or bankrupt; or

3. the lawful spouse or domestic partner of any **Insured Person** included in paragraph 1(a) above solely by reason of such spouse's or domestic partner's: (i) status as such; or (ii) ownership interest in property which a claimant seeks as recovery for an alleged **Wrongful Act** of an **Insured Person** included in paragraph 1(a) above,

provided that no coverage shall apply with respect to loss arising from an act, error or omission by an estate, heirs, legal representatives, assigns, spouse or domestic partner included in paragraphs 2 or 3 above.

K. **Investigative Body** means any federal, state, local or provincial law enforcement or governmental regulatory authority worldwide or the enforcement unit of any securities exchange or similar self-regulatory organization.

L. **Loss** means the amount that an **Insured** becomes legally obligated to pay on account of any **Claim** including:

1. compensatory damages;

2. judgments and settlements, including a judgment or settlement awarding plaintiffs' attorneys fees, provided that with respect to any settlement including plaintiffs' attorney fees, that portion of the settlement can be demonstrated to be reasonable, taking into consideration the nature of legal action, time and expense

involved in prosecuting such action, and the likelihood of a court awarding a similar amount as part of a judgment;

3. pre and post-judgment interest;

4. **Defense Costs**;

5. solely with respect to Insuring Clause A, taxes imposed by law upon an **Insured Person** in his capacity as such in connection with any bankruptcy, receivership, conservatorship or liquidation of a **Company**, to the extent such taxes are insurable by law;

6. punitive, exemplary or multiplied damages, fines or penalties, if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties; and

7. reasonable fees, costs and expenses (including the premium or origination fee for a loan or bond), incurred with the Insurer's consent, to facilitate the return of amounts required to be repaid by an **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Act of 2010 or other similar laws requiring the return of incentive based compensation, provided that no coverage shall be provided for the return of any actual compensation or remuneration required by any such laws.

In determining the most favorable jurisdiction as set forth in paragraph 6 above, due consideration shall be given to the jurisdiction with a substantial relationship to the relevant **Insureds**, to the **Company**, or to the **Claim** giving rise to such damages, fines or penalties, and the Insurer shall not challenge any opinion of independent legal counsel (mutually agreed to by the Insurer and the **Insured**) that such damages, fines or penalties are insurable under applicable law.

**Loss** does not include any portion of such amount that constitutes any:

(a) amount not insurable under the law pursuant to which this Policy is construed, provided that the Insurer shall not assert that any **Loss** attributable to violations of Sections 11, 12, or 15 of the Securities Act of 1933 is uninsurable;

(b) cost incurred to comply with any order for injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

(c) amount that represents or is substantially equivalent to an increase in consideration paid (or proposed to be paid) by a **Company** in connection with its purchase of any securities or assets;

(d) tax, other than taxes described in paragraph (5) above; or

(e) cost incurred to clean up, remove, contain, treat, detoxify or neutralize **Pollutants**.

M. **Manager** means any natural person, who was, now is, or shall become, a manager, member of the Board of Managers or equivalent executive of a **Company** that is a limited liability company.

N. **Merger Objection Claim** means a **Securities Claim** for a **Wrongful Act** based upon, arising out of or resulting from a **Change in Control**.

O. **Outside Entity** means:

1. any non-profit corporation, community chest, fund or foundation; or

2. any other entity specifically added as an **Outside Entity** by endorsement to this Policy,

that is not a **Company**.

P. **Parent Company** means the entity named in Item 1 of the Declarations.

Q. **Policy Period** means the period of time stated in Item 2 of the Declarations (subject to any termination in accordance with Section XV. TERMINATION OF POLICY) and the ERP, if applicable.

R. **Pollutants** means any solid, liquid, gaseous or thermal irritants or contaminants, including smoke, soot, vapor, fumes, acids, chemicals, alkalis, asbestos, asbestos products or waste. Waste includes materials to be reconditioned, recycled or reclaimed.

S. **Related Claims** means all **Claims** based upon, arising out of or resulting from the same or related, or having a common nexus of, facts, circumstances or **Wrongful Acts**.

T. **Securities Claim** means a **Claim** whether brought pursuant to any United States securities laws or common law:

1. in connection with any interest in, purchase, sale or offer to purchase or sell securities of a **Company**; or

2. brought by a securityholder in his capacity as such, whether directly, derivatively or by class action.

U.  **Securityholder Derivative Demand Investigation** means an investigation by a **Company** to determine whether it is in the best interest of such **Company** to prosecute the claims alleged in a securityholder derivative demand or lawsuit. Where a **Securityholder Derivative Demand Investigation** is initiated because of a lawsuit rather than a demand, any coverage provided for **Defense Costs** on account of such **Securityholder Derivative Demand Investigation** shall in no way limit the coverage otherwise afforded under this Policy to an **Insured** for **Loss** on account of a **Securities Claim**.

V.  **Subsidiary** means:

1.  any entity while more than 50% of the outstanding securities or other equity ownership, representing the present right to vote for election of, or to appoint, directors, **Managers**, or the foreign equivalent of any such directors or **Managers** of such entity, are owned or controlled by the **Parent Company** directly or indirectly through one or more **Subsidiaries**; or

2.  any entity while the **Parent Company** has the right, pursuant to either written contract or the bylaws, charter, operating agreement or similar documents of a **Company**, to elect or appoint a majority of the Board of Directors of a corporation or **Managers**.

W.  **Wrongful Act** means:

1.  any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: (a) an **Insured Person** in his capacity as such; or (b) by a **Company**; or

2.  any other matter claimed against an **Insured Person** solely by reason of serving in his capacity as such.

POLICY NUMBER:  QPL0109727
Endorsement Effective Date: May 11, 2016                                           QBPD-5043 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## TEXAS AMENDATORY ENDORSEMENT

It is hereby agreed that:

I.   Section **IV. LIMIT OF LIABILITY**, paragraph D. is replaced by the following:

    D.    The Limit of Liability shall be the limit of liability available during any Automatic Extended Reporting Period and any applicable Extended Reporting Period.

II.  Section **XII. EXTENDED REPORTING PERIOD** is amended by the addition of the following:

If this Policy does not renew or terminates for any reason other than for non-payment of premium, then the **Parent Company** and the **Insureds** shall have the right to a thirty (30) day extension of coverage provided by this Policy following the effective date of cancellation or non-renewal, but only for **Wrongful Acts** taking place before the effective date of cancellation or non-renewal.  This 30-day period is called the "Automatic Extended Reporting Period" in this Policy.

III. Section **XV. TERMINATION OF POLICY** is amended by the addition of the following:

The notice shall state the reason for cancellation.

IV.  Section **XXIV. GLOSSARY**, paragraph Q. is replaced by the following:

    Q.    **Policy Period** means the period of time set forth in Item 2 of the Declarations (subject to any termination in accordance with Section XV. TERMINATION OF POLICY), the Automatic Extended Reporting Period, and the Extended Reporting Period, if applicable.

V.   This Policy is amended by the addition of the following:

**NON-RENEWAL**

If the Insurer decides not to renew this Policy, the Insurer will deliver or mail written notice of non-renewal to the **Parent Company** at the address set forth in the Declarations at least sixty (60) days before the expiration date of this Policy.  The notice shall state the reason for non-renewal.  If notice of non-renewal is delivered or mailed later than the 60th day before the expiration date, the Policy's coverage shall remain in effect until the 61st day after the date on which the notice is delivered or mailed.  Earned premium for any period of coverage that extends beyond the expiration date shall be computed pro rata based on the Policy's current rate.  If this Policy is so extended, such period of extended coverage shall be part of and not in addition to the **Policy Period**.  The Insurer shall not refuse to renew this Policy based solely on the fact that the **Insured** is an elected official.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER: QPL0109727                                    QBGS-0258 (12-13)



# TEXAS - IMPORTANT NOTICE
# NOTICE OF TOLL FREE NUMBERS

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact your agent **AON FSG** at:

### (312) 381-4631

You may call **QBE North America**'s toll-free telephone number for information or to make a complaint at:

### 1-(877) 772-6771

You may also write to **QBE North America** at:

QBE North America

Wall Street Plaza

88 Pine Street, 16th Floor

New York, NY 10005

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance:

P. O. Box 149104

Austin, TX 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

**PREMIUM OR CLAIM DISPUTES:** Should you have a dispute concerning your premium or about a claim you should contact the agent, **AON FSG**, first: If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Puede comunicarse con su **AON FSG** al:

### (312) 381-4631

Usted puede llamar al numero de telefono gratis de **QBE North America**'s para informacion o para someter una queja al:

### 1-(877) 772-6771

Usted tambien puede escribir a **QBE North America** at:

QBE North America

Wall Street Plaza

88 Pine Street, 16th Floor

New York, NY 10005

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas:

P. O. Box 149104

Austin, TX 78714-9104

Fax: (512) 475-1771

Web: http://www.tdi.texas.gov

E-mail: ConsumerProtection@tdi.texas.gov

**DISPUTAS SOBRE PRIMAS O RECLAMOS:** Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el, **AON FSG**, primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

POLICY NUMBER:  QPL0109727
Endorsement Effective Date: May 11, 2016                                    QBPD-2027 (05-14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**STATE AMENDATORY INCONSISTENCY ENDORSEMENT**

It is hereby agreed that in the event there is an inconsistency between a state amendatory endorsement attached to this Policy and any other term or condition of this Policy, then where permitted by law, the Insurer shall apply those terms and conditions of either the state amendatory endorsement or the Policy, whichever are more favorable to the **Insured**.

