1 Samuel R. Maizel (SBN 189301)
samuel.maizel@dentons.com
2 Tania M. Moyron (SBN 235736)
tania.moyron@dentons.com
3 DENTONS US LLP
601 South Figueroa Street, Suite 2500
4 Los Angeles, California 90017-5704
Telephone:    (213) 623-9300
5 Facsimile:    (213) 623-9924

6 Attorneys for the Official Committee of Equity
Committee & Trust Board

7

8 **UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SAN FERNANDO VALLEY DIVISION**

9

10 In re:                                       Case No. 1:17-bk-12408-MB
                                              Jointly administered with:
11 ICPW Liquidation Corporation, a            Case No. 1:17-bk-12409-MB
   California corporation,[1]

12        Debtor and Debtor in Possession.     Chapter 11

13 In re:                                       **SECOND INTERIM AND FINAL**
                                              **APPLICATION OF DENTONS US LLP**
14 ICPW Liquidation Corporation, a Nevada     **FOR APPROVAL OF FEES AND**
   corporation,[2]                            **REIMBURSEMENT OF EXPENSES;**
15                                            **DECLARATION OF TANIA M.**
        Debtor and Debtor in Possession.     **MOYRON IN SUPPORT THEREOF**
16

17 Affects:                                    Hearing:
                                              Date:    April 24, 2018
18 ☒  Both Debtors                            Time:    2:30 p.m.
                                              Place:   Courtroom "303"
19                                                     21041 Burbank Blvd.
   ☐  Ironclad Performance Wear                        Woodland Hills, CA
20 Corporation, a California corporation

21 ☐  Ironclad Performance Wear
   Corporation, a Nevada corporation.
22

23

24        The  Official  Committee  of  Equity  Security  Holders  (the  "Equity Committee")[3]

25 respectfully submits this *Second Interim And Final Fee Application of Dentons US LLP for*

26

27 [1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
   [2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.
28 [3] The members of the Equity Committee are now the members of the Trust Board, as set forth in
   the February 9, 2018 Plan (defined below) and the Trust Agreement.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

*Approval of Fees and Reimbursement of Expenses* (the "Fee Application") for services rendered and expenses incurred by Dentons US LLP ("Dentons") on behalf of the Equity Committee for the period of November 1, 2017 through February 28, 2018 (the "Covered Period"). By way of the Fee Application, Dentons seeks (i) first and final allowance of fees of $614,656.00 and expenses of $25,045.35 for total fees and expenses of $639,701.35[4] during the Covered Period, and (ii) final allowance of interim awards of $222,730.30 in fees and $4,714.24 in expenses as further described in Dentons' *First Interim Application of Dentons US LLP for Approval of Fees and Reimbursement of Expenses* (the "First Interim Application") covering the period September 22, 2017 through October 31, 2017 [Docket No. 246], which was approved on an interim basis by Order entered on December 13, 2017. [Docket No. 337]. Any opposition or responsive paper must be filed and served at least fourteen (14) days prior to the hearing on this Fee Application in the form require d by LBR 9013-1(f).

## I.

## FEES AND EXPENSES INCURRED AND NOTICE

**A. Request for Allowance and Payment of Fees and Reimbursement of Expenses.**

1.    During the Covered Period of November 1, 2017 through February 28, 2018, Dentons incurred fees of $614,656.00 and expenses of $25,045.35 for total fees and expenses of $639,701.35.

2.    Dentons, in its representation of the Equity Committee, worked closely with the Debtors in these cases to obtain successful results that have resulted in 100% payment to creditors after the Debtors' sale of substantially all of its assets and confirmation of the *Debtors and Official Committee of Equity Security Holders Joint Plan of Liquidation Dated February 9, 2018* (the "February 9 Plan"). As set forth in detail below, Dentons worked closely with the Debtors' professionals with respect to: (i) selling the Debtors' assets and related emergency motions; (ii) preparing and filing a motion confirming that no disclosure statement was required in these

---

[4] This total amount, as well as the total amount of fees, has been reduced by $132.30 to account for a billing error that occurred in creating the invoices for the month of February. This total amount, as well as the total amount of expenses, has been reduced by $2,172.76 to account for a billing error that occurred in creating the invoices for the months of December and February.

106974306\V-1

1    cases; (iii) preparing the motion to approve that certain trustee services agreement and the related

2    agreement; (iv) preparing the confirmation motion; (v) assisting in the preparation and

3    finalization of the February 9 Plan, prior versions of the plan, and confirmation thereof;

4    (vi) preparing the liquidating trust agreement related to the February 9 Plan; (vii) establishing the

5    "record date" in the February 9 Plan and working with FINRA (defined below) to halt trade; and

6    (ix) addressing and resolving claims through the Claims Protocol Motion (as defined below).

7    Additionally, Dentons has spearheaded the litigation in these cases against the Former Officers

8    (defined below) and Radians (defined below), which has included, but is not limited to, preparing

9    and finalizing numerous filings in these chapter 11 cases, commencing and defending two

10    adversary proceedings, and corresponding with all professionals on all issues. Dentons also

11    advised the Equity Committee with respect to certain corporate matters. The foregoing services

12    included services from lawyers at Dentons that specialize in restructuring, litigation, securities,

13    tax, and corporate matters.

14         3.    Mindful of the Equity Committees' concerns regarding professional fees and other

15    costs in the in the above-captioned cases (the "Cases"), in the exercise of its billing judgment,

16    Dentons:  (i) "wrote off" fees in the amount of $13,700; (ii) "wrote off" travel fees and costs in

17    the amount of $12,690.72, including Dentons not billing the Equity Committee for the fees

18    incurred by (i) Arthur H. Ruegger ("Ruegger") for non-working travel expenses related to his

19    attending the deposition of the principal, Michael Tutor ("Tutor"), of Radians Wareham Holding,

20    Inc. ("Radians"), and the hearing on the motion to dismiss filed by Radians, and (ii) Samuel R.

21    Maizel for travel time; and (iii) "wrote off" other various fees incurred (which are reflected as

22    "No Charge" on the invoices). Finally, in the exercise of Dentons' billing judgment, Dentons

23    wrote off thousands of dollars of other fees incurred during the Covered Period, which entries do

24    not appear on the invoices.

25         4.    Dentons did not receive any retainer in these Cases. Postpetition, Dentons was

26    paid fees in the amount of $222,730.30 and expenses in the amount of $4,714.24, pursuant to the

27    Order granting Dentons' First Interim Application. [Docket No. 337]. Dentons seeks Court

28    approval of all $639,701.35 of post-petition fees and expenses incurred by Dentons. Dentons also

*DENTONS US LLP*
*601 SOUTH FIGUEROA STREET, SUITE 2500*
*LOS ANGELES, CALIFORNIA 90017-5704*
*(213) 623-9300*

3

seeks final allowance of interim awards of $222,730.30 in fees and $4,714.24 in costs in connection with Dentons' First Interim Application, which were approved on an interim basis by Order entered on December 13, 2017. [Docket No. 337].

**B. Dates of Entry of Order Approving Dentons' Employment and Date Services Commenced.**

5.      The Equity Committee filed its application to employ Dentons on October 6, 2017. [Docket No. 92]. On November 14, 2017, the Court entered an order approving the Equity Committee's employment of Dentons as counsel effective as of September 22, 2017. [Docket No. 208].

**C. Fees and Expenses Previously Requested.**

6.      On November 21, 2017, Dentons filed the First Interim Application for the period between September 22, 2017 through October 31, 2017. [Docket No. 246]. Dentons has not filed any other fee application.

**D. Proper Notice.**

7.      Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6) [5] and Local Bankruptcy Rule ("LBR") 2016-1(a)(2), notice of this Fee Application and other fee applications has been served by the Debtors upon all parties entitled to notice, including, without limitation, the Debtor, the Office of the United States Trustee ("UST"), all creditors, and all parties who have requested special notice. This Fee Application has also been served in accordance with all applicable rules. While Dentons is not the only retained professional in the case at this time, the Court waived the forty-five (45) day notice required by Local Bankruptcy Rules to other professionals.

**II.**

**BRIEF NARRATIVE HISTORY OF THE PRESENT POSTURE OF THE CASES, CIRCUMSTANCES THAT LED TO THE FILING OF THESE CASES, AND SIGNIFICANT EVENTS WHICH OCCURRED DURING THE COVERED PERIOD**

**A. Description and History of the Debtor's Business and a Summary of the Circumstances that led to the Filing of the Debtors' Chapter 11 Cases.**

---

[5] All references to sections of the "Bankruptcy Rules" herein are to sections of the Federal Rules of Bankruptcy Procedure.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

8.    On September 8, 2017, ICPW Liquidation Corporation, a California corporation ("ICPW CA") filed a voluntary petition under chapter 11 of the United States Code (the "Bankruptcy Code[6]"), commencing Case No. 1:17-bk-12048-MB (the "California Case") in the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court").

