Samuel R. Maizel (SBN 189301)
samuel.maizel@dentons.com
Tania M. Moyron (SBN 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

Attorneys to the Official Committee
of Equity Security Holders

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>ICPW Liquidation Corporation, a California corporation,[1]<br><br>   Debtor and Debtor in Possession.<br><br>In re:<br><br>ICPW Liquidation Corporation, a Nevada corporation,[2]<br><br>   Debtor and Debtor in Possession.<br><br>Affects:<br><br>☒ Both Debtors<br><br>☐ Ironclad Performance Wear Corporation, a California corporation<br><br>☐ Ironclad Performance Wear Corporation, a Nevada corporation. | Case No. 1:17-bk-12408-MB<br>Jointly administered with:<br>Case No. 1:17-bk-12409-MB<br><br>Chapter 11<br><br>**SECOND AND FINAL APPLICATION OF MICHAEL D. SCHWARZMANN FOR APPROVAL OF FEES AND REIMBURSEMENT OF EXPENSES; DECLARATION OF MICHAEL D. SCHWARZMANN IN SUPPORT THEREOF**<br><br>Hearing:<br>Date: April 24, 2018<br>Time: 2:30 p.m.<br>Place: Courtroom "303"<br>   21041 Burbank Blvd.<br>   Woodland Hills, CA |

Michael D. Schwarzmann ("Schwarzmann"), financial advisor to the Official Committee of Equity Security Holders (the "Equity Committee") duly appointed and acting in the above-

---

[1] Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2] Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

1

captioned bankruptcy case of ICPW Performance Wear Corporation, a Nevada corporation, ("ICPW Nevada"), jointly administered with the above-captioned bankruptcy case of Ironclad Performance Wear Corporation, a California corporation ("ICPW California)" and collectively with ICPW Nevada, the "Debtors" or the "Cases"), respectfully submits this *Second and Final Application of Michael D. Schwarzmann for Approval of Fees and Reimbursement of Expenses* (the "Second Fee Application") for services rendered and expenses incurred by Michael D. Schwarzmann ("Schwarzmann") for the period of November 4, 2017 (the date of the prior interim fee application) through April 24, 2018 (the "Application Period"). Any opposition or responsive paper must be filed and served at least fourteen (14) days prior to the hearing on this Fee Application in the form required by Local Bankruptcy Rule 9013-1(f).

**I.**

**FEES AND EXPENSES INCURRED AND NOTICE**

**A.    Request for Allowance and Payment of Fees and Reimbursement of Expenses.**

During the Application Period of November 4, 2017 through April 24, 2018, Schwarzmann incurred, or will incur[3], total fees of $6,545.00 and total expenses of $134.78 for total fees and expenses of $6,679.78. Schwarzmann did not receive any retainer from the Equity Committee or either of the Debtors. By the *First Interim Application of Michael D. Schwarzmann for Approval of Fees and Reimbursement of Expenses* (the "First Interim Application") Schwarzmann sought and received Court approval of $14,678.77 of fees and expenses incurred by Schwarzmann, which fees and expenses were paid. Other than the interim fee and expense award of $14,678.77, Schwarzmann has not been paid any post-petition sums in the Cases.

Schwarzmann requests that the $14,678.77 awarded on an interim basis pursuant to the First Interim Application be awarded on a final basis at this time. Schwarzmann further requests that the $6,679.78 requested by this Second Fee Application be awarded on a first and final basis and that such sum be paid to Schwarzmann as soon as practical.

---

[3] Schwarzmann has incurred $3,995.00 in fees and $66.77 in expenses to date, and estimates an additional $2,550 in fees and $68.02 in expenses will be incurred associated with attending the hearing on these fees and expenses.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**B.  Dates of Entry of Order Approving Dentons' Employment and Date Services Commenced.**

The Equity Committee filed its application to employ Schwarzmann on November 8, 2017 [Docket No. 192]. No objection has yet been filed to the aforementioned application, and an order will be lodged after the applicable period expires for any objection.

