VAN C. DURRER II (State Bar No. 226693)
DESTINY N. ALMOGUE (State Bar No. 316495)
Skadden, Arps, Slate, Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5900
van.durrer@skadden.com
destiny.almogue@skadden.com

Proposed Special Counsel for Chapter 11 Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
SAN FERNANDO VALLEY DIVISION**

| | |
|---|---|
| In re:<br><br>ICPW LIQUIDATION CORPORATION[1], a California corporation,<br><br>　　　Debtor and Debtor in Possession.<br><br>In re:<br><br>ICPW LIQUIDATION CORPORATION[2], a Nevada corporation,<br><br>　　　Debtor and Debtor in Possession.<br><br>☒  Affects both Debtors<br><br>☐  Affects ICPW Liquidation Corporation, a California corporation only<br><br>☐  Affects ICPW Liquidation Corporation, a Nevada corporation only | Lead Case No.: 1:17-bk-12408-MB<br><br>Jointly administered with:<br>1:17-bk-12409-MB<br><br>(ICPW Liquidation Corporation, a Nevada corporation)<br><br>Chapter 11 Cases<br><br>**FINAL APPLICATION OF SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP FOR ALLOWANCE AND PAYMENT OF FEES AND EXPENSES INCURRED AS SPECIAL COUNSEL FOR THE DEBTORS FROM SEPTEMBER 8, 2017 THROUGH NOVEMBER 3, 2017**<br><br>DATE:    May 1, 2018<br>TIME:    2:30 p.m.<br>PLACE:   Courtroom "303"<br>　　　　   21041 Burbank Blvd.<br>　　　　   Woodland Hills, CA |

---

[1]  Formerly known as Ironclad Performance Wear Corporation, a California corporation.
[2]  Formerly known as Ironclad Performance Wear Corporation, a Nevada corporation.

1

Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") files this final application (the "Final Fee Application") under sections 330 and 331 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court of the Central District of California (the "Local Rules") for final approval and payment for the services that it performed as special counsel[3] to ICPW Liquidation Corporation, a California corporation, formerly known as Ironclad Performance Wear Corporation, a California corporation ("ICPW California"), and ICPW Liquidation Corporation, a Nevada corporation, formerly known as Ironclad Performance Wear Corporation, a Nevada corporation ("ICPW Nevada" and collectively with ICPW California, the "Debtors"), during the period from September 8, 2017 through November 3, 2017 (the "Retention Period"), and for reimbursement, of its charges and disbursements in these jointly administered Chapter 11 cases (the "Cases"). Specifically, the only compensation that Skadden seeks is the fixed amount of $107,858.21 (the "Agreed Fee Amount"), which the Debtors, Skadden, and the Official Committee of Equity Security Holders (the "Equity Committee") have all agreed to allow as Skadden's post-petition administrative claim pursuant to the *Joint Notice Regarding Allowance and Payment of Filed Claim of Skadden, Arps, Slate, Meagher & Flom LLP Pursuant to Order Granting Debtors' Motion for Authority to Pay Undisputed Pre-Petition Claims of Solvent Estate and Establishing Protocol* [Docket No. 365] (the "Joint Notice"). This award is well justified by virtue of the amounts for total compensation incurred by Skadden post-petition for time charges of $251,240.00 and

---

[3] On February 28, 2018 the Debtors filed the *Application of Debtors and Debtors in Possession to Employ Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel Pursuant to 11 U.S.C. §§ 327(e) and 330* nunc pro tunc *to September 8, 2017* [Docket No. 458] (the "Skadden Employment Application"), which will be heard concurrently at the hearing for this Final Fee Application.

2

disbursements in the amount of $8,291.32, which amounts, Skadden has voluntarily agreed to reduce to the Agreed Fee Amount.

## INTRODUCTION

**I.**   **General Background**

On April 13, 2017 and May 3, 2017, two employees of the Debtors "blew the whistle" and reported to the Chairman of Debtors' Audit Committee that improper revenue recognition practices had been used by certain other employees. In response to this information, the Debtors formed a committee (the "Independent Committee"), comprised of three independent directors (the "Independent Directors") to conduct an internal investigation into the matter.

Through the investigation, numerous accounting irregularities were uncovered. Ultimately, the Debtors determined that they would need to restate their financial statements. These restatements triggered defaults under various debt covenants, and eventually compelled the Debtors to file their voluntary petition for bankruptcy on September 8, 2017 (the "Petition Date"), commencing these Cases.