All other terms and conditions of this Policy remain unchanged.

QBPD-2027 (05-14)                                                          **Page 1 of 1**

**POLICY NUMBER: QPL0109727**
**Endorsement Effective Date: May 11, 2016**                         QBPD-2013 (05-14)

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### INSURER RATING DOWNGRADE ENDORSEMENT

It is hereby agreed that the **Parent Company** may cancel this Policy immediately upon written notice to the Insurer if the Insurer's financial strength rating for AM Best falls below "A-". If cancelled pursuant to such ratings downgrade, the Insurer shall retain the pro rata proportion of the premium.

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0109727**
**Endorsement Effective Date: May 11, 2016**                                    **QBPD-2009 (05-14)**


**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**


**DE FACTO DIRECTOR ENDORSEMENT**


It is hereby agreed that Section **XXIV. GLOSSARY**, paragraph J.1.(a) is replaced by the following:

(a)  a duly elected or appointed director (including a  de facto director), officer, **Manager**, trustee, regent, governor, risk manager, comptroller or in-house general counsel of any **Company** organized in the United States of America, or in a functionally equivalent  or comparable role to any of the foregoing;


All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER: QPL0109727**
**Endorsement Effective Date: May 11, 2016**                                    QBPD-2008 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CHANGES IN EXPOSURE THRESHOLD CHANGE ENDORSEMENT

It is hereby agreed that Section **XIII. CHANGES IN EXPOSURE**, paragraph A.2. is replaced by the following:

2.  If the total assets of any **Subsidiary** acquired during the **Policy Period** exceed 25% of the total assets of the **Parent Company** (as reflected in the most recent audited consolidated financial statements of the **Parent Company** as of the date of such acquisition), the **Parent Company** shall have 90 days from the date of the acquisition to notify the Insurer of such acquisition. Following such notice to the Insurer, the **Parent Company** shall be required to provide the Insurer with any additional information the Insurer may reasonably require regarding the acquisition, and any coverage for an **Insured** of such newly acquired **Subsidiary** may be subject to additional or different terms conditions under the Policy and the payment of additional premium. If the **Parent Company** fails to provide the foregoing 90-day notice and additional information, coverage under this Policy for any **Insured** of such newly acquired **Subsidiary** shall terminate with respect to any **Claim** first made more than 90 days after the date of the acquisition.

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER:  QPL0109727
Endorsement Effective Date: May 11, 2016                                      QBPD-2046 (01-16)


## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.


## RENEWAL ENDORSEMENT


In consideration of the premium charged, it is hereby agreed that:

I.   Upon expiration of the **Policy Period**, the Insurer shall renew this Policy unless:

    A.  during the **Policy Period**:

        1.  there is a **Change in Control** of the **Parent Company**; or

        2.  the **Parent Company** files for bankruptcy protection;

    B.  the Policy has been canceled by the **Parent Company** or the **Insurer** as permitted or required by law and in accordance with Section **XV. TERMINATION OF POLICY**; or

    C.  a notice of **Claim** or notice of circumstance has been given to the **Insurer** pursuant to Section **VI. REPORTING** of this Policy and:

        1.  the **Insurer's** Claims Department reasonably estimates that the total potential **Loss** resulting from such **Claim** and/or circumstance will be in excess of ($100,000); or

        2.  the **Claim** is or is sought to be certified as a class action (regardless of whether certification is granted); or

    D.  there has been a change in the law or an insurance regulatory action which prevents the Insurer from issuing a renewal policy at the same terms and conditions as this Policy.

II.  A renewal of this Policy shall have a one year policy period and shall be at the same terms and conditions as this Policy.

III. The premium for the renewal of this Policy shall be 100% of the annual premium.

IV.  Nothing in this Endorsement shall be construed to affect any rights the Insurer has to require an additional premium or amendment of Section **XIII. CHANGES IN EXPOSURE** of the Policy.


All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0109727**
**Endorsement Effective Date: May 11, 2016**                                    QBPD-2029 (05-14)

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## BODILY INJURY/PROPERTY DAMAGE EXCLUSION – UK CORPORATE MANSLAUGHTER CARVEBACK

It is hereby agreed that Section **II. EXCLUSIONS**, paragraph B. is amended by the addition of the following:

This exclusion shall not apply to **Defense Costs** incurred by an **Insured Person** that results solely from the investigation, adjustment, defense, or appeal of a **Claim** against a **Company** for violation of the United Kingdom Corporate Manslaughter and Corporate Homicide Act of 2007 or any similar statute in any jurisdiction.

All other terms and conditions of this Policy remain unchanged.

**QBPD-2029 (05-14)**                                                              **Page 1 of 1**

**POLICY NUMBER: QPL0109727**
**Endorsement Effective Date: May 11, 2016**

QBPD-2047 (01-16)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**AMEND CONDUCT EXCLUSION ENDORSEMENT**
**(EXCLUDE ILLEGAL PERSONAL PROFIT AND FINANCIAL ADVANTAGE)**

It is hereby agreed that Section II. **EXCLUSIONS**, paragraph A. is replaced by the following:

A.   Conduct - based upon, arising out of or resulting from any deliberate fraud, deliberate criminal act or deliberate violation of any statute or regulation, or any illegal personal profit, financial advantage, or remuneration, by an **Insured**, established by a final, non-appealable adjudication adverse to such **Insured** in any underlying action;

With respect to Exclusion A: 1. the Insurer shall not utilize a declaratory action or proceeding brought by or against the Insurer to establish such final, non-appealable adjudication; and 2. no conduct or knowledge of any **Insured** shall be imputed to any other **Insured Person**, and only the conduct or knowledge of any past, present or future chief executive officer or chief financial officer of a **Company** shall be imputed to such **Company** and its **Subsidiaries**;

All other terms and conditions of this Policy remain unchanged.

**POLICY NUMBER:  QPL0109727**
**Endorsement Effective Date:  May 11, 2016**

QBPD-2052 (01-16)

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### AMEND ENTITY VS INSURED EXCLUSION ENDORSEMENT

It is hereby agreed that Section **II. EXCLUSIONS**, paragraph C. is amended by the addition of the following:

Exclusion (C)2 shall not apply to any **Claim** brought by a **Company** against an **Insured Person** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002 or Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010.

All other terms and conditions of this Policy remain unchanged.

QBPD-2052 (01-16)                                                                                                    **Page 1 of 1**

POLICY NUMBER: QPL0109727
**Endorsement Effective Date: May 11, 2016**                                     QBPD-2053 (01-16)

# THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMEND LOSS TO INCLUDE FCPA ENDORSEMENT

It is hereby agreed that Section **XXIV. GLOSSARY,** paragraph L.6. is replaced by the following:

6.   punitive, exemplary or multiplied damages, fines or penalties, including fines or penalties assessed against an **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act 15 U.S.C. §78dd-2(g)(2)(B) or pursuant to 15 U.S.C. § 78ff(c)(2)(B), if and to the extent that any such damages, fines or penalties are insurable under the law of the jurisdiction most favorable to the insurability of such damages, fines or penalties; and

All other terms and conditions of this Policy remain unchanged.

POLICY NUMBER:  QPL0109727
Endorsement Effective Date: May 11, 2016

QBPD-6000 (02-15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM**

It is hereby agreed that:

**I.**   This Policy is amended by the addition of the following:

   If aggregate insured losses attributable to a **Certified Act of Terrorism** under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**II.**   Solely for the purposes of this endorsement, this Policy is amended by the addition of the following:

   **Certified Act of Terrorism** means an act that is certified by the Secretary of Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act,, to be an act of terrorism.  The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:
   **1.**   The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
   **2.**   The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**III.**   The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any **Loss** that is otherwise excluded under this Policy.

All other terms and conditions of this Policy remain unchanged.

Includes copyrighted material of Insurance Services Office, Inc., with its permission

# EXHIBIT C

# EXHIBIT C

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

EX-3.2 2 ex3_2amendedbylaws.htm AMENDED AND RESTATED BYLAWS

<u>Exhibit 3.2</u>

## AMENDED AND RESTATED
## BYLAWS
## OF
## IRONCLAD PERFORMANCE WEAR CORPORATION,
### a Nevada corporation
### (the "*Corporation*")

### ARTICLE I
### OFFICES

SECTION 1. REGISTERED OFFICE. The registered office of the Corporation in the State of Nevada shall be in the City of Las Vegas, Nevada, or such other place as may be fixed by the Corporation's Board of Directors (the "***Board of Directors***").