9.    On September 8, 2017, ICPW Liquidation Corporation, a Nevada corporation ("ICPW NV," and together with ICPW CA, "ICPW") also filed a voluntary petition in the Bankruptcy Court under chapter 11 of the Bankruptcy Code, commencing Case No. 1:17-bk-12049-MB (the "Nevada Case").

10.    According to the filings of ICPW (collectively, the "Debtors"), despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth.  There were a variety of reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs. In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their loan documents to their primary secured lender for the fiscal years ending December 31, 2015 and 2016, and for the fiscal quarters ending March 31, June 30, September 30, 2016 and March 31, 2017. As a result of this discovery, the Debtors' then chief executive officer and other officers were terminated, and L. Geoff Greulich ("Greulich") assumed the position of the Debtors' new chief executive officer effective July 6, 2017.

11.    The Debtors' filings indicate that they filed their bankruptcy Cases to consummate a sale of substantially all of their assets for the most money possible. Just prior to their bankruptcy filings, the Debtors entered into an asset purchase agreement with the Debtors' current secured creditor, Radians or its affiliate/designee, for a purchase price of $20 million or $15 million, subject to an overbid process. The Debtors filed a motion seeking Court approval of

---

[6] All references to "section" or "§" herein are to sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1530, as amended.

106974306\V-1

their proposed overbid procedures that the Debtors negotiated with Radians prior to their bankruptcy filings, which the Court approved.  Pre-petition, the Debtors hired Craig-Hallum Capital Group, LLC ("Craig-Hallum") as their financial advisor/investment banker to, among other things, market the Debtors' business for sale.  The Debtors also hired Craig-Hallum to serve as the Debtors' post-petition financial advisor/investment banker to assist the Debtors to locate and negotiate with prospective overbidders and to help facilitate an auction sale process designed to obtain the highest price possible for the Debtors' assets.

**B. Significant Post-Petition Developments.**

*a.*  ***First-Day Motions and Requested Relief.***

12.    On September 11, 2017, the Debtors filed their *Ex Parte Motion For Entry Of An Order For Joint Administration Of Cases*. [Docket No. 5].

13.    On September 12, 2017, the Court entered an *Order Approving Joint Administration of Cases Authorizing Joint Administration Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 1015(b)*. [Docket No. 25].

14.    On September 20, 2017, the UST filed its *Notice of Appointment of Official Committee of Equity Holders* (the "Notice of Appointment"). [Docket No. 59]. The Notice of Appointment provides for the appointment of the Equity Committee in ICPW NV.

15.    On September 22, 2017, the UST filed its *Notice of Appointment of Creditors' Committee*. [Docket No. 62].

16.    On September 11, 2017, the Debtors filed *Emergency Motion For Entry Of An Interim Order: (I) Authorizing The Debtors To (A) Obtain Post-Petition Financing Pursuant To 11 U.S.C. §§ 105, 361, 362 And 364, And (B) Utilize Cash Collateral Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (II) Granting Adequate Protection Pursuant To 11 U.S.C. §§ 361, 362, 363 And 364; (III) Scheduling A Final Hearing Pursuant To Bankruptcy Rules 4001(b) And 4001(c); And (IV) Granting Related Relief* (the "DIP Motion"). [Docket No 7]. On September 13, 2017, the Court entered an interim order on the DIP Motion. [Docket No 31].

17.    On October 3, 2018, the Equity Committee and the Creditors' Committee filed oppositions to the DIP Motion. [Docket Nos. 85 & 86]. On October 6, 2018, the Court entered the

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

1    final order on the DIP Motion (the "Final DIP Order"). [Docket No. 87]. The Final DIP Order

2    provided that, on or before the date that was sixty (60) days from the date of the entry thereof (the

3    "Lookback Period"), the Equity Committee and the Creditors' Committee shall have standing

4    individually and on behalf of Debtors' estates to object to, challenge, or seek to avoid the amount,

5    validity, or enforceability of Radians' "Pre-Bankruptcy Secured Debt" (or any portion thereof) or

6    any of the liens and security interests created under the Pre-Bankruptcy Secured Debt and to bring

7    any other claim that they have against Radians, individually or on behalf of the Debtors' Estates

8    (separately and collectively, a "Challenge"). *See*, Final DIP Order, at 19-20, ¶ kk.

9        18.    On September 11, 2017, the Debtors filed the *Motion For An Order:*

10   *(1) Approving Form Of Asset Purchase Agreement For Stalking Horse Bidder And For*

11   *Prospective Overbidders To Use, (2) Approving Auction Sale Format, Bidding Procedures, And*

12   *Stalking Horse Bid Protections; (3) Approving Form Of Notice To Be Provided To Interested*

13   *Parties; And (4) Scheduling A Court Hearing To Consider Approval Of The Sale To The Highest*

14   *Bidder; Memorandum Of Points And Authorities* (the "Bid Procedures Motion"). [Docket No.

15   10].

16       19.    On September 29, 2017, the Debtors filed the *Application Of Debtors And Debtors*

17   *In Possession To Employ Craig-Hallum Capital Group LLC As Financial Advisor Pursuant To*

18   *11 U.S.C. § 327 With Compensation Pursuant To 11 U.S.C. § 328*, which included as an

19   attachment that certain indemnification agreement between the Debtors and Craig-Hallum Capital

20   Group LLC (the "Indemnification Agreement"). [Docket No. 75].

21       *b.*    ***The Sale.***

22       20.    After hearings on October 30, November 1, and November 3, 2017, the Court

23   entered an order approving the sale (the "Sale") of substantially all of the assets of the Debtors

24   (the "Sale Order"). [Docket No. 177]. The Debtors assets were sold for $25,250,000 and the

25   Debtors' total debt in these Cases, including postpetition administrative claims, is estimated at

26   $10.5-$12 million. [Docket No. 111]. Brighton-Best International, Inc. ("BBI") was determined

27   by the Court to be the winning bidder. The Sale closed on November 15, 2017, and after

28   payments to certain third parties authorized by the Court, the Debtors have approximately

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

7

$16,354,050 cash on hand post-closing, plus certain amounts in the DIP account. The Debtors also maintain $820,000 in a segregated account separate from the balance of the sale proceeds pending further order of the Court.

21.    In connection with the sale, on November 13, 2018, the Debtors filed the *Emergency Motion For An Order: (1) Authorizing Debtors To Honor Pre-Petition Cash Bonus Incentive Agreements And Pay Cash Bonuses; (2) Approving Post-Petition Cash Bonus Agreements And Authorizing Debtors To Pay Cash Bonuses; And (3) Authorizing The Debtors To Pay Any Remaining Accrued Vacation Pay* (the "Bonus and Vacation Motion"), and the Equity Committee and the Creditors' Committee filed statements of non-opposition thereto. [Docket Nos. 205, 212, & 215]. On November 17, 2018, the Court entered an order granting the Bonus and Vacation Motion. [Docket No. 224].

22.    The Debtors also filed the *Emergency Motion For An Order Authorizing Debtors To Effectuate Name Change, And Related Relief* (the "Name Change Motion"), and the Equity Committee and Creditors' Committee filed statements of non-opposition thereto. [Docket Nos. 206, 211 & 214]. On November 17, 2018, the Court granted the Name Change Motion. [Docket No. 223].

### *b.    The Former Officers.*

23.    On October 3, 2017, the Jeffrey Cordes and William Ainsenberg (the "Former Officers") filed proofs of claim against the Debtors (Claim Nos. 7-1 and 8-1) (the "Proofs of Claim"). In their Proofs of Claim, the Former Officers asserted claims to recover the severance payments sought in the arbitration proceeding they commenced one day prior to the Petition Date – Aisenberg (Claim No. 7-1) in the amount of $129,406.75; Cordes (Claim No. 8-1) in the amount of $166,906.75.

24.    On October 20, 2017 (the "Bar Date"), the Former Officers filed a motion requesting relief from the automatic stay imposed by § 362 of the Bankruptcy Code to (a) pursue their arbitration claims against the Debtor and (b) to seek insurance coverage payments from the Debtors' D&O insurance policy (the "Relief from Stay Motion") [Docket Nos. 132-33, 136]. The

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

Relief from Stay Motion attached copies of the Former Officers' Indemnification Agreements as exhibits.