**C.  Fees and Expenses Previously Requested.**

By the *First Interim Application of Michael D. Schwarzmann for Approval of Fees* and *Reimbursement of Expenses* Schwarzmann sought and received Court approval of $14,678.77 of fees and expenses incurred by Schwarzmann, which fees and expenses were awarded in their entirety and have been paid.

**D.  Proper Notice.**

Pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(6) and Local Bankruptcy Rule 2016-1(a)(2), notice of this Fee Application has been served by the Debtors upon all parties entitled to notice, including, without limitation, the Debtor, the Office of the United States Trustee ("OUST"), all creditors, and all parties who have requested special notice. This Fee Application has also been served in accordance with all applicable rules. While Schwarzmann is not the only retained professional in the case at this time, the Court waived the forty-five (45) day notice required by Local Bankruptcy Rules to other professionals.

**II.**

**BRIEF NARRATIVE HISTORY OF THE PRESENT POSTURE OF THE CASES, CIRCUMSTANCES THAT LED TO THE FILING OF THESE CASES, AND SIGNIFICANT EVENTS WHICH OCCURRED DURING THE COVERED PERIOD**

**A.  Description and History of the Debtor's Business and a Summary of the Circumstances that led to the Filing of the Debtors' Chapter 11 Cases.**

On September 8, 2017, the Debtors filed voluntary petitions under chapter 11 of the United States Code (the "Bankruptcy Code").

3

According to the Debtors' filings, despite the development and success of the Debtors' products over the years, the Debtors' revenue and cash flow from operations have been insufficient to support their current business operations as well as their continued growth. There were a variety of reasons for this including heavy competition, loss of a major international distributor, incomplete and/or ineffective expansion and distribution of all of their product lines and development of new customers, and higher than anticipated production, manufacturing and warehousing costs. In addition, it was discovered in early 2017 that under prior management, the Debtors had failed to provide materially complete and correct financial statements as required under their loan documents to their primary secured lender for the fiscal years ending December 31, 2015 and 2016, and for the fiscal quarters ending March 31, June 30, September 30, 2016 and March 31, 2017.

The Debtors filings indicate that they filed their bankruptcy Cases to consummate a sale of substantially all of their assets for the most money possible. Just prior to their bankruptcy filings, the Debtors entered into an asset purchase agreement with the Debtors' current secured creditor, Radians Wareham Holdings, Inc. ("Radians") or its affiliate/designee, for a purchase price of $20 million or $15 million, subject to an overbid process. The Debtors filed a motion seeking Court approval of their proposed overbid procedures that the Debtors negotiated with Radians prior to their bankruptcy filings, which the Court approved. Pre-petition, the Debtors hired Craig-Hallum Capital Group, LLC ("Craig-Hallum") as their financial advisor/investment banker to, among other things, market the Debtors' business for sale. The Debtors also hired Craig-Hallum to serve as the Debtors' post-petition financial advisor/investment banker to assist the Debtors to locate and negotiate with prospective overbidders and to help facilitate an auction sale process designed to obtain the highest price possible for the Debtors' assets.

**B.      Significant Post-Petition Developments.**

On September 11, 2017, the Debtors filed their *Ex Parte Motion For Entry Of An Order For Joint Administration Of Cases*. [Docket No. 5].

On September 12, 2017, the Court entered an *Order Approving Joint Administration of Cases Authorizing Joint Administration Pursuant to 11 U.S.C. § 105(a) and Federal Rule of Bankruptcy Procedure 1015(b)*. [Docket No. 25].

On September 20, 2017, the Office of the United States Trustee filed its *Notice of Appointment of Official Committee of Equity Holders* (the "Notice of Appointment"). [Docket No. 59]. The Notice of Appointment provides for the appointment of the Equity Committee in Ironclad Nevada.

On September 22, 2017, the Office of the United States Trustee filed its *Notice of* Appointment *of Creditors' Committee*. [Docket No. 62].