In the bankruptcy, the Debtors were forced to sell their operating business. After obtaining this Court's approval under the *Order Granting Debtors' Motion for Authority to Pay Undisputed Pre-Petition Claims of Solvent Estate and Establishing Protocol* [Docket No. 345], the Debtors used the sale proceeds to pay the majority of their creditors in full, including Skadden, with respect to a prepetition amount of $342,141.79, as reflected in the Joint Notice. To date, the current balance remaining from the sale proceeds is $13,826,855.02 (the "Remaining Estate Funds"), which is being held in a segregated trust account pending further order of this Court. The Remaining Estate Funds are unencumbered and available to be used to pay the allowed fees and expenses of the professionals employed in these cases.

## II. **Employment of Skadden**

In connection with the formation of the Independent Committee, the Independent Directors Committee engaged Skadden to supplement their internal investigation. Beginning in June of 2017, Skadden began to serve as counsel to the Independent Committee to investigate claims about certain accounting irregularities reported by whistleblowers, to respond to any inquiries or subpoenas by the Securities and Exchange Commission (the "SEC"), and to advise on appropriate remedial action. On July 18, 2017, Skadden and the Independent Committee executed an engagement letter.[4]

Under the circumstances, both the Independent Committee and the Debtors agreed to have Skadden continue to represent the interests of the Debtors in the internal investigation and related matters. As a result of many factors, including the speed with which the sale of the Debtors' operating business was taking place and the need to focus on obtaining the highest and best price for the benefit of the Debtors' estates and their creditors and shareholders, the application to retain Skadden as special counsel under section 327(e) was delayed. After resolving the issues of Skadden's prepetition claim and coming to an agreement with the Equity Committee on the amount of Skadden's post-petition administrative claim, the Debtors, Skadden and the Equity Committee agreed that the most efficient procedural manner to obtain this Court's approval for payment of the Agreed Fee Amount was for the Debtors file the Skadden Employment Application and for Skadden to file this Final Fee Application pending the Court's approval of Skadden's employment. Accordingly, no prior fee applications have been filed by Skadden.

---

[4] A copy of the engagement letter executed on July 18, 2017 by Michael A. DiGregorio on behalf of the Independent Committee (the "Engagement Letter") was attached as Exhibit 1 to the Declaration of Van C. Durrer II accompanying the Skadden Employment Application (the "Durrer Declaration").

Pursuant to Local Rule 2016-1(a)(1)(A) and (c)(2), Skadden hereby incorporates by reference the relevant sections of the Skadden Employment Application, and accompanying Durrer Declaration, filed by the Debtors on February 28, 2018 [Docket No. 458], which provide a more detailed account of the services Skadden has rendered to the Debtors in these Cases.

In the Durrer Declaration, Skadden disclosed its negotiated hourly rates (contained on page two of Exhibit 1 attached to the Durrer Declaration ), and provided a listing of Skadden's applicable hourly rates (attached as Exhibit 2 to the Durrer Declaration).  As an accommodation to the Debtors, and in conjunction with the Joint Notice, Skadden has agreed to reduce the total amount of its post-petition fees and disbursements to the Agreed Fee Amount.

The Skadden attorneys who have been principally responsible and actively involved in rendering services to the Debtors have been Matt E. Sloan, who has led Skadden's representation, and Nili Moghaddam.  Additional lawyers have also rendered services to the Debtors when appropriate and in accordance with their expertise.

**III.    Fee Procedures**

On April 2, 2018, the Debtors filed the *Notice of Hearing on Final Applications for Approval of Fees and Reimbursement of Expenses of All Professionals Employed in These Chapter 11 Cases* [Docket No. 527] (the "Fee Notice").  Pursuant to Local Rule 2016-1(c)(4), "[a] professional seeking compensation must file and serve an application for allowance and payment of final fees and expenses on the [T]rustee within 21 days of the date of the mailing of the [Fee Notice]."

**SUMMARY OF RELIEF REQUESTED**

Throughout these Cases, Skadden has played an important legal advisory role as special counsel to the Debtors for investigatory and other regulatory issues, including those related to inquiries and subpoenas from the SEC.  Although the Debtors have continued to call on Skadden

5

for specific matters from time to time, the Debtors have not required material services from Skadden since November 2017. As a result of its efforts during the Retention Period, Skadden now seeks an order granting final approval, and directing payment not to exceed the Agreed Fee Amount, on account of (i) time charges in the amount of $251,240.00 for services rendered during the Retention Period, and (ii) disbursements in the amount of $8,291.32 for expenses incurred during the Retention Period, for a combined total of $259,531.32 in fees and expenses during the Retention Period.