SECTION 2. OTHER OFFICES. The Corporation shall also have and maintain an office or principal place of business at such place as may be fixed by the Board of Directors, and may also have offices at such other places, both within and without the State of Nevada as the Board of Directors may from time to time determine or the business of the Corporation may require.

### ARTICLE II
### CORPORATE SEAL

If the Corporation has a corporate seal, it shall consist of a die bearing the name of the Corporation and the inscription, "Corporate Seal-Nevada". Said seal may be used by causing it or a facsimile thereof to be impressed or affixed or reproduced or otherwise. The existence and use of a corporate seal is optional. Nonuse of a seal shall not in any way affect the legality of any document to which the Corporation is a party.

### ARTICLE III
### STOCKHOLDERS' MEETINGS

SECTION 1. PLACE OF MEETINGS. Meetings of the stockholders of the Corporation (each, a "***Stockholder***", and collectively, the "***Stockholders***") shall be held at such place, either within or without the State of Nevada, as may be designated from time to time by the Board of Directors, or, if not so designated, then at the office of the Corporation required to be maintained pursuant to <u>Section 2</u> of <u>Article I</u> hereof.

SECTION 2. ANNUAL MEETING.

(a)      The annual meeting of the Stockholders, for the purpose of election of directors and for such other business as may lawfully come before it, shall be held on such date and at such time as may be designated from time to time by the Board of Directors. Failure to hold an annual meeting shall not work to dissolve the Corporation or pierce the corporate veil other than as required by applicable law. If directors are not elected during any calendar year, the Corporation shall not for that reason be dissolved, but every director shall continue to hold office and discharge his or her duties until his or her successor has been elected.

1

(b)        At an annual meeting of the Stockholders, only such business shall be conducted as shall have been properly brought before the meeting. To be properly brought before an annual meeting, business must be: (i) specified in the notice of meeting (or any supplement thereto) given by or at the direction of the Board of Directors, (ii) otherwise properly brought before the meeting by or at the direction of the Board of Directors, or (iii) otherwise properly brought before the meeting by a Stockholder who (1) was a beneficial owner of shares of the Corporation at the time of giving the notice provided for in this Section 2(b) of Article III, (2) is entitled to vote at the meeting and (3) has complied with this Section 2(b) of Article III in all applicable respects. For business to be properly brought before an annual meeting by a Stockholder, the Stockholder must have given timely notice thereof in writing to the Secretary of the Corporation. To be timely, a Stockholder's notice must be delivered to or mailed and received at the principal executive offices of the Corporation not later than the close of business on the sixtieth (60th) day nor earlier than the close of business on the ninetieth (90th) day prior to the first (1st) anniversary of the preceding year's annual meeting. Solely in the event that no annual meeting was held in the preceding year or the date of the current year's annual meeting has been changed by more than thirty (30) days from the first (1st) anniversary of the preceding year's annual meeting, then (A) notice by the Stockholder to be timely must be so received not earlier than the close of business on the ninetieth (90th) day prior to such current year's annual meeting and not later than the close of business on the later of the sixtieth (60th) day prior to such current year's annual meeting or, (B) in the event public announcement of the date of such current year's annual meeting is first made by the Corporation fewer than seventy (70) days prior to the date of such current year's annual meeting, notice by the Stockholder to be timely must be so received not later than the close of business on the tenth (10th) day following the day on which public announcement of the date of such current year's annual meeting is first made by the Corporation. In no event shall the public announcement of an adjournment or postponement of an annual meeting commence a new time period (or extend any time period) for the giving of a Stockholder's notice as described above. A Stockholder's notice to the Secretary of the Corporation shall set forth as to each matter the Stockholder proposes to bring before the annual meeting: (A) a brief description of the business desired to be brought before the annual meeting and the reasons for conducting such business at the annual meeting, (B) the name and address, as they appear on the Corporation's books, of the Stockholder proposing such business, (C) the class and number of shares of the Corporation which are beneficially owned by the Stockholder, (D) any material interest of the Stockholder in such business and (E) any other information that is required to be provided by the Stockholder pursuant to Regulation 14A under the Securities Exchange Act of 1934, as amended (the "*1934 Act*"), in his, her or its capacity as a proponent to a Stockholder proposal. Notwithstanding the foregoing, in order to include information with respect to a Stockholder proposal in the proxy statement and form of proxy for a Stockholder's meeting, Stockholders must provide notice as required by the regulations promulgated under the 1934 Act. Notwithstanding anything in these Bylaws (these "*Bylaws*") to the contrary, no business shall be conducted at any annual meeting except in accordance with the procedures set forth in this Section 2(b) of Article III. The chairman of the annual meeting shall, if not previously determined by the Board and if the facts warrant, determine and declare at the annual meeting that business was not properly brought before the meeting and in accordance with the provisions of this Section 2(b) of Article III, and, if he or she should so determine, he or she shall so declare at the annual meeting that any such business not properly brought before the meeting shall not be transacted.

2

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

(c)        Only persons who are confirmed in accordance with the procedures set forth in this Section 2(c) of Article III shall be eligible for election as directors. Nominations of persons for election to the Board of Directors may be made at a meeting of Stockholders by or at the direction of the Board of Directors or by any Stockholder entitled to vote in the election of directors at the meeting who complies with the notice procedures set forth in Section 2(b) of Article III and this Section 2(c) of Article III. Such nominations, other than those made by or at the direction of the Board of Directors, shall be made pursuant to timely notice in writing to the Secretary of the Corporation in accordance with the provisions of Section 2(b) of Article III. Such Stockholder's notice shall set forth (i) as to each person, if any, whom the Stockholder proposes to nominate for election or re-election as a director: (A) the name, age, business address and residence address of such person, (B) the principal occupation or employment of such person, (C) the class and number of shares of the Corporation which are beneficially owned by such person, (D) a description of all arrangements or understandings between the Stockholder and each nominee and any other person or persons (naming such person or persons) pursuant to which the nominations are to be made by the Stockholder, and (E) any other information relating to such person that is required to be disclosed in solicitations of proxies for election of directors, or is otherwise required, in each case pursuant to Regulation 14A under the 1934 Act (including, without limitation, such person's written consent to being named in the proxy statement, if any, as a nominee and to serving as a director if elected); and (ii) as to such Stockholder giving notice, the information required to be provided pursuant to Section 2(b) of Article III. At the request of the Board of Directors, any person nominated by a Stockholder for election as a director shall furnish to the Secretary of the Corporation the information required to be set forth in the Stockholder's notice of nomination which pertains to the nominee. No person shall be eligible for election as a director of the Corporation unless nominated in accordance with the procedures set forth in Section 2(b) of Article III and this Section 2(c) of Article III, including the giving of timely notice in accordance with the procedures set forth in Section 2(b) of Article III. The chairman of the meeting shall, if not previously determined by the Board and if the facts warrant, determine and declare at the meeting that a nomination was not made in accordance with the procedures prescribed by these Bylaws, and if he or she should so determine, he or she shall so declare at the meeting, and the defective nomination shall be disregarded.

(d)        For purposes of this Section 2 of Article III, "*public announcement*" shall mean disclosure in a press release reported by the Dow Jones News Service, Associated Press or comparable national news service or in a document publicly filed by the Corporation with the Securities and Exchange Commission pursuant to Sections 13, 14 or 15(d) of the 1934 Act.

SECTION 3. SPECIAL MEETINGS.

(a)        Special meetings of the Stockholders may be called, for any purpose or purposes, by (i) the Chairman of the Board of Directors, (ii) the Chief Executive Officer of the Corporation, or (iii) the Board of Directors pursuant to a resolution adopted by a majority of the total number of authorized directors (whether or not there exist any vacancies in previously authorized directorships at the time any such resolution is presented to the Board of Directors for adoption), and shall be held at such place, on such date, and at such time as the Board of Directors, shall determine.

3

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

(b)        If a special meeting is called by any person or persons other than the Board of Directors, the request shall be in writing, specifying the general nature of the business proposed to be transacted, and shall be delivered personally or sent by registered mail or by telegraphic or other facsimile transmission to the Chairman of the Board of the Board of Directors, the Chief Executive Officer of the Corporation, or the Secretary of the Corporation. No business may be transacted at such special meeting otherwise than specified in such notice. The Board of Directors shall determine the time and place of such special meeting, which shall be held not less than thirty-five (35) nor more than one hundred twenty (120) days after the date of the receipt of the request. Upon determination of the time and place of the meeting, the officer receiving the request shall cause notice to be given to the Stockholders entitled to vote, in accordance with the provisions of Section 4 of this Article III. If the notice is not given within sixty (60) days after the receipt of the request, the person or persons requesting the meeting may set the time and place of the meeting and give the notice. Nothing contained in this Section 3(b) of Article III shall be construed as limiting, fixing, or affecting the time when a meeting of Stockholders called by action of the Board of Directors may be held.