25.    On November 1, 2017, the Debtors and the Equity Committee opposed the Relief from Stay Motion [Docket Nos. 168-69].

26.    On November 21, 2017, the Debtors and the Equity Committee filed their *Joint Motion For Order Granting Standing to Pursue Claims for the Benefit of the Debtors' Estates and Approving Stipulation Between Debtors and Equity Committee Granting Standing* (the "Standing Motion") [Docket No. 243]. On December 19, 2017, the Court entered an order granting the Standing Motion  [Docket No. 357].

27.    On December 7, 2017, the Court temporarily denied the Relief From Stay Motion and set related deadlines (the "Temporary Order"). [Docket No. 302]. The Temporary Order required the Equity Committee to file an objection or adversary against the Former Officers by January 26, 2018.

28.    On December 19, 2017, the Equity Committee filed the *Application to Employ Solomon & Cramer LLP as Special Litigation Counsel to the Official Committee of Equity Security Holders Nunc Pro Tunc as of November 29, 2017 Filed by Stockholder Official Committee of Equity Security Holders* (the "Solomon Application") and documents in support thereof. [Docket Nos. 354-356]. The Equity Committee filed Solomon & Cramer LLP to handle the litigation against the Former Officers and other litigation. On January 19, 2018, the Court granted the Solomon Application. [Docket No. 405].

29.    On January 26, 2018, the Equity Committee filed an objection to the proofs of claim filed by the Former Officers and complaint against the Former Officers commencing Adversary Proceeding No. 1:18-ap-01011-MB (the "Adversary Proceeding Against The Former Officers").

30.    On February 12, 2018, the Former Officers filed so-called amendments to the Proofs of Claim (Claim Nos. 7-2 and 8-2) (the "Amended Proofs of Claim"), in which they purported to (a) increase the total face amount on each Proof of Claim to $1.5 million, and (b) assert, among other things, a new indemnity claim.

DENTONS US LLP
601 SOUTH FIGUEROA STREET , SUITE 2500
LOS ANGELES, CALIFORNIA  90017-5704
(213) 623-9300

31.    On February 20, 2018, the Debtors and the Equity Committee withdrew [Docket No. 452] the opposition [Docket No. 168], the joinder [Docket No. 169] and supplement thereto [Docket No. 422] to the Relief From Stay Motion (the "Withdrawal Documents").

32.    On February 21, 2018, the Formers Officers withdrew their Relief from Stay Motion. [Docket No. 453].

33.    On March 13, 2013, the Court entered the *Order Granting withdrawal of motion, Directing Mediation, and Other Relief.* [Docket No. 477].

c.    **The Equity Committee's Litigation Against Radians.**

34.    On December 5, 2017, the Equity Committee filed its objection to the proofs of claim filed by Radians and a complaint for duress, breach of the covenant of good faith and fair dealing, and avoidance and recovery of property transfer, which commenced Adversary Proc. No. 1:17-ap-01101-MB (the "Objection and Complaint").

35.    On January 5, 2018, Radians filed the motion to dismiss the Objection and Complaint (the "Motion to Dismiss"). [Docket No. 5].

36.    On January 12, 2018, the Equity Committee filed an opposition to the Motion to Dismiss, and Radians filed a reply thereto. [Docket Nos. 12 & 29].

37.    On February 12, 2018, the Court heard oral argument on the Motion to Dismiss. As of the filing of this Application, no decision has been rendered on this issue by the Court.

e.    **The Fee Applications.**

38.    On November 21, 2017, professionals employed in these Cases filed fee applications. [Docket No. 230, 231, 234, 235, 245, 246 & 247].

39.    On November 28, 2017, the Equity Committee and the Debtors filed the *Joint Objection to First and Final Application for Compensation and Reimbursement of Expenses for Province, Inc.* [Province] *as Financial Advisor to the Official Committee of Unsecured Creditors for the Period September 22, 2017 Through November 10, 2017 Filed by Stockholder Official Committee of Equity Security Holders* (the "Joint Objection to the Province Application"). [Docket No. 270].

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1   40.   On December 13, 2017, the Court entered an order awarding fees and expenses for

2   professionals. [Docket No. 337].

3   41.   On December 20, 2017, the Equity Committee, the Debtors, and Province entered

4   into a stipulation resolving the Joint Objection to the Province Application [Docket No. 358],

5   which the Court approved on December 22, 2017 [Docket No. 363].

6   ***d.     The Disclosure Statement Motion, the Joint Plan, Trust Agreement & Trustee***

7   ***Services Agreement.***

8   42.   On December 12, 2017, *the Debtors and the Equity Committee filed the Notice Of*

9   *Filing Of Initial Draft Of Debtors And Official Committee Of Equity Security Holders Joint Plan*

10  *Of Liquidation Dated December __, 2017* (the "December 12 Plan"). [Docket No. 334]. The

11  December 12 Plan attached as Exhibit 2 that certain trust agreement for the benefit of

12  shareholders (the "Trust Agreement"). *Id.*

13  43.   On December 15, 2017, the Debtors and the Equity Committee filed the *Motion*

14  *For Entry Of Order:  (1) Confirming That No Separate Disclosure Statement Is Required, Or,*

15  *Alternatively, Authorizing Movants To Convert Plan Into Combined Plan And Disclosure*

16  *Statement And Setting Combined Hearing; (2) Confirming That No Voting Is Required On Joint*

17  *Plan Of Liquidation Dated December __, 2017* (the "Disclosure Statement Motion"). [Docket No.

18  347]. On January 10, 2018, the Court entered an order granting the Disclosure Statement Motion.

19  [Docket No. 373].

20  44.   On January 12, 2018, the Debtors and the Equity Committee filed the *Debtors'*

21  *And Official Committee Of Equity Security Holders' Joint Plan Of Liquidation Dated January 12,*

22  *2018* (the "January 12 Plan"). [Docket No. 383].

23  45.   On January 22, 2018, the Equity Committee and the Debtors filed the *Motion For*

24  *Entry Of Order:  (1) Approving Agreement With Matthew Pliskin For Trustee Services; And (2)*

25  *Approving Trust Board Compensation* (the "Motion Approving the Trustee and Trust Board").

26  [Docket No. 417].

27

28

46.    On January 22, 2018, the Debtors and the Equity Committee filed the *Motion In Support Of Confirmation Of Debtors And Official Committee Of Equity Security Holders Joint Plan Of Liquidation Dated January 12, 2018* (the "Confirmation Motion"). [Docket No. 408].

47.    On February 5, 2018, Radians and the Former Officers filed objections to the January 12 Plan. [Docket No. 425 & 427].

48.    On February 9, 2018, the Debtors and the Equity Committee jointly filed the February 9 Plan. [Docket No. 438]. The same day, the Debtors and the Equity Committee filed the *Omnibus Reply to Objections to Debtors' and Official Committee of Equity Security Holders' Joint Plan of Liquidation Dated January 12, 2018* (the "Omnibus Reply"). [Docket No. 440].

49.    On February 13, 2018, the Court entered an order confirming the Plan (the "Confirmation Order"). [Docket No. 442].

50.    On February 15, 2018, the Court entered an order granting the Motion Approving the Trustee and Trust Board. [Docket No. 446].

## III.

## BRIEF NARRATIVE STATEMENT OF SERVICES RENDERED, TIME EXPENDED, AND FEES CHARGED FOR EACH BILLING CATEGORY

During the Covered Period, Dentons worked diligently and efficiently to advocate for the rights and interests of the Equity Committee while simultaneously protecting and preserving the Debtors' estate from unnecessary expenditure of assets and to obtain the highest possible amount from the Sale. When recording its time, Dentons places all time entries for fees into one of twenty-five categories. These categories consist of:    (1) Ironclad Equity Committee; (2) Preparation of Case; (3) Administration; (4) Asset Analysis Recovery; (5) Asset Deposition; (6) Assumption and Rejection of Leases and Contracts; (7) Avoidance Action Analysis; (8) Business Operation; (9) Claims Administration and Objections; (10) Corporate Governance and Board Matters; (11) Employee Benefits and Pensions; (12) Employment Fee Applications; (13) Employment and Fee Application Objections; (14) Financing and Cash Collateral; (15) Litigation Contested Matters and Adversary Proceedings; (16) Meetings and Communications with Creditors; (17) Non-Working Travel; (18) Plan and Disclosure Statement;

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

(19) Real Estate; (20) Relief from Stay and Adequate Protection; (21) Reporting; (22) Tax; (23) Valuation; (24) Radians Wareham Holdings; and (25) Post Effective Date Trustee Advice. The specific categories that Dentons placed time entries into it are set forth below.