On November 3, 2017, the Court entered an order approving the sale of substantially all of the assets of the Debtors (the "Sale"). [Docket No. 177.] The Debtors' assets were sold to an over-bidder identified by Craig-Hallum for $25,250,000. The Debtors' total secured and unsecured claims in these Cases, including postpetition administrative claims, is estimated at $10.5-$12 million. [Docket No. 111.] Therefore, after payment of, or adequate reserves for, all claims against either estate there will remain over $10 million in funds anticipated to be distributed to the equity holders. The Sale closed on November 15, 2017, and after payments to certain third parties authorized by the Court, the Debtors have approximately $16,354,050 cash on hand post-closing, plus certain amounts in the DIP account. The Debtors also maintain $820,000 in a segregated account separate from the balance of the sale proceeds pending further order of the Court.

Schwarzmann incorporates by reference the Description and History of the Debtor's Business and a Summary of the Circumstances that led to the Filing of the Debtors' Chapter 11 Cases contained within the Dentons' fee application filed substantially contemporaneously herewith for further information regarding events in the case which occurred for which Schwarzmann was not directly involved.

///

///

///

## III.

## BRIEF NARRATIVE STATEMENT OF SERVICES RENDERED, TIME EXPENDED, AND FEES CHARGED FOR EACH BILLING CATEGORY

The primary task for which the equity committee retained Schwarzmann was assistance prior to and during the auction sale process. Schwarzmann assisted with those tasks, and his time related to those tasks was set forth in the First Interim Application. As set forth therein, Schwarzmann worked diligently and efficiently to assist Craig-Hallum with the sale process and optimize value for the estates and equity holders. In part due to his efforts, the sale price achieved at the auction was $25,250,000.00. Following the very successful sale, the equity committee determined that it had no immediate tasks at that time for which it required Schwarzmann's services. Schwarzmann's 15.4 hours of time resulting in $6,679.78 in fees was grouped into the Fee Application category[4]. References below made to the "Application Period" shall mean the period of November 4, 2017 through April 24, 2018. Below is a brief explanation of the time incurred by Schwarzmann during the Second Application Period.

### A. Fee Application

Schwarzmann's time requested is in order to comply with the fee application processes set forth in the United States Bankruptcy Code. Schwarzmann traveled to and attended the hearing on the First Interim Application and prepared this Final Fee Application. In addition, Schwarzmann has estimated time to attend the hearing on this Final Fee Application to address any issues, questions or concerns that may arise.

During the Application Period, Schwarzmann billed 2 hours to prepare this fee application, 5 hours traveling to and from the hearing on the First Interim Fee Application, and 2.4 hours to attend and participate in the hearings on December 12, 2017. In addition,

---

[4] In an effort to address the Equity Committee's desire that professional fees be minimized, Schwarzmann has not charged for some tasks performed and those entries are not reflected in this fee application. For example, there were discussions concerning next steps, ongoing issues, and general case monitoring that would permit Schwarzmann to be prepared to step in if requested. In addition, Schwarzmann did not charge for efforts related to reviewing various draft pleadings and correspondence. Rather, Schwarzmann is just requesting payment for the fee application tasks that were required to be performed.

Schwarzmann has estimated that he will spend an additional 6 hours traveling to and from the hearing on this application and participating in the hearing. In total, Schwarzmann will incur 15.4 hours in this category and $134.78 in expenses for a total of $6,679.78 in fees and expenses in this category.

## IV.

## ADDITIONAL REQUIRED INFORMATION

**A.  Detailed Listing of All Time Spent by the Professional on the Matter for Which Compensation is Sought.**

Attached as **Exhibit "A"** to the annexed Declaration of Michael D. Schwarzmann is a detailed listing of all time that Schwarzmann spent during the Application Period for which Schwarzmann seeks compensation including the date Schwarzmann rendered the service, a description of the service, and the amount of time spent for the period of time for the Application Period. Also included in **Exhibit "A"** is a summary of the hours and fees for services for the Equity Committee. Schwarzmann's rate for services rendered during the Application Period is $425.00.