In accordance with the Joint Notice, this Final Fee Application represents voluntary reductions in the aggregate amount of $151,673.11, which reflects a voluntary reduction in Skadden's requested fees, charges and disbursements of approximately 58.4%, for items Skadden would normally bill its clients. In addition, in the exercise of billing judgment, Skadden has waived all of its fees and charges incurred in connection with filing the Skadden Employment Application and this Final Fee Application. Accordingly, this Final Fee Application also reflects an additional voluntary reduction by Skadden in the aggregate amount of approximately $10,000.00. Skadden believes that the amounts requested in this Final Fee Application are reasonable in relation to the services rendered. Specifically, in light of the fact that the Debtors' general bankruptcy counsel did not have the resources appropriate to respond to, nor interact with, the SEC. The amounts are already reduced to reflect the client accommodations described herein.

## SUMMARY OF FEES AND COMPENSATION REQUESTED

Given the unique circumstances of these Cases in relation to Skadden's retention and the fast-tracked sale transactions resulting in the solvency of the Debtors' estates, as well as the relationship between the Debtors, for efficiency purposes, Skadden determined that it was not practical or efficient to bill its time separate for each Debtor. Therefore, Skadden professionals billed all of their fees and expenses incurred in their representation of the Debtors to one billing

number, reflecting the sole "Internal Review" matter category (the "Matter Category").  All Skadden professionals kept a contemporaneous record of the time spent rendering such services and, consistent with the Local Rules, separated tasks in billing increments of one-tenth of an hour. All of the services performed by Skadden professionals have been legal in nature and necessary for the Debtors resolution of the Cases.

Included in this Final Fee Application are the following exhibits: Exhibit 1 contains a summary of fees and disbursements during the Retention Period, and Exhibit 2 is a professional and paraprofessional activity summary that shows rate, total hours, and total fees during the Retention Period.

## DESCRIPTION OF SERVICES RENDERED

A description of services rendered in the sole Matter Category during the Retention Period for which Skadden seeks compensation follows, as well as a summary fee chart for such Matter Category.[5]  As disclosed above and in the Skadden Employment Application, Skadden's rates for professional services were fixed at the rates disclosed in the Engagement Letter and have not been periodically adjusted in accordance with Skadden's usual policies.

### I. Internal Review

During the Retention Period, Skadden assisted the Debtors in conducting their internal investigation into potential accounting irregularities.  Skadden also rendered services and provided advice to the Debtors in connection with responding to inquiries and subpoenas from the SEC and other governmental agencies.

---

[5] A complete description of services rendered during the Retention Period has been previously provided in connection with the Skadden Employment Application.  Skadden hereby incorporates such descriptions by reference.

7

As required under Local Rule 2016-1(a)(1)(E), Skadden provides comprehensive invoices for the benefit of the Debtors, the United States Trustee (the "UST"), and other parties-in-interest. Nonetheless, because the Debtors have engaged in negotiations, litigation, or matters which are otherwise confidential, Skadden has redacted its time entries to ensure that it preserves the Debtors' confidences and attorney-client privilege. As the Court is well aware, the exercise of investigatory police powers by the SEC are not impacted by the automatic stay. Accordingly, the Debtors were required to continue to respond to inquiries by the SEC on a post-petition basis. Skadden's primary tasks in rendering services to the Debtors were (i) to advise the Debtors with respect to appropriate preservation of records, (ii) to collect information responsive to SEC inquiries, and (iii) to communicate with and respond to subpoenas and other informal inquiries from the SEC.

Cognizant of this Court's concerns regarding overlapping efforts, Skadden coordinated during meetings with the Debtors' other professionals to ensure that work performed by each is complementary rather than duplicative. As an additional measure, in preparation of this Final Fee Application, Skadden carefully reviewed its time entries and voluntarily removed any request for fees that suggested redundancy of efforts.