SECTION 4. NOTICE OF MEETINGS. Except as otherwise provided by law or the Corporation's Articles of Incorporation (the "*Articles of Incorporation*"), written notice of each meeting of Stockholders shall be given not less than ten (10) nor more than sixty (60) days before the date of the meeting to each Stockholder entitled to vote at such meeting, such notice to specify the place, date and hour and purpose or purposes of the meeting. A copy of the notice shall be personally delivered or mailed postage prepaid to each Stockholder of record entitled to vote at the meeting at the address appearing on the records of the Corporation, or delivered as provided in Section 75.150 of the Nevada Revised Statutes, as amended from time to time. Upon mailing, service of the notice is complete, and the time of the notice begins to run from the date upon which the notice is deposited in the mail. Notice of the time, place and purpose of any meeting of Stockholders may be waived in writing, signed by the person entitled to notice thereof, either before or after such meeting, and will be waived by any Stockholder by his, her or its attendance thereat in person or by proxy, except when the Stockholder attends a meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. Any Stockholder so waiving notice of such meeting shall be bound by the proceedings of any such meeting in all respects as if due notice thereof had been given.

SECTION 5. QUORUM. At all meetings of Stockholders, except where a greater requirement is provided by statute or by the Articles of Incorporation, or by these Bylaws, the presence, in person or by proxy duly authorized, of the holder or holders of thirty-three and one-third percent (33 1/3%) of the outstanding shares of the Corporation's common voting stock shall constitute a quorum for the transaction of business. In the absence of a quorum, any meeting of Stockholders may be adjourned, from time to time, either by the chairman of the meeting or by vote of the holders of a majority of the shares represented thereat, but no other business shall be transacted at such meeting. Stockholders may not participate in a meeting of Stockholders through electronic communications, videoconferencing, teleconferencing or other available technology which allows the Stockholders to communicate simultaneously or sequentially unless the Board

4

12/4/2017                https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

of Directors approves such participation for such meeting. The Stockholders present at a duly called or convened meeting, at which a quorum is present, may continue to transact business until adjournment, notwithstanding the withdrawal of enough Stockholders to leave less than a quorum. Except as otherwise provided by law, the Articles of Incorporation or these Bylaws, all actions taken by the holders of a majority of the votes cast, excluding abstentions, at any meeting at which a quorum is present shall be valid and binding upon the Corporation; provided, however, that directors shall be elected by a plurality of the votes of the shares present in person or represented by proxy at the meeting and entitled to vote on the election of directors. Where a separate vote by a class or classes or series is required, except where otherwise provided by law or by the Articles of Incorporation or these Bylaws, a majority of the outstanding shares of such class or classes or series, present in person or represented by proxy, shall constitute a quorum entitled to take action with respect to that vote on that matter and, except where otherwise provided by law or by the Articles of Incorporation or these Bylaws, the affirmative vote of the majority (plurality, in the case of the election of directors) of the votes cast, including abstentions, by the holders of shares of such class or classes or series shall be the act of such class or classes or series.

SECTION 6. ADJOURNMENT AND NOTICE OF ADJOURNED MEETINGS. Any meeting of Stockholders, whether annual or special, may be adjourned from time to time either by the chairman of the meeting or by the vote of a majority of the shares casting votes, excluding abstentions. When a meeting is adjourned to another time or place, notice need not be given of the adjourned meeting if the time and place thereof are announced at the meeting at which the adjournment is taken. At the adjourned meeting, the Corporation may transact any business which might have been transacted at the original meeting. If the adjournment is for more than thirty (30) days or if after the adjournment a new record date is fixed for the adjourned meeting, a notice of the adjourned meeting shall be given to each Stockholder of record entitled to vote at the meeting.

SECTION 7. VOTING RIGHTS. For the purpose of determining those Stockholders entitled to vote at any meeting of the Stockholders, except as otherwise provided by law, only persons in whose names shares stand on the stock records of the Corporation on the record date, as provided in Section 4 of Article VII, shall be entitled to vote at any meeting of Stockholders. Every person entitled to vote shall have the right to do so either in person or by an agent or agents authorized by a proxy granted in accordance with Nevada law. An agent so appointed need not be a Stockholder. Except as otherwise provided by law, no proxy shall be voted after six (6) months from its date of creation unless the proxy provides for a longer period which may not exceed seven (7) years from the date of its creation.

SECTION 8. JOINT OWNERS OF STOCK. If shares or other securities having voting power stand of record in the names of two (2) or more persons, whether fiduciaries, members of a partnership, joint tenants, tenants in common, tenants by the entirety, or otherwise, or if two (2) or more persons have the same fiduciary relationship respecting the same shares, unless the Secretary of the Corporation is given written notice to the contrary and is furnished with a copy of the instrument or order appointing them or creating the relationship wherein it is so provided, their acts with respect to voting shall have the following effect: (a) if only one (1) votes, his, her or its act binds all; (b) if more than one (1) votes, the act of the majority so voting binds all; (c) if

5

12/4/2017    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

more than one (1) votes, but the vote is evenly split on any particular matter, each faction may vote the securities in question proportionally. If the instrument filed with the Secretary of the Corporation shows that any such tenancy is held in unequal interests, a majority or even-split for the purpose of Section 8(c) of this Article III shall be a majority or even-split in interest.

SECTION 9. LIST OF STOCKHOLDERS. The Secretary of the Corporation shall prepare and make, at least ten (10) days before every meeting of Stockholders, a complete list of the Stockholders entitled to vote at said meeting, arranged in alphabetical order, showing the address of each Stockholder and the number of shares registered in the name of each Stockholder. Such list shall be open to the examination of any Stockholder, for any purpose germane to the meeting, during ordinary business hours, for a period of at least ten (10) days prior to the meeting, either at a place within the city where the meeting is to be held, which place shall be specified in the notice of the meeting, or, if not specified, at the place where the meeting is to be held. The list shall be produced and kept at the time and place of meeting during the whole time thereof and may be inspected by any Stockholder who is present.

SECTION 10. ACTION WITHOUT MEETING. Any action required or permitted to be taken at a meeting of the Stockholders may be taken without a meeting if a written consent thereto is signed by Stockholders holding at least a majority of the voting power, except that if a different proportion of voting power is required for such an action at a meeting, then that proportion of written consents is required.

SECTION 11. ORGANIZATION.

(a)    At every meeting of Stockholders, the Chairman of the Board of Directors, or, if a Chairman of the Board of Directors has not been appointed or is absent, the President of the Corporation, or, if the President is absent, a chairman of the meeting chosen by a majority in interest of the Stockholders entitled to vote, present in person or by proxy, shall act as chairman. The Secretary of the Corporation, or, in his or her absence, an Assistant Secretary of the Corporation directed to do so by the President of the Corporation, shall act as secretary of the meeting.

(b)    The Board of Directors shall be entitled to make such rules or regulations for the conduct of meetings of Stockholders as it shall deem necessary, appropriate or convenient. Subject to such rules and regulations of the Board of Directors, if any, the chairman of the meeting shall have the right and authority to prescribe such rules, regulations and procedures and to do all such acts as, in the judgment of such chairman, are necessary, appropriate or convenient for the proper conduct of the meeting, including, without limitation, establishing an agenda or order of business for the meeting, rules and procedures for maintaining order at the meeting and the safety of those present, limitations on participation in such meeting to Stockholders of record and their duly authorized and constituted proxies and such other persons as the chairman shall permit, restrictions on entry to the meeting after the time fixed for the commencement thereof, limitations on the time allotted to questions or comments by participants and regulation of the opening and closing of the polls for balloting on matters which are to be voted on by ballot. Unless and to the extent determined by the Board of Directors or the chairman of the meeting, meetings of Stockholders shall not be required to be held in accordance with rules of parliamentary procedure.

6

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

# ARTICLE IV
# DIRECTORS

**SECTION 1. NUMBER AND QUALIFICATION.** The authorized number of directors of the Corporation shall be not less than one (1) nor more than nine (9) as fixed from time to time by resolution of the Board of Directors; provided that no decrease in the number of directors shall shorten the term of any incumbent directors. Directors need not be Stockholders unless so required by the Articles of Incorporation. If for any cause, the directors shall not have been elected at an annual meeting, they may be elected as soon thereafter as convenient at a special meeting of the Stockholders called for that purpose in the manner provided in these Bylaws.

**SECTION 2. POWERS.** The powers of the Corporation shall be exercised, its business conducted and its property controlled by the Board of Directors, except as may be otherwise provided by law or by the Articles of Incorporation.