Attached as **Exhibit "A"** to the annexed Declaration of Tania M. Moyron is a (i) summary of the fees sought in the Application, and (ii) a breakdown of time entries into project categories maintained by Dentons. Also included in **Exhibit "B"** is a summary of the hours and fees charged by each of Dentons' attorneys and paralegals that performed services for the Equity Committee. Dentons' blended rate for services rendered during the Covered Period is $514.25 per hour including paraprofessionals and $604.72 excluding paraprofessionals. Attached hereto as **Exhibit "C"** are copies of Dentons' billing statements summarizing and detailing both the services rendered on behalf of the Equity Committee, and expenses incurred in connection therewith. These billings reflect Dentons' time records kept in the ordinary course of business.

Inevitably, certain time entries do not fit into any one category, while other time entries cross over into more than one category. Dentons does its best to place time entries into categories, which accurately reflect the work performed. However, it is inevitable that there will be some time entries that have been placed into the incorrect category or where various time entries dealing with the same subject matter have been placed into multiple categories. References below made to the "Covered Period" shall mean the period of November 1, 2017 through February 28, 2018. Below is a brief explanation of the benefits Dentons' efforts have brought to the Equity Committee and the Debtors' estates.

### 1.    Administration

Services rendered in this category include, but are not limited to, various tasks that spanned a wide variety of topics throughout the four-month period in the Covered Period, including corporate matters, the Sale, the halting of trade and working with Financial Industry Regulatory Authority ("FINRA") regarding the same, monthly operating reports (the "MORs"), Directors and Officers Insurance Policy (the "D&O policy"), and tasks related to case management.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Specifically, during the Covered Period, Dentons prepared:  (i) subpoenas to Radians, Radians, Inc., Safety Supply, and its principal in connection with the Radians litigation; (ii) the memorandum of critical dates and deadlines in these Cases, updated the same, and communicated deadlines to the Equity Committee to keep its members apprised of the timeline of the Cases; (iii) notice of non-oppositions to Debtors' Name Change Motion and Debtors' Bonus and Vacation Motion; and (v) notice of lodgments of various orders.

Dentons reviewed and analyzed: (i) Skadden, Arps, Slate, Meagher & Flom LLP's ("Skadden") reports related to irregularities in the Debtors' financial reports; (ii) Skadden's prepetition and postpetition claims; (iii) issues related to the D&O policy, including D&O policy declarations and related excel sheet in connection with issues raised by Equity Committee; (iv) the UST's disbandment of the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (v) the Debtors' status reports; (vi) the Debtors' MORs and estimation of fees; (vii) BBI's Asset Purchase Agreement; (viii) documents related to the Cases and public information related to the Debtors, including the Debtors' Form 8-Ks; and (ix) dissolution of certificates to be filed and issues related thereto after confirmation of the February 9 Plan.

Dentons researched and analyzed issues related to the proposed record date, halting of trade, and distributions to equity holders. Dentons also researched and analyzed rules regarding trading during pendency of a bankruptcy case.

Dentons analyzed and responded to various issues concerning post-closing sale issues, the board, employee bonuses, the Radians' investigation, the February 9 Plan (and various versions thereof), and corporate matters.

Throughout the Covered Period, Dentons regularly discussed with the Equity Committee (i) the above matters, (ii) strategy in these Cases, (iii) bylaws, and (iv) incorporated its members' feedback to protect the rights and interests of the Equity Committee and the Debtors' estates. Dentons also discussed the majority above matters with Debtors' counsel and other professionals in these cases.

14

During the Covered Period, Dentons billed 41.9 hours (approximately 3.5% of the total services rendered) and incurred fees of $12,759.50 and expenses of $4,456.94 for total fees and expenses of $17,216.44 in this category.

2.      Asset Deposition

The majority of the services rendered in this category, include, but are not limited to, negotiating the Sale Order, appearing at the continued hearings related to the Sale Order, and analyzing issues related to the Sale. Specifically, during the Covered Period, Dentons prepared comments to the Sale Order and Asset Purchase Agreement and negotiated the final version of the Sale Order with all interested constituents, including BBI. Dentons also prepared the joint common interest and confidentiality agreement between the Debtors, the Independent Committee and the Equity Committee, analyzed versions of the same, corresponded with all professionals regarding the agreement, and executed the same.

Dentons reviewed and analyzed, and then responded to: (i) various versions of the Sale Order and other parties' suggested changes to prepare comments thereto; (ii) documents related to the Sale Order, such as the BBI Asset Purchase Agreement and the amendments thereto, as well as various public documents, such as the Form 8-Ks; (iii) various proofs of claim in relation to the amount of cash on hand and funds held in trust accounts for distribution to creditors and shareholders; (iv) the Bankruptcy Code's section 345 requirements regarding deposits of sale proceeds into accounts in connection with the account at First Republic Bank and Levene, Neale, Bender, Yoo and Brill L.L.P. acting as escrow agent and issues related thereto regarding interest rates; (v) certain "retained assets" to include certain claims and insurance policies and ICPW NV's equity in and claims against ICPW CA in the Asset Purchase Agreement; (vi) the Grainger supply agreements and issues related to the $820,000 reserve; (vii) the effect of Radians' claim on the sale's closing; (viii) post-closing issues generally; (ix) mechanics related to liquidation trusts; (x) the resignation of board members and various issues related to former officers, including bonus payment; and (xi) issues related to the CEDE & Co. holding shares and voting issues related to the February 9 Plan.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

1    During the Covered Period, Dentons regularly discussed the above matters with the Equity

2    Committee, as well as with professionals for the Debtors and the Creditors' Committee.

3    During the Covered Period, Dentons billed 35.0 hours (approximately 3.0% of the total

4    services rendered) and incurred fees of $20,092.50 and expenses of $0.00 for total fees and

5    expenses of $20,092.50 in this category.

6    3.    Assumption and Rejection of Leases and Contracts

7    Services rendered in this category during the Covered Period include, but are not limited

8    to, Dentons' review and analysis of the: (i) *Motions to Assume Leases and Contracts*; (ii) *Notice*

9    *of Omnibus Motion and Omnibus Motion for an Order Authorizing Debtors to Reject Contracts*

10   *Between Debtors and Grainger International, Inc. and Between Debtors and W.W. Grainger,*

11   *Inc.*; and (iii) *Order on Motion to Assume Lease or Executory Contracts*.

12   During the Covered Period, Dentons also discussed the above matters with the Equity

13   Committee.

14   During the Covered Period, Dentons billed 1.4 hours (approximately .1% of the total

15   services rendered) and incurred fees of $333.90 and expenses of $0.00 for total fees and expenses

16   of $333.90 in this category.

17   4.    Business Operation

18   Services rendered in this category during the Covered Period include, but are not limited

19   to, Dentons reviewing and analyzing and then responding to: (i) issues related to cash on hand in

20   connection with issues raised by Equity Committee; (ii) Radians' calculation of its fees and

21   claim; and (iii) Equity Committee's proposed changes to the Second Amendment Asset Purchase

22   Agreement regarding the Debtors' name change, and the Debtors' approval thereto.

23   During the Covered Period, Dentons also discussed the above matters with the Equity

24   Committee.

25   During the Covered Period, Dentons billed .8 hours (approximately .07% of the total

26   services rendered) and incurred fees of $360.05 and expenses of $0.00 for total fees and expenses

27   of $360.05 in this category.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

5.    <u>Claims Administration and Objections</u>

The majority of services rendered in this category relate to: (i) the claims of the Former Officers, Radians, Stubbs Alderton & Markiles, LLP ("Stubbs"), and Skadden; (ii) working closely with the Debtors regarding the Claims Protocol and analyzing and resolving claims in connection therewith; (iii) working with the Debtors to transfer litigation rights related to the Former Officers, and finalizing the Standing Motion; (iv) filing a complaint against the Former Officers; (v) negotiating settlements with Skadden and Stubbs; and (vi) preparing and finalizing objections, joinders, and other documents.

Specifically, services rendered in this category include, but are not limited to, addressing the following: certain scheduled claims and filed proofs of claims, and any objections related thereto; the Equity Committee's ability to pursue the Debtors' claims against creditors, directors and officers, other employees, and third parties; and certain protocols for claims and payment thereon in connection with the *Debtors' Motion For Authority To Pay Undisputed Pre-Petition Claims Of Solvent Estate And Establishing Protocol* (the "Claims Protocol Motion"). [Docket No. 241].