**B.  Detailed Listing of Expenses by Category.**

Attached hereto as **Exhibit "B"** to the annexed Declaration of Michael D. Schwarzmann is a summary listing by category and an itemization of all expenses that Schwarzmann advanced on behalf of the Equity Committee during these Cases. These include Schwarzmann's mileage and parking expenses.

**C.  Description of Professional Education and Experience.**

Attached to the annexed Declaration of Michael D. Schwarzmann as **Exhibit "C"** is a copy of Schwarzmann's résumé.

**D.  Source and Amount of Cash Available to Pay Allowed Fees and Expenses.**

Schwarzmann seeks Court authority to be paid the whole amount or a partial amount from the "Remaining Estate Funds" in the amount of $13,829,001, as of December 31, 2017, as set forth in the *Debtors and Official Committee of Equity Security Holders Joint Plan of Liquidation Dated February 9, 2018* [Docket No. 438], which are being maintained by Levene, Neale,

Bender, Yoo & Brill L.L.P. (the "Escrow Agent") at First Republic Bank in a segregated trust account.

## V.

## **STANDARD OF LAW**

In determining the amount of allowable fees under § 330(a), courts are to be guided by the same "general principles" as are to be applied in determining awards under the federal fee-shifting statutes, with "some accommodation to the peculiarities of bankruptcy matters." *In re Manoa Finance Co., Inc.*, 853 F.2d 687, 691 (9th Cir. 1988); *see Meronk v. Arter & Hadden, LLP (In re Meronk),* 249 B.R. 208, 213 (B.A.P. 9th Cir. 2000) (reiterating that *Manoa Finance* is the controlling authority and characterizing the factor test[5] identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) and *Kerr v. Screen Extras Guild, Inc.*, 526 F. 2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976), as an "obsolete laundry list" now subsumed within more refined analyses).

The Supreme Court has evaluated the lodestar approach and endorses its usage. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), a civil rights case, the Supreme Court held that while the Johnson factors might be considered in setting fees, the lodestar amount subsumed many of those factors. *Hensley*, at 434, n. 9.[6] The following year, another civil rights case, *Blum vs. Stenson*, 465 U.S. 886 (1984), provided the so-called lodestar calculation: "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably

---

[5] The original twelve Johnson/Kerr factors were: (1) time and labor required, (2) novelty and difficulty of the questions involved, (3) skill requisite to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) amount involved and results obtained, (9) experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) nature and length of the professional relationship with client, and (12) awards in similar cases.

[6] For discussion of the *Johnson/Kerr* subsumed factors, *see Morales v. City of San Rafael*, 96 F.3d 359, 364, n. 9 (9th Cir. 1996) ("among the subsumed factors … are: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained"); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1549 (9th Cir. 1992), vacated in part on other grounds, 984 F.2d 345 (9th Cir. 1993) (extending *City of Burlington v. Dague*, 505 U.S. 557, 567 (1992), which held that sixth factor "whether the fee is fixed or contingent, may not be considered in the lodestar calculation").

expended on the litigation times a reasonable hourly rate . . . . Adjustments to that fee then may be made as necessary in the particular case." *Blum,* at 888.

Then, in 1986, the Supreme Court more explicitly indicated that the factors relevant to determining fees should be applied using the lodestar approach, rather than an *ad hoc* approach. While holding that the attorney's fee provision of the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, should be interpreted like that of the Civil Rights Act, the Supreme Court expressly rejected the ad hoc application of the factors set forth in *Johnson* and thus *Kerr*, stating that "the lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee . . . . " *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-66 (1986); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989) ("we have said repeatedly that the initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate").