In connection with the foregoing services, Skadden professionals expended 305.80 hours during the Retention Period for which Skadden seeks compensation reduced to the Agreed Fee Amount. Detailed time entries for each Skadden professional related to services performed during the Remaining Period are attached hereto as Exhibit 3. In accordance with Local Rule 2016-1(a)(1)(H), biographical information for each of the individuals who rendered services for the Debtors is attached hereto as Exhibit 4.

| Name | Rate | Hours | Amount |
|---|---|---|---|
| Brian V. Breheny | 975.00 | 6.70 | 6,532.50 |
| Matt E. Sloan | 975.00 | 63.10 | 61,522.50 |
| Nili T. Moghaddam | 975.00 | 115.80 | 112,905.00 |
| Rachael Schiffman | 595.00 | 15.30 | 9,103.50 |
| Matthew J. Tako | 595.00 | 89.30 | 53,074.00 |
| Jeffrey Goldenhersh | 595.00 | 6.00 | 3,570.00 |
| John C. Hamlett | 595.00 | 3.70 | 2,201.50 |
| Legal Assistants | 385.00 | 5.90 | 2,271.50 |
| **Total** |  | **305.80** | **251,240.00** |

## II.    Retention/Fee Matters

Also during the Retention Period, Skadden assisted the Debtors with their filing of the Skadden Employment Application, and is in the process of completing a reply ("Reply") to the sole objection field to the Skadden Employment Application, filed by Jeffrey Cordes and William M. Aisenberg [Docket No. 480] (the "Objection"). Skadden will also participate at the hearing on May 1,2018 (the "Final Fee Hearing") in relation to the Skadden Employment Application, the Objection and the Reply.

In the exercise of billing judgment, Skadden has eliminated all time charges associated with the Skadden Employment Application, the Objection, the Reply, this Final Fee Application, and will waive any fees and charges Skadden would otherwise incur as a result of appearing at the Final Fee Hearing.

## **DISBURSEMENTS**

Skadden bills its clients for postage and copying charges incurred on their behalf at cost. Skadden's copying system automatically allocates charges to the specific clients for whom they are incurred. Charges and disbursements set forth in this Final Fee Application are charged to the Debtors at a rate no higher than the rates charged to all of Skadden's other clients, in accordance with the Policy Statement on Charges and Disbursements attached to the Engagement Letter between the Debtors and Skadden, which was attached to the application to approve Skadden's employment.

Attached to this Final Fee Application as Exhibit 5 is a summary of the expenses incurred by Skadden in connection with the services described above. The majority of these expenditures are attributable to charges incurred through outside vendors, who provided necessary services related to electronic discovery and document reproduction, and courier services, in connection with the services rendered by Skadden to the Debtors' in relation to the Debtors' internal review.

## **REASONABLENESS OF FEES, CHARGES AND DISBURSEMENTS**

The services reflected in this Final Fee Application, and those incorporated by reference in the Skadden Employment Application, have helped to ensure the quick and successful resolution of these Cases. Without Skadden's skills and resources, the Debtors, and therefore the Debtor's estate, might not have developed as accurate a record of events and transactions leading to the Cases, knowledge of which has led to the identification and recovery of valuable estate property, as well as legal claims which the Debtors have pursued. Skadden believes that, based on the criteria established for determining reasonableness of fees in bankruptcy cases and upon the fees in comparable bankruptcy cases, the requested fees and expenses are reasonable and appropriate, should be approved in full, and paid in the Agreed Fee Amount. Skadden's services were

necessary because general bankruptcy counsel lacked the appropriate resources and expertise to respond to and interact with the SEC.

I. **Criteria to Determine Reasonableness**

Section 330 of the Bankruptcy Code governs compensation to professionals in a bankruptcy case. It provides that, when determining the amount of reasonable compensation to award a professional, the Court should consider the nature, extent and the value of the services rendered, including (1) time spent on the case, (2) rates charged by the professional, (3) whether the services were necessary and beneficial, (4) timeliness of services based on the complexity and nature of the issue, (5) whether the professional is board certified or otherwise has demonstrated skill and experience in the bankruptcy field, and (6) whether the compensation is reasonable based on that charged by other comparably skilled professionals in non-bankruptcy cases.[6]

Bankruptcy courts reviewing fee applications use several different approaches to apply these guidelines. The "lodestar" method is the primary method of determining fees, achieved by multiplying the number of hours the professional reasonably expended on the litigation by a reasonable hourly rate. Yermakov v. Fitzsimmons (In re Yermakov), 718 F.2d 1465, 1471 (9th Cir. 1983) (citing Sw. Media, Inc. v. Rau, 708 F.2d 419, 427 (9th Cir. 1983)); see Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996). Certain courts have then assessed whether it is necessary to adjust the presumptively reasonable lodestar figure based on factors set forth by the Ninth Circuit in Kerr v. Screen Extras Guild, 526 F.2d 67 (9th Cir. 1975). See Morales, 96 F.3d at 363-64. These factors, some of which overlap those considered under section 330 of the Bankruptcy Code, are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the

---

[6] 11 U.S.C. § 330(a)(3).