**SECTION 3. ELECTION AND TERM OF OFFICE OF DIRECTORS.** Members of the Board of Directors shall hold office until the next succeeding annual meeting of Stockholders and until their successors have been duly elected and qualified.

**SECTION 4. VACANCIES.** Unless otherwise provided in the Articles of Incorporation, any vacancies on the Board of Directors resulting from death, resignation, disqualification, removal or other causes and any newly created directorships resulting from any increase in the number of directors, shall, unless the Board of Directors determines by resolution that any such vacancies or newly created directorships shall be filled by Stockholder vote, be filled only by the affirmative vote of a majority of the directors then in office, even though less than a quorum of the Board of Directors. Any director elected in accordance with the preceding sentence shall hold office for the remainder of the full term of the director for which the vacancy was created or occurred and until such director's successor shall have been elected and qualified.

**SECTION 5. RESIGNATION.** Any director may resign at any time by delivering his or her written resignation to the Secretary of the Corporation, such resignation to specify whether it will be effective at a particular time, upon receipt by the Secretary of the Corporation or at the pleasure of the Board of Directors. If no such specification is made, it shall be deemed effective at the pleasure of the Board of Directors. When one or more directors shall resign from the Board of Directors, effective at a future date, a majority of the directors then in office, including those who have so resigned, shall have the power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation or resignations shall become effective, and each director so chosen shall hold office for the unexpired portion of the term of the director whose place shall be vacated and until his or her successor shall have been duly elected and qualified.

**SECTION 6. REMOVAL.** Except as otherwise provided by law, any director or one or more of the incumbent directors may be removed from office, with or without cause, by the vote of the Stockholders representing not less than two-thirds (2/3) of the voting power of the issued and outstanding stock entitled to vote.

7

SECTION 7. MEETINGS.

(a)         ANNUAL MEETINGS. The annual meeting of the Board of Directors shall be held immediately after the annual meeting of the Stockholders and at the place where such meeting is held. No notice of an annual meeting of the Board of Directors shall be necessary and such meeting shall be held for the purpose of electing officers and transacting such other business as may lawfully come before it.

(b)         REGULAR MEETINGS. Except as hereinafter otherwise provided, regular meetings of the Board of Directors shall be held in the office of the Corporation required to be maintained pursuant to Section 2 of Article I hereof. Unless otherwise provided by the Articles of Incorporation, regular meetings of the Board of Directors may also be held at any place within or without the state of Nevada which has been designated by resolution of the Board of Directors or the written consent of all directors.

(c)         SPECIAL MEETINGS. Unless otherwise provided by the Articles of Incorporation, special meetings of the Board of Directors may be held at any time and place within or without the State of Nevada whenever called by the Chairman of the Board of the Directors, the President of the Corporation or any two (2) of the directors.

(d)         TELEPHONE MEETINGS. Any member of the Board of Directors, or of any committee thereof, may participate in a meeting by means of conference telephone or similar communications equipment by means of which all persons participating in the meeting can hear each other, and participation in a meeting by such means shall constitute presence in person at such meeting.

(e)         NOTICE OF MEETINGS. Notice of the time and place of all regular and special meetings of the Board of Directors shall be orally or in writing, by telephone, facsimile, electronic mail or other electronic means as provided in Section 75.150 of the Nevada Revised Statutes, as amended from time to time, during normal business hours, at least twenty-four (24) hours before the date and time of the meeting, or sent in writing to each director by first class mail, charges prepaid, at least three (3) days before the date of the meeting. Notice of any meeting may be waived in writing at any time before or after the meeting and will be waived by any director by attendance thereat, except when the director attends the meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened.

(f)         WAIVER OF NOTICE. The transaction of all business at any meeting of the Board of Directors, or any committee thereof, however called or noticed, or wherever held, shall be as valid as though had at a meeting duly held after regular call and notice, if a quorum be present and if, either before or after the meeting, each of the directors not present shall sign a written waiver of notice. All such waivers shall be filed with the corporate records or made a part of the minutes of the meeting.

8

SECTION 8. QUORUM AND VOTING.

(a)        Unless the Articles of Incorporation requires a greater number and except with respect to indemnification questions arising under Section 1 of Article XI hereof, for which a quorum shall be one-third (1/3) of the exact number of directors fixed from time to time in accordance with the Articles of Incorporation or these Bylaws, a quorum of the Board of Directors shall consist of a majority of the exact number of directors fixed from time to time by the Board of Directors in accordance with the Articles of Incorporation or these Bylaws; provided, however, at any meeting whether a quorum be present or otherwise, a majority of the directors present may adjourn from time to time until the time fixed for the next regular meeting of the Board of Directors, without notice other than by announcement at the meeting.

(b)        At each meeting of the Board of Directors at which a quorum is present, all questions and business shall be determined by the affirmative vote of a majority of the directors present, unless a different vote be required by law, the Articles of Incorporation or these Bylaws.

SECTION 9. ACTION WITHOUT MEETING. Unless otherwise provided by the Articles of Incorporation or these Bylaws, any action required or permitted to be taken at any meeting of the Board of Directors or of any committee thereof may be taken without a meeting, if all members of the Board of Directors or committee, as the case may be, consent thereto in writing, and such writing or writings are filed with the minutes of proceedings of the Board of Directors or committee.

SECTION 10. FEES AND COMPENSATION. Directors shall be entitled to such compensation for their services as may be approved by the Board of Directors, including, if so approved, by resolution of the Board of Directors, a fixed sum and expenses of attendance, if any, for attendance at each regular or special meeting of the Board of Directors and at any meeting of a committee of the Board of Directors. Nothing herein contained shall be construed to preclude any director from serving the Corporation in any other capacity as an officer, agent, employee, or otherwise and receiving compensation therefor.

SECTION 11. COMMITTEES.

(a)        EXECUTIVE COMMITTEE. The Board of Directors may by resolution passed by a majority of the whole Board of Directors appoint an Executive Committee to consist of one (1) or more members of the Board of Directors. The Executive Committee, to the extent permitted by law and provided in the resolution of the Board of Directors, shall have and may exercise all the powers and authority of the Board of Directors in the management of the business and affairs of the Corporation, including without limitation, the power or authority to declare a dividend, to authorize the issuance of stock and to adopt a certificate of ownership and merger, and may authorize the seal of the Corporation to be affixed to all papers which may require it; but no such committee shall have the power or authority in reference to (i) amending the Articles of Incorporation (except that a committee may, to the extent authorized in the resolution or resolutions providing for the issuance of shares of stock adopted by the Board of Directors fix the designations and any of the preferences or rights of such shares relating to

9

dividends, redemption, dissolution, any distribution of assets of the Corporation or the conversion into, or the exchange of such shares for, shares of any other class or classes or any other series of the same or any other class or classes of stock of the Corporation or fix the number of shares of any series of stock or authorize the increase or decrease of the shares of any series), (ii) adopting an agreement of merger or consolidation, (iii) recommending to the Stockholders the sale, lease or exchange of all or substantially all of the Corporation's property and assets, (iv) recommending to the Stockholders a dissolution of the Corporation or a revocation of a dissolution, or (v) amending these Bylaws.

(b)     OTHER COMMITTEES. The Board of Directors may, by resolution passed by a majority of the whole Board of Directors, from time to time appoint such other committees as may be permitted by law. Such other committees appointed by the Board of Directors shall consist of one (1) or more members of the Board of Directors and shall have such powers and perform such duties as may be prescribed by the resolution or resolutions creating such committees, but in no event shall such committee have the powers denied to the Executive Committee in these Bylaws.

(c)     TERM. Each member of a committee of the Board of Directors shall serve a term on the committee coexistent with such member's term on the Board of Directors. The Board of Directors, subject to the provisions of Sections 11(a) or 11(b) of this Article IV may at any time increase or decrease the number of members of a committee or terminate the existence of a committee. The membership of a committee member shall terminate on the date of his or her death or voluntary resignation from the committee or from the Board of Directors. The Board of Directors may at any time for any reason remove any individual committee member and the Board of Directors may fill any committee vacancy created by death, resignation, removal or increase in the number of members of the committee. The Board of Directors may designate one or more directors as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee, and, in addition, in the absence or disqualification of any member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not he, she or they constitute a quorum, may unanimously appoint another member of the Board of Directors to act at the meeting in the place of any such absent or disqualified member.