Specifically, during the Covered Period, Dentons prepared:  (i) correspondence explaining the scenarios regarding the Debtors' claim chart analyzing claims; (ii) exhibits to Solomon's employment application; (iii) correspondence with Debtors' counsel regarding claim amounts that the Equity Committee agreed or did not agree should be paid; (iv) the notice of lodgment and order approving stipulation in connection with the resolution of the fee objection to Province's fee application; (v) comments and revisions to the stipulation with Stubbs; (vi) comments and language with respect to the joint notice of resolution/settlement with Stubbs and with Skadden; (vii) correspondence outlining the timing of postpetition payments to Stubbs and Skadden in relation to Court's order; (viii) the joinder to Debtors' objection to Former Officers' claims and request for arbitration; (ix) comments to draft waterfall analysis; (x) notices of non-opposition to Debtors' Bonus and Vacation Motion and Debtors' Name Change Motion; (xi) the proposal related to objections to professional fees, including Craig-Hallum; (xii) the Standing Motion

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

(xiii) the Withdrawal Documents regarding Former Officers; and (xiv) certification of trust documents for the creation of a trust account with JPMorgan.

Dentons reviewed and analyzed:  (i) various proofs of claim, including, but not limited to, the claims filed by Radians, Chang Bang, Stubbs, Skadden, the Former Officers, and ASM Capital/Werner Logistics; (ii) the Debtors' claims chart, the proposed amounts to be paid on each claim, and discrepancies between scheduled claims and filed proofs of claim; (iii) the Standing Motion granting standing to Equity Committee to pursue claims against the Former Officers; (iv) various claims objections; (v) the order granting the Claims Protocol Motion, as well as the notice and revised notice related thereto; (vi) various spreadsheets detailing fees billed by Province and potential settlement related to the objection; (vii) issues related to Skadden's services prepetition and postpetition, as well as a potential settlement opportunity; (viii) the proposal regarding payment of claims and disbandment of Creditors' Committee; (ix) the potential settlement opportunity and proposed stipulation with Stubbs in relation to possible waiver of future claims and/or release from past liability; (x) various claims against the Debtors' directors and officers in relation to the D&O policy; (xi) notice of reduction of insider compensation and form to execute the same; (xii) the Bonus and Vacation Motion; (xiii) correspondence regarding Radians' legal fees; and (xiv) administrative claims bar date.

Additionally, Dentons researched and analyzed: (i) the *res judicata effect* of a final fee order on possible claims against professionals working on behalf of the Debtors; (ii) enforceability of arbitration provisions in bankruptcy cases in connection with the Relief from Stay Motion filed by the Former Officers; (iii) requirements for lender liability under Texas and California law; and (iv) bankruptcy cases discussing payment of bonuses to Debtors' employees and related standards.

Dentons analyzed the complaint against Former Officers prepared by Solomon for breach of fiduciary duties, civil Racketeer Influenced and Corrupt Organizations ("RICO") Act violations, breach of contract, and faithless servant claims, as well as for declaratory judgment. Dentons provided certain comments to Solomon regarding same and facilitated the filing of the complaint.

Dentons regularly corresponded and advised the Equity Committee regarding all of the aforementioned matters, as well as corresponded with professionals for the Debtors and all other professionals representing the various parties referenced above.

Dentons attended and participated at hearings on all of the foregoing matters.

During the Covered Period, Dentons billed 65.8 hours (approximately 5.6% of the total services rendered) and incurred fees of $29,900.10 and expenses of $2,238.86 for total fees and expenses of $32,138.96 in this category.

### 6.    Corporate Governance and Board Matters

Services rendered in this category include, but are not limited to, addressing the following: corporate governance and the board of directors. Specifically, during the Covered Period, Dentons:  (i) corresponded regarding resignation of and changes regarding the board of directors with the Equity Committee; and (ii) conducted research regarding ICPW Nevada's corporate history and documents related thereto.

During the Covered Period, Dentons billed 2.7 hours (approximately .2% of the total services rendered) and incurred fees of $1,013.15 and expenses of $0.00 for total fees and expenses of $1,013.15 in this category.

### 7.    Employee Benefits and Pensions

During the Covered Period, Dentons' services rendered in this category are as follows: (i) reviewed and responded to correspondence regarding the Debtors' payment and bonuses to its employees; and (ii) corresponded and advised the Equity Committee regarding the processes related to the cash payment of bonuses to the Debtors' employees.

During the Covered Period, Dentons billed .7 hours (approximately .06% of the total services rendered) and incurred fees of $490.00 and expenses of $0.00 for total fees and expenses of $490.00 in this category.

### 8.    Employment Fee Applications

Services rendered in this category include, but are not limited to, addressing the following: issues related to the employment of professionals within these Cases and attending hearings related to the employment of professionals. Specifically, during the Covered Period, Dentons

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

prepared:    (i) supplemental declarations in support of Dentons' employment application; (ii) correspondence to the UST regarding supplemental declaration and proposed order on Dentons' employment; (iii) language for proposed order regarding Stubbs' employment; (iv) employment application for Michael Schwarzmann ("Schwarzmann") as financial advisor, and declarations of Jarus Scott and Schwarzmann in support thereof; (v) declaration that no party requested a hearing various applications, including employment application for Dentons and Schwarzmann; (vi) Dentons' fee application and declarations in support thereof, as well as proposed order granting the same; (vii) correspondence to the Equity Committee regarding various professionals' fees and certain issues related thereto; (viii) employment application of Solomon as special counsel to the Equity Committee, as well as declarations in support thereof and notice; (ix) notice of lodgment of order approving employment of Solomon and order regarding the same; (x) application to expand the scope of Dentons' retention as counsel to Equity Committee; (xi) applications of Ruegger and Solomon to appear *pro hac vice*; (xii); motion to approve agreement with trustee of trust; (xiii) memorandum of critical deadlines; and (xiv) comments to application of Skadden and declarations thereto related to Skadden's employment application.

Dentons reviewed and analyzed (i) changes to supplemental declarations in support of employment applications, including Dentons' supplemental declaration, and subsequent withdrawal of UST's limited objections to employment applications; (ii) the employment and fee applications of Stubbs, Radians, Levene, Neale, Bender, Yoo & Brill LLP ("LNBYB"), Brown Rudnick LLP, Craig-Hallum, and Province, and certain issues related thereto; (iii) Skadden's proposed employment application, including the scope of employment, reports prepared by Skadden; (iv) motion to upstream funds for payment of the Equity Committee's fees and expenses and the order thereon; (v) various fee notices; (vi) order granting application to hear application to employ accountant on shortened basis; (vii) order granting applications for approval of fees and reimbursement of expenses; (viii) declaration of non-opposition to employment of Solomon & Cramer LLP ("Solomon") as special counsel to the Equity Committee; and (ix) various certificates of notice.

106974306\V-1

1    Dentons corresponded and advised the Equity Committee regarding all of the

2    aforementioned matters, as well as corresponded with professionals for the Debtors and the

3    Creditors' Committee with respect to certain matters.

4    During the Covered Period, Dentons billed 101.1 hours (approximately 8.5% of the total

5    services rendered) and incurred fees of $37,831.15 and expenses of $1,576.60 for total fees and

6    expenses of $39,407.75 in this category.

7    9.    Employment and Fee Application Objections

8    The majority of services rendered in this category include, but are not limited to,

9    addressing multiple issues related to objections of the employment of certain professionals and

10   attending hearings related to the employment of professionals. Specifically, during the Covered

11   Period, Dentons prepared:   (i) the Joint Objection to the Province Application and for oral

12   argument for hearing thereon; (ii) the stipulation resolving the Joint Objection to the Province

13   Application, and the notice of lodgment of order regarding the same; (iii) the declaration and

14   application for Solomon as special litigation counsel, as well as notice of the same;

15   (iv) correspondence to Court, per Court's request, attaching spreadsheets related to Province's fee

16   application; (v) various orders; (vi) the limited objection to Stubbs' fee application and

17   reservation of rights; and (vii) stipulation as to reduction of Creditors' Committee fee application.