While the lodestar approach is the primary basis for determining fee awards under the federal fee-shifting statutes and Bankruptcy Code, some of the *Johnson*/*Kerr* factors, previously applied in an ad hoc fashion, can still apply in calculating the appropriate hourly rate to use under the lodestar approach. *In re Charles Russell Buckridge*, 367 B.R. 191, 201 (C.D. Cal. 2007) ("a court is permitted to adjust the lodestar up or down using a multiplier based on the criteria listed in §330 and its consideration of the *Kerr* factors not subsumed within the initial calculations of the lodestar"); *see also Dang v. Cross*, 422 F.3d 800, 812 (9th Cir. 2005) (court may "adjust the lodestar amount after considering other factors that bear on the reasonableness of the fee"); *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir. 1991) ("Although *Manoa* suggests that starting with the 'lodestar' is customary, it does not mandate such an approach in all cases.… Fee shifting cases are persuasive, but due to the uniqueness of bankruptcy proceedings, they are not controlling").

Schwarzmann respectfully submits that the hourly rate of $425 is reasonable for a professional with his education, training and expertise and is reasonable and appropriate in the relevant community and in view of the circumstances of this case and the successful results achieved thus far by Schwarzmann. Schwarzmann respectfully submits that the foregoing

establishes that Schwarzmann's requested fees and expenses are reasonable and appropriate and should be approved by the Court.

## VI.

## **CONCLUSION**

WHEREFORE, Schwarzmann respectfully requests the entry of an order: (i) approving on a final basis the amounts previously awarded to Schwarzmann on his First Interim Fee Application including total fees of $14,535.00 and total expenses of $143.77 for total fees and expenses of $14,678.77; (ii) awarding on a final basis total fees of $6,545.00 and total expenses of $134.78 for a total of $6,679.78; (iii) authorizing the Debtors to pay Schwarzmann his incremental total fees of $6,545.00 and total expenses of $134.78 for total fees and expenses of $6,679.78; and (iv) granting such other and further relief as the Court deems is just and proper.

Dated: April 3, 2017

DENTONS US LLP
SAMUEL R. MAIZEL
TANIA A. MOYRON

By: */s/Tania M. Moyron*
Tania M. Moyron, Counsel to the
Official Committee of Equity Holders

10

## **DECLARATION OF MICHAEL D. SCHWARZMANN**

I, Michael D. Schwarzmann, hereby declare as follows:

1. I have personal knowledge of the facts set forth below and, if called to testify, would and could competently testify thereto.

2. I am the professional retained by the Official Committee of Equity Security Holders (the "Equity Committee").

3. I make this Declaration in support of the *Second and Final Application of Michael D. Schwarzmann for Approval of Fees and Reimbursement of Expenses; Declarations of Michael D. Schwarzmann and Scott Jarus in Support Thereof* (the "Fee Application") to which this Declaration is attached. I am familiar with Local Bankruptcy Rule 2016-1.

4. To the best of my knowledge, information and belief, all of the matters stated in the Fee Application are true and correct, and the Fee Application complies with all applicable statutes, rules, regulations, and procedures, including Local Bankruptcy Rule 2016-1 to the extent not waived by the Court.

5. The amounts requested in the Fee Application for compensation of fees and reimbursement of expenses incurred are based on my business records which are kept and maintained by in the ordinary course of my business.

6. Attached hereto as **Exhibit "A"** is a detailed listing of time entries for services performed, a summary of services performed, and specific descriptions of services performed, during the Application Period of November 4, 2017 through April 24, 2018. My billing rate is $425 per hour.

7. Attached hereto as **Exhibit "B"** is a detailed listing of all expenses I incurred during the Application Period of November 4, 2017 through April 24, 2018.

8. Attached hereto as **Exhibit "C"** is a copy of my professional résumé.

11

9. I declare and verify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this 3rd day of April 2018, at Costa Mesa, California.

By: _____
Michael D. Schwarzmann
*Financial Advisor to the*
*Official Committee of Equity Holders*

106986729\V-1