11

Case 1:17-bk-12408-MB Doc 529 Filed 04/03/18 Entered 04/03/18 20:05:32 Desc Main Document Page 12 of 14

> attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

<u>Kerr</u>, 526 F.2d at 70. Nevertheless, the Court's primary focus should be on the overall reasonableness of the services rendered to the estate and the total cost.

> [I]t is important from a court to maintain a sense of overall proportion and not become enmeshed in meticulous analysis of every detailed facet of the professional representation. It is easy to speculate that the work could have been done in less time or with fewer attorneys or with an associate rather than a partner. On the other hand, it is also possible that [the client] would not have enjoyed the success that it did had its counsel managed matters differently.

<u>In re Boston & Maine Corp.</u>, 776 F.2d 2, 10 (1st Cir. 1985) (citations omitted).

In light of the factors in section 330 of the Bankruptcy Code and applicable case law, Skadden submits that the amount of its request is fair and reasonable, based on the nature of the case, the time and labor required to represent the Debtors effectively, Skadden's experience, reputation and ability, the cost of comparable services other than in a case under the Bankruptcy Code, and the agreement of substantially all of the parties in these Cases.

**II.** **<u>Experience of Skadden</u>**

The experience of Skadden's attorneys benefited the Debtors. As described more fully in the Skadden Employment Application, Skadden's attorneys have extensive knowledge and experience in dealing with litigation, government enforcement, white collar crime, and related regulatory matters. Skadden was able to use this expertise in order to negotiate with various federal authorities in order to move the investigation along more quickly. Skadden's background, in conjunction with Skadden's depth of experience in bankruptcy matters, has ensured that the issues that arose were addressed promptly and resolved expeditiously and economically.

In addition, Skadden's commitment to monitoring its own legal fees, has been a constant element of its representation of the Debtors. Indeed this emphasis has been manifested in Skadden's careful review of its fees, charges and disbursements, previous voluntary client accommodations of $151,673.11 as reflected in this Final Fee Application and the Joint Notice and the additional voluntary client accommodation of over $10,000.00 (the "Additional Accommodation"). The Additional Accommodation relates to fees and expenses which were incurred by Skadden on matters related to the Skadden Employment Application, Objection, Reply and this Final Fee Application, as well as any fees Skadden would otherwise incur as a result of its attendance at the Final Fee Hearing. Accordingly, Skadden has extended voluntary reductions of its fees and expenses in this engagement in the total amount of approximately $175,000.00, far in excess of the Agreed Fee Amount for which Skadden requests payment.

### III. Comparable Services

Skadden's rates are consistent with, if not lower than, rates charged under its bundled hourly rate structure to other clients in non-bankruptcy matters.

### IV. Compliance with Guidelines

Skadden believes that, except as noted above, this Final Fee Application, together with the attachments hereto, substantially complies in all material respects with Bankruptcy Rule 2016, Local Rule 2016-1, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 issued January 30, 1996.

To the extent this Final Fee Application does not comply in every respect with the requirement of those guidelines, Skadden respectfully requests a waiver for any such technical non-compliance.

### **CONCLUSION**

Skadden submits that the legal services and advice that it rendered to the Debtors in connection with the Case were necessary and beneficial to the Debtors and the Debtors' estates. For these reasons and the reasons set forth herein, the Court should approve this application in full.

Dated: April 3, 2018

                              SKADDEN, SLATE, MEAGHER & FLOM LLP

                              By: /s/ *Destiny Almogue*
                                  VAN C. DURRER II (State Bar No. 226693)
                                  DESTINY N. ALMOGUE (State Bar No. 316495)
                                  Skadden, Arps, Slate, Meagher & Flom LLP
                                  300 South Grand Avenue, Suite 3400
                                  Los Angeles, California 90071-3144
                                  Telephone:   (213) 687-5000
                                  Facsimile:    (213) 687-5900
                                  van.durrer@skadden.com
                                  destiny.almogue@skadden.com