(d)     MEETINGS. Unless the Board of Directors shall otherwise provide, regular meetings of the Executive Committee or any other committee appointed pursuant to this Section 11 of Article IV shall be held at such times and places as are determined by the Board of Directors, or by any such committee, and when notice thereof has been given to each member of such committee, no further notice of such regular meetings need be given thereafter. Special meetings of any such committee may be held at any place which has been determined from time to time by such committee, and may be called by any director who is a member of such committee, upon written notice to the members of such committee of the time and place of such special meeting given in the manner provided for the giving of written notice to members of the Board of Directors of the time and place of special meetings of the Board of Directors. Notice of any special meeting of any committee may be waived in writing at any time before or after the meeting and will be waived by any director by attendance thereat, except when the director

10

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

attends such special meeting for the express purpose of objecting, at the beginning of the meeting, to the transaction of any business because the meeting is not lawfully called or convened. A majority of the authorized number of members of any such committee shall constitute a quorum for the transaction of business, and the act of a majority of those present at any meeting at which a quorum is present shall be the act of such committee.

SECTION 12. ORGANIZATION. At every meeting of the directors, the Chairman of the Board of Directors, or, if a Chairman of the Board of Directors has not been appointed or is absent, the President of the Corporation, or if the President of the Corporation is absent, the most senior Vice President of the Corporation, or, in the absence of any such officer, a chairman of the meeting chosen by a majority of the directors present, shall preside over the meeting. The Secretary of the Corporation, or in his or her absence, an Assistant Secretary of the Corporation directed to do so by the President of the Corporation, shall act as secretary of the meeting.

## ARTICLE V
## OFFICERS

SECTION 1. OFFICERS DESIGNATED. The officers of the Corporation shall include a President, a Secretary, and a Treasurer, or the equivalent thereof. The Board of Directors may also appoint one or more Assistant Secretaries, Assistant Treasurers and such other officers and agents of the Corporation, or the equivalent thereof, with such powers and duties as it shall deem necessary. The Board of Directors may assign such additional titles to one or more of the officers of the Corporation as it shall deem appropriate. Any one person may hold any number of offices of the Corporation at any one time unless specifically prohibited therefrom by law. The salaries and other compensation of the officers of the Corporation shall be fixed by or in the manner designated by the Board of Directors.

SECTION 2. TENURE AND DUTIES OF OFFICERS.

(a)        GENERAL. All officers of the Corporation shall hold office at the pleasure of the Board of Directors and until their successors shall have been duly elected and qualified, unless sooner removed. Any officer of the Corporation elected or appointed by the Board of Directors may be removed at any time by the Board of Directors, with or without cause. If the office of any officer of the Corporation becomes vacant for any reason, the vacancy may be filled by the Board of Directors.

(b)        DUTIES OF PRESIDENT. The President of the Corporation shall preside at all meetings of the Stockholders and at all meetings of the Board of Directors, unless the Chairman of the Board of Directors has been appointed and is present. Unless some other officer of the Corporation has been elected Chief Executive Officer of the Corporation, the President shall be the chief executive officer of the Corporation and shall, subject to the control of the Board of Directors, have general supervision, direction and control of the business and officers of the Corporation. The President of the Corporation shall perform other duties commonly incident to his or her office and shall also perform such other duties and have such other powers as the Board of Directors shall designate from time to time.

11

12/4/2017                          https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

(c)    DUTIES OF SECRETARY. The Secretary of the Corporation shall attend all meetings of the Stockholders and of the Board of Directors and shall record all acts and proceedings thereof in the minute book of the Corporation. The Secretary of the Corporation shall give notice in conformity with these Bylaws of all meetings of the Stockholders and of all meetings of the Board of Directors and any committee thereof requiring notice. The Secretary of the Corporation shall perform all other duties given him or her in these Bylaws and other duties commonly incident to his or her office and shall also perform such other duties and have such other powers as the Board of Directors shall designate from time to time. The President of the Corporation may direct any Assistant Secretary of the Corporation to assume and perform the duties of the Secretary of the Corporation in the absence or disability of the Secretary of the Corporation, and each Assistant Secretary of the Corporation shall perform other duties commonly incident to his or her office and shall also perform such other duties and have such other powers as the Board of Directors or the President of the Corporation shall designate from time to time.

(d)    DUTIES OF TREASURER. The Treasurer of the Corporation shall keep or cause to be kept the books of account of the Corporation in a thorough and proper manner and shall render statements of the financial affairs of the Corporation in such form and as often as required by the Board of Directors or the President of the Corporation. The Treasurer of the Corporation, subject to the order of the Board of Directors, shall have the custody of all funds and securities of the Corporation. The Treasurer of the Corporation shall perform other duties commonly incident to his or her office and shall also perform such other duties and have such other powers as the Board of Directors or the President of the Corporation shall designate from time to time.

SECTION 3. DELEGATION OF AUTHORITY. The Board of Directors may from time to time delegate the powers or duties of any officer of the Corporation to any other officer or agent of the Corporation, notwithstanding any provision hereof.

SECTION 4. RESIGNATIONS. Any officer of the Corporation may resign at any time by giving written notice to the Board of Directors or to the President or to the Secretary of the Corporation. Any such resignation shall be effective when received by the person or persons to whom such notice is given, unless a later time is specified therein, in which event the resignation shall become effective at such later time. Unless otherwise specified in such notice, the acceptance of any such resignation shall not be necessary to make it effective. Any resignation shall be without prejudice to the rights, if any, of the Corporation under any contract with the resigning officer.

SECTION 5. REMOVAL. Any officer of the Corporation may be removed from office at anytime, either with or without cause, by the affirmative vote of a majority of the directors in office at the time, or by the unanimous written consent of the Board of Directors in office at the time, or by any committee or superior officers of the Corporation upon whom such power of removal may have been conferred by the Board of Directors.

12

# ARTICLE VI
## EXECUTION OF CORPORATE INSTRUMENTS AND VOTING OF SECURITIES OWNED BY THE CORPORATION

SECTION 1. EXECUTION OF CORPORATE INSTRUMENT. The Board of Directors may, in its discretion, determine the method and designate the signatory officer or officers of the Corporation, or other person or persons, to execute on behalf of the Corporation any corporate instrument or document, or to sign on behalf of the Corporation the corporate name without limitation, or to enter into contracts on behalf of the Corporation, except where otherwise provided by law or these Bylaws, and such execution or signature shall be binding upon the Corporation.

Unless otherwise specifically determined by the Board of Directors or otherwise required by law, promissory notes, deeds of trust, mortgages and other evidences of indebtedness of the Corporation, and other corporate instruments or documents requiring the corporate seal, and certificates of shares of stock owned by the Corporation, shall be executed, signed or endorsed by the Chairman of the Board of Directors, or the President or any Vice President of the Corporation, and by the Secretary or Treasurer of the Corporation or any Assistant Secretary or Assistant Treasurer of the Corporation. All other instruments and documents requiting the corporate signature, but not requiring the corporate seal, may be executed as aforesaid or in such other manner as may be directed by the Board of Directors.

All checks and drafts drawn on banks or other depositaries on funds to the credit of the Corporation or in special accounts of the Corporation shall be signed by such person or persons as the Board of Directors shall authorize so to do.

Unless authorized or ratified by the Board of Directors or within the agency power of an officer of the Corporation, no officer, agent or employee of the Corporation shall have any power or authority to bind the Corporation by any contract or engagement or to pledge its credit or to render it liable for any purpose or for any amount.

SECTION 2. VOTING OF SECURITIES OWNED BY THE CORPORATION. All stock and other securities of other corporations owned or held by the Corporation for itself, or for other parties in any capacity, shall be voted, and all proxies with respect thereto shall be executed, by the person authorized so to do by resolution of the Board of Directors, or, in the absence of such authorization, by the Chairman of the Board of Directors, the Chief Executive Officer, the President, or any Vice President of the Corporation.

# ARTICLE VII
## SHARES OF STOCK

SECTION 1. FORM OF REPRESENTATION; CERTIFICATED SHARES. The shares of stock of the Corporation may be represented by certificates or may be uncertificated. Certificates for the shares of stock of the Corporation shall be in such form as is consistent with the Articles of Incorporation and applicable law. Every holder of stock in the Corporation represented by a certificate shall be entitled to have a certificate signed by or in the name of the

13

Corporation by the Chairman of the Board of Directors, or the President or any Vice President of the Corporation and by the Treasurer or Assistant Treasurer of the Corporation or the Secretary or Assistant Secretary of the Corporation, representing the number of shares registered in certificate form owned by him, her or it in the Corporation. Any or all of the signatures on the certificate may be facsimiles. In case any officer, transfer agent, or registrar of the Corporation who has signed or whose facsimile signature has been placed upon a certificate shall have ceased to be such officer, transfer agent, or registrar of the Corporation before such certificate is issued, it may be issued with the same effect as if he, she or it were such officer, transfer agent, or registrar at the date of issue. Each certificate shall state upon the face or back thereof, in full or in summary, all of the powers, designations, preferences, and rights, and the limitations or restrictions of the shares authorized to be issued or shall, except as otherwise required by law, set forth on the face or back a statement that the Corporation will furnish without charge to each Stockholder who so requests the powers, designations, preferences and relative, participating, optional, or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights. Within a reasonable time after the issuance or transfer of uncertificated stock, the Corporation shall send to the registered owner thereof a written notice containing the information required to be set forth or stated on certificates pursuant to this Section 1 of Article VII or otherwise required by law or with respect to this Section 1 of Article VII a statement that the Corporation will furnish without charge to each Stockholder who so requests the powers, designations, preferences and relative participating, optional or other special rights of each class of stock or series thereof and the qualifications, limitations or restrictions of such preferences and/or rights. Except as otherwise expressly provided by law, the rights and obligations of the holders of certificates representing stock of the same class and series shall be identical.