18   Dentons reviewed and analyzed: (i) issues related to Province's employment, including

19   the Province's reply to the Debtors and Equity Committee's objection to its employment;

20   (ii) Province's fee application and billing invoices; (iii) Province's offer and stipulation to settle

21   fee dispute; (iv) order approving stipulation with Province; (v) various parties' comments

22   regarding Province's offer and stipulation to settle fee dispute; (vi) notice of lodgment of order

23   pertaining to payment of Province by year-end; (vii) the order and proposed order regarding

24   Stubbs' employment; (viii) language of Stubb's employment application; (ix) the Standing

25   Motion related to Former Officers; and (x) the stipulation with Brown Rudnick LLP related to its

26   first fee application.

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters, as well as corresponded with professionals for the Debtors and the Creditors' Committee with respect to certain matters.

During the Covered Period, Dentons billed 43.3 hours (approximately 3.7% of the total services rendered) and incurred fees of $21,805.75 and expenses of $378.20 for total fees and expenses of $22,183.95 in this category.

### 10.    Litigation Contested Matters and Adversary Proceedings

The majority of services rendered in this category include, but are not limited to: (i) litigation in the parent chapter 11 cases and the adversary proceedings with respect to Radians and the Former Officers, including the preparing and filing of the Objection and Complaint against Radians; (ii) attending hearings related to the Former Officers and Radians, such as (a) the hearing on the Former Officers Relief from Stay Motion, and (b) the hearing on the Standing Motion; (iii) attending and taking the deposition of Radians' principal; and (iv) gathering discovery in furtherance of the litigation against Radians.[7]

Specifically, during the Covered Period, Dentons prepared: (i) the Rule 2004 motion against Radians and declaration in support thereof, as well as proposed order and stipulation between Equity Committee and Radians regarding the same; (ii) the outline in preparation for deposition of Radians' principal; (iii) the status report for Equity Committee regarding investigation of Radians; (iv) correspondence with Equity Committee regarding Radians; (v) subpoenas to Radians' principal and Radians regarding deposition; (vi) correspondence to various parties regarding subpoenas to Radians; (vii) the Objection and Complaint against Radians setting forth all causes of action therein; (viii) the outline of arguments in preparation for hearing on the Relief from Stay Motion; (ix) correspondence to the Equity Committee detailing hearing on Relief from Stay Motion; (x) correspondence to the Equity Committee regarding logistics of motion to assign the Debtors' estates' rights to the Equity Committee; (xi) stipulation assigning Debtors' estates' rights to Equity Committee regarding claims against the Former

---

[7] Dentons opened up a matter specifically for Radians (matter number ending in 24). Prior to the new category being opened, certain time related to Radians was captured in this litigation category.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

Officers; (xii) supplement to opposition and joinder regarding the Relief from Stay Motion, as well as supplement to not compel arbitration of the Former Officers' employment claims; (xiii) correspondence to the Equity Committee detailing procedures for adversary proceedings and contested matters; (xiv) application and order in support of application for *proc hac vice* admission of Ruegger; (xv) certain adversary proceeding coversheets and summonses in the litigation against Radians and the Former Officers; (xvii) stipulation regarding draws on D&O Policies; (xvi) Disclosure Statement Motion; (xvii) tax provisions for insertion into February 9 Plan and various versions of same; (xviii) correspondence with insurance carrier regarding D&O policies; (xix) joint status report; and (xx) the proposed joint privilege agreement.

Dentons reviewed and analyzed: (i) Radians' proofs of claim; (ii) the proposed comments to the Bankruptcy Rule 2004 stipulation with Radians; (iii) the Final DIP Order in connection with issues related to the "lookback period" regarding claims against Radians; (iv) discovery produced by Radians and deposition transcript of Radians' principal; (v) Radians' motion to dismiss the Equity Committee's complaint against Radians; (vi) Stubbs' memorandum regarding BDO, forensic accountants analysis, and internal reports from Stubbs; (vii) Stubbs' engagement terms in its employment application; (viii) proposed stipulated order approving employment of Stubbs; (ix) potential claims against the Former Officers, as well as background material on the Debtors' incorporation documents, company bylaws, officers' declarations, Form 8-K, merger documents, D&O policy and excess policy, notice of claims against policies, and other various documents to provide analysis regarding claims against the Former Officers; (x) the reply filed by the Former Officers in support of its Relief from Stay Motion, as well as pleadings related to the withdrawal thereof; (xi) various issues related to arbitration proceedings requested by the Former Officers; (xii) various new claims for indemnity asserted by the Former Officers and issues related thereto; (xiii) potential issues of standing regarding preconfirmation litigation; (xiv) memorandum and joint privilege and common interest agreement; (xv) timeline of events created by Craig-Hallum; (xvi) background materials regarding Craig-Hallum's marketing efforts; (xvii) reports prepared by Skadden, and issues related to the SEC; (xviii) the SEC subpoena; (xix) documents produced by Skadden; (xx) ability to object to prepetition lenders'

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

23

claims in bankruptcy court and to combine recovery with Section 549 recovery; (xxi) proposed Plan and various issues related thereto; (xxii) trust agreement regarding qualification of liquidating trust and escrow account for certain creditor claims separate from liquidating trust; (xxiii) motion to upstream funds between the Debtors for payment of the Equity Committee's fees and expenses and issues related thereto; (xxiv) post-sale issues such as the post-sale bank account and delegation of rights; (xxv) the statement of closing; (xxvi) the order granting joint motion for order granting the Equity Committee standing to pursue claims against various entities on behalf of the Debtors; and (xxvii) the motion to dismiss adversary proceeding against the Former Officers.

Additionally, Dentons researched and analyzed caselaw regarding:  (i) the disallowance of claims and assignments; (ii) lender liability claims in relation to California's choice-of-law analysis; (iii) contractual implied covenant of good faith and fair dealing; (iv) equitable disallowance; (v) use of Bankruptcy Rule 2004 examination material in other litigation; (vi) civil tort claims for honest services and breach of duty of good faith; (vii) motions for relief from automatic stay in connection with arbitration clauses; (viii) theories of economic duress; (ix) prepetition release regarding whether it prevents the Equity Committee from pursuing certain claims; (x) possible civil RICO Act violations against Former Officers; (xi) estimation of the claims of the Former Officers, as well as supporting documents; and (xii) gross negligence and willful misconduct as exceptions to indemnification clauses in connection with Radians' litigation.

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters, as well as corresponded with professionals for the Debtors and the Creditors' Committee with respect to certain matters. Dentons also specifically corresponded with Radians' counsel regarding a nondisclosure agreement, confidentiality, logistics, and other issues related to document production.

Dentons attended and participated at hearings on hearings on all of the foregoing matters.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

24

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    During the Covered Period, Dentons billed 279.4 hours (approximately 23.6% of the total

2    services rendered) and incurred fees of $137,792.45 and expenses of $15,271.44 for total fees and

3    expenses of $153,063.89 in this category.

4             11.    <u>Meetings and Communications with Creditors</u>

5    During the Covered Period, Dentons (i) reviewed and responded to correspondence from

6    Eric Furey regarding proceedings in Court; and (ii) corresponded with Capital Management

7    regarding the results of the sale of the Debtors' assets.

8    Dentons corresponded and advised the Equity Committee regarding all of the

9    aforementioned matters.

10    During the Covered Period, Dentons billed .2 hours (approximately .02% of the total

11    services rendered) and incurred fees of $140.00 and expenses of $0.00 for total fees and expenses

12    of $140.0 in this category.

13             12.    <u>Non-Working Travel</u>

14    During the Covered Period, Dentons did not bill for the fees incurred in this category per

15    its agreement with the Equity Committee.

16             13.    <u>Plan and Disclosure Statement</u>

17    The majority of services rendered in this category relate to confirmation of the February 9,

18    2018 Plan and all motions and documents and issues related thereto. Specifically, during the

19    Covered Period, Dentons:   (i) worked closely with the Debtors to prepare and finalize the

20    Confirmation Motion, the February 9 Plan (and prior versions thereto), the Trust Agreement, and

21    the Trustee Services Agreement; (ii) prepared the Disclosure Statement Motion; (iii) prepared the

22    Motion Approving the Trustee and Trust Board and the related Trustee Services Agreement;

23    (iv) worked with Debtors' corporate counsel to halt trade and coordinate the same with FINRA;

24    (v) prepared the Omnibus Reply and corresponding with professionals to address various

25    objections to the February 9 Plan; and (vi) addressed related issues to the foregoing.