SECTION 2. LOST CERTIFICATES. A new certificate or certificates shall be issued in place of any certificate or certificates theretofore issued by the Corporation alleged to have been lost, stolen, or destroyed, upon the making of an affidavit of that fact by the person claiming the certificate of stock to be lost, stolen, or destroyed. The Corporation may require, as a condition precedent to the issuance of a new certificate or certificates, the owner of such lost, stolen, or destroyed certificate or certificates, or his, her or it legal representative, to advertise the same in such manner as it shall require or to give the Corporation a surety bond in such form and amount as it may direct as indemnity against any claim that may be made against the Corporation with respect to the certificate alleged to have been lost, stolen, or destroyed.

SECTION 3. TRANSFERS.

(a)    Transfers of record of shares of stock of the Corporation shall be made only upon its books by the holders thereof, in person or by attorney duly authorized, and upon the surrender of a properly endorsed certificate or certificates for a like number of shares.

(b)    The Corporation shall have power to enter into and perform any agreement with any number of Stockholders of any one or more classes of stock of the Corporation to restrict the transfer of shares of stock of the Corporation of any one or more classes owned by such Stockholders in any manner not prohibited by the laws of Nevada.

14

## SECTION 4. FIXING RECORD DATES.

(a)    In order that the Corporation may determine the Stockholders entitled to notice of or to vote at any meeting of Stockholders or any adjournment thereof, the Board of Directors may fix, in advance, a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted by the Board of Directors, and which record date shall not be more than sixty (60) nor less than ten (10) days before the date of such meeting. If no record date is fixed by the Board of Directors, the record date for determining Stockholders entitled to notice of or to vote at a meeting of Stockholders shall be at the close of business on the day next preceding the day on which notice is given, or if notice is waived, at the close of business on the day next preceding the day on which the meeting is held. A determination of Stockholders of record entitled to notice of or to vote at a meeting of Stockholders shall apply to any adjournment of the meeting; provided, however, that the Board of Directors may fix a new record date for the adjourned meeting.

(b)    In order that the Corporation may determine the Stockholders entitled to receive payment of any dividend or other distribution or allotment of any rights or the Stockholders entitled to exercise any rights in respect of any change, conversion or exchange of stock, or for the purpose of any other lawful action, the Board of Directors may fix, in advance, a record date, which record date shall not precede the date upon which the resolution fixing the record date is adopted, and which record date shall be not more than sixty (60) days prior to such action. If no record date is filed, the record date for determining Stockholders for any such purpose shall be at the close of business on the day on which the Board of Directors adopts the resolution relating thereto.

SECTION 5. REGISTERED STOCKHOLDERS. The Corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner, and shall not be bound to recognize any equitable or other claim to or interest in such share or shares on the part of any other person whether or not it shall have express or other notice thereof, except as otherwise provided by the laws of Nevada.

## ARTICLE VIII
## OTHER SECURITIES OF THE CORPORATION

All bonds, debentures and other corporate securities of the Corporation, other than stock certificates (covered in Section 1 of Article VII hereof), may be signed by the Chairman of the Board of Directors, the President or any Vice President of the Corporation, or such other person as may be authorized by the Board of Directors, and the corporate seal impressed thereon or a facsimile of such seal imprinted thereon and attested by the signature of the Secretary or an Assistant Secretary of the Corporation, or the Treasurer or an Assistant Treasurer of the Corporation; provided, however, that where any such bond, debenture or other corporate security shall be authenticated by the manual signature, or where permissible facsimile signature, of a trustee under an indenture pursuant to which such bond, debenture or other corporate security shall be issued, the signatures of the persons signing and attesting the corporate seal on such

15

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

bond, debenture or other corporate security may be the imprinted facsimile of the signatures of such persons. Interest coupons appertaining to any such bond, debenture or other corporate security, authenticated by a trustee as aforesaid, shall be signed by the Treasurer or an Assistant Treasurer of the Corporation or such other person as may be authorized by the Board of Directors or bear imprinted thereon the facsimile signature of such person. In case any officer of the Corporation who shall have signed or attested any bond, debenture or other corporate security, or whose facsimile signature shall appear thereon or on any such interest coupon, shall have ceased to be such officer before the bond, debenture or other corporate security so signed or attested shall have been delivered, such bond, debenture or other corporate security nevertheless may be adopted by the Corporation and issued and delivered as though the person who signed the same or whose facsimile signature shall have been used thereon had not ceased to be such officer of the Corporation.

## ARTICLE IX
## DIVIDENDS

SECTION 1. DECLARATION OF DIVIDENDS. Dividends upon the capital stock of the Corporation, subject to the provisions of the Articles of Incorporation, if any, may be declared by the Board of Directors pursuant to law at any regular or special meeting. Dividends may be paid in cash, in property, or in shares of the Corporation's capital stock, subject to the provisions of the Articles of Incorporation.

SECTION 2. DIVIDEND RESERVE. Before payment of any dividend, there may be set aside out of any funds of the Corporation available for dividends such sum or sums as the Board of Directors from time to time, in their absolute discretion, think proper as a reserve or reserves to meet contingencies, or for equalizing dividends, or for repairing or maintaining any property of the Corporation, or for such other purpose as the Board of Directors shall think conducive to the interests of the Corporation, and the Board of Directors may modify or abolish any such reserve in the manner in which it was created.

## ARTICLE X
## FISCAL YEAR

The fiscal year of the Corporation shall be fixed by resolution of the Board of Directors.

## ARTICLE XI
## IMMUNITY AND INDEMNIFICATION

SECTION 1. INDIVIDUAL LIABILITY OF DIRECTORS AND OFFICERS AND INDEMNIFICATION OF DIRECTORS AND OFFICERS.

(a)        INDIVIDUAL LIABILITY. Except as otherwise provided under Nevada law, directors and officers will not be individually liable to the Corporation or its Stockholders or creditors for any damages as a result of any act or failure to act in his or her capacity as a director or officer unless it is proven that:

16

12/4/2017    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

(i)        The director's or officer's act or failure to act constituted a breach of his or her fiduciary duties as a director or officer; and

(ii)        The breach of those duties involved intentional misconduct, fraud or a knowing violation of law.

(b)        <u>DIRECTORS AND OFFICERS</u>. The Corporation will indemnify its directors and officers to the fullest extent not prohibited by Nevada law; <u>provided</u>, <u>however</u>, that the Corporation may modify the extent of such indemnification by individual contracts with its directors and officers; <u>provided</u>, <u>further</u>, that the Corporation shall not be required to indemnify any director or officer in connection with any proceeding (or part thereof) initiated by such person unless (A) such indemnification is expressly required to be made by law, (B) the proceeding was authorized by the Board of Directors, (C) such indemnification is provided by the Corporation, in its sole discretion, pursuant to the powers vested in the Corporation under Nevada law or (D) such indemnification is required to be made pursuant to these Bylaws.

(c)        <u>EXPENSE</u>. The Corporation will advance to any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that he or she is or was a director or officer of the Corporation, or is or was serving at the request of the Corporation as a director or executive officer of another Corporation, partnership, joint venture, trust or other enterprise, prior to the final disposition of the proceeding, promptly following request therefor, all expenses incurred by any director or officer of the Corporation in connection with such proceeding upon receipt of an undertaking by or on behalf of such person to repay said amounts if it should be determined ultimately that such person is not entitled to be indemnified under these Bylaws.

No advance shall be made by the Corporation to an officer of the Corporation (except by reason of the fact that such officer is or was a director of the Corporation in which event this paragraph shall not apply) in any action, suit or proceeding, whether civil, criminal, administrative or investigative, if a determination is reasonably and promptly made (i) by the Board of Directors by a majority vote of a quorum consisting of directors who were not parties to the proceeding, or (ii) if such quorum is not obtainable, or, even if obtainable, a quorum of disinterested directors so directs, by independent legal counsel in a written opinion, that the facts known to the decision-making party at the time such determination is made demonstrate clearly and convincingly that such person acted in bad faith or in a manner that such person did not believe to be in or not opposed to the best interests of the Corporation.

**ARTICLE XII**
**NOTICES**

<u>SECTION 1</u>. <u>NOTICE TO STOCKHOLDERS</u>. Whenever, under any provisions of these Bylaws, notice is required to be given to any Stockholder, it shall be given in writing, timely and duly deposited in the United States mail, postage prepaid, and addressed to his, her or its last known post office address as shown by the stock record of the Corporation or its transfer agent,

17

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

or delivered as provided in Section 75.150 of the Nevada Revised Statutes, as amended from time to time.