26    Dentons reviewed and analyzed: (i) the February 9 Plan (and prior versions) and the Trust

27    Agreement; (ii) issues related to voting not being required in connection with the February 9 Plan

28    (and prior versions); (iii) issues related to the Disclosure Statement Motion; (iv) issues related to

the timing of the disclosure statement and the plan; (v) issues related to shareholder class options; (vi) SEC concerns and issues related to counsel to interface with SEC to determine record date and halting trade; (vii) issues related to unsecured claims, transfer of assets to trust for the benefit of Class 2 only, and other issues related thereto; (viii) issues related to the record date and trading limits; (ix) issues related to hiring professionals regarding the trust agreement and implementing the trust; (x) issues related to postpetition interest on unsecured claims, as well as share trading termination and share cancellation; (xi) the Disclosure Statement Motion; (xii) FINRA and trading cancellation issues; (xiii) estimation of certain claims for purposes of Plan confirmation; (xiv) issues related to current shareholder list and rationale for restricted stock concentration of holdings; (xv) proposed amount to be paid to the trustee and trust board; (xvi) stock incentive plan and stock option termination issues, as well as possible treatment under the Plan; (xvii) issues related to discharge of governmental entities; (xviii) Radians' and Former Officers' objections to Plan, including Radians' claim for equitable entitlement; and (xix) trust certification agreement.

Additionally, Dentons researched and analyzed:  (i) requirements for shareholders to accept the Plan under circumstances of impairment; (ii) setting a record date in connection with the February 9 Plan; (iii) equity holder serving as liquidating trust trustee and/or board member of the trust; (iv) issues related to non-impairment; (v) solicitation of plans; (vi) FINRA and SEC rules related to notice and record date; (vii) plan confirmation issues; (viii) new claims and amended proofs of claim; (ix) claims for indemnification; and (x) secured lender impairment.

Dentons corresponded with the Equity Committee and professionals regarding, among other things:  (i) voting and non-voting requirements in connection with the February 9 Plan and prior versions; (ii) the motion to upstream funds; (iii) the February 9 Plan and prior versions; (iv) additional draws on the D&O Policies; (v) issues related to payment of postpetition interest on claims; (vi) CEDE & Co. and issues related thereto; (vii) the employment application of Solomon and declaration in support thereof; (viii) trading halt; (ix) summary of hearing on objections to Plan; (x) outline for hearing on confirmation of the Plan; and (xi) comments to the proposed Form 8-K.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

1    Dentons corresponded and advised the Equity Committee regarding all of the

2    aforementioned matters, as well as corresponded with professionals for the Debtors and the

3    Creditors' Committee with respect to certain matters. Dentons also discussed certain issues with

4    FINRA representatives and SEC representatives.

5    Dentons attended and participated at hearings on hearings on all of the foregoing matters.

6    During the Covered Period, Dentons billed 322.0 hours (approximately 27.2% of the total

7    services rendered) and incurred fees of $180,029.35 and expenses of $673.60 for total fees and

8    expenses of $180,702.95 in this category.

9    14.   Relief from Stay and Adequate Protection

10    Services rendered in this category include, but are not limited to, addressing the following:

11    the Relief from Stay Motion and objections related thereto. Specifically, during the Covered

12    Period, Dentons prepared:  (i) the joinder to Debtors' opposition to the Motion for Relief from

13    Stay; (ii) prepared correspondence to Debtors' counsel regarding analysis of issues related to

14    Motion for Relief from Stay; (iii) proposed order on the Motion for Relief from Stay; (iv) notice

15    of lodgment of order temporarily denying and continuing motion of Former Officers for relief

16    from automatic stay; and (v) comments to proposed stipulation related to Former Officers'

17    request for D&O insurance.

18    Dentons reviewed and analyzed:  (i) the opposition to the Motion for Relief from Stay, as

19    well as joinder thereto and various other issues related thereto; and (ii) proposed stipulation

20    resolving issues related to Former Officers' request for request for D&O insurance.

21    Additionally, Dentons researched and analyzed arbitration clauses in certain employment

22    agreements of request for Former Officers.

23    Dentons corresponded and advised the Equity Committee regarding all of the

24    aforementioned matters, as well as corresponded with professionals for the Debtors and the

25    Creditors' Committee with respect to certain matters.

26    Dentons attended and participated at hearings on all of the foregoing matters.

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

1    During the Covered Period, Dentons billed 7.6 hours (approximately .6% of the total

2    services rendered) and incurred fees of $3,058.05 and expenses of $0.00 for total fees and

3    expenses of $3,058.05 in this category.

4    15.    Radians Wareham Holdings.

5    Services rendered in this category include, but are not limited to, addressing litigation

6    against Radians and related issues. Specifically, during the Covered Period, Dentons prepared the:

7    (i) Objection and Complaint against Radians setting forth all causes of action therein; (ii) *pro hac*

8    *vice* application for Ruegger; (iii) opposition to Radians' motion to dismiss; (iv) joint status report

9    on litigation issues with Radians; (v) outline in preparation for hearing on motion to dismiss;

10    (vi) discovery requests to Radians' regarding estimation motion; (vii) estimation motion

11    regarding Radians' claim and memorandum in support thereof; and (viii) correspondence to

12    Radians regarding billing invoices for estimation motion.

13    Dentons reviewed and analyzed: (i) Capital One loan agreement; (ii) the declaration of

14    Geoff Gruelich; (iii) Radians' motion to dismiss and memorandum in support thereof, and

15    amendments thereto; (iv) Radians' reply to Equity Committee's response to motion to dismiss;

16    (v) Radians' proofs of claims; (vi) Radians' objection to confirmation of the Plan; and (vii) claims

17    estimation motion in relation to Radians' motion to dismiss.

18    Additionally, Dentons researched and analyzed: (i) economic duress in relation to

19    acceleration clauses; (ii) lender liability issues; (iii) jury demand issues; (iv) duty of good faith in

20    relation to acceleration clauses; (v) Texas Uniform Commercial Code language; (vi) standing and

21    voidability of prepetition releases regarding motion to dismiss; (vii) waiver issues related to

22    lender; (viii) standards for motion to dismiss; (ix) affiliate liability; (x) issues related to blocked

23    account; (xi) Court's discretion to not enforce arbitration clauses in noncore actions;

24    (xii) fraudulent transfer and insolvency issues; (xiii) bankruptcy policy; (xiv) indemnity

25    argument; (xv) local bankruptcy rules regarding estimation procedures and evidentiary standards,

26    as well as precedent for estimation motions; and (xvi) willful misconduct in relation to estimation

27    motion.

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

Dentons corresponded and advised the Equity Committee regarding all of the aforementioned matters, as well as corresponded with professionals for the Debtors and the Creditors' Committee with respect to certain matters.

During the Covered Period, Dentons billed 280.6 hours (approximately 23.7% of the total services rendered) and incurred fees of $169,050.05 and expenses of $449.71 for total fees and expenses of $169,499.76 in this category.

## IV.

## ADDITIONAL REQUIRED INFORMATION

**A. Detailed Listing of All Time Spent by the Professional on the Matter for Which Compensation is Sought.**

As discussed above, attached as **Exhibit B** is a summary of the hours and fees charged by each of Dentons' attorneys and paralegals that performed services for the Equity Committee.

**B. Detailed Listing of Expenses by Category.**

Attached hereto as **Exhibit "D"** to the annexed Declaration of Tania M. Moyron is a summary listing by category and an itemization of all expenses that Dentons advanced on behalf of the Equity Committee during these Cases. These include Dentons' expenses incurred in using Lexis and Westlaw, as well as filing fees with USA Legal, Inc. and various outside professional services such as Public Access to Court Electronic Records ("PACER"). When Dentons uses Lexis and Westlaw, the user inputs the client account number or case name for the research to be performed. Each month, Dentons receives a Lexis and Westlaw invoice which reflects both an aggregate total of charges incurred by Dentons for the month, as well as a break out of the specific charges incurred on behalf of each client (identified by name or client account number). Similarly, Dentons receives an invoice from USA Legal, Inc. and PACER. The amount(s) reflected on the monthly invoice is then entered by Dentons staff to the appropriate client account number as identified on the invoice. There is no profit or other additional charge added to the amount reflected in the Lexis, Westlaw, USA Legal, Inc., and PACER invoice.

106974306\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**C. Description of Professional Education and Experience.**

Dentons is currently comprised of 8,000+ lawyers.  Dentons' Restructuring, Insolvency, and Bankruptcy practice is comprised of attorneys who specialize in and limit their practice to matters of insolvency, reorganization, and bankruptcy law, and commercial litigation matters, and are well qualified to represent the Equity Committee.