SECTION 2. NOTICE TO DIRECTORS. Any notice required to be given to any director may be given by the method stated in Section 1 of this Article XII, or by facsimile, telex or telegram, except that such notice other than one which is delivered personally shall be sent to such address as such director shall have filed in writing with the Secretary of the Corporation, or, in the absence of such filing, to the last known post office address of such director.

SECTION 3. AFFIDAVIT OF MAILING. An affidavit of mailing, executed by a duly authorized and competent employee of the Corporation or its transfer agent appointed with respect to the class of stock affected, specifying the name and address or the names and addresses of the Stockholder or Stockholders, or director or directors, to whom any such notice or notices was or were given, and the time and method of giving the same, shall in the absence of fraud, be prima facie evidence of the facts therein contained.

SECTION 4. TIME NOTICES DEEMED GIVEN. All notices given by mail, as described in Section 1 of this Article XII, shall be deemed to have been given as at the time of mailing, and all notices given by electronic means shall be deemed to have been given as provided in Section 75.150 of the Nevada Revised Statutes, as amended from time to time.

SECTION 5. METHODS OF NOTICE. It shall not be necessary that the same method of giving notice be employed in respect of all directors, but one permissible method may be employed in respect of any one or more, and any other permissible method or methods may be employed in respect of any other or others.

SECTION 6. FAILURE TO RECEIVE NOTICE. The period or limitation of time within which any Stockholder may exercise any option or right, or enjoy any privilege or benefit, or be required to act, or within which any director may exercise any power or right, or enjoy any privilege, pursuant to any notice sent him, her or it in the manner described in this Article XII, shall not be affected or extended in any manner by the failure of such Stockholder or such director to receive such notice.

SECTION 7. NOTICE TO PERSON WITH WHOM COMMUNICATION IS UNLAWFUL. Whenever notice is required to be given, under any provision of law or of the Articles of Incorporation or these Bylaws, to any person with whom communication is unlawful, the giving of such notice to such person shall not be required and there shall be no duty to apply to any governmental authority or agency for a license or permit to give such notice to such person. Any action or meeting which shall be taken or held without notice to any such person with whom communication is unlawful shall have the same force and effect as if such notice had been duly given. In the event that the action taken by the Corporation is such as to require the filing of a certificate under any provision of Nevada law, the certificate shall state, if such is the fact and if notice is required, that notice was given to all persons entitled to receive notice except such persons with whom communication is unlawful.

18

SECTION 8. NOTICE TO PERSON WITH UNDELIVERABLE ADDRESS. Whenever notice is required to be given, under any provision of law or the Articles of Incorporation or these Bylaws, to any Stockholder to whom (a) notice of two (2) consecutive annual meetings, and all notices of meetings or of the taking of action by written consent without a meeting to such person during the period between such two (2) consecutive annual meetings, or (b) all, and at least two (2), payments (if sent by first class mail) of dividends or interest on securities during a twelve (12)-month period, have been mailed addressed to such person at his, her or its address as shown on the records of the Corporation and have been returned undeliverable, the giving of such notice to such person shall not be required. Any action or meeting which shall be taken or held without notice to such person shall have the same force and effect as if such notice had been duly given. If any such person shall deliver to the Corporation a written notice setting forth his, her or its then current address, the requirement that notice be given to such person shall be reinstated. In the event that the action taken by the Corporation is such as to require the filing of a certificate under any provision of Nevada law, the certificate need not state that notice was not given to persons to whom notice was not required to be given pursuant to this Section 8 of Article XII.

### ARTICLE XIII
### FORUM

Unless the Corporation consents in writing to the selection of an alternative forum, the Business Court of Clark County in the State of Nevada shall be the sole and exclusive forum for (i) any derivative action or proceeding brought on behalf of the Corporation, (ii) any action asserting a claim of breach of a fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (iii) any action asserting a claim arising pursuant to any provision of the Nevada Revised Statutes, as amended, or the Corporation's Articles of Incorporation or Bylaws, each as amended, or (iv) any action asserting a claim governed by the internal affairs doctrine. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Article XIII.

### ARTICLE XIV
### AMENDMENTS

The Board of Directors shall have the power to adopt, amend, or repeal these Bylaws.

19

12/4/2017                    https://www.sec.gov/Archives/edgar/data/1301712/000072174814000227/ex3_2amendedbylaws.htm

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 601 South Figueroa Street, Suite 2500, Los Angeles, CA 90017:

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND MOTION TO ESTIMATE CLAIMS NO. 7 AND 8 FILED BY JEFFREY CORDES AND WILLIAM AISENBERG PURSUANT TO 11 U.S.C. SECTION 502(c); DECLARATION OF MATTHEW A. PLISKIN IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **March 12, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Shiva D Beck     sbeck@gardere.com, jcharrison@gardere.com
- Ron Bender     rb@lnbyb.com
- Cathrine M Castaldi     ccastaldi@brownrudnick.com
- Russell Clementson     russell.clementson@usdoj.gov
- Aaron S Craig     acraig@kslaw.com, lperry@kslaw.com
- Matthew A Gold     courts@argopartners.net
- Monica Y Kim     myk@lnbrb.com, myk@ecf.inforuptcy.com
- Jeffrey A Krieger     jkrieger@ggfirm.com,
  kwoodson@greenbergglusker.com;calendar@greenbergglusker.com;jking@greenbergglusker.com
- Samuel R Maizel     samuel.maizel@dentons.com,
  alicia.aguilar@dentons.com;docket.general.lit.LOS@dentons.com;tania.moyron@dentons.com;kathryn.howard@dentons.com
- Krikor J Meshefejian     kjm@lnbrb.com
- Tania M Moyron     tania.moyron@dentons.com, chris.omeara@dentons.com
- S Margaux Ross     margaux.ross@usdoj.gov
- Thomas C Scannell     tscannell@gardere.com, acordero@gardere.com
- Susan K Seflin     sseflin@brutzkusgubner.com
- Andrew T Solomon     asolomon@solomoncramer.com
- John M Stern     john.stern@oag.texas.gov, bk-mbecker@oag.texas.gov
- United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov
- Sharon Z. Weiss     sharon.weiss@bryancave.com, raul.morales@bryancave.com
- Douglas Wolfe     dwolfe@asmcapital.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) **March 12, 2018**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **March 12, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**BY PERSONAL DELIVERY**
Hon. Martin R. Barash
US Bankruptcy Court
Central District of California
21041 Burbank Blvd., Suite 342/Ctrm. 303
Woodland Hills, CA  91367

☒  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| March 12, 2018 | Christina O'Meara | /s/Christina O'Meara |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
105437348\V-1

**F 9013-3.1.PROOF.SERVICE**

**SERVED BY U.S. MAIL:**

| | | |
|---|---|---|
| **Secured Creditor**<br>Radians Wareham Holding, Inc.<br>Attn:  Mike Tutor, CEO<br>5305 Distriplex Farms<br>Memphis, TN  38141 | **Counsel to Radians Wareham Holdings**<br>E. Franklin Childress, Jr.<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>165 Madison Ave, Suite 2000<br>Memphis, Tennessee 38103 | U.S. Securities and Exchange Commission<br>Attn:  Bankruptcy Counsel<br>444 South Flower Street, Suite 900<br>Los Angeles, CA  90071-9591 |
| CRG Financial LLC<br>100 Union Avenue<br>Cresskill, NJ 07626 | | |
| **Governmental Agencies** | | |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA  19101-7346 | Franchise Tax Board<br>Bankruptcy Section, MS: A-340<br>P.O. Box 2952<br>Sacramento, CA  95812-2952 | State Board of Equalization<br>Account Information Group, MIC: 29<br>P.O. Box 942879<br>Sacramento, CA  94279-0029 |
| Employment Development Dept.<br>Bankruptcy Group MIC 92E<br>P.O. Box 826880<br>Sacramento, CA  94280-0001 | Office of Unemployment Compensation Tax Services<br>Department of Labor and Industry<br>Commonwealth of Pennsylvania<br>651 Boas Street, Room 702<br>Harrisburg, PA  17121 | |
| **Equity Holders - SERVED BY EMAIL** | | |
| Patrick W. O'Brien<br>301 Whitmore Lane<br>Lake Forest, IL  60045-4707<br>**Email:  obrien.pat@me.com** | Ronald Chez<br>1524 N. Astor Street<br>Chicago, IL  60610<br>**Email:  rlchez@rcn.com** | Scott Jarus<br>938 Duncan Avenue<br>Manhattan Beach, CA  90266<br>**Email:  scott.jarus@verizon.net** |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

105437348\V-1

**F 9013-3.1.PROOF.SERVICE**