Attached to the annexed Declaration of Tania M. Moyron as **Exhibit "E"** is a copy of Dentons' firm résumé. Résumés reflecting the background and qualifications of each of the attorneys who rendered services to and on behalf of the Equity Committee are also attached collectively to the annexed Declaration of Tania M. Moyron as **Exhibit "E"**.

**D. Source and Amount of Cash Available to Pay Dentons' Allowed Fees and Expenses.**

Dentons seeks Court authority to be paid the whole amount or a partial amount from the "Remaining Estate Funds" in the amount of $13,829,001, as of December 31, 2017, as set forth in the *Debtors and Official Committee of Equity Security Holders Joint Plan of Liquidation Dated February 9, 2018* [Docket No. 438], which are being maintained by Levene, Neale, Bender, Yoo & Brill L.L.P. (the "Escrow Agent") at First Republic Bank in a segregated trust account.

## V.

## STANDARD OF LAW

In determining the amount of allowable fees under § 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *In re Manoa Finance Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988); *see Meronk v. Arter & Hadden, LLP (In re Meronk),* 249 B.R. 208, 213 (B.A.P. 9th Cir. 2000) (reiterating that *Manoa Finance* is the controlling authority and characterizing the factor test[8] identified in *Johnson v. Georgia Highway*

---

[8] The original twelve Johnson/Kerr factors were: (1) time and labor required, (2) novelty and difficulty of the questions involved, (3) skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) amount involved and results obtained, (9)

106974306\V-1

1  *Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and *Kerr v. Screen Extras Guild, Inc.*, 526 F. 2d 67,

2  70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976), as an "obsolete laundry list" now subsumed

3  within more refined analyses).

4  The Supreme Court has evaluated the lodestar approach and endorses its usage. In

5  *Hensley v. Eckerhart*, 461 U.S. 424 (1983), a civil rights case, the Supreme Court held that while

6  the Johnson factors might be considered in setting fees, the lodestar amount subsumed many of

7  those factors. *Hensley*, at 434, n. 9.[9] The following year, another civil rights case, *Blum vs.*

8  *Stenson*, 465 U.S. 886 (1984), provided the so-called lodestar calculation: "The initial estimate of

9  a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably

10  expended on the litigation times a reasonable hourly rate . . . . Adjustments to that fee then may

11  be made as necessary in the particular case." *Blum*, at 888.

12  Then, in 1986, the Supreme Court more explicitly indicated that the factors relevant to

13  determining fees should be applied using the lodestar approach, rather than an *ad hoc* approach.

14  While holding that the attorney's fee provision of the Clean Air Act, 42 U.S.C. § 7401, *et seq.*,

15  should be interpreted like that of the Civil Rights Act, the Supreme Court expressly rejected the

16  ad hoc application of the factors set forth in *Johnson* and thus *Kerr*, stating that "the lodestar

17  figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's

18  fee . . . ." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66

19  (1986); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("we have said repeatedly that

20  the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number

21  of hours reasonably expended on the litigation times a reasonable hourly rate").

22  While the lodestar approach is the primary basis for determining fee awards under the

23  federal fee-shifting statutes and Bankruptcy Code, some of the *Johnson/Kerr* factors, previously

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

---

25  experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) nature and length of the professional relationship with client, and (12) awards in similar cases.

26  [9] For discussion of the *Johnson/Kerr* subsumed factors, see *Morales v. City of San Rafael*, 96 F.3d 359, 364, n.9 (9th

27  Cir. 1996) ("among the subsumed factors ... are:  (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained"); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993)

28  (extending *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), which held that sixth factor "whether the fee is fixed or contingent, may not be considered in the lodestar calculation").

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

1    applied in an ad hoc fashion, can still apply in calculating the appropriate hourly rate to use under

2    the lodestar approach. *In re Charles Russell Buckridge*, 367 B.R. 191, 201 (C.D. Cal. 2007) ("a

3    court is permitted to adjust the lodestar up or down using a multiplier based on the criteria listed

4    in §330 and its consideration of the *Kerr* factors not subsumed within the initial calculations of

5    the lodestar"); *see also Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005) (court may "adjust the

6    lodestar amount after considering other factors that bear on the reasonableness of the fee");

7    *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991)

8    ("Although *Manoa* suggests that starting with the 'lodestar' is customary, it does not mandate

9    such an approach in all cases.... Fee shifting cases are persuasive, but due to the uniqueness of

10    bankruptcy proceedings, they are not controlling").

11        Dentons respectfully submits that the hourly rates for its attorneys and paraprofessionals

12    are reasonable and appropriate in the relevant community and in view of the circumstances of this

13    case and the successful results achieved on behalf of the Equity Committee thus far by Dentons.

14    Therefore, for the reasons set forth above, Dentons respectfully submits that the foregoing

15    establishes that Dentons' requested fees and expenses are reasonable and appropriate and should

16    be approved by the Court.

## VI.

### CONCLUSION

20        WHEREFORE, the Equity Committee respectfully requests the entry of an order:

21    (i) approving first and final allowance of fees of $614,656.00 and expenses of $25,045.35 for total

22    fees and expenses of $639,701.35 for the period November 1, 2017 through February 28, 2018;

23    (ii) approving final allowance of the interim awards of fees of $222,730.30 and expenses of

24    $4,714.24 in costs for the period September 22, 2017 through October 31, 2017, as set forth

25    Dentons' First Interim Application, which were approved on an interim basis by Order entered on

26    December 13, 2017 [Docket No. 337]; (iii) directing the Escrow Agent to pay Dentons its unpaid

27    allowed fees and expenses in the total amount of $639,701.35; and (iv) granting such other and

28    further relief as the Court deems is just and proper.

32

1

2   Dated:  April 3, 2018

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA A. MOYRON

By:    /s/Tania M. Moyron
Tania M. Moyron, Counsel to the
Official Committee of Equity Holders

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

### DECLARATION OF TANIA M. MOYRON

I, Tania M. Moyron, hereby declare as follows:

1.      I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2.      I am an attorney at Dentons US LLP ("Dentons"), bankruptcy counsel to the Official Committee of Equity Security Holders (the "Equity Committee"). I am an attorney licensed to practice law in the State of California, in the United States District Court and the Bankruptcy Courts for the Southern, Central, Northern and Eastern Districts of California, and in the United States Court of Appeals for the Ninth Circuit.

3.      This declaration is submitted in support of the *Second Interim and Final Application of Dentons US LLP for Approval of Fees and Reimbursement of Expenses* (the "Fee Application") for services rendered and expenses incurred for the period of November 1, 2017 through February 28, 2018. I am familiar with Local Bankruptcy Rule 2016-1.

4.      To the best of my knowledge, information and belief, all of the matters stated in the Fee Application are true and correct, and the Fee Application complies with all applicable statutes, rules, regulations, and procedures, including Local Bankruptcy Rule 2016-1.

5.      The amounts requested in the Fee Application for compensation of fees and reimbursement of expenses incurred are based on Dentons' business records which are kept and maintained by Dentons in the ordinary course of Dentons' business.

6.      All expenses for outside services such as filing fees, photocopying services, messenger and express mail services, postage, and research services (Lexis and Westlaw) for which Dentons requests reimbursement are the actual expenses incurred by Dentons for such services, and Dentons does not seek any additional amounts or profits with respect thereto.

7.      Attached as **Exhibit "A"** is a (i) summary of the fees sought in the Application, and (ii) a breakdown of time entries into project categories maintained by Dentons.

8.      Attached as **Exhibit "B"** is a summary of the hours and fees charged by each of Dentons' attorneys and paralegals that performed services for the Equity Committee.

9.      Attached hereto as **Exhibit "C"** are copies of Dentons' billing statements that

106974306\V-1

1 match the number assigned to each category, summarizing and detailing both the services

2 rendered on behalf of the Equity Committee, and expenses incurred in connection therewith.

3      10.    Attached hereto as **Exhibit "D"** is a summary listing by category and an

4 itemization of all expenses that Dentons advanced on behalf of the Equity Committee during

5 these Cases.

6      11.    Attached hereto as **Exhibit "E"** is a copy of Dentons' firm résumé. Résumés

7 reflecting the background and qualifications of each of the attorneys who rendered services to and

8 on behalf of the Equity Committee are also attached collectively as **Exhibit "E"**.

9      12.    I declare and verify under penalty of perjury that the foregoing is true and correct

10 to the best of my knowledge.

11     Executed on this 3rd day of April 2018, at Los Angeles, California.

12

13                By: */s/ Tania M. Moyron*

                 Tania M. Moyron

14                  *Counsel to the Official Committee of*

                 *Equity Holders*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

106974306\